*Courtesy Copy*

1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
   - - - - - - - - - - - - X
 3                              :

 4

 5  IN RE:  JOHN DOE,
                              CV 98-1101
 6

 7                              :

                                United States Courthouse
 8                              Brooklyn, New York,

 9
                 :
10                              July 20, 2010
   - - - - - - - - - - - - X    10:30 o'clock a.m.
11
                  TRANSCRIPT OF ORAL ARGUMENT
12            BEFORE THE HONORABLE I. LEO GLASSER
                 UNITED STATES DISTRICT JUDGE
13
   APPEARANCES:
14
   For the Plaintiff:      MORGAN LEWIS & BOCKIUS, LLP
15                         101 Park Avenue
                           New York, N. Y.
16                         BY:  KELLY MOORE, ESQ.
                           LESLIE R. CALDWELL, ESQ.
17                         DAVID A. SNIDER, ESQ.
                           BRIAN A. HERMAN, ESQ.
18
   For the Defendant:      WILSON ELSER MOSKOWITZ EDELMAN
19                            & DICKER, LLP
                           150 East 42nd Street
20                         New York, N. Y. 10017
                           BY:  RICHARD LERNER, ESQ.
21                         LAUREN J. ROCKLIN, ESQ.

22

23  Court Reporter:        Henry R. Shapiro
                           225 Cadman Plaza East
24                         Brooklyn, New York
                           718-613-2509
25
```

2

1   Proceedings recorded by mechanical stenography, transcript
    produced by computer.

2

3

4

5

6

7          THE CLERK:  Criminal cause for oral arguments, '98 CR

8   1101, United States versus John Doe.

9          State your names for the record.

10         MS. MOORE:  Kelly Moore, Leslie Caldwell, Brian

11  Herman and David Snider for John Doe.

12         MS. LERNER:  Richard Lerner of Wilson, Elser,

13  Moskowitz, Edelman & Dicker for respondent Frederick M.

14  Oberlander.

15         MS. MOORE:  Your Honor, with respect to the relief we

16  seek, we rely on our brief, the arguments contained therein

17  and the authority contained therein.

18         Specifically Judge Jones' decision in the Visa case

19  and Judge Weinstein's decision in the Zyprexa case.

20         If anything, the facts of this case are more

21  compelling than those cases.  Visa and Zyprexa involved sealed

22  documents in civil litigation, which involved possible

23  commercial or economic harm to a business entity.

24         This case, as the Court is aware, involves potential

25  physical harm or death to an individual. With respect to the

3

1  First Amendment arguments, at the last court appearance the

2  Court did not ask us to specifically address that in our

3  briefs. We would like the opportunity to supplement our brief

4  with more detailed First Amendment analysis if that is okay

5  with the Court.

6          In the meantime, I would just note that the first

7  amendment is not absolute.  The facts of this case in no way

8  support the conduct of the respondent and the respondent's

9  First Amendment protection.  The respondents are not the

10 media, they are not a news gathering organization seeking to

11 write articles and publish them.

12         Mr. Oberlander is an attorney.  As such, he has

13 additional ethical obligations to not disseminate or use

14 information that is secret, private and confidential, that

15 comes into his possession.

16         Moreover, in this case, the documents at issue were

17 clearly stolen and Mr. Oberlander, who represented the thief,

18 knew that they were stolen.

19         As the agent of a thief, receiving those stolen

20 documents, he doesn't deserve any greater protection-- First

21 Amendment protection-- than the thief himself would.

22         Additionally, the respondent knew that some of the

23 documents were sealed, as is clearly evident from paragraph 95

24 of the complaint in the Southern District.

25         As an attorney, once again, Mr. Oberlander knew what

HENRY SHAPIRO          OFFICIAL COURT REPORTER

4

1   that meant. He knew that documents don't seal themselves, they

2   are sealed only pursuant to court order.  And there are also

3   unsealed only pursuant to court order.

4         He was also aware of the Southern District electronic

5   filing rules, which compelled him to exercise caution and care

6   with respect to disseminating information about cooperators.

7   That rule applies to all cooperators, even those who testify

8   publicly.  In this case the cooperation and the cooperation

9   agreement were sealed.  Mr. Oberlander certainly should have

10  exercised greater care.

11        The intended use of it in this case doesn't support

12  compelling First Amendment interest. I don't know if the Court

13  had the opportunity to review the Southern District Civil RICO

14  complaint. But the information about my client's criminal case

15  in no way supports any claims contained in that case, and it's

16  clearly being used to harass, embarrass, intimidate and coerce

17  my client.

18        Finally, as I mentioned before, this case unlike any

19  of the cases cited by the respondents involving potential

20  danger to human life.  Under the facts of this case the First

21  Amendment simply possess no bar to the imposition of the

22  relief we're seeking.

23        With respect to Mr. Oberlander's declaration filed

24  last Friday, I would note that the respondents throughout this

25  proceeding have engaged in a number of dubious litigation

HENRY SHAPIRO        OFFICIAL COURT REPORTER

5

1  tactics, that are arranged in an intentional misinterpretation

2  of the Court's order, without seeking clarification along the

3  lines of claiming that they didn't know.  He contacted Mr.

4  Bernstein for an affidavit that said they didn't know the

5  lawyers could review the documents in question in connection

6  with representing the clients.

7       And a previous meritless allegation of misconduct

8  against me.  It was withdrawn, but nevertheless made and it

9  was intended clearly to get me to do something that would have

10 been unethical, to put my own interests ahead of my client's

11 by accepting a settlement that wouldn't have been favorable to

12 my client, just to get the unpleasant allegations against

13 myself withdrawn.

14      The declaration of Mr. Oberlander, in which he

15 accuses this Court of unconstitutional conduct and makes

16 application for recusal, is clearly in the same vain of that

17 litigation at that particular time.  It is clearly intended to

18 get the Court to do one of two things:  To either recuse

19 itself on the basis of a completely meritless application or

20 in the alternatively to get the Court to pull its punches, to

21 bend over backwards, to demonstrate a lack of bias, to issue a

22 ruling that would be favorable to the respondents than if they

23 had not made such a meritless unsupported application.

24      Those litigation tactics should be seen for what they

25 are and respondents and litigants engaging in them should not

6

1  be rewarded.

2      I thought long and hard about responding to some of

3  the other allegations and arguments contained in this

4  Oberlander declaration, the allegation that this Court has no

5  decency, that somehow it is beyond the authority of a federal

6  judge, upon application of United States Attorney's office, to

7  seal documents or files when doing so is in the interest of

8  protecting human life or national security, or that somehow

9  has a greater First Amendment right to put a man's life in

10  danger by publishing stolen and sealed confidential documents

11  then if he walked into a crowded theatre and shouted fire.

12      In rereading Mr. Oberlander's declaration, however, I

13  was reminded of a comment that a former colleague of mine used

14  to make from time to time, which is that there really is no

15  percentage in arguing with crazy people, and so upon the

16  advise of another wise man I once got, I think, I will let

17  discretion be the greater part of valor and not dignify that

18  declaration or the rants contained therein with a response.

19      If the Court has no additional questions for us, we

20  will rest on our papers, but we would like to supplement them

21  with an additional First amendment analysis.

22      THE COURT:  I will come back to you.

23      Let me hear from Mr. Lerner.

24      MS. LERNER:  Your Honor has now had an opportunity to

25  read the case law --

7

1          THE COURT:  Before we get to that, I am not

2     altogether clear as to what Mr. Oberlander's notice of appeal

3     is all about. I do not quite understand what is it.

4          MS. LERNER:  It's a protective notice of appeal.  He

5     reserve his right to argue.  There is yet to be a formal

6     permanent injunction or that a TRO -- there is possibly a gap

7     period where it could be argued that the TRO lapsed and became

8     a permanent injunction.  It's merely protective.

9          THE COURT:  What does that mean, a protective notice

10    of appeal?

11          MS. LERNER:  If the TRO could be deemed converted to

12    a permanent injunction, we will appeal from that.

13          THE COURT:  Is not that kind of premature?  Is there

14    anything that prevents him from filing a notice of appeal when

15    that event occurs?

16          MS. LERNER:  If a permanent injunction is issued we

17    shall file a further notice of appeal.

18          THE COURT:  What's the purpose of a protective notice

19    of appeal?  Is that to preserve some limitation period?

20          MS. LERNER:  Frankly, your Honor, the case law --

21          THE COURT:  To be perfectly candid --

22          MS. LERNER:  Candidly the TRO itself is appealable

23    because it restrains Mr. Oberlander's free speech rights.

24          THE COURT:  Then he could file a notice of appeal

25    with respect to what he believes is an order, which is

HENRY SHAPIRO          OFFICIAL COURT REPORTER

8

1    properly appealable.

2          MS. LERNER:  Yes.

3          THE COURT:  I don't understand what a protective

4    notice of appeal is.  I'm frank to say, I have never

5    encountered it before.

6          It may be that my knowledge of this process is a

7    little wanting, but I do not understand what it is.

8          MS. LERNER:  First of all, on June 21st your Honor

9    stated that there was a permanent injunction vis-a-vis the PSR

10   and ordered it returned. That is appealable.  The notice of

11   appeal refers to that.

12         But since your Honor stated further evidence would be

13   taken after it was stated that it's our position it could

14   fairly be argued that the Court did not actually render a

15   final determination as to that document.  If it did --

16         THE COURT:  The reason I am asking, Mr. Lerner, is

17   that it is very clearly established law that it may be that a

18   filing of a notice of appeal deprives this Court of

19   jurisdiction with respect to continuing in a matter.

20         I do not know whether a notice of appeal, if filed,

21   would have that effect here with respect to injunctive

22   relief.  I think that is something that is questionable.

23         But, in any event, it was that issue which caused me

24   to wonder what is this document about, is it in some way

25   affecting my continuing exercise of jurisdiction in this

HENRY SHAPIRO          OFFICIAL COURT REPORTER

10

1   Your Honor, sealing the court file, I submit, was

2   unconstitutional in this case, because there is no signed

3   court order.

4          Hartford says there must be a court order. If your

5   Honor did sign an order, there is nothing in the docket sheet,

6   as far as we can tell, to indicate that prior notice appearing

7   was given prior to the sealing of the court file.

8          We have not had an opportunity to see that docket

9   sheet, therefore, we cannot note whether this case was

10  properly sealed.  If notice was given --

11         THE COURT:  Excuse me.

12         If you went to the docket you would find that this

13  case is under seal, correct?

14         MS. LERNER:  Yes.

15         THE COURT:  And in order to obtain documents, which

16  are part and parcel of that case, you would have to make an

17  application to a court to unseal that file.  That is what the

18  sealing order says.

19         MS. LERNER:  And if the sealing order was not signed

20  by your Honor and the requisite findings were not made, is

21  unconstitutional, and we have been deprived of the opportunity

22  to see the docket sheet and the United States Supreme Court in

23  Amidao held we cannot presume what is in the docket sheet if

24  we can't see it.  If notice was given, we can't know that

25  because the Court has declined to allow us to see the docket

11

1    sheet as stated in Hartford. We cannot make any presumption

2    about what it says. The appellate court can make no

3    presumption and we cannot. Therefore, we cannot presume the

4    documents were properly sealed, your Honor.

5         There was nothing on the record that the sealing --

6         THE COURT: Excuse me. Just a minute. Is there some

7    presumption that an order -- assuming that there is an order

8    and you do not know whether the order was or was not signed --

9    what you do know by looking at the docket sheet is that this

10   is a sealed file, sealed by order of the court.

11        Is there some presumption that the order is invalid

12   because it was not signed, is that what I'm hearing?

13        MS. LERNER: I'm referring to the Hartford case--

14        THE COURT: Mr. Lerner, I am asking you what I am

15   understanding, is there is a presumption of the invalidity of

16   an order?

17        MS. LERNER: I think, your Honor stated on the record

18   that this is just matter of factly and indicated as I recall

19   it wasn't even signed, it's docket said is sealed. If there

20   is a signed order, let us see it, because without a signed

21   order this proceeding is unconstitutional.

22        THE COURT: It may be, Mr. Lerner, that you are

23   correct. You are not answering the question.

24        MS. LERNER: I don't have to make any presumption.

25   The United States Supreme Court has held the appellate courts

12

1   do not have to presume there is a signed order in the file

2   when there is--

3         THE COURT:  If there is an order or docket entry that

4   says this has been sealed by order of the court, any person is

5   free to ignore that order and if by some chance, some document

6   in that file becomes available to any person, that person is

7   free to assume that the order has no efficacy?

8         MS. LERNER:  First of all, the docket here is sealed,

9   therefore, Mr. Oberlander could not see any order in the file

10  and the answer to your question is, yes, anybody may do it,

11  whatever he wants with that document.  It is free to be

12  distributed, if it's a public of interest, criminal proceeding

13  are per se of public interest.

14        THE COURT:  It's true that criminal proceeding are a

15  matter of public interest.

16        Doesn't follow that every document that has been

17  created in the course of a criminal proceeding is a matter of

18  public interest available to the public upon request.

19        That is particularly true, as I'm sure you know --

20  Mr. Lerner --

21        MS. LERNER:  I apologize for that interruption.

22        THE COURT:  I understand your passion in connection

23  with this matter.

24        Let us talk one at a time.  Okay.

25        I take it you read Charmer Industries.

1          MS. LERNER:  Yes.

2          THE COURT:  And I take it that having read Charmer

3  Industries, you would agree that a presentence report is a

4  document which has some very specific confidentiality

5  concerns.

6          MS. LERNER:  Your Honor, of course, I agree with

7  that.  But the premise, you have asked whether a document

8  could be used for any purpose -- if it's from a criminal

9  trial -- criminal proceeding even if it's sealed, the question

10 is was it stolen from the court file.  Was it stolen or

11 inappropriately unauthorized taken from the Court file as in

12 Charmer?

13         The answer is, the Court can order its return.  If

14 it's obtained from other means, your Honor, has no

15 jurisdiction to stop it. You can not issue a prior restraint

16 order.

17         If I may continue?

18         THE COURT:  Please.

19         MS. LERNER:  There is nothing in the record, that we

20 are aware of, because we cannot see the docket sheet or the

21 sealing order.  There is nothing on the order finding a more

22 fundamental interest in the First Amendment would be served by

23 sealing this court file.  There is nothing on the record

24 finding this was the least restrictive alternative.

25         Your Honor, granting -- now we turn to the TRO

1  itself, as the Court granted a TRO, which constitutes a prior

2  restraint on speech without conducting any inquiry as to

3  whether the respondent's First Amendment rights would be

4  infringed.

5       Now, your Honor, ordered -- the order itself signed

6  by your Honor incorporates Ms. Moore's arguments and it says

7  for the reasons stated, but that is constitutionally

8  insufficient according to Amadao, you must make independent

9  findings to support a prior restraint.

10      It must be the order itself. The TRO is a nullity.

11 Failing to make the requisite findings in the order to show

12 cause, in as much it constitutes a prior restraint, renders

13 that prior restraint unconstitutional.

14      Your Honor failed to disclose to us on the docket

15 sheet that we requested, we cannot know whether these

16 documents are properly sealed --

17      THE COURT:  Have you made application to the Court?

18      MS. LERNER:  We requested it.

19      THE COURT:  Have you made application to me to unseal

20 whatever document you wanted?  That docket sheet indicated

21 there were, I think, four or five numbered dockets -- docket

22 entries which were sealed which were unsealed and, I think,

23 made available to you.

24      MS. LERNER:  They were not.  They were not.  Having a

25 dual docket sheet, your Honor stated at the second appearance

HENRY SHAPIRO        OFFICIAL COURT REPORTER

1  that there were thirteen items on the docket sheet and six

2  were sealed.

3          Your Honor, that is improper.

4          THE COURT:  What was improper?

5          MS. LERNER:  Your Honor, you sealed the entire

6  docket, yet you indicated there are thirteen items in the

7  docket, six of which are sealed, which means there are others

8  which are not sealed and yet the entire file has been sealed.

9          Your Honor, if the Court goes beyond the relief

10  sought in the order to show cause there will be a further

11  violation of Mr. Oberlander's constitutional rights for the

12  order to show cause did not seek permanent injunction, did not

13  seek a gag order, there is no basis for such leave.  He cannot

14  be gagged.

15          He returned, your honor, the original document that

16  he obtained from Mr. Bernstein.

17          Now, it may not be so clear in the record that he --

18  those were actually the originals obtained from Mr.

19  Bernstein.  If the Court would like a representation from Mr.

20  Oberlander to that effect, I would ask that he give it. But

21  those were the originals.

22          Your Honor can do nothing to stop the dissemination

23  of photocopies or electronic copies and the selective

24  enforcement or selective gag order directed only at Mr.

25  Oberlander and not, for example, Business Week, which as we

HENRY SHAPIRO          OFFICIAL COURT REPORTER

16

1   noted in our papers, has on its website an article which

2   states that it has a copy of the criminal -- the sealed

3   criminal complaint in this matter.

4           Your Honor, cannot selectively enforce a gag order

5   against Mr. Oberlander.  You cannot gag him and not gag

6   Business Week.

7           If you're going to take on a little guy you have to

8   take on a big guy. He'll not sit here and accept that, neither

9   will I.  We will fight this to the end.  A permanent

10  injunction cannot be granted.

11          Thank you, your Honor.

12          THE COURT:  Do you want to respond?

13          MS. MOORE:  Yes, your Honor.

14          I would note we'd like to sort of supplement our

15  brief with an additional Fifth Amendment analysis.

16          THE COURT:  Your application is granted to file a

17  supplemental brief.

18          There are a number of things, which are troublesome

19  in this case.  Going back to the original order to show cause,

20  that document was troublesome because it just said that there

21  was a significant breach in the processes of this Court with

22  respect to criminal dockets.

23          There was, as I think, indicated on that occasion, I

24  was very concerned about the integrity of the record of this

25  Court and that file.  It turns out that the first document on

1  that docket sheet is a notification by an assistant United

2  States attorney of the filing of an information, which

3  eventually evolved into an indictment.

4         There is no indication, that is docket number one,

5  which I obtained or had the clerk obtain from Kansas City or

6  wherever these files are shipped, because it was no longer

7  available in the courthouse.  There is not any indication in

8  that document or in a subsequent document that an application

9  was made or request was made in that document to seal that

10 file.  Nor have I been able to find any order signed by me,

11 which directed that this file be sealed.

12        Criminal cases such as the John Doe case and cases in

13 which by virtue of cooperation agreements and variety of other

14 matters either national interest, security interest, or

15 significant interest that one may have in his own safety,

16 which may be at risk.  Criminal files are sealed where that is

17 a significant consideration.

18        Let us assume for the moment that an order was signed

19 by me somewhere along the line, as it may have been, directing

20 that the file in this case be sealed.  That order is directed

21 to whom?  Who is bound by it?  That order, it would appear, is

22 directed to the clerk of the court who is informed that this

23 document or this file is sealed and is not to be made

24 available, except upon an order of the Court unsealing it.

25        When the order to show cause was first brought into

HENRY SHAPIRO        OFFICIAL COURT REPORTER

1  this Court, it was a very serious concern as to whether

2  somebody in this courthouse unsealed that file or made

3  document which were sealed available to third parties.  That

4  was a very significant concern.

5        A hearing, which we held some weeks ago, makes it

6  plain and, I think, it is beyond dispute that these documents

7  were not removed by John Doe, he properly had them. The

8  cooperation agreement was a document which was in the

9  possession of his then attorney.  His attorney had a perfect

10  right, as did John Doe, to have a copy of that cooperation

11  agreement, had a perfect right to have whatever document

12  pertained to his case, which may have been part of the file.

13        Assume that John Doe decided to make the cooperation

14  agreement, the proffer agreement available to a third-party,

15  would an order have been violated?  The answer is clearly,

16  no.  John Doe had these documents, so the testimony has thus

17  far revealed, Mr. Bernstein has not submitted an affidavit nor

18  has he testified.  You cannot find him for the purpose of

19  serving the subpoena.

20        What we have on the record is the testimony by John

21  Doe that he did not give those documents to Mr. Bernstein,

22  which gives rise to the legitimate inference that Mr.

23  Bernstein may have stolen them, may have improperly obtained

24  those documents.

25        What order of the Court was violated by that event?

19

1   Those documents then came into the hands of Mr. Oberlander.

2   Mr. Oberlander knew that those documents were sealed

3   documents, contained very, very serious information and his

4   assertion or testimony that, well, it wasn't his words, it was

5   his client's words, is remarkable for it's disingenuous.  To

6   say that I am not a criminal lawyer and I don't know what it

7   meant, I have a sealed document, is preposterous.

8   Particularly, since he had the electronic filing information

9   from the Southern District that said if it's a cooperation

10  agreement, be very, very careful before you use it.

11          Now, what happened, assuming that the documents were

12  in John Doe's cabinet or in his desk, as they had a perfect

13  right to be, they were his documents, and the documents were

14  then wrongfully taken by Mr. Bernstein.  Mr. Bernstein is a

15  converter, Mr. Bernstein has no title to those documents, no

16  legal right to those documents, to that tangible document

17  whether it would be a piece of paper, whether it be a gold

18  ring or whatever it is, it was a tangible item which was

19  converted, given the testimony that I have by Mr. Bernstein --

20          MS. LERNER:  John Doe, I believe.  Bernstein did not

21  testify.

22          THE COURT:  I am saying based on the testimony.  Mr.

23  Bernstein then analogizing these events to the fundamental

24  principle of conversion, or larceny, if you will, past it onto

25  Mr. Oberlander.

HENRY SHAPIRO          OFFICIAL COURT REPORTER

1          Mr. Oberlander had no better right to those documents

2     than Mr. Bernstein had.   If we were to describe this change of

3     events in terms of property rights, title, Mr. Bernstein had

4     no title and he had no title to give to Mr. Oberlander.

5          Mr. Oberlander even if he were an innocent purchaser

6     for value, would not have acquired title to those documents,

7     because Mr. Bernstein had no title to give him. If requests

8     were made of Mr. Oberlander to return those documents and Mr.

9     Oberlander refused, it may be that an action for conversion

10    may be available against Mr. Oberlander.

11         It may be that there is some disciplinary rule, which

12    might be applicable to Mr. Oberlander, who had documents which

13    he knew or perhaps should have known may have been improperly

14    obtained by Bernstein and passed onto him.

15         It may be that there is some ethical principle, which

16    should have precluded Mr. Oberlander from using those

17    documents.   Because the sensitivity of those documents would

18    have been apparent to any reasonable person, particularly one

19    who is trained in the law ostensibly.

20         So the question is, yes, something bad was done,

21    something very bad and perhaps despicable was done by the use

22    of those documents annexed to a complaint in the Southern

23    District, in a civil case, but the question is what order was

24    violated?

25         You can certainty submit briefs on the First

---

HENRY SHAPIRO          OFFICIAL COURT REPORTER

1    Amendment issue.  I have some question about whether the First

2    Amendment is applicable here.  There was an opinion by Judge

3    Kahn in the Western District-- I did not bring my file down. I

4    thought this was on for 11:30.  What is the name of the

5    town -- I will be more than happy to give it to you.

6              LAW CLERK:  It was a Northern district case.

7              THE COURT:  Yes, it was by Judge Kahn, in which he

8    has a very interesting discussion in a case, which is not

9    this, but analogous in the sense that it involved a

10   confidentiality order that was part of a potential settlement

11   stipulation and that the documents in that confidentiality

12   agreement became available or was sought to be made available

13   to a newspaper upstate by the reporter of that newspaper and

14   the First Amendment argument was made in that case as well.

15             Judge Kahn didn't think it was applicable for a

16   variety of reasons.  I think, his reasoning might be quite

17   persuasive when dealing with a presentence report and

18   certainly Charmer, I think, leaves very little doubt that a

19   presentence report has a very, very special status.  So there

20   we are.

21             You want an opportunity to submit the supplemental

22   brief and I will give you that opportunity. I just received

23   Mr. Lerner's document this morning.  It was FAX'D or ECF'd at

24   four something last night. You don't request an adjournment at

25   4:00 o'clock on the eve of a hearing.  If you look at my local

HENRY SHAPIRO        OFFICIAL COURT REPORTER

22

1   rules it require 48 hours notice for purposes of adjourning a

2   schedule hearing or a conference.

3        So I didn't get around to reading it because I left

4   before that document arrived and I looked at it this morning.

5        Ms. Moore called, I think, shortly after that

6   document was received, so my law clerk tells me, and asked for

7   an adjournment to respond to that letter.  I was not able to

8   respond to that because I was not here.  But I did call her

9   this morning and I asked her if she wanted to adjourn.  You

10  indicated that you saw no purpose for this conference as well,

11  but she preferred to go ahead and make application for a

12  supplemental brief.

13       What I have just declared is not to be understood at

14  this moment as a determination that injunctive relief may not

15  be appropriate, but I am troubled by the issues as I have

16  outlined them as to whether an order signed by a judge on one

17  of those sealing envelopes, which says, not to be unsealed

18  except by order of the Court, is binding upon any third-party

19  person, is binding or is the procedure, which is intended by

20  that procedure, which informs any third-party who has notice

21  or will have notice by looking at a docket sheet, looking at

22  the ECF, this is a case under seal -- under sealed or filed

23  under seal-- make application to the Court to unseal the

24  document.

25       Whether having knowledge that the case was one, which

HENRY SHAPIRO          OFFICIAL COURT REPORTER

1   has been filed under seal, whether an order was issued or not,

2   it is a case which is filed under seal, and clearly indicates

3   the content of that sealed file is not to be disclosed, except

4   upon order of the Court, whether that can be ignored, whether

5   that is presumptively meaningless and has no binding effect

6   upon anybody.

7        It is an interesting question, Mr. Lerner.  Judge

8   Kennedy who I think you were quoting with all due respect, may

9   not have faced this specific issue at any given time, but it

10  is obviously an issue which is quite troublesome.  It is quite

11  troublesome in so far as Mr. Oberlander's use of that

12  document, which he knew was sealed, knew contained very

13  sensitive information.  It may be some other relief may be

14  available against Mr. Oberlander.  I am not sure.

15       In so far as injunctions are concerned, there is an

16  interesting observation in Charmer as well, if you read it

17  carefully, Mr. Lerner, and I'm sure that you have.  Normally

18  was is required, and Ms. Moore indicates what is normally

19  required before injunctive relief is obtained-- and by the way

20  in so far as the TRO is concerned-- I do not recall there was

21  any objection ever raised by you to the issuance of the TRO.

22       It is my sense that you were consenting to it at

23  every stage of the TRO as it was initially issued and renewed.

24  We will leave that go for the moment.

25       MS. LERNER:  I can respond --

---

HENRY SHAPIRO        OFFICIAL COURT REPORTER

24

1        THE COURT:  I said, leave that go for the moment.

2   But normally, before a TRO-- injunctive relief, more

3   specifically should be issued, there are three prerequisites.

4   The leading case in this circuit is Jackson Dairy versus H.B.

5   Hood, I think, it is 570 2d or there abouts.  You have to show

6   irreparable alarm, likelihood of irreparable harm, likelihood

7   of success on the merits, or reasonable issues going to the

8   merits with the balance of hardships tipping in favor of the

9   movant.

10        In Charmer, you may recall-- it may be Judge Kearse

11  who said that the burden should not be on the person seeking

12  the injunctive relief, where the presentence report is the

13  document at issue, the burden should be upon the Attorney

14  General, the person who has that presentence report to

15  establish an overriding need for the use or possession of that

16  document.

17        The burden should be on the other side, not on the

18  movant, but the person seeking to be enjoined.

19        Having said all of that I will await further

20  briefing.  I do not think there is anything further that you

21  want to submit, Mr. Lerner.

22        MS. LERNER:  There are two cases I would like to cite

23  and just --

24        THE COURT:  Why don't you submit them to me.

25        MS. LERNER:  I don't have copies for --

HENRY SHAPIRO          OFFICIAL COURT REPORTER

1          THE COURT:  When I say submit them, submit the

2    citations to them.

3          MR. LERNER:  DiPietro against the United States of

4    America.

5          THE COURT:  I'm sorry --

6          MS. LERNER:  D I P I E T R O.

7          It is a Lexus cite, 2009, U.S. District --

8          THE COURT:  What are the names of the parties?

9          MS. LERNER:  DiPietro against the United States of

10   America.

11          THE COURT:  DiPietro is the plaintiff?

12          MS. LERNER:  Petitioner for the unsealing of the

13   Court file.  2009, US District, Lexus 30010.

14          THE COURT:  What court was it.

15          MS. LERNER:  Southern District.

16          And the second case is Nycomeds against Glen Parker

17   Generics, 2110 U.S. District, Lexus 20788.

18          It is a magistrate decision , Eastern District of New

19   York, Magistrate Mann.

20          THE COURT:  You want a week?

21          MS. MOORE:  Yes, your Honor.

22          THE COURT:  You are responding to Mr. Lerner's last

23   submission and I don't think any further submissions are

24   necessary.

25          MS. MOORE:  Your Honor, in light of Mr. Lerner's last

26

1  submission, I would seek clarification with respect to the PSR

2  that it's clear --

3      THE COURT:  Before you get to that.  Am I correct

4  that the documents, at least Mr. Lerner's last submission says

5  this whole proceeding now is moot because the documents have

6  been surrendered, turned over to you, is that correct?

7      MS. MOORE:  Not that I know of.  I think, as I

8  understand his position, which I don't agree with, he's

9  entitled to keep all copies of the documents, as long as he

10  returned the originals, so, I believe, in his letter he states

11  that if at the court proceeding he marked as exhibits the

12  original versions of those documents, but his client has

13  maintained both electronic and hard copies, so clearly the

14  intent was not to give back, as Judge Jones ordered in Visa,

15  all copies as well.  It doesn't get the originals back and are

16  free to disseminating copies.

17      THE COURT:  I think, I indicated Mr. Oberlander

18  should not do that. I think it was in the form of an order and

19  that order, I believe, if I have not done so, I am doing it

20  now and if you want it in writing until I resolve this issue.

21      MR. LERNER:  You are issuing a further TRO?

22      THE COURT:  Yes, I am.

23      I'm issuing a further TRO for the reasons that I have

24  indicated.

25      I think there is irreparable harm, which is imminent

HENRY SHAPIRO        OFFICIAL COURT REPORTER

1    to Mr. John Doe, those documents contained information which

2    is highly, highly sensitive and if disseminated it is

3    discriminatively to a person that should not get the

4    information.

5            I think, it would put Mr. John Doe's safety at risk.

6    The likelihood of success is or is not present.  Again, if

7    Charmer Industies is being read correctly by me and, I think,

8    it is, I think, the burden with respect to whether or not

9    there is some need to maintain those documents or to keep them

10   should be shifted to you.  Until next week, okay.

11           I do not think we need any further hearing. You will

12   submit the briefs and I will make my determination. The TRO is

13   continued for another ten days.

14           Is there anything further?

15           MS. MOORE:  No, your Honor.

16           THE COURT:  Thank you.

17           MS. MOORE:  I do have one last application. With

18   respect to the transcript to have my client's name replaced

19   with John Doe.

20           THE COURT:  Yes.

21           MS. MOORE:  Thank you.

22                   * * * * * * *

23

24

25

---

HENRY SHAPIRO            OFFICIAL COURT REPORTER

**-'-**
'98 [1]   2:7

**-1-**
10017 [1]   1:20
101 [1]   1:15
10:30 [1]   1:10
1101 [1] 2:8
11:30 [1]   21:4
150 [1]   1:19

**-2-**
20 [1]   1:10
2009 [2] 25:7   25:13
2010 [1] 1:10
20788 [1]   25:17
2110 [1] 25:17
21st [1]   8:8
225 [1]   1:23
2d [1]   24:5

**-3-**
30010 [1]   25:13

**-4-**
42nd [1] 1:19
48 [1]   1:24
4:00 [1] 21:25

**-5-**
570 [1]   24:5

**-7-**
718-613-2509 [1]
1:24

**-9-**
95 [1]   3:23
98-1101 [1]   1:5

**-A-**
a.m [1]   1:10
able [2] 17:10   22:7
abouts [1]   24:5
absolute [1]   3:7
accept [1]   16:8
acceptable [1]   9:16
accepting [1]   5:11
according [1]   14:8
accuses [1]   5:15
acquired [1]   20:6
action [1]   20:9
additional [4] 3:13
6:19   6:21   16:15

Additionally [1]
3:22
address [1]   3:2
adjourn [1]   22:9
adjourning [1]   22:1
adjournment [1]
21:24   22:7
advise [1]   6:16
affecting [1]   8:25
affidavit [1]   5:4
18:17
again [2]   3:25
27:6
against [8]   5:8
5:12   16:5   20:10
23:14   25:3   25:9
25:16
agent [1]   3:19
ago [1]   18:5
agree [5] 9:8   9:11
13:3   13:6   26:8
agreement [7]   4:9
18:8   18:11   18:14
18:14   19:10   21:12
agreements [1] 17:13
ahead [3]   5:10
9:5   22:11
alarm [1]   24:6
allegation [2]   5:7
6:4
allegations [2]   5:12
6:3
allegedly [1]   9:19
allow [1]   10:25
along [2]   5:1
17:19
alternative [1]  13:24
alternatively [1]
5:20
altogether [1]   7:2
Amadao [1]   14:8
amendment [15]
3:1   3:4   3:7
3:9   3:21   4:12
4:21   6:9   6:21
13:22   14:3   16:15
21:1   21:2   21:14
America [1]   25:4
25:10
Amidao [1]   10:23
analogizing [1] 19:23
analogous [1]   21:9
analogy [1]   9:11
analysis [3]   3:4
6:21   16:15
annexed [1]   20:22
answer [3]   12:10
13:13   18:15
answering [1]   11:23
apologize [1]   12:21
apparent [1]   20:18
appeal [13]   7:2

7:4   7:10   7:12
7:14   7:17   7:19
7:24   8:4   8:11
8:18   8:20   9:2
appealable [2] 7:22
8:1   8:10
appear [1]   17:21
appearance [2] 3:1
14:25
APPEARANCES [1]
1:13
appearing [1]   10:6
appellate [1]   11:2
11:25
applicable [3]   20:12
21:2   21:15
application [12]
5:16   5:19   5:23
6:6   10:17   14:17
14:19   16:16   17:8
22:11   22:23   27:17
applies [1]   4:7
appropriate [1] 22:15
argue [1]   7:5
argued [2]   7:7
8:14
arguing [1]   6:15
argument [2]   1:11
21:14
arguments [6]   2:7
2:16   3:1   6:3
9:8   14:6
arranged [1]   5:1
arrived [1]   22:4
article [1]   16:1
articles [1]   3:11
assertion [1]   19:4
assistant [1]   17:1
assume [3]   12:7
17:18   18:13
assuming [1]   11:7
19:11
attorney [6]   3:12
3:25   17:2   18:9
18:9   24:13
Attorney's [1]   6:6
authority [2]   2:17
6:5
available [1]   12:6
12:18   14:23   17:7
17:24   18:3   18:14
20:10   21:12   21:12
23:14
Avenue [1]   1:15
await [1]   24:19
aware [3]   2:24
4:4   13:20

**-B-**
backwards [1]   5:21
bad [2] 20:20   20:21
balance [1]   24:8

bar [1]   4:21
Bartnicki [2]   9:10
9:12
based [1]   19:22
basis [2] 5:19   15:13
became [2]   7:7
21:12
becomes [1]   12:6
believes [1]   7:25
bend [1] 5:21
Bernstein [17]   5:4
9:23   15:16   15:19
18:17   18:21   18:23
19:14   19:14   19:15
19:19   19:20   19:23
20:2   20:3   20:7
20:14
better [1]   20:1
beyond [3]   6:5
15:9   18:6
bias [1]   5:21
big [1]   16:8
binding [3]   22:18
22:19   23:5
BOCKIUS [1]   1:14
bound [1]   17:21
breach [1]   16:21
Brian [2]   1:17
2:10
brief [6] 2:16   3:3
16:15   16:17   21:22
22:12
briefing [1]   24:20
briefs [3]   3:3
20:25   27:12
bring [1]   21:3
broke [1]   9:23
Brooklyn [2]   1:8
1:24
brought [1]   17:25
burden [4]   24:11
24:13   24:17   27:8
business [2]   2:23
15:25   16:6

**-C-**
cabinet [1]   19:12
Cadman [1]   1:23
Caldwell [2]   1:16
2:10
candid [1]   7:21
Candidly [1]   7:22
cannot [14]   9:18
9:23   9:19   10:23
11:1   11:3   11:3
13:20   14:5   15:13
16:4   16:5   16:10
18:18
care [2]  4:5   4:10
careful [1]   19:10
carefully [1]   23:17
case [33] 2:18   2:19

2:20   2:24   3:7
3:16   4:8   4:11
4:14   4:15   4:18
4:20   6:25   7:20
9:6   10:2   10:9
10:13   10:16   11:13
16:19   17:12   17:20
18:12   20:23   21:6
21:8   21:14   22:22
22:25   23:2   24:4
25:16
cases [5]   2:21
4:19   17:12   17:12
24:22
caused [1]   8:23
caution [1]   4:5
certainly [2]   4:9
21:18
certainty [1]   20:25
chance [1]   12:5
change [1]   20:2
Charmer [7]   12:25
13:2   13:12   21:18
23:16   24:10   27:7
check [1]   9:11
circuit [1]   24:4
citations [1]   25:2
cite [2]   24:22   25:7
cited [2] 4:19   9:7
City [1]   17:5
civil [3] 2:22   4:13
20:23
claiming [1]   5:3
claims [1]   4:15
clarification [2]
5:2   26:1
clear [3] 7:2   15:17
26:2
clearly [11]   3:17
3:23   4:16   5:9
5:16   5:17   8:17
9:12   18:15   23:2
26:13
clerk [5] 2:7   17:5
17:22   21:6   22:6
client [3]   4:17
5:12   26:12
client's [1]   4:14
5:10   19:5   27:18
clients [1]   5:6
coerce [1]   4:16
colleague [1]   6:13
comment [1]   6:13
commercial [1] 2:23
compelled [1]   4:5
compelling [2]   2:21
4:12
complaint [4]   3:24
4:14   16:3   20:22
completely [1]   5:19
computer [1]   2:1
concern [1]   18:1
18:4

concerned [3]   16:24
23:15   23:20

concerns [1]   13:5

conduct [3]   3:8
5:15   9:22

conducting [1]   14:2

conference [2]   22:2
22:10

confidential [1]
3:14   6:10

confidentiality [3]
13:4   21:10   21:11

connection [2]   5:5
12:22

consenting [1]   23:22

consideration [1]
17:17

constitutes [2]   14:1
14:12

constitutional [1]
15:11

constitutionally [1]
14:7

contacted [1]   5:3

contained [8]   2:16
2:17   4:15   6:3
6:18   19:3   23:12
27:1

content [1]   23:3

continue [1]   13:17

continued [2]   9:20
27:13

continuing [2]   8:19
8:25

conversion [2]   19:24
20:9

converted [2]   7:11
19:19

converter [1]   19:15

cooperation [7] 4:8
4:8   17:13   18:8
18:10   18:13   19:3

cooperators [2] 4:6
4:7

copies [6]   15:23
24:25   26:9   26:13
26:15   26:16

copy [2] 16:2   18:10

correct [4]   10:13
11:23   26:3   26:6

correctly [1]   27:7

course [2]   12:17
13:6

court [90]   1:1
1:23   2:24   3:1
3:2   3:5   4:2
4:3   4:12   5:15
5:18   5:20   6:4
6:19   6:22   7:1
7:9   7:13   7:18
7:21   7:24   8:3
8:14   8:16   8:18
9:4   9:12   9:20
10:1   10:3   10:4

10:7   10:11   10:15
10:17   10:22   10:25
11:2   11:6   11:10
11:14   11:22   11:25
12:3   12:4   12:14
12:22   13:2   13:10
13:11   13:13   13:18
13:23   14:1   14:17
14:17   14:19   15:4
15:9   15:19   16:12
16:16   16:21   16:25
17:22   17:24   18:1
18:25   19:22   21:7
22:18   22:23   23:4
24:1   24:24   25:1
25:5   25:8   25:11
25:13   25:14   25:14
25:20   25:22   26:3
26:11   26:17   26:22
27:16   27:20

Court's [1]   5:2

courthouse [3]   1:7
17:7   18:2

courts [1]   11:25

CR [1]   2:7

crazy [1]   6:15

created [1]   12:17

crime [1]   9:14

criminal [13]   2:7
4:14   12:12   12:14
12:17   13:8   13:9
16:2   16:3   16:20
17:12   17:16   19:6

crowded [1]   6:11

CV [1]   1:5

-D-

D [1]   25:6

Dairy [1]   24:4

danger [2]   4:20
6:10

David [2]   1:17
2:11

days [1] 27:13

dealing [1]   21:17

death [1]   2:25

decency [1]   6:5

decided [1]   18:13

decision [3]   2:18
2:19   25:18

declaration [5] 4:23
5:14   6:4   6:12
6:18

declared [1]   22:13

declined [1]   10:25

deemed [1]   7:11

Defendant [1]   1:18

demonstrate [1]
5:21

deprived [1]   10:21

deprives [1]   8:18

describe [1]   20:2

deserve [1]   3:20

desk [1]   19:12

despicable [1]   20:21

detailed [1]   3:4

deter [1] 9:22

determination [3]
8:15   22:14   27:12

Dicker [2]   1:19
2:13

dignify [1]   6:17

DiPietro [3]   25:3
25:9   25:11

directed [4]   15:24
17:11   17:20   17:22

directing [1]   17:19

disciplinary [1]
20:11

disclose [1]   14:14

disclosed [1]   23:3

disclosures [1]   9:15

discretion [1]   6:17

discriminatively [1]
27:3

discussion [1]   21:8

disingenuous [1]
19:5

dispute [1]   18:6

disseminate [1] 3:13

disseminated [1]
27:2

disseminating [1]
4:6   26:16

dissemination [1]
15:22

distributed [1]   12:12

district [15]   1:1
1:1   1:12   3:24
4:4   4:13   19:9
20:23   21:3   21:6
25:7   25:13   25:15
25:17   25:18

docket [1]   10:5
10:8   10:12   10:22
10:23   10:25   11:9
11:19   12:3   12:8
13:20   14:14   14:20
14:21   14:25   15:1
15:6   15:7   17:1
17:4   22:21

dockets [2]   14:21

document [27]   8:15
8:24   12:5   12:11
12:16   13:4   13:7
14:20   15:15   16:20
16:25   17:8   17:8
17:9   17:23   18:3
18:8   18:11   19:7
19:16   21:23   22:4
22:6   22:24   23:12
24:13   24:16

documents [37]   2:22
3:16   3:20   3:23
4:1   5:5   6:7
6:10   10:15   11:4
14:16   18:6   18:16

18:21   18:24   19:1
19:2   19:3   19:11
19:13   19:13   19:15
19:16   20:1   20:6
20:8   20:12   20:17
20:17   20:22   21:11
26:4   26:5   26:9
26:12   27:1   27:9

Doe [12]   1:5   2:8
2:11   17:12   18:7
18:10   18:13   18:16
18:21   19:20   27:1
27:19

Doe's [2]   19:12
27:5

doesn't [4]   3:20
4:11   12:16   26:15

done [3] 20:20   20:21
26:19

doubt [1]   21:18

down [1]   21:3

dual [1] 14:25

dubious [1]   4:25

due [1]   23:8

-E-

E [1]   25:6

East [2]   1:19   1:23

Eastern [2]   1:1
25:18

ECF [1] 22:22

ECF'd [1]   21:23

economic [1]   2:23

Edelman [1]   1:18
2:13

effect [3]   8:21
15:20   23:5

efficacy [1]   12:7

either [1]   5:18
17:14

electronic [4]   4:4
15:23   19:8   26:13

Elser [2] 1:18   2:12

embarrass [1]   4:16

encountered [1]
8:5

end [1]   16:9

ends [1] 9:17

enforce [1]   16:4

enforcement [1]
15:24

engaged [1]   4:25

engaging [1]   5:25

enjoined [1]   24:18

entire [1]   15:5
15:8

entitled [1]   26:9

entity [1]   2:23

entries [1]   14:22

entry [1] 12:3

envelopes [1]   22:17

ESQ [6]   1:16   1:16

1:17   1:17   1:20
1:21

establish [1]   24:15

established [1]   8:17

ethical [2]   3:13
20:15

eve [1]   21:25

event [3]   7:15
8:23   18:25

events [1]   19:23
20:3

eventually [1]   17:3

evidence [1]   8:12

evident [1]   3:23

evolved [1]   17:3

example [1]   15:25

except [3]   17:24
22:18   23:3

Excuse [2]   10:11
11:6

exercise [1]   4:5
8:25

exercised [1]   4:10

exhibits [1]   26:11

-F-

faced [1]   23:9

factly [1]   11:18

facts [3] 2:20   3:7
4:20

failed [1]   14:14

Failing [1]   14:11

fairly [1]   8:14

far [5]   10:6   18:17
23:11   23:15   23:20

favor [1]   24:8

favorable [2]   5:11
5:22

FAX'D [1]   21:23

federal [1]   6:5

Fifth [1] 16:15

fight [1] 16:9

file [24]   7:17   7:24
10:1   10:7   10:17
11:10   12:1   12:6
12:9   13:10   13:11
13:23   15:8   16:16
16:25   17:10   17:11
17:20   17:23   18:2
18:12   21:3   23:3
25:13

filed [5] 4:23   8:20
22:22   23:1   23:2

files [6] 6:7   17:6
17:16

filing [5]   4:5
7:14   8:18   17:2
19:8

final [1] 8:15

Finally [1]   4:18

finding [2]   13:21
13:24

**findings** [3]   10:20
14:9   14:11
**fire** [1]   6:11
**first** [19] 3:1   3:4
3:6   3:9   3:20
4:12   4:20   6:9
6:21   8:8   9:9
12:8   13:22   14:3
16:25   17:25   20:25
21:1   21:14
**five** [1]   14:21
**follow** [1]   12:16
**follows** [1]   9:14
**form** [1] 26:18
**formal** [1]   7:5
**former** [1]   6:13
**four** [2]   14:21   21:24
**frank** [1]   8:4
**Frankly** [1]   7:20
**Frederick** [1]   2:13
**free** [6]   7:23   9:25
12:5   12:7   12:11
26:16
**Friday** [1]   4:24
**fundamental** [2]
13:22   19:23

**-G-**

**gag** [5]   15:13   15:24
16:4   16:5   16:5
**gagged** [1]   15:14
**gap** [1]   7:6
**gathering** [1]   3:10
**General** [1]   24:14
**Generics** [1]   25:17
**given** [5]   10:7
10:10   10:24   19:19
23:9
**GLASSER** [1]   1:12
**Glen** [1] 25:16
**goes** [1]   15:9
**gold** [1] 19:17
**granted** [3]   14:1
16:10   16:16
**granting** [1]   13:25
**greater** [4]   3:20
4:10   6:9   6:17
**guilty** [1]   9:13
**guy** [2]   16:7   16:8

**-H-**

**H.B** [1]   24:4
**hands** [1]   19:1
**happy** [1]   21:5
**harass** [1]   4:16
**hard** [2] 6:2   26:13
**hardships** [1]   24:8
**harm** [4] 2:23   2:25
24:6   26:25
**Hartford** [1]   10:4

**11:1**   11:13
**hear** [1]   6:23
**hearing** [6]   9:10
11:12   18:5   21:25
22:2   27:11
**held** [3]   10:23   11:25
18:5
**Henry** [1]   1:23
**Herman** [2]   1:17
2:11
**highly** [2]   27:2
27:2
**himself** [1]   3:21
**hold** [1]   9:20
**honor** [31]   2:15
6:24   7:20   8:8
8:12   9:6   9:9
9:10   10:1   10:5
10:20   11:4   11:17
13:6   13:14   13:25
14:5   14:6   14:14
14:25   15:3   15:5
15:9   15:15   15:22
16:4   16:11   16:13
25:21   25:25   27:15
**HONORABLE** [1]
1:12
**Hood** [1]   24:5
**hours** [1]   22:1
**human** [1]   4:20
6:8

**-I-**

**ignore** [1]   12:5
**ignored** [1]   23:4
**illegality** [1]   9:16
**imminent** [1]   26:25
**imposition** [2]   4:21
**improper** [1]   15:3
15:4
**improperly** [2]   18:23
20:13
**inappropriately** [1]
13:11
**inapt** [1] 19:11
**incorporates** [1]
14:6
**independent** [2]
9:25   14:8
**indicate** [1]   10:6
**indicated** [7]   11:18
14:20   15:6   15:20
22:10   26:17   26:24
**indicates** [2]   23:2
23:18
**indication** [2]   17:4
17:7
**indictment** [1]   17:3
**individual** [1]   2:25
**Industies** [1]   27:7
**Industries** [2]   12:25
13:3
**inference** [1]   18:22

**information** [11]
3:14   4:6   4:14
9:19   9:21   17:2
19:3   19:8   23:13
27:1   27:4
**informed** [1]   17:22
**informs** [1]   22:20
**infringed** [1]   14:4
**initial** [1]   7:6
**injunction** [7]   7:6
7:8   7:12   7:16
8:9   15:12   16:10
**injunctions** [1]   23:15
**injunctive** [5]   8:21
22:16   23:19   24:2
24:12
**innocent** [1]   20:5
**inquiry** [1]   14:2
**insufficient** [1] 14:8
**integrity** [1]   16:24
**intended** [4]   4:11
5:9   5:17   22:19
**intent** [1]   26:14
**intentional** [1]   5:1
**interceptor** [1] 9:13
**interest** [8]   4:12
6:7   9:15   12:12
12:13   12:15   12:18
13:22   17:14   17:14
17:15
**interesting** [3]   21:8
23:7   23:16
**interests** [1]   5:10
**interruption** [1] 12:21
**intimidate** [1]   4:16
**invalid** [1]   11:11
**invalidity** [1]   11:15
**involved** [4]   2:21
2:22   9:16   21:9
**involves** [1]   2:24
**involving** [1]   4:19
**irreparable** [3]   24:6
24:6   26:25
**issuance** [1]   23:21
**issue** [9] 3:16   5:21
8:23   13:15   21:1
23:9   23:10   24:13
26:20
**issued** [4]   7:16
23:1   23:23   24:3
**issues** [2]   22:15
24:7
**issuing** [1]   26:21
26:23
**item** [1] 19:18
**items** [1]   15:1
15:6
**itself** [6] 5:19   7:22
9:3   14:1   14:5
14:10

**-J-**

**J** [1]   1:21
**Jackson** [1]   24:4
**John** [14]   1:5
2:8   2:11   17:12
18:7   18:10   18:13
18:16   18:20   19:12
19:20   27:1   27:5
27:19
**Jones** [1]   26:14
**Jones'** [1]   2:18
**judge** [11]   1:12
2:18   2:19   6:6
21:2   21:7   21:15
22:16   23:7   24:10
26:14
**July** [1]   1:10
**June** [1]   8:8
**jurisdiction** [3] 8:19
8:25   13:15

**-K-**

**Kahn** [3]   21:3
21:7   21:15
**Kansas** [1]   17:5
**Kearse** [1]   24:10
**keep** [2] 26:9   27:9
**Kelly** [1]   1:16
2:10
**Kennedy** [1]   23:8
**kind** [1] 7:13
**knew** [8]   3:18
3:22   3:25   4:1
19:2   20:13   23:12
23:16
**knowledge** [2]   8:6
22:25
**known** [1]   20:13

**-L-**

**lack** [1]   5:21
**lapsed** [1]   7:7
**larceny** [1]   19:24
**last** [7]   3:1   4:24
21:24   25:22   25:25
26:4   27:17
**LAUREN** [1]   1:21
**law** [6]   6:25   7:20
8:17   9:6   9:23
20:19   21:6   22:6
**law-abiding** [1] 19:21
**lawfully** [1]   9:15
**lawyer** [1]   19:6
**lawyers** [1]   5:5
**leading** [1]   24:4
**least** [2] 13:24   26:4
**leave** [3] 15:13   23:24
24:1
**leaves** [1]   21:18
**left** [1] 10:2
**legal** [1] 19:16
**legitimate** [1]   18:22

**J** [1]   1:21
**LEO** [1] 1:12
**Lerner** [44]   1:20
2:12   2:12   6:23
6:24   7:4   7:11
7:16   7:20   7:22
8:2   8:8   8:16
9:2   9:6   10:14
10:19   11:13   11:14
11:17   11:22   11:24
12:8   12:20   12:21
13:1   13:6   13:19
14:18   14:24   15:5
19:20   23:7   23:17
23:25   24:21   24:22
24:25   25:3   25:6
25:9   25:12   25:15
26:21
**Lerner's** [4]   21:23
25:22   25:25   26:4
**Leslie** [1]   1:16
2:10
**letter** [2] 22:7   26:10
**LEWIS** [1]   1:14
**Lexus** [1]   25:7
25:13   25:17
**life** [3]   4:20   6:8
6:9
**light** [1] 25:25
**likelihood** [1]   24:6
24:6   27:6
**limitation** [1]   7:19
**line** [1]   17:19
**lines** [1] 5:3
**litigants** [1]   5:25
**litigation** [2]   24:2
4:25   5:17   5:24
**LLP** [2]   1:14   1:19
**local** [1] 21:25
**longer** [1]   17:6
**look** [1] 21:25
**looked** [1]   22:4
**looking** [1]   11:9
22:21   22:21

**-M-**

**M** [1]   2:13
**magistrate** [2]   25:18
25:19
**maintain** [1]   27:9
**maintained** [1] 26:13
**makes** [2]   5:15
18:5
**man** [1] 6:16
**man's** [1]   6:9
**Mann** [1]   25:19
**marked** [1]   26:11
**matter** [7]   8:19
9:1   11:18   12:15
12:17   12:23   16:3
**matters** [1]   17:14
**may** [23] 8:6   8:17
11:22   12:10   13:17
15:17   17:15   17:16

17:19   18:12   18:23
18:23   20:9    20:10
20:11   20:13   20:15
22:14   23:8    23:13
23:13   24:10   24:10
mean [1]            7:9
meaningless [1]
23:5
means [4]           9:14
9:17   13:14   15:7
meant [2]           4:1
19:7
meantime [1]        3:6
mechanical [1] 2:1
media [1]           3:10
mentioned [1]  4:18
merely [2]          7:8
9:18
meritless [3]       5:7
5:19   5:23
merits [2]          24:7
24:8
might [2]           20:12
21:16
mine [1] 6:13
minute [1]          11:6
misconduct [1] 5:7
misdirected [1] 9:11
misinterpretation
5:1
moment [4]          17:18
22:14   23:24   24:1
Moore [13]          7:6
2:10   2:10    2:15
16:13  22:5    23:18
25:21  25:25   26:7
27:15  27:17   27:21
Moore's [1]         14:6
moot [1] 26:5
Moreover [1]    3:16
MORGAN [1]    1:14
morning [3]     21:23
22:4   22:9
Moskowitz [2]  1:18
2:13
movant [2]          24:9
24:18
Ms [44]        2:10   2:12
2:15   6:24    7:4
7:11   7:16    7:20
7:22   8:2     8:8
9:2    9:6     10:14
10:19  11:13   11:17
11:24  12:8    12:21
13:1   13:6    13:19
14:6   14:18   14:24
15:5   16:13   19:20
22:5   23:18   23:25
24:22  24:25   25:6
25:9   25:12   25:15
25:21  25:25   26:7
27:15  27:17   27:21
must [3] 10:4   14:8
14:10

-N-
N [2]     1:15   1:20
name [2]            21:4
27:18
names [2]           2:9
25:8
national [2]        6:8
17:14
necessary [1]  25:24
need [3] 24:15  27:9
27:11
neither [1]         9:4
16:8
never [1]           8:4
nevertheless [1]
5:8
New [6]  1:1    1:8
1:15   1:20    1:24
25:18
news [1] 3:10
newspaper [2]  21:13
21:13
next [1] 27:10
night [1] 21:24
non-law-abiding [1]
9:22
nor [3]  9:4    17:10
18:17
normally [3]    23:17
23:18  24:2
Northern [1]    21:6
note [4] 3:6    4:24
10:9   16:14
noted [1]           16:1
nothing [6]         10:5
11:5   13:19   13:21
13:23  15:22
notice [18]         7:2
7:4    7:9     7:14
7:17   7:18    7:24
8:4    8:10    8:18
8:20   9:2     10:16
10:10  10:24   22:1
22:20  22:21
notification [1] 17:1
now [9] 6:24    9:7
9:10   13:25   14:5
15:17  19:11   26:5
26:20
nullity [1]         14:10
number [3]          4:25
16:18  17:4
numbered [1]   14:21
Nycomeds [1]  25:16

-O-
O [1]     25:6
o'clock [2]         1:10
21:25
Oberlander [26] 2:14
3:12   3:17    3:25
4:9    5:14    6:4

9:24   9:25    12:9
15:20  15:25   16:5
19:1   19:2    19:25
20:1   20:4    20:5
20:8   20:9    20:10
20:12  20:16   23:14
26:17
Oberlander's [6]
4:23   6:12    7:2
7:23   15:11   23:11
objection [1]   23:21
obligations [1] 3:13
observation [1] 23:16
obtain [1]          10:15
17:5
obtained [8]        9:15
13:14  15:16   15:18
17:5   18:23   20:14
23:19
obviously [1]   23:10
occasion [1]    16:23
occurs [1]          7:15
office [1]           6:6
once [2] 3:25   6:16
one [9]  5:18   9:16
12:24  17:4    17:15
20:18  22:16   22:25
27:17
onto [2] 19:24  20:14
opinion [1]         21:2
opportunity [7] 3:3
4:13   6:24    10:8
10:21  21:21   21:22
oral [2] 1:11   2:7
order [54]          4:2
4:3    5:2     7:25
9:22   10:3    10:4
10:5   10:15   10:18
10:19  11:7    11:7
11:8   11:10   11:11
11:16  11:20   11:21
12:1   12:3    12:4
12:5   12:7    12:9
13:13  13:16   13:21
13:21  14:5    14:10
14:11  15:10   15:12
15:13  15:24   16:4
16:19  17:10   17:18
17:20  17:21   17:24
17:25  18:15   18:25
20:23  21:10   22:16
22:18  23:1    23:4
26:18  26:19
ordered [3]         8:10
14:5   26:14
organization [1]
3:10
original [3]        15:15
16:19  26:12
originals [4]   15:18
15:21  16:10   26:15
ostensibly [1]  20:19
outlined [1]    22:16
overriding [1]  24:15
own [2] 5:10    17:15

-P-
P [1]     25:6
paper [1]           19:17
papers [3]          6:20
9:7    16:1
paragraph [1]   3:23
parcel [1]          10:16
Park [1] 1:15
Parker [1]          25:16
part [4] 6:17   10:16
18:12  21:10
particular [1]  5:17
particularly [3] 12:19
19:8   20:18
parties [2]         18:3
25:8
passed [1]          20:14
passion [1]     12:22
past [1] 19:24
people [1]          6:15
per [1]  12:13
percentage [1]  6:15
perfect [1]         18:9
18:11  19:12
perfectly [1]   7:21
perhaps [2]         9:7
9:10   20:13   20:21
period [2]          7:7
7:19
permanent [7]  7:6
7:8    7:12    7:16
8:9    15:12   16:9
person [9]          12:4
12:6   12:6    20:18
22:19  24:11   24:14
24:18  27:3
persuasive [1]  21:17
pertained [1]   18:12
Petitioner [1]  25:12
phone [1]           9:13
photocopies [1] 15:23
physical [1]    2:25
piece [1] 19:17
plain [1] 18:6
plaintiff [1]   1:14
25:11
Plaza [1]           1:23
position [2]    8:13
26:8
possess [1]     4:21
possession [3]  3:15
18:9   24:15
possessor [1]   9:21
possible [1]    2:22
possibly [1]    7:6
potential [3]   2:24
4:19   21:10
precluded [1]   20:16
preferred [1]   22:11

premature [1]   7:13
premise [1]         13:7
preposterous [1]
19:7
prerequisites [1]
24:3
present [1]         27:6
presentence [5] 13:3
21:17  21:19   24:12
24:14
preserve [1]    7:19
presume [4]         9:7
10:23  11:3    12:1
presumption [6]
11:1   11:3    11:7
11:11  11:15   11:24
presumptively [1]
23:5
prevents [1]    7:14
previous [1]    5:7
principle [2]   19:24
20:15
private [1]         3:14
procedure [2]   22:19
22:20
proceeding [8]  4:25
11:21  12:12   12:14
12:17  13:9    26:5
26:11
Proceedings [1]
2:1
process [1]         8:6
processes [1]   16:21
produced [1]    2:1
proffer [1]     18:14
properly [5]    8:1
10:10  11:4    14:16
18:7
property [1]    20:3
protecting [1]  6:8
protection [3]  3:9
3:20   3:21
protective [5]  7:4
7:8    7:9     7:18
8:3
PSR [2]  8:9    26:1
public [6]          9:15
12:12  12:13   12:15
12:18  12:18
publicly [1]    4:8
publish [1]     3:11
publishing [1]  6:10
pull [1] 5:20
punches [1]     5:20
punish [2]          9:18
9:23
punishing [1]   9:14
purchaser [1]   20:5
purpose [4]     7:18
13:8   18:18   22:10
purposes [1]    22:1
pursuant [2]    4:2

4:3
put [3]    5:10    6:9
27:5

**-Q-**

questionable [1]
8:22
questions [1]   6:19
quite [6] 7:3      9:12
9:19    21:16   23:10
23:10
quoting [1]      23:8

**-R-**

R [3]       1:16    1:23
25:6
raised [1]        23:21
rants [1] 6:18
RE [1]     1:5
read [7] 6:25     9:6
9:10   12:25  13:2
23:16   27:7
reading [1]        22:3
really [1]       6:14
reason        8:16
reasonable [2]   20:18
24:7
reasoning [1]   21:16
reasons [3]      14:7
21:16   26:23
received [2]     21:22
22:6
receives [1]      9:18
receiving [1]     3:19
record [8]        2:9
11:5    11:17   13:19
13:23   15:17  16:24
18:20
recorded [1]      2:1
recusal [1]       5:16
recuse [1]        5:18
referring [1]     11:13
refers [1]        8:11
refused [1]       20:9
relief [9]        2:15
4:22    8:22    15:9
22:14   23:15  23:19
24:2    24:12
rely [1]  2:16
remarkable [2]  9:19
19:5
reminded [1]      6:13
removed [1]       18:7
render [1]        8:14
renders [1]       14:12
renewed [1]      23:23
replaced [1]     27:18
report [13]      13:3
21:17   21:19  24:12
24:14
reporter [2]      1:23

21:13
representation [1]
15:19
represented [1] 3:17
representing [1]
5:6
request [3]      12:18
17:9    21:24
requested [2]    14:15
14:18
requests [1]     20:7
require [1]      22:1
required [2]     23:18
23:19
requisite [2]    10:20
14:11
rereading [1]     6:12
reserve [1]       7:5
9:3
resolve [1]      26:20
respect [12]      2:15
2:25    4:6     4:23
7:25    8:19    8:21
16:22   23:8    26:1
27:8    27:18
respond [4]      16:12
22:7    22:8    23:25
respondent [3]   2:13
3:8     3:22
respondent's [2]
3:8     14:3
respondents [5] 3:9
4:19    4:24    5:22
5:25
responding [2]   6:2
25:22
response [1]      6:18
rest [1]  6:20
restrains [1]     7:23
restraint [5]
14:2    14:12   14:13
13:15
restrictive [1]  13:24
return [2]       13:13
20:8
returned [3]      8:10
15:15   26:10
revealed [1]     18:17
review [2]        4:13
5:5
rewarded [1]      6:1
Richard [1]      1:20
2:12
RICO [1]  4:13
right [7] 6:9     7:5
18:10   18:11   19:13
19:16   20:1
rights [6]        7:23
9:3     9:25    14:3
15:11   20:3
ring [1]  19:18
rise [1]  18:22
risk [2]  17:16   27:5

ROCKLIN [1]     1:21
rule [2]  4:7     20:11
rules [2] 4:5     22:1
ruling [1]        5:22

**-S-**

safety [2]       17:15
27:5
saw [1]   22:10
says [7] 10:4     10:18
11:2    11:4    14:6
22:17   26:4
schedule [1]     22:2
se [1]    12:13
seal [8]  4:1     6:7
10:13   17:9    22:22
22:23   23:1    23:2
sealed [31]       2:21
3:23    4:2     4:9
6:10    10:10   11:4
11:10   11:10   11:19
12:4    12:8    13:9
14:16   14:22   15:2
15:5    15:7    15:8
15:8    16:2    17:11
17:16   17:20   17:23
18:3    19:2    19:7
22:22   23:3    23:12
sealing [1]      10:1
10:7    10:18   10:19
11:5    13:21   13:23
22:17
second [2]       14:25
25:16
secret [1]        3:14
security [2]      6:8
17:14
see [7]   10:8    10:22
10:24   10:25   11:20
12:9    13:20
seek [4]  2:16    15:12
15:13   26:1
seeking [5]       3:10
4:22    5:2     24:11
24:18
selective [1]    15:23
15:24
selectively [1]  16:4
sense [1]        21:9
23:22
sensitive [1]    23:13
27:2
sensitivity [1]  20:17
serious [1]      18:1
19:3
served [1]       13:22
serving [2]      9:17
18:19
settlement [2]    5:11
21:10
shall [1] 7:17
Shapiro [1]      1:23
sheet [13]        10:5
10:9    10:22   10:25

11:1    11:9    13:20
14:15   14:20   14:25
15:1    17:1    22:21
shifted [1]      27:10
shipped [1]       17:6
shortly [1]      22:5
shouted [1]       6:11
show [6] 14:11    15:10
15:12   16:19   17:25
24:5
side [1]  24:17
sign [1]  10:5
signed [1]       10:2
10:19   11:8    11:12
11:19   11:20   11:20
12:1    14:5    17:10
17:18   22:16
significant [4]  16:21
17:15   17:17   18:4
simply [1]        4:21
sit [1]   16:8
six [1]   15:1    15:7
Snider [1]        1:17
2:11
someone [1]       9:18
somewhere [1]   17:19
sorry [1] 25:5
sort [1]  16:14
sought [2]       15:10
21:12
Southern [6]      3:24
4:4     4:13    19:9
20:22   25:15
speak [1]         9:25
special [1]      21:19
specific [2]     13:4
23:9
specifically [3] 2:18
3:2     24:3
specious [1]     9:9
speech [3]       7:23
9:20    14:2
stage [1] 13:23
State [1] 2:9
states [13]       1:1
1:7     1:12    2:8
6:6     9:20    10:22
11:25   16:2    17:2
25:3    25:9    26:10
status [1]       21:19
stenography [1]
2:1
stipulation [1]  21:11
stolen [8]        3:17
3:18    3:19    6:10
9:19    13:10   13:10
18:23
stop [2]  13:15   15:22
Street [1]        1:19
submission [2]  25:23
26:1    26:4
submissions [1]
25:23

submit [8]        10:1
20:25   21:21   24:21
24:24   25:1    25:1
27:12
submitted [1]    18:17
subpoena [1]     18:19
subsequent [1]   17:8
success [2]       24:7
27:6
such [4]  3:12    5:23
15:13   17:12
supplement [2]   3:3
6:20    16:14
supplemental [2]
16:17   21:21   22:12
support [3]       3:8
4:11    14:9
supports [1]      4:15
suppressed [1]   9:21
Supreme [2]      9:20
10:22   11:25
surrendered [1] 26:6

**-T-**

T [1]     25:6
tactics [2]       5:1
5:24
tangible [1]     19:16
19:18
tells [1] 22:6
ten [1]   27:13
terms [1]        20:3
testified [1]    18:18
testify [1]      4:7
19:21
testimony [5]    18:16
18:20   19:4    19:19
19:22
Thank [3]        16:11
27:16   27:21
theatre [1]       6:11
themselves [1]   4:1
therefore [1]    10:9
11:3    12:9
therein [3]       2:16
2:17    6:18
thief [3] 3:17    3:19
3:21
third [1] 18:3
third-party [4]  9:22
18:14   22:18   22:20
thirteen [1]     15:1
15:6
thought [2]      6:2
21:4
three [1] 24:3
throughout [1]   4:24
tipping [1]      24:8
title [6] 19:15   20:3
20:4    20:4    20:6
20:7
town [1] 21:5

**trained** [1]  20:19
**transcript** [3]  1:11
  2:1  27:18
**trial** [1]  13:9
**TRO** [14]  7:6
  7:7  7:11  7:22
  13:25  14:1  14:10
  23:20  23:21  23:23
  24:2  26:21  26:23
  27:12
**troubled** [1]  22:15
**troublesome** [4]
  16:18  16:20  23:10
  23:11
**true** [2]  12:14  12:19
**turn** [1]  13:25
**turned** [1]  26:6
**turns** [1] 16:25
**two** [2]  5:18  24:22

**-U-**

**U.S** [2]  25:7  25:17
**unauthorized** [1]
  13:11
**unconstitutional** [5]
  5:15  10:2  10:21
  11:21  14:13
**under** [7]  4:20
  10:13  22:22  22:22
  22:23  23:1  23:2
**understand** [5]  7:3
  8:3  8:7  12:22
  26:8
**understood** [1]  22:13
**unethical** [1]  5:10
**United** [11]  1:1
  1:7  1:12  2:8
  6:6  9:20  10:22
  11:25  17:1  25:3
  25:9
**unlike** [1]  4:18
**unpleasant** [1]  5:12
**unseal** [3]  10:17
  14:19  22:23
**unsealed** [4]  4:3
  14:22  18:2  22:17
**unsealing** [2]  17:24
  25:12
**unsupported** [1]
  5:23
**upstate** [1]  21:13
**used** [4]  4:16  6:13
  9:9  13:8
**using** [1]  20:16

**-V-**

**vain** [1]  5:16
**valor** [1] 6:17
**value** [1]  20:6
**variety** [2]  17:13
  21:16
**versions** [1]  26:12

**versus** [2]  2:8
  24:4
**violated** [3]  18:15
  18:25  20:24
**violation** [1]  15:11
**virtue** [1]  17:13
**vis-a-vis** [1]  8:9
**Visa** [3]  2:18  2:21
  26:14

**-W-**

**walked** [1]  6:11
**wanting** [1]  8:7
**wants** [1]  12:11
**website** [1]  16:1
**week** [4] 15:25  16:6
  25:20  27:10
**weeks** [1]  18:5
**Weinstein's** [1]2:19
**Western** [1]  21:3
**wherever** [1]  17:6
**whole** [1]  26:5
**Wilson** [2]  1:18
  2:12
**wise** [1]  6:16
**withdrawn** [2]  5:8
  5:13
**without** [3]  5:2
  11:20  14:2
**wonder** [1]  8:24
**word** [1] 9:9
**words** [2]  19:4
  19:5
**write** [1] 3:11
**writing** [1]  26:20
**wrongfully** [1]  19:14

**-X-**

**X** [2]  1:2  1:10

**-Y-**

**Y** [2]  1:15  1:20
**yet** [3]  7:5  15:6
  15:8
**York** [6] 1:1  1:8
  1:15  1:20  1:24
  25:19

**-Z-**

**Zyprexa** [2]  2:19
  2:21