RECEIVED
6/8/10
Chambers of
I. Leo Glasser
U.S.D.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,

                Plaintiff,

- against -

FELIX SATER,

                Defendant.
------------------------------------------------------------ x

**Notice of Cross-Motion**

**98 CR 1101 (ILG)**

**<u>FILED UNDER SEAL</u>**

**Please take notice** that upon the attached declaration of Thomas W. Hyland, affirmed on **June 7, 2010** and upon the attached declaration of Fred M. Oberlander, affirmed **on June 7, 2010**, non-party Fred M. Oberlander will move this court, before I Leo Glasser, U.S.D.J., in Room 8B South United States Courthouse, located at 225 Cadman Plaza East, Brooklyn, NY 11201, , on the 8th day of June, 2010 at 9: 30 a.m. or as soon thereafter as counsel can be heard, for an order granting Oberlander leave to contact the third-person who gave him the documents at issue herein, together with such other and further relief as this Court deems just and proper.

Dated:     New York, New York
               June 7, 2010

                                            Respectfully submitted,

                                            WILSON, ELSER, MOSKOWITZ,
                                            EDELMAN & DICKER LLP

                               By: _____
                                            Thomas W. Hyland
                                            *Attorneys for Fred M. Oberlander*
                                            150 East 42nd Street
                                            New York, New York 10017
                                            (212) 490-3000
                                            07765.00155

To:    Kelly Moore, Esq.
        Morgan, Lewis & Bockius LLP
        101 Park Avenue
        New York, NY 10178-0060
        212.309.6000

4021332.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
UNITED STATES OF AMERICA,  :  98 CR 1101 (ILG)

        Plaintiff,  **FILED UNDER SEAL**

  - against -  :

FELIX SATER,  :  **Declaration of Thomas W. Hyland in Support of Cross-Motion and in Opposition to Main Motion**

        Defendant.

---------------------------------------------------------- x

FREDERICK M. OBERLANDER, ESQ.,

        Non-Party Respondent.

---------------------------------------------------------- x

I, Thomas W. Hyland, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.    I am a member of the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, counsel for attorney Frederick M. Oberlander, Esq. This declaration and the exhibits hereto are filed under seal. I make this declaration based upon my review of the file maintained for the defense of Oberlander. However, my file does not include the documents at issue on this motion. Pending a ruling on this order to show cause, I have directed Oberlander to maintain the status quo, and show the documents to no one, not even me or anyone in my law firm.

2.    I submit this declaration in opposition to order to show cause brought by defendant Felix Sater. Sater seeks the following relief:

    a)    As per the OTSC, the immediate return of certain purportedly protected materials.
    b)    As per the OTSC, an inquiry into how certain persons acquired the purportedly protected materials, and to whom they were distributed.
    c)    As per the OTSC, a temporary restraining order against further dissemination.
    d)    Apart from the relief sought in the OTSC, defendant Sater's memorandum seeks costs and attorney's fees.

4020238.2

3. I also submit this declaration in support of the affirmative relief sought by cross-motion, by which Oberlander requests leave of the court to contact the client who gave him the documents at issue, who – it is expected – would avow by affidavit how he obtained the documents and from whom, and that they were not obtained from a sealed court file.

4. The following exhibits are submitted herewith:

| | |
|---|---|
| Exhibit "A" | Declaration of Frederick M. Oberlander, Esq. |
| Exhibit "B" | Complaint in matter of *Kriss v. Bayrock*. |
| Exhibit "C" | Excerpts of deposition of Joshua Bernstein, dated March 8, 2010 (Bernstein v. Bayrock Group, LLC, Supreme Court, Westchester County, Index No. 02579/09). |

5. The relief sought by Sater should be denied in all respects. However, should this court find a colorable argument in defendant Sater's favor, the issue should be resolved by United States District Judge Naomi Reice Buchwald, S.D.N.Y., in the context of the ordinary discovery process in the underlying civil RICO matter of *Jody Kriss, et al. v. Bayrock Group LLC, et al.*, S.D.N.Y. Docket No. 10-cv-3959. We respectfully submit, however, that there is absolutely no colorable argument in Sater's favor. This is so because the only thing that has been sealed is the court's own file. The documents at issue did not come from the court file. Oberlander did not obtain them improperly.

-- *Summary of the allegations in the complaint against Sater in Kriss v. Bayrock.*

6. In behalf of Jody Kriss and others, Oberlander has instituted a derivative action in the United States District Court for the Southern District of New York against Sater, *et al.* The action sounds in fraud, tax evasion, money laundering, embezzlement, breach of fiduciary duty, and, importantly, substantive and conspiracy violations of RICO. Significant in the schemes and conspiracies is that Sater was – as alleged – the majority owner of the Bayrock Organization,

4020238.2

though he hid his ownership, *inter alia*, (a) to avoid millions of dollars of personal tax liability; (b) to launder money; and (c) to hold out to this very court that he had no income and no assets.



-- *Sater's motion must be denied, because he has failed to make a prima facie showing of entitlement to relief.*

8. The court will note that Sater's OTSC contains no affidavit from Sater himself. He does not state that Oberlander – or indeed anyone – obtained these documents in violation of any sealing order, or for that matter that Oberlander – or indeed anyone – obtained them from the court. And in fact Oberlander did not get them from the court file.

9. Moreover, Sater does not state that he never gave his personal copies of the documents to any third person. In fact, it appears that his counsel concedes that he kept copies of the documents at Bayrock, and since it is apparently his position that he had no ownership in the Bayrock Organization, it is not quite clear what expectation of privacy he maintained by keeping them at the Bayrock offices. In any event, since Sater failed to avow that he did not give out

4020238.2

copies, and since he failed to avow that he protected his copies, he has failed to eliminate the possibility that he himself released the documents into the world, without preserving their purportedly protected status.

10. By his failure to state that Oberlander obtained the documents from the court files and by his failure to rule out these obvious scenarios – *a fortiori* by his failure to state either – Sater has failed to make a *prima facie* showing of entitlement to any relief whatsoever; thus, this court should summarily deny the order to show cause.

11. Even if this court is not inclined to deny the motion summarily, the first inquiry must focus on Sater, not Oberlander. This is to say, before this court conducts any inquiry into how Oberlander obtained the documents, it must be established whether Sater ever gave them to anyone else (other than perhaps his own attorney) or otherwise made them – or any purportedly protected information contained in them – available. If he answers *Yes*, then the court need not go any further. See, *e.g.*, *Bradley v. C.I.R.*, 2006 WL 3780767 (2d Cir. 2006) (holding that the privilege of attorney-client communications is waived when the documents are disclosed to an accountant); *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) (holding that disclosure of attorney-client communications in an extra-judicial setting constitutes waiver of the privilege in all court proceedings). So if Sater himself disclosed or failed to protect the documents or the information in them then he has forsaken any privilege that may have attached to them and no further inquiry is warranted about how Oberlander obtained them.

12. Conversely, further inquiry might be warranted only if Sater will avow, under penalty of perjury, that he has never given the documents or the information to anyone or allowed them to become known.

4020238.2

13. There is good cause to believe that Sater failed to maintain the privilege that may attach to his own documents. Joshua Bernstein testified in the matter of *Bernstein v. Bayrock* at pages 194-195 that "at the direction of Felix Sater I downloaded regularly files from [the] hard drive and the server [of the Bayrock computers]." Felix further directed Bernstein "to keep …offsite, an archival copy [of] as much of the server as [he] could." (Excerpts of the deposition are included as an exhibit hereto).

14. If Sater was not an owner of the Bayrock organization, then any personal privilege was, at least arguably, shattered if he put these documents on the company's computer and when he directed that all documents, including the ones at issue, be accessed by Bernstein and saved offsite at Bernstein's home. (Bernstein deposition, p. 219: "*Q.* Where did you keep them? *A.* In my files. *Q.* At home? *A.* Yes.")

15. Given this testimony, before this court proceeds any further Sater should be asked a line of questions like this: *Q.* Did you give the documents at issue here to anyone? *Q.* If so, to whom? *Q.* Did you put any of your own personal documents on the Bayrock computer system? *Q.* How many copies did you leave lying around at Bayrock? *Q.* Where? *Q.* Were they always under lock and key? *Q.* Who else had access to your files? *Q.* How many copies did you leave lying around in other places? *Q.* Did you have any ownership interest in Bayrock? *Q.* If not, what makes you think you didn't waive any privilege if you put them on the computer?

-- *If the court entertains the motion, Oberlander should be granted leave to contact the client who it is believed obtained the documents from Sater and who in turn gave them to Oberlander.*

16. As for how Oberlander got the documents, the answer is simple: As he states in his declaration, they were given to him without his solicitation by a client. Oberlander must be circumspect in stating who it was that gave him the documents, however, as he is duty-bound to

4020238.2

preserve an attorney-client privilege. Oberlander states in his declaration that he did not obtain them from the court file. Rather, unsolicited, they were given to him by a client. [Again, by "client" we mean to be circumspect, as the term could refer to either a present or former client].

17. Because this OTSC is under seal, Oberlander has not contacted this client to ask if he would submit an affidavit in opposition to this order to show cause. It is believed that if this court were to permit Oberlander to contact the client, then the client would readily submit an affidavit stating that he obtained the presentencing report, the proffer agreement, the cooperation agreement and the United States Department of Justice financial statement from Sater, either by his having been given a hard copy of the documents or an electronic copy.

-- *Oberlander did not take the documents from the court file. He obtained them lawfully.*

18. As set forth in the Oberlander declaration, he came into possession of information showing why Sater was hiding his personal assets from a client, lawfully, not from the court.

### Argument

-- *The court's privilege has not been violated. Assuming Sater himself even had any privilege to begin with and then disclosed the documents to others, that's his problem.*

19. While courts may not freely disseminate PSR's (or other sealed materials), the privilege is the court's. The court cannot prevent third-persons in possession of the documents from giving them to another. Since, as he states in his declaration – and this is uncontested – Oberlander did obtain the documents from someone other than the court, he did not violate any sealing order or other court privilege, Sater's motion must simply be denied.

4020238.2

20. Contrary to what Sater's counsel asserts in his memorandum of law,[1] Criminal Procedure Rule 32(e)(2) is not a prohibition against the disclosure of a PSR beyond the usual participants in a criminal prosecution – *i.e.*, the court, prosecutors, defense counsel, and the defendant. Federal Rule of Criminal Procedure, 32(e)(2) states:

> *Minimum Required Notice.* The probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period.

21. This is nothing more than a scheduling rule. As set forth in the margin, the history of Rule 32 proves this.[2] The 1983 amendment[3] (which is the source of Rule 32[e][2]) is a procedural scheduling provision. It is this amendment that Sater's counsel incorrectly characterizes as some kind of substantive rule. Indeed, the Second Circuit's observation in *United States v. Charmer Indus. Inc.*, 711 F.2d 1164, 1172 (2d Cir. 1983) with respect to this 1983 version of Rule 32 remains accurate still. There, the Second Circuit stated that although the rule "sets the standards for release of presentence reports to defendants, their counsel, and the prosecuting attorneys, it is silent as to whether and under what circumstances such reports may be disclosed to 'third persons,' – by which we refer to persons or entities other than the courts,

---

[1] See Sater memorandum at 5 (arguing that Rule 32(e)(2) of the Federal Rules of Criminal Procedure "specifically limits the disclosure of pre-sentencing and other probationary reports only to defendants, their counsel, and prosecuting attorneys").

[2] For decades, presentence reports were not disclosed to defendant or counsel. Only in 1967 did Rule 32 first permit – but not require – the trial court to disclose the report to defendant and counsel, in the court's discretion. A 1973 amendment first required – but only on request of the defendant – disclosure to defendant and counsel. A 1983 amendment eliminated the request condition, requiring disclosure by the court to defendant and counsel, but also requiring they return the documents.

[3] Id.

4020238.2

the Parole Commission, the Bureau of Prisons, and probation officers." 711 F.2d 1164, 1172 (2d Cir. 1983).[4]

> -- *Sater was entitled to disclose the documents to whomever he wished. And he was entitled to vitiate whatever privilege he feels he may have had.*

22. Rule 32 contains no restriction on disclosure of the presentence report by defendant or even by counsel. Indeed, this is the official position of the United States judiciary itself: the United States Probation and Pretrial Services System states in *The Presentence Investigation Report, Publication 107*, VI-3 (March 2006)[5] that free disclosure by defendant or counsel is the default rule. ("Rule 32 does not appear to restrict the disclosure of the presentence report by counsel or the defendant. Some courts have local rules which limit redisclosure.")[6]

23. In support of the order to show cause, Sater has failed to demonstrate that there is any applicable rule that prohibited his or his own counsel's disclosure of the PSR. In any event, there is no authority for the notion that if a document comes into the possession of the recipient, through no intentionally unlawful conduct by the recipient, there is any basis to find fault with that recipient.

> -- *The court's privilege has not been violated.*

24. In point of fact, only court personnel are barred from disclosing sealed documents, and in particular PSR's. In addition to the default rule of free disclosure by counsel

---

[4] In 1988, the Supreme Court ruled that defendants could obtain their own PSRs through FOIA demand. *United States Dept. of Justice v. Julian*, 486 U.S. 1 (1988). A year later Rule 32 was amended to eliminate the 1983 requirement that defendants and counsel return the reports to the court, since they could always obtain – and keep – the reports through FOIA requests anyway.
[5] Available at http://www.fd.org/pdf_lib/Monograph%20107.pdf. See page ~~161~~ 108, §VI-3 of the PDF.
[6] For example, Local Rule 32(c) of the Federal District Court, District of Vermont, limits redisclosure by counsel, though not by the defendant himself.

4020238.2

and defendant, Federal law even requires the disclosure of the PSR's to third parties, who themselves are under no prohibition against further redistribution.[7]

> *The court's privilege is not absolute. Upon a showing of compelling need, the documents may be unsealed.*

25. Moreover, the court's privilege is not absolute.[8] A court will order disclosure of a PSR to third parties "so as to ensure the accuracy and truthfulness of all information before this and other courts, and to prevent respondent from taking inconsistent, self-serving positions regarding his financial condition" in a civil lawsuit. *United States v. Watkins*, 98 CR 1142 (JSR), 2009 U.S. Dist. LEXIS 58220 at *9.[9]

> *The court's privilege is not absolute. Upon a showing of compelling need, the documents may be unsealed.*

26. As noted in *Charmer*, disclosure of presentence reports to third-parties is permitted upon a showing of a compelling need for disclosure to meet the ends of justice. 711

---

[7] For example, in 2003, Congress passed the PROTECT Act, which amended 28 USC 994(w) to require courts to submit to the Sentencing Commission information regarding a defendant's sentencing, including the PSR, and requires that the commission, on request, transmit the presentence report to the House and Senate Judiciary Committees and the Attorney General. Neither the Freedom of Information Act nor the Privacy Act apply to the Sentencing Commission, or to Congress, and thus there is no law which, directly or indirectly, prohibits subsequent redisclosure of a PSR by either body.

[8] To be sure, as *Charmer* and subsequent decisions have made clear, presentence reports are generally not considered public records but "*confidential*" court documents. *United States v. Watkins*, 98 CR 1142 (JSR), 2009 U.S. Dist. LEXIS 58220 (S.D.N.Y. 2009) at *4, citing *United States v. Charmer Indus., Inc.*, 711 F.2d at 1177. I have put the word "confidential" in quotes, because the word is too often confused with "privilege." Here, a "confidence" can be ordered to be disclosed, or disclosed even if obtained wrongfully; a "privilege" is inviolate, absent very narrow and special circumstances, such as the crime-fraud exception. Here, the court document was "privileged," meaning the *court* couldn't be ordered to disclose it (again, absent special circumstances). Indeed, contrary to Sater's counsel's position, the holding of *Charmer* is exactly this: *Charmer* held that a probation service clerk – an employee of the judiciary – had no authority to release a PSR from the court file. Only the court itself could exercise that authority. The case is inapplicable to the distribution of PSR's from a defendant to a third-party, or a third-party to another third-party.

[9] Furthermore, several district court cases within the Second Circuit recognize that sentencing memoranda and letters attached to or specifically referenced in a sentencing memorandum filed with the court are generally accessible to the public. See *United States v. Sattar*, 471 F.Supp.2d 380 (S.D.N.Y. 2006); *United States v. Roeder*, 05-CR-6161L, 2009 U.S. Dist. LEXIS 11395 (W.D.N.Y. Decided Feb. 13, 2009); *United States v. Lawrence*, 167 F. Supp. 2d 504, 506 (N.D.N.Y. 2001); see also *United States v. Kushner*, 349 F. Supp. 2d 892, 902 (D.N.J. 2005). As the *Kushner* court noted, 349 F. Supp. 2d at 905, "a strong presumption of access attaches to sentencing memoranda." Also, sentencing memoranda and exhibits attached to it, may bear directly on the Court's Article III duties, "perhaps the most important of judicial duties." 349 F. Supp. 2d at 905.

4020238.2

F.2d at 1175; see also *United States v. Lewter*, 402 F.3d 319 (2d Cir. 2005); *United States v. Moore*, 949 F.2d 68, 72 (2d Cir. 1991). This standard likewise applies to applications for the disclosure of federal probation records. See *In re Lobel*, 03 CR 296, 2005 U.S. Dist. LEXIS 5869, at *2-3 (S.D.N.Y. April 6, 2005).

27. In a remarkably similar situation, the *Watkins* court found compelling need existed where a civil defendant sought to estop that the plaintiff from claiming in 2008 that he had ten years earlier in 1998 purchased half ownership of a business for $600,000 while at the very same time in 1998 the very same plaintiff was lying to the court and to the Probation Department during his sentencing for a drug conviction (like Sater hiding his ownership in the business, as alleged in the *Kriss* complaint) and hiding the $600,000, claiming he had no money or assets to avoid a fine. The *Watkins* court ordered the release to the defendant of (1) the plaintiff's presentence report and (2) other statements the defendant had made to the Probation Department regarding his financial condition. See also *United States v. Harris*, 617 F. Supp. 2d 99 (E.D.N.Y. 2007) (granting Family Court presiding over mother's demand for custody of her son access to the mother's probation records in particular the results of mother's drug tests).[10]

28. Here, there is no basis to try to put any genie back in the bottle (or cat back in the bag), because the documents at issue would inevitably be ordered to be disclosed, in accord with *Watkins*. ███████████████████████████████████████████████

---

[10] In somewhat similar vein, in *United States v. Huckaby*, 43 F.3d 135, 140 (5th Cir. 1995), the Fifth Circuit upheld the district court's order releasing the defendant's presentence report, so as to address the defendant's claim that his prosecution and conviction for felony tax crimes (instead of a misdemeanor) was racially motivated.

4020238.2



29. The court must be aware of the distinction between "sealed" court documents, which would be generally inaccessible to the public, versus those same documents being disclosed by others, such as Sater himself. The court must also be aware of the distinction between the sealed documents, versus the information contained therein. This court can only prevent someone from obtaining the court documents; it cannot prevent anyone from learning the information from other sources. While Sater's counsel harps on the fact that the *Kriss v. Bayrock* complaint refers to the documents as "sealed," apparently to show Oberlander's *scienter*, the complaint merely alleges that certain documents were <u>at one time</u>, years ago, sealed, and Sater utterly fails to appreciate the distinctions noted above. The documents were indeed "sealed" – past tense – by the court. The documents that are in the court file, if any, may still be "sealed." However, the documents that Oberlander obtained, and certainly the information in them, are not "sealed."

30. Upon perusal of the complaint in the *Kriss v. Bayrock* action, the court will see that it was drafted with utmost care. Sater's motion pits a convicted racketeer, tax-evader, money launderer, and fraudfeasor against a zealous advocate, but without any evidentiary basis having been shown to show that the miscreant has any basis for obtaining the relief that he seeks. Sater's counsel has not demonstrated, through an affidavit of Sater himself, that he never gave the

4020238.2

documents to any third person and has not demonstrated he otherwise protected them at all, assuming the existence of any protectable privilege to begin with. Therefore, the motion must be denied in all respects.

31. In the event the court even entertains this motion, it is respectfully requested that this court grant the relief sought via cross motion – *viz.* leave to contact Oberlander's client – so that Oberlander may request that the client submit an affidavit showing how and from whom he got the documents at issue.

-- *Any relief granted should be granted only to a minimal extent.*

32. Importantly, the RICO complaint as filed included as attachments only the proffer, the cooperation agreement, and five pages extracted from the PSR. The complaint does not include the financial statement or any of the putatively more confidential information in the PSR, and importantly does not include any of the typically "questionable" PSR provisions such as hearsay statements of co-defendants. The extracts were chosen with care, to include only those portions establishing the frauds on the probation service, the court, the racketeering victims, and others (including where Sater and his co-conspirators and co-defendants failed to disclose his history of criminal securities fraud, for example when they filed fraudulent condominium documents for Trump SoHo, intentionally omitting Sater's then-62% ownership of Bayrock and his criminal past and are continuing that fraud on the buyers by concealing it from them, and from the attorney general of New York).

33. Any relief should be carefully tailored to these narrow aspects.

## Conclusion

34. Sater failed to submit an affidavit indicating that he maintained the purportedly protected nature of the documents at issue here. Therefore, the relief requested must be denied. If

4020238.2

the court nonetheless opts to consider the motion, then Oberlander's cross-motion should be granted, permitting him to contact the client who gave him the documents

35. Sater's application must be denied also because Oberlander states in his declaration that he obtained the documents from a third-person – a client – and not the court.

36. Finally, the application must be denied because these documents would be ordered to be unsealed in any event, because – as alleged in detail in the *Kriss v. Bayrock* complaint – ███████████████████████████████████████████████████████████████████████████████████████████████████████ (I conclude by repeating that these are the allegations, unknown to me personally).

37. If this court finds any colorable argument in Sater's favor, the documents at issue should be ordered turned over to Sater's counsel and held pending a determination of their discoverability in the *Kriss v. Bayrock* matter.

Dated: New York, New York
June 7, 2010

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: _____
Thomas W. Hyland
Attorneys for non-party respondent Fred M. Oberlander
150 East 42nd Street
New York, New York 10017
(212) 490-3000

4020238.2