UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

UNITED STATES OF AMERICA,       :
                                :
                     Plaintiff, :        98 CR 1101 (ILG)
                                :
                                :        **FILED UNDER SEAL**
         -against-              :
                                :
                                :
FELIX SATER,                    :
                                :
                     Defendant. :
------------------------------------------------------------------- X

## ORDER TO SHOW CAUSE FOR
## PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Defendant Felix Sater, by his attorneys Morgan, Lewis & Bockius LLP, having moved

this Court for relief hereinafter described,

**NOW** upon the accompanying Declaration of Kelly Moore, Esq., executed on May 18,

2010, and Defendant's Memorandum of Law, and on all the pleadings and proceedings had

herein, it is hereby

**ORDERED**, that Jody Kriss, Michael Ejekam and Fred Oberlander show cause before a

motion term of this Court, Room 6B, United States Courthouse, 225 Cadman Plaza East,

Brooklyn, New York 11201 on May 28th, 2010 at 12 o'clock in the noon

thereof, or as soon thereafter as counsel may be heard, why an order should not be issued

requiring Jody Kriss, Michael Ejekam and Fred Oberlander and any other persons who have

acquired the Sealed and Confidential Materials to immediately return the Sealed and

Confidential Materials to Mr. Sater;

**ORDERED**, that pending said hearing, Messrs. Kriss, Ejekam and Oberlander and their representatives, employees and agents, and all other persons acting in concert with them and all other persons who have obtained the Sealed and Confidential Materials, are restrained and enjoined from disseminating the Sealed and Confidential Materials or information therein further;

**ORDERED**, that Messrs. Kriss, Ejekam and Oberlander appear at said hearing and give evidence as to how they obtained the Sealed and Confidential Materials and to whom said materials have been disseminated;

**ORDERED**, that personal service of a copy of this order and annexed affidavits upon Messrs. Kriss, Ejekam and Oberlander or their counsel on or before May 19th, 2010 shall be deemed good and sufficient service thereof;

**ORDERED,** that Messrs. Kriss, Ejekam and Oberlander's papers in opposition to Mr. Sater's motion, if any, shall be served by hand on Morgan, Lewis & Bockius LLP, counsel for Mr. Sater, on or before May 25th, 2010 at 5:00 p.m. (with a courtesy copy hand delivered to the Court in Chambers), and that Mr. Sater's reply papers, if any, shall be served by hand on counsel for Messrs. Kriss, Ejekam and Oberlander by no later than 5:00 p.m. (with a copy for Chambers) the day before the return date provided by this order;

**ORDERED,** that all papers related to the instant motion are hereby sealed;

**ORDERED**, that a copy of all papers shall be served on Marshall Miller and Todd Kaminsky of the United States Attorney's Office for the Eastern District of New York.

Dated: New York, New York
May 18, 2010

7:00 pm

_____
United States District Judge

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA,
                              Plaintiff,

                                                    **98 CR 1101 (ILG)**

            -against-
                                                    **FILED UNDER SEAL**

FELIX SATER,

                              Defendant.
-----------------------------------------------------------------------X

## DECLARATION OF KELLY MOORE

**KELLY MOORE** declares as follows:

1.      I am member of the Bar of this Court and am a member of the law firm of Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York, 10178, counsel for Felix Sater.

2.      I make this declaration in support of Mr. Sater's application to this Court to (i) order the immediate return of certain confidential materials, much of which were previously sealed by this Court in connection with criminal proceedings before this Court; and (ii) conduct an inquiry into how certain persons acquired the materials and to whom the materials were distributed in order to ensure that all such materials are returned or destroyed.

**Background**

3.      Mr. Sater was the subject of criminal proceedings before this Court, which concluded on October 23, 2009, index number 98 CR 1101 (ILG) (the "Criminal Proceedings").

4. This Court sealed the docket and filings in the Criminal Proceedings.

5. In connection with the Criminal Proceedings, certain confidential materials were sealed including:

- a Cooperation Agreement dated December 10, 1998;
- A United States Department of Justice Financial Statement dated December 10, 1998; and
- a Pre-sentence Investigation Report dated June 18, 2004 (the "2004 PSR");

(together, the "Sealed Materials").

6. In addition, Mr. Sater and the United States Attorney's Office entered into a confidential Proffer Agreement dated October 2, 1998 (together with the Sealed Materials, the "Sealed and Confidential Materials").

7. The confidential nature of the Sealed and Confidential Materials is plain. For example, the 2004 PSR states: "It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the pre-sentence report is prohibited without the consent of the sentencing judge."

8. Mr. Sater was formerly affiliated with a real estate development firm known as Bayrock Group LLC ("Bayrock" and together with its subsidiaries, the "Bayrock entities").

9. Mr. Sater has informed us that, while he was associated with Bayrock, he kept the Sealed and Confidential Materials in a personal file in his Bayrock office.

**The Delaware Court Dismissed an Action Filed by**
**Mr. Kriss and His Attorney, Fred Oberlander**

10.    Jody Kriss is a former employee of Bayrock.

11.    During the course of his employment, Mr. Kriss maintained an office adjacent to Mr. Sater's. As noted above, Mr. Sater kept the Sealed and Confidential Materials in a personal file in his Bayrock office.

12.    Mr. Kriss was employed by Bayrock from 2003 to 2007 as Director of Finance. In 2007, he took a leave of absence. He returned from leave for a brief period in 2008 and then was terminated by the Company.

13.    In or around 2009, Mr. Kriss commenced an action in the Delaware Chancery Court against, inter alia, Mr. Sater, certain Bayrock entities and certain employees of Bayrock entities (the "Delaware Action").

14.    In the Delaware Action, Mr. Kriss was represented by several attorneys including Mr. Fred Oberlander.

15.    In the Delaware Action, Mr. Kriss alleged, inter alia, that the Bayrock entities constituted a racketeer influence and corrupt organization (RICO), that tax laws had been violated, and that Mr. Kriss – who was the Director of Finance at the time of the alleged violations – had been denied certain economic benefits to which he was entitled based on his association with Bayrock.

16.    Chancellor Strine dismissed the Delaware Action, finding, inter alia, that Mr. Kriss's disputes with Bayrock and the other defendants are the subject of an arbitration agreement.

17.    By order dated February 19, 2010, the Delaware court directed Mr. Kriss to file an arbitration and, in the event the arbitrator determined that the claims were

not arbitral, to file an action in court in New York. A copy of the order and the hearing transcript are attached as Exhibit 1.

**Attorney Oberlander's Other Client**
**Admits Taking Emails and Documents**
**From Bayrock**

18.    In addition to the Delaware Action, another former employee of Bayrock, Joshua Bernstein, commenced an arbitration against Bayrock.

19.    In that action, Mr. Bernstein testified that, during the course of his employment, he downloaded files from the computers and servers of Bayrock and installed monitoring software which allowed him access to other Bayrock personnel's computers. (See Ex. 2, Bernstein Deposition at 194-233).

20.    Mr. Bernstein further testified that when he left Bayrock, he took "thousands" of emails and hundreds of documents  (*Id.*)

21.    Mr. Oberlander represents Mr. Bernstein.

**Messrs. Kriss and Oberlander File**
**a New Action in the SDNY, Using the**
**Sealed and Confidential Materials**

22.    On Wednesday, May 12, 2010, Mr. Oberlander emailed to Ronald Kriss—a partner at the law firm Akerman Senterfitt and father of Jody Kriss—a draft complaint (the "SDNY Complaint") on behalf of Jody Kriss and another former Bayrock employee against Mr. Sater, Bayrock entities and numerous others.

23.    The SDNY Complaint is similar in nature to the Delaware Action.

24.    The SDNY Complaint references and attaches as exhibits thereto the Sealed and Confidential Materials.

4

25.     In addition, the SDNY Complaint quotes numerous privileged

communications between Bayrock and its counsel.

26.     Mr. Oberlander's email to Ron Kriss stated as followed:

**From:** fred55@aol.com [mailto:fred55@aol.com]
**Sent:** Wednesday, May 12, 2010 12:33 PM
**To:** Kriss, Ronald (Sh-Mia); Kriss, Ronald (Sh-Mia)
**Subject:** Fwd: complaint, sdny, salomon, weinrich, & salomon & co.
Ron --

I recommend you forward this to Julius with the comment from me that
there are three alternatives here:

(a) I file publicly today.

(b) I file under seal today.

(c) He arrange a tolling agreement with EVERY defendant but nixon peabody.

I don't care how many people he has to get on the phone and how fast
he has to work. He had years to give back the money and now it's over.
He can get Brian Halberg to help him.

I believe it's possible to get this in under seal if Bayrock joins in a joint motion
in part 1 to seal the complaint pending a redaction agreement with the
assigned judge but there are never any guarantees.

Thanks,

FMO

A copy of this email is attached as Exhibit 3.

27.     The "Julius" referenced in the above email is Julius Schwarz, an

officer of Bayrock.

28.     The above email, together with the draft SDNY Complaint and the

exhibits thereto, were distributed by Ronald Kriss to Mr. Schwarz in the SDNY action.  A

copy was forwarded to Mr. Sater.  We do not know how many times Mr. Oberlander's

email was forwarded with the attachments.

29.    On Thursday, May 13, 2010, Mr. Oberlander filed the SDNY Complaint in the Southern District of New York, and the matter was assigned to the Hon. Naomi Reice Buchwald.

30.    The SDNY Complaint was made available to the public for download through a paid online news service, "Courthouse News." We do not know how many people downloaded the SDNY Complaint from Courthouse News.

31.    Later that day, upon learning of the filing, my partner, Brian Herman, and I called Mr. Oberlander to demand that the Sealed and Confidential Materials be withdrawn and returned.

32.    Mr. Oberlander informed us that he had retained his own counsel, an attorney named David Lewis, to address his disclosure of the Sealed and Confidential Materials.

33.    Mr. Lewis refused to disclose how his client, Mr. Oberlander, had obtained the Sealed and Confidential Materials and refused to return the Sealed and Confidential Materials.

34.    Mr. Lewis also stated that Mr. Oberlander had made an unsuccessful application to have the Materials filed under seal in the Southern District, and that he was amenable to a joint application to Judge Buchwald.

35.    Mr. Lewis, Mr. Herman and I subsequently spoke with Judge Buchwald on May 13, and Judge Buchwald immediately issued an order preventing further dissemination of the SDNY Complaint, the exhibits thereto and the information therein (the "First Order"). (Exhibit 4). Judge Buchwald indicated during the telephone

conference that any application for return of the Sealed and Confidential Materials or inquiry into the disclosure should be directed to this Court.

36.     On information and belief, a copy of the First Order was sent by Mr. Oberlander to each person to whom he had previously sent the SDNY Complaint. However, we do not know whether the SDNY Complaint and the exhibits were distributed further.

37.     On May 14, 2010, at the request of Morgan Lewis, Courthouse News removed the SDNY Complaint from its website and sent a copy of the First Order to each person who had downloaded the SDNY Complaint.

38.     On May 14, 2010, Judge Buchwald issued a second order (the "Second Order") sealing the SDNY Complaint in its entirety pending further order of the Court. (Exhibit 5). Judge Buchwald further ordered that a redacted version of the original complaint, redacting any sealed documents or references to sealed documents, be filed by May 19, 2010.

39.     On May 17, 2010, Courthouse News ran a news story disclosing information from the SDNY Complaint. At the request of Morgan Lewis, the story was taken down, but we do not know how many people read the story while it was still posted.

**Mr. Sater Seeks Relief**

40.     To summarize:

- Mr. Oberlander and one or more of his clients are in possession of the Sealed and Confidential Materials;

- Mr. Oberlander refuses to disclose how he obtained the Sealed and Confidential Materials and refuses to return them;

- Mr. Oberlander, aware of the confidential nature of the documents, has distributed the Sealed and Confidential Materials and the SDNY Complaint referencing the Sealed and Confidential Materials, and the recipients may have further distributed that information;

- As a direct result of Mr. Oberlander's actions, the SDNY Complaint referencing the Sealed and Confidential Materials was posted for download to the public and was used as the basis for a news article.

41.     Based on the foregoing, we respectfully request that this Court issue an order requiring Mr. Oberlander, his clients and anyone else who has received the Sealed and Confidential Materials or documents referencing the Sealed and Confidential Materials to immediately return all copies to Mr. Sater. Further, in order to fully effectuate relief, we ask that the Court conduct a hearing to determine how this disclosure occurred and the extent to which the Sealed and Confidential Materials were disseminated.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on May 18, 2010.


Kelly Moore

LEO E. STRINE, JR.
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

February 19, 2010

Stamatios Stamoulis, Esquire
Stamoulis & Weinblatt LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809

Kathaleen St. J. McCormick, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

John A. Elzufon, Esquire
Elzufon, Austin, Reardon
   Tarlov & Mondell, P.A.
300 Delaware Avenue
Wilmington, DE 19801

      RE:    *Jody Kriss v. Bayrock Group, LLC, et al.*
             C.A. No. 4154-VCS

Dear Counsel:

      To my chagrin, I realized that the final order in this case was never entered. No one

brought to my attention this omission. The order had been finalized but not entered some

months ago. Here it is. I regret the delay. In future, if a delay of this ever occurs and it actually

worries you, please contact my chambers. I do not like to create delay and this was an error of

omission in filing, as the order had been finalized by me in late September.

                Very truly yours,

                */s/ Leo E. Strine, Jr.*

                Vice Chancellor

LESJr/eb

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JODY KRISS, for himself and derivatively on behalf of the Delaware limited liability companies Bayrock Spring Street LLC, and Bayrock Whitestone LLC, the Arizona limited liability company Bayrock Camelback LLC, the Florida limited liability companies Bayrock Merrimac LLC, and Bayrock Ocean Club LLC, and the New York limited liability company Bayrock Group LLC,<br><br>Plaintiff,<br><br>v.<br><br>BAYROCK GROUP LLC; RIF INTERNATIONAL GROUP, INC.; TEVFIK ARIF; JULIUS SCHWARZ; MEL DOGAN; DOGAN & ASSOCIATES; 2027 EMMON AVE LLC; FELIX SATTER (aka FELIX SATER); VICTORIA SATER; ALEX SALOMON; ALEX SALOMON & CO., PC; JOSEPH BENCIVENGA; BUENA VISTA ALARGA LLC; BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; BAYROCK HOLDINGS LLC; BAYROCK NATURAL STONE LLC; BAYROCK SAPIR ORGANIZATION LLC; 246 SPRING STREET HOLDINGS II LLC; BAYROCK/SAPIR ORGANIZATION HOLDINGS LLC; BAYROCK/SAPIR ORGANIZATION REALTY LLC; 151-45 SIXTH ROAD WHITESTONE PARTNERS LLC; CAMELBACK DEVELOPMENT PARTNERS LLC; STILLMAN BAYROCK MERRIMAC LLC; SB HOTEL ASSOCIATES LLC; 550 SEABREEZE DEVELOPMENT LLC,<br><br>True Defendants,<br><br>And<br><br>BAYROCK GROUP LLC; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK OCEAN CLUB LLC; BAYROCK SPRING STREET LLC,<br><br>Nominal Defendants. | C.A. No.: 4154-VCS |

## FINAL ORDER

IT IS HEREBY ORDERED, this 19th day of February, 2010 for the reasons set forth in the September 16, 2009 bench ruling of the Court, that:

1. As to all Defendants, all claims pled in the Complaint are dismissed without prejudice for lack of subject matter jurisdiction, pursuant to Court of Chancery Rule 12(b)(1).

2. As to all Non-Resident Defendants named in the Complaint as defined in the Bayrock Defendants' Opening Brief, all claims pled in the Complaint are dismissed without prejudice for lack of personal jurisdiction, pursuant to Court of Chancery Rule 12(b)(2).

3. As to the Resident Defendants named in the Complaint as defined in the Bayrock Defendants' Opening Brief, all claims pled in the Complaint are dismissed without prejudice for failure to join indispensible parties, pursuant to Rule 12(b)(7).

Plaintiff's Complaint is dismissed without prejudice, as opposed to with prejudice, solely so that the doctrine of *res judicata* does not preclude Plaintiff the opportunity to bring his claims before an arbitrator or, if certain claims are held not to be arbitrable, in a forum, such as the New York state courts, which can appropriately exercise jurisdiction over all Defendants and which is convenient. Of course, the reasons for dismissing this Complaint will retain their force into the future, and therefore an attempt by Plaintiff to bring these claims again in this Court will result in dismissal for the same reasons stated in the Court's bench ruling and which are summarized in this order.

*/s/ Leo E. Strine, Jr.*
Vice Chancellor

$\xi + x^2$

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

JODY KRISS, for himself and                  :
derivatively on behalf of the Delaware       :
limited liability companies Bayrock          :
Spring Street LLC and Bayrock                :
Whitestone LLC, the Arizona limited          :
liability company Bayrock Camelback          :
LLC, the Florida limited liability           :
companies Bayrock Merrimac LLC and           :
Bayrock Ocean Club LLC, and the New          :
York limited liability company Bayrock       :
Group, LLC,                                  :
                                             :
                Plaintiff,                   :
                                             :
          v                                  :   Civil Action
                                             :   No. 4154-VCS
BAYROCK GROUP LLC; RIF INTERNATIONAL         :
GROUP, INC.; TEVFIK ARIF; JULIUS             :
SCHWARZ; MEL DOGAN; DOGAN & ASSOCIATES;:
2027 EMMONS AVE LLC; FELIX SATTER            :
(a/k/a FELIX SATER); VICTORIA SATER;         :
ALEX SALOMON; ALEX SALOMON & CO, PC;         :
JOSEPH BENCIVENGA; BUENA VISTA ALARGA        :
LLC; BAYROCK SPRING STREET LLC; BAYROCK:
WHITESTONE LLC; BAYROCK HOLDINGS LLC;        :
BAYROCK NATURAL STONE LLC; BAYROCK           :
SAPIR ORGANIZATION LLC; 246 SPRING           :
STREET HOLDINGS II LLC; BAYROCK/SAPIR        :
ORGANIZATION HOLDINGS LLC; BAYROCK/          :
SAPIR ORGANIZATION REALTY LLC; 151-45        :
SIXTH ROAD WHITESTONE PARTNERS LLC;          :
CAMELBACK DEVELOPMENT PARTNERS LLC;          :
STILLMAN BAYROCK MERRIMAC LLC; SB HOTEL:
ASOCIATES LLC; 550 SEABREEZE                 :
DEVELOPMENT LLC,                             :
                                             :
              True Defendants,               :

---------------------------------------------------------
CHANCERY COURT REPORTERS
New Castle County Courthouse
500 North King Street - Suite 11400
Wilmington, Delaware 19801-3768
(302) 255-0524

1          -and-                              :
                                             :
2     BAYROCK GROUP LLC; BAYROCK WHITESTONE    :
      LLC; BAYROCK CAMELBACK, LLC; BAYROCK     :
3     MERRIMAC LLC; BAYROCK OCEAN CLUB LLC;     :
      and BAYROCK SPRING STREET LLC;           :
4                                              :
                    Nominal Defendants.        :
5
                           - - -
6
                                 Chancery Courtroom No. 12A
7                                New Castle County Courthouse
                                 500 North King Street
8                                Wilmington, Delaware
                                 Wednesday, September 16, 2009
9                                10:01 a.m.

10                         - - -

11    BEFORE:  HON. LEO E. STRINE, JR., Vice Chancellor.

12                         - - -

13    ORAL ARGUMENT ON DEFENDANTS' MOTION TO DISMISS AND
                      RULINGS OF THE COURT
14
                           - - -
15
      APPEARANCES:
16
          STAMATIOS STAMOULIS, ESQ.
17        RICHARD C. WEINBLATT, ESQ.
          Stamoulis & Weinblatt LLC
18                  -and-
          FREDERICK M. OBERLANDER, ESQ.
19        of the New York Bar
            for Plaintiff
20
          BARRY M. WILLOUGHBY, ESQ.
21        KATHALEEN ST. J. McCORMICK, ESQ.
          Young, Conaway, Stargatt & Taylor LLP
22          for Bayrock Defendants

23        JOHN A. ELZUFON, ESQ.
          Elzufon, Austin, Reardon, Tarlov & Mondell, P.A.
24          for Defendants Alex Salomon, Alex Salomon & Co,
            PC, and Joseph Bencivenga

CHANCERY COURT REPORTERS

1          THE COURT:  Good morning, everyone.

2          ALL COUNSEL:  Good morning, Your

3   Honor.

4          THE COURT:  You may proceed.

5          MS. McCORMICK:  Good morning, Your

6   Honor.

7          THE COURT:  Good morning.

8          MS. McCORMICK:  My name is Katie

9   McCormick.  I'm an attorney with Young, Conaway,

10  Stargatt & Taylor.  I'm joined today with my

11  colleague, Barry Willoughby.  We represent a subset of

12  defendants in this action who we have referred to in

13  prior filings as the Bayrock defendants.  Today, to

14  make it easier on myself, I will refer to these

15  defendants simply as defendants.  So we do not argue

16  on behalf of all defendants in this action.

17          THE COURT:  Who are you not arguing

18  on?

19          MS. McCORMICK:  We are not arguing on

20  behalf of Mr. Salomon, the accountant; Mr. Salomon's

21  firm or Mr. Salomon's former employee, Mr. Bencivenga.

22          THE COURT:  Does he have counsel?

23          MS. McCORMICK:  He does.

24          MR. ELZUFON:  He does, Your Honor.  I

1    represent all three.

2                    THE COURT:  Did anyone move on his

3    behalf?

4                    MR. ELZUFON:  Your Honor, there's a

5    pleading filed on May 18th which gives my clients the

6    right to answer or otherwise respond 30 days after the

7    amended complaint was filed, because we've been

8    advised all along there's an amended complaint

9    forthcoming.  I don't know what docket sheet it is in

10   the Court, but it was e-filed on May 18th, and I have

11   it right here.

12                   THE COURT:  Okay.

13                   MR. ELZUFON:  Thank you, Your Honor.

14                   MS. McCORMICK:  Thank you, Your Honor.

15                   We're here today arguing defendants'

16   motion to dismiss.  Defendants were all engaged in

17   real estate development through subsidiaries managed

18   by defendant Bayrock Group LLC, a New York-based

19   limited liability company.  Mr. Arif, a defendant in

20   this action, a Turkish citizen and a New York

21   resident, is the managing member of Bayrock Group.

22   Many of the Bayrock Group subsidiaries are listed as

23   defendants to this action, and nine of those 18

24   subsidiaries are not Delaware entities.

1    Through his complaint Mr. Kriss seeks
2  to enforce a November 10th employment agreement, which
3  we'll refer to today as the November 10th contract, in
4  which he was promised certain membership interests in
5  certain subsidiaries of the Bayrock Group.  This
6  contract defines those entities as the company
7  entities.  The contract, however, does not catalogue
8  these company entities.  Various defendants have been
9  named in this suit by virtue of the plaintiff's claim
10  that they are, in fact, company entities under the
11  agreement.  We dispute this.
12    Mr. Kriss' claim ultimately boils down
13  to whether Mr. Kriss is entitled to any moneys from
14  any of these real estate entities and, if so, how
15  much, if any at all.  This question cannot be resolved
16  without turning to the November 10th contract which
17  governs when Mr. Kriss' membership interests, if any,
18  would vest and to what, if any, moneys in the form of
19  advancements or distributions Mr. Kriss would
20  ultimately be entitled.
21    This contract, which was negotiated in
22  New York and contains a New York choice-of-law
23  provision, contains a binding arbitration clause.
24  This makes sense, given that the uncatalogued entities

1  it was likely to affect were incorporated in a

2  multitude of different states. Because the key

3  question in this case is whether Mr. Kriss will be

4  entitled to any moneys from any of the defendant

5  entities, because this question cannot be resolved

6  without turning to the substantive terms of the

7  November 10th contract and because the

8  November 10th contract contains a binding arbitration

9  clause, this Court lacks jurisdiction over this

10  dispute, and the case should be dismissed.

11            But even absent the arbitration

12  clause, this dispute could not be entirely resolved in

13  Delaware, because this Court lacks jurisdiction over

14  20 of the 29 defendants and because many of those

15  defendants, including, at the very least, Mr. Arif and

16  the Bayrock Group, both of whom are signatories to the

17  November 10th contract are indispensable to this

18  action. For these reasons, the case should be

19  dismissed.

20            Defendants specifically have made

21  three arguments in support of dismissal. First, the

22  November 10th contract giving rise to plaintiff's

23  claims contains a binding arbitration clause which

24  should be enforced and which deprives this Court of

1   subject matter jurisdiction over this action.  Because

2   the clear and unambiguous language of this clause

3   delegates the question of substantive arbitrability to

4   an arbitrator, we submit that this Court need not

5   consider whether plaintiff's claims are within the

6   scope of the arbitration clause at issue in order to

7   dismiss the action.

8                   THE COURT:  So we leave it to the

9   arbitrator.

10                  MS. McCORMICK:  Correct.  In any

11  event, the claims are, in fact, within the scope of

12  the arbitration clause.  And were this Court to

13  undertake the analysis, it would result in our favor.

14                  THE COURT:  What were your discussions

15  with the other side about this amended complaint?  Why

16  did they not bring it forward, is your understanding?

17                  MS. McCORMICK:  I have no

18  understanding as to why they haven't filed an amended

19  complaint, Your Honor.  It's, frankly, confusing to

20  us.

21                  Second, this Court -- second, this

22  Court lacks personal jurisdiction over 20 of the 29

23  defendants in this action.  Plaintiff bears the burden

24  of establishing a prima facie case for the exercise of

1 personal jurisdiction over the nonresident defendants.

2 Plaintiff attempts to do so based on the long-arm

3 statute, the conspiracy theory, and the implied

4 consent statute of the LLC act. All of these bases

5 fail.

6         With respect to the first two bases,

7 plaintiff failed to identify any act or effect, let

8 alone a substantial act or effect, occurring in

9 Delaware connected to any of plaintiff's claims or any

10 conspiracy.

11         THE COURT: I guess in some sort of

12 affidavit the plaintiff says that in 2007 there was

13 some transaction and some new Delaware entities were

14 formed that received some funds in transactions. How

15 do you address that?

16         MS. McCORMICK: Was that in the form

17 of an affidavit, Your Honor, or was that in the

18 answering brief?

19         THE COURT: No. It's stuck in the

20 plaintiff's affidavits, Exhibit 2, I think.

21         MS. McCORMICK: Your Honor, I don't

22 believe the allegations support the notion that even

23 that formation is connected to any of plaintiff's

24 claims. It's our understanding that in order for the

1  formation of a Delaware entity to form the basis of
2  personal jurisdiction, that act itself has to give
3  rise to the claims complained of.  We don't believe
4  that the allegations support that notion in the
5  very -- in the least.
6              THE COURT:  Well, aren't they -- I
7  guess they're alleging somehow that funds went from
8  one entity to the other and that somehow this is
9  connected to the plaintiff not getting, you know, his
10 recognized -- what he contends is his interest.
11             MS. McCORMICK:  If that's the
12 allegation, Your Honor, I don't believe you can escape
13 the arbitration clause in that event.  The
14 arbitration --
15             THE COURT:  Well, the arbitration
16 clause is a different issue.  I'm talking about
17 personal jurisdiction now.
18             MS. McCORMICK:  I think the
19 arbitration clause actually connects to the issue of
20 personal jurisdiction insofar as it constitutes
21 express consent of the managing member of these
22 entities to exclusively address these issues in the
23 form of jurisdiction.  In that regard, this Court
24 couldn't exercise implied consent over the Bayrock

1   Group under Section 18-109 of the LLC long-arm
2   statute -- or LLC implied consent statute.  We don't
3   think the act in itself is enough to establish
4   jurisdiction over the Bayrock Group or Mr. Arif.  And
5   we don't think the allegations are specific enough to
6   support that claim.
7               THE COURT:  Okay.  Do you have
8   anything else to add at this time?
9               MS. McCORMICK:  I can continue, Your
10  Honor.  Our third argument is based on the fact that
11  this Court lacks personal jurisdiction over
12  indispensable parties to this action, specifically at
13  the very least Mr. Arif and the Bayrock Group, but
14  also the company entities who plaintiffs contend are
15  signatories to the contract.  We don't agree with this
16  assertion, but -- especially with respect to the
17  specific defendant entities; but because it's
18  plaintiff's contention and this motion is based on the
19  allegations in plaintiff's complaint, we don't think
20  that plaintiff can move forward without these
21  indispensable parties.
22              THE COURT:  Okay.
23              MS. McCORMICK:  Should I proceed on
24  the factual background, Your Honor?

1          THE COURT:  No.  I'm good with that.

2     That's fine.  Thank you.  Let me hear from the other

3     side.

4          MS. McCORMICK:  Thank you.

5          MR. STAMOULIS:  Good morning, Your

6     Honor.  Stam Stamoulis on behalf of Jody Kriss.  I'd

7     just like to introduce our side.  First with me is

8     Jody Kriss, the plaintiff in this matter; our New York

9     counsel, Fred Oberlander, and my partner Rich

10    Weinblatt.

11         THE COURT:  Good morning.

12         MR. STAMOULIS:  Now, Mr. Oberlander

13    will address the merits of arbitrability and the

14    employment contract and where our claim is coming

15    from.  I just wanted to give the Court a brief bit of

16    background of who Mr. Kriss is and why we're here.

17         THE COURT:  No, I don't need --

18         MR. STAMOULIS:  No?

19         THE COURT:  -- splitting an argument.

20    This is a motion to dismiss.  Either handle it

21    yourself or have Mr. Oberlander handle it.

22         MR. STAMOULIS:  Okay.

23         THE COURT:  And I don't want to hear

24    facts not in the complaint.

1          MR. OBERLANDER:  All right.

2          THE COURT:  So I don't want to hear a

3    history of the world.  This is a motion to dismiss.

4          For example, why was the motion -- why

5    is the amended complaint not on file?

6          MR. OBERLANDER:  The amended complaint

7    is not on file because our prior -- my prior local

8    counsel in Delaware specifically advised me when I

9    said to him during its preparation "I think we need to

10   file a books and records before we do an amended

11   complaint because it will be full of derivative

12   complaints."  And I understand from reading Your

13   Honor's transcript in a Bank of America hearing this

14   would be a very advisable thing to do.  And counsel,

15   prior counsel wrote back in an e-mail and said it

16   would just be very foolish.  Just rely on discovery

17   and go ahead and plead.  He subsequently filed a

18   request to leave the case a week later for

19   irreconcilable differences, of which that was one; and

20   within 30 days I replaced him with these gentlemen.

21   And they've been working on the case for 75 days.

22          We have produced a great deal of

23   documents that have been filed.  As to the specific

24   question of why the moment they came in we couldn't

1    file an amended complaint, it was their suggestion.

2    And the draft form of the amended complaint is quite

3    complex and very serious and implicates very many

4    serious charges against also new defendants who are

5    not before the Court and shouldn't be mentioned here,

6    that they said "No. You know what. We will argue the

7    motion to dismiss but make clear that we do want you

8    to file an amended complaint; No. 2, that the claims

9    in the amended" -- wait, wait --

10            THE COURT:  No.

11            MR. OBERLANDER:  He wanted a books and

12   records demand.  So we did a books and records instead

13   of --

14            THE COURT:  Okay.  Let me advise you

15   all.  You did exactly what the rule -- you stood on

16   what you did and you will live on what you did.  Books

17   and records -- what people are admonished to do is to

18   seek books and records before they file litigation.

19   You can't file an initial complaint, then use books

20   and records to get discovery.

21            So you've got a complaint before me.

22   You chose to stand on it.  Stand on it.  If you've got

23   issues with yourself and your legal judgment and those

24   of your Delaware counsel or prior Delaware counsel,

1   that's all in your sacred sweat lodge on your side of

2   the equation.  I don't want to hear about it, okay?

3   You had an opportunity in response to this to file an

4   amended complaint.  You did not.  So let's focus on

5   what's in your complaint.

6               MR. OBERLANDER:  All right.  But just

7   for the record, I wasn't intending to use books and

8   records as discovery.  Books -- I just wanted to be

9   clear.  Books and records -- since it's filed and been

10  in front of you already, just for books and records

11  runs to the new charges and a new complaint that --

12              THE COURT:  But the point is, once

13  you're in litigation, if you want information for an

14  amendment, you need to either get it through discovery

15  or you need to plead and plead the gateway.  That is

16  the way it works.  It's a sequential thing.  What

17  people who are stockholders are encouraged to do is

18  use their books and records right before they file a

19  litigation.  Once you file a litigation, you can't go

20  around under 220 or an LLC statute equivalent and seek

21  stuff to buttress your complaint.  And Rule 15(aaa) is

22  clear.  It's emphatically clear.

23              MR. OBERLANDER:  It was my

24  understanding that Rule 15(aaa) says that once they

CHANCERY COURT REPORTERS

1  file a responsive pleading, you no longer have the

2  right to amend.  You have to petition for leave to

3  amend.  Or is that 15(aa), if you forgive me?  But

4  that --

5              THE COURT:  No.  What 15(aaa) clearly

6  says is if you want to defeat a motion to dismiss,

7  you're supposed to bring forward your amendment.

8              MR. OBERLANDER:  Granted, if you --

9              THE COURT:  If you wish to defeat --

10             MR. OBERLANDER:  If you wish to defeat

11 it by an amendment.

12             THE COURT:  By an amendment.

13             MR. OBERLANDER:  Yes.

14             THE COURT:  So you don't have your

15 amendment.  So you're standing on your complaint.

16             MR. OBERLANDER:  All right.  As to

17 personal jurisdiction and conspiracy theory, all

18 right, the -- there has been an affidavit filed in

19 connection with the reply brief alleging acts

20 occurring both in 2005 and 2007 which support

21 conspiracy jurisdiction.  And once conspiracy

22 jurisdiction is established over all of the named

23 defendants, then while they may or may not be

24 necessary, none of them can be indispensable, because

1  by definition they would all be subject to

2  jurisdiction.

3           THE COURT:  Where in the complaint

4  is -- your -- your pleading in your complaint is that

5  from the get-go no one intended to honor this

6  contract; right?

7           MR. OBERLANDER:  No.  I'm sorry.  I

8  was going to get to that.  What my --

9           THE COURT:  So that's not in your

10 complaint.  So I -- I didn't read --

11          MR. OBERLANDER:  The way you phrased

12 it, I would have to say no.  I'm not being

13 pettifogging here.  The way you phrased it, I would

14 disagree.  That isn't my complaint.  I'm -- I --

15          THE COURT:  Okay.  Paragraph 57.  "at

16 the time of their execution of that contract" -- this

17 would be the November 10 contract -- "each and every

18 one of ... the Company; and ... the Company Entities;

19 had a secret intention never to honor those

20 obligations."

21          MR. OBERLANDER:  But -- but, Your

22 Honor, in the entire context of a complaint, I don't

23 believe -- I won't argue that it couldn't have be

24 written more clearly, but the complaint does state --

CHANCERY COURT REPORTERS

1   and I can state you the paragraph numbers to support

2   the following:  Here's what -- here's how that

3   complaint is structured.

4           THE COURT:  Paragraph 71:  "Secretly

5   (and therefore unknown to Kriss), each and every one

6   of the sellers never intended to honor the rights

7   conveyed to Kriss by those securities ...."

8           MR. OBERLANDER:  Absolutely.  But what

9   we're -- but there's a huge distinction here, a very

10  big distinction that -- that counsel for defendants

11  has glossed over, which is that there are -- to make

12  it simple, there are two separate contracts at issue

13  here.  There are actually 19 of them, but let's just

14  take two, one from the group of 18 and that agreement.

15          What we have here is the equivalent of

16  a TowerHill situation whereby --

17          THE COURT:  Will you stick to this

18  case and stick to your complaint?

19          MR. OBERLANDER:  The complaint says

20  that we signed the contract -- my client signed the

21  contract with them in which they said "We are now

22  giving you membership interests in 18 limited" --

23  well, "in all the limited liability companies known as

24  the company entities.  We're giving you right now

1  membership interest in them."

2           The complaint then says we're suing

3  those companies issuing those interests because some

4  of those companies absolutely did issue the interest

5  but intended, after issuing them, never to honor the

6  obligations conveyed by those interests.  And the

7  obligations conveyed by those interests are running

8  through the limited liability company agreements of

9  those companies.

10          What we have here is Mr. Kriss signed

11  a subscription agreement, except he provided services

12  instead of money; but in return for that he was given

13  stock in some number of company entities.  Out of that

14  number a subset -- it was completely effective.  He

15  got the stock, but we claim that the companies giving

16  him the stock intended never to honor the dividend

17  rights.  Now, since it's an LLC, we'll say they gave

18  him membership interests, intending never to honor any

19  of the rights and obligations, including

20  distributions, but it would be the same concept.

21          So what that complaint doesn't say,

22  when Bayrock, the parent company, entered into this

23  contract, it had a secret conspiracy with its managers

24  and with its 18 controlled subsidiary-related

1  companies.  And pursuant to that conspiracy, it would
2  cause all 18 of them to issue stock to him, but the 18
3  of them would then -- excuse me; membership interest,
4  but the 18 would then, although he would now be bound
5  by their limited liability company agreements, the 18
6  of them would never honor them.
7              Now, at the time we assumed, because
8  of evidence that we would produce at trial, we assumed
9  that some of the 18, they legally ineffectively
10  couldn't actually make the transfer of interest
11  because they didn't have the power and some they did.
12  That complaint has been misrepresented.
13              Counsel in their opening brief in
14  support of the motion to dismiss says that we have
15  alleged in paragraph 39 that the document -- that the
16  November 10th subscription agreement, employment
17  agreement, call it what you will, they say that in
18  paragraph 39 we claim it was legally ineffective as to
19  convey membership interests in any of the other
20  companies.  That is absolutely not the case.
21              What happened is, I was advised we
22  cannot do fictitious pleading in Delaware.  So
23  paragraph 39 of that complaint says that there is a
24  group of companies, a subset of company entities --

1    and we will call that subset Class A.  As to those,

2    they had no power to convey the membership interests

3    and, therefore, perpetrated a fraud, and those

4    companies participated in the fraud along with

5    Bayrock.

6                    As to all the other companies not in

7    Class A, they had the right, did give him -- and if

8    you look at paragraphs 108 and 110, I believe, you

9    will see that we affirmatively allege as to Bayrock

10   Whitestone and as to Bayrock Spring Street that he was

11   instantly made a member of them.  And that's why there

12   are derivative pleadings based on them.

13                   So when Your Honor said to me are we

14   basically saying the November 10th contract was

15   intended not to be honored, the answer is absolutely

16   not.  Not only that, we are simply -- everything we

17   are doing in this Court -- that we intend to do in

18   this Court and that we want to do in this Court

19   relates to claims of breaches of the limited liability

20   company agreements and not of that November 10th

21   contract.  That's why I cite to Parfi, to TowerHill,

22   to all of the cases involving dueling contracts.

23                   This case is about -- and secondly --

24   if you will forgive me, let me backtrack.  Secondly,