UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

UNITED STATES                                    :
                                                 :
                              Plaintiff,          :       98 CR 1101(ILG)
                                                 :
                  -against-                       :       **TO BE FILED UNDER**
                                                 :       **SEAL**
JOHN DOE,                                         :
                                                 :
                              Defendant.          :
                                                 :
                                                 :
                                                 :
-------------------------------------------------------------------- :
                                                 X


## MOVANT JOHN DOE'S
## MEMORANDUM OF LAW IN SUPPORT OF PERMANENT INJUNCTION


MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Tel: 212.309.6000

Attorneys for Movant John Doe

## PRELIMINARY STATEMENT

For over eleven years, John Doe provided extraordinary cooperation to multiple United States law enforcement and national security agencies in connection with dozens of cases involving organized crime, securities fraud, and ▓▓▓▓▓▓▓▓▓▓ Because of the significance and extreme sensitivity surrounding some of those investigations, including matters of national security, this Court sealed Mr. Doe's entire criminal file, docket number 98 CR 1101 (the "Criminal Matter"). The release of information confirming Mr. Doe's cooperation would endanger not only his life, but also the lives of his family members.

Respondents, and non-parties affiliated with Respondents, now have copies of at least six documents prepared or filed in connection with the Criminal Matter (the "Documents"[1]) and, Respondents have made clear their intention to use them in unrelated civil litigation, *Kriss et al. v. Bayrock Group LLC et al.*, No. 10 CV 3959 (the "SDNY Action"). But they have not followed any permissible route of filing an application to lift the seal. Instead, Respondents obtained the Documents through the most questionable of circumstances and now claim that the Court has no authority to restrict their use of the Documents. They seek to capitalize on the fact that non-party Joshua Bernstein – a former Bayrock analyst who admits taking thousands of

---

[1] The Documents include (1) a cooperation agreement dated December 10, 1998 between John Doe and the government and attachments thereto, including, but not limited to, a United States Department of Justice Financial Statement dated December 10, 1998 (the "Cooperation Agreement"); (2) two proffer agreements, dated October 29, 1998 and October 2, 1998, respectively, concerning Mr. Doe's cooperation (the "Proffer Agreements"); (3) a Complaint and Affidavit In Support of Arrest Warrants against, among others, John Doe (filed under Docket number 98-754M) (the "Criminal Complaint"); (4) a draft of an information (the "Information"); and (5) a 2004 Presentence Report (the "PSR"). The Cooperation Agreement, the Complaint and a final version of the Information were filed under seal with the Court. The Proffer Agreements were not filed with the Court, but Movant includes them in the request for relief because the Proffer Agreements concern the cooperation provided by Mr. Doe in the underlying sealed matter and were part of his private attorney-client privileged file that he kept in a locked drawer. As for the PSR, the Court has already issued a permanent injunction against the dissemination of the information contained in the PSR and ordered the return of the all copies of the PSR to the United States Attorney's Office. *See* Transcript of June 21, 2010 Hearing ("Tr."), attached as Exhibit 1 to the Declaration of Brian A. Herman In Support of Permanent Injunction, dated July 1, 2010 ("Herman Decl."), at 89-91.

FILED UNDER SEAL

documents from Bayrock when he was fired – took Mr. Doe's "Personal and Confidential" files without permission and then passed them to his lawyer, Fred Oberlander in the dark of night.

Mr. Oberlander, who to this day continues to question whether any of the Documents are sealed, Tr. at 61, argues that the Court's authority to seal materials is limited to courthouse personnel, Tr. at 56-57, and suggests that because Mr. Bernstein took the Documents before Mr. Bernstein retained Oberlander, Oberlander may use the Documents however he sees fit.

There is no support in law or logic for this proposition. When documents are sealed, the public is precluded from accessing the documents unless and until the Court says otherwise. Respondents cannot get the sealed Documents by logging onto PACER, Tr. at 38, or by asking the clerk, Tr. at 36. They should not be able to get the Documents from Mr. Bernstein who obtained them illegally, and certainly should not benefit from his illegal actions. If Mr. Bernstein had stolen the Documents from the clerk's safe, Respondents would not be allowed to use them. The result should not change simply because the Documents were taken from Mr. Doe's private desk drawer. The only appropriate remedy is for the Court to issue an order (1) directing that the Documents taken from Mr. Doe and any copies thereof be returned to the Court or destroyed, and (2) permanently enjoining the dissemination of the sealed information contained therein.

3

# FACTS

## The Parties

The Court is well-acquainted with John Doe. Because of the nature of his cooperation and the danger he might be in if his cooperation was known, the entire docket in the Criminal Matter remains under seal. *See* Herman Decl., Exh. 2.

During the period 2003 through 2008, Mr. Doe worked at a real-estate development company known as Bayrock, along with Respondents Jody Kriss and Michael Ejekam, as well as Josh Bernstein. *See* Herman Decl., Exh. 3 at ¶ 22. Thereafter, Messrs. Kriss, Ejekam and Bernstein each left Bayrock, each filed lawsuits against Bayrock, and each are (or were) represented by Mr. Oberlander.

## Josh Bernstein Took the Documents From Mr. Doe Without Permission

Mr. Oberlander was given the Documents by Josh Bernstein. Tr. at 8. The uncontroverted evidence demonstrates that Mr. Bernstein took the Documents from Mr. Doe without permission.

Specifically, Mr. Doe testified that while he was at Bayrock, he kept a personal file in his desk drawer containing the Documents. Mr. Doe further testified that the file was labeled "Personal and Confidential," and the drawer was locked unless he was in a meeting in the office or running to the bathroom or out to lunch. Tr. at 95. Mr. Doe also testified that he never gave the Documents to Mr. Bernstein, that he never scanned the Documents (*i.e.*, converted his paper files to electronic files), and that he never gave the Documents to anyone to scan. Tr. at 97, 105, 107. As Mr. Bernstein has the Documents and Mr. Doe did not give them to him, the **only** conclusion is that Mr. Bernstein took the Documents without permission. Mr. Doe cannot be denied a legitimate expectation of privacy in the contents of a file clearly marked "Personal and

4

Confidential" and kept in a locked drawer because a coworker went snooping through his desk and stole sealed and confidential documents.

Although counsel for Mr. Oberlander indicated that Mr. Bernstein would "readily submit" an affidavit stating Mr. Doe gave the documents to Bernstein voluntarily (Herman Decl., Exh. 4 at ¶ 17), and Mr. Oberlander himself declared "I verily believe . . . [Mr. Bernstein] would agree to submit an affidavit that would describe how he obtained the documents at issue . . ." (Herman Decl., Exh. 6 at "Exhibit A," ¶ 5 thereto), Mr. Bernstein ultimately refused to provide any evidence whatsoever[2] and, at the Hearing, counsel for Mr. Oberlander stated that Mr. Bernstein "isn't going to cooperate. " Tr. at 114. Thus, all Respondents have offered on this point is inadmissible hearsay that Mr. Bernstein told Mr. Oberlander, or his father, Arnold Bernstein, told Oberlander's counsel, that the documents were provided voluntarily. Tr. at 20. That claim is simply not credible. Why would Mr. Doe, who guarded these Documents, spontaneously give them to a junior analyst in his employ?[3]

### Bernstein Gave the Documents to Oberlander Under Highly Questionable Circumstances

The following timeline of events leading up to the use of the Documents in the SDNY Action supports an inference that Mr. Oberlander is using or working with Mr. Bernstein to

---

[2] Counsel for Mr. Doe attempted unsuccessfully on June 15, June 16, and June 17 to serve Mr. Bernstein with a subpoena for him to appear at the June 21 Hearing.

[3] Mr. Oberlander raises a number of irrelevant points to distract the Court. For example, Mr. Oberlander offers evidence that that Mr. Doe directed Mr. Bernstein to make a backup of a server. But there is no evidence the Documents came from this server backup, and even if there were, there is no support for the proposition that an employee asked to make a backup during the course of his employment is entitled to use and distribute documents from that backup for his own personal benefit or keep the backup after he is fired.

Respondents also offer metadata showing that Mr. Bernstein's copies of the Documents were scanned on or around December 26, 2007. But Respondents do not offer any evidence concerning who scanned the Documents or whether it was done with permission.

Finally, Respondents ask questions about whether Mr. Doe locked his office drawer or whether others could see into the office. Tr. at 104. Again, this is irrelevant. If Oberlander claims the Documents were given voluntarily by Doe to Oberlander, then it makes no difference if his office door were locked or the office had windows.

FILED UNDER SEAL

pursue litigation against Bayrock using documents and information unlawfully taken by Bernstein.

- 2009: Kriss sues Bayrock and Doe in Delaware (the "Delaware Action"). Oberlander represents Kriss.

- 2009: Bernstein sues Bayrock in New York state court (the "Bernstein Action"). He claims that Bayrock failed to reimburse him for travel expenses and owes him certain compensation. *See* Herman Decl., Exh. 5 at ¶ 3 thereto.

- February 19, 2010: The Delaware Chancery Court issues an order dismissing the Delaware Action in light of an arbitration clause in Kriss's employment agreement. (The Court had indicated an intent to dismiss at oral argument in September 2009.) *See* Herman Decl., Exh. 6.

- February 28, 2010–March 1, 2010: Oberlander meets Bernstein at an apartment in Manhattan. Bernstein provides Oberlander a copy of the Documents. The meeting takes place after midnight on Sunday, approximately 100 miles from Oberlander's office in Montauk. Tr. at 10. Though Mr. Bernstein purportedly waived privilege, Mr. Oberlander refuses to answer whether he suspected the Documents may have been stolen. Tr. at 22.

- March 3, 2010: Bernstein emails the Documents to Oberlander. Tr. at 12.

- March 5, 2010: Julius Schwartz, a Bayrock executive, is scheduled to be deposed in the Bernstein Action. Oberlander – who has not entered an appearance in the Bernstein matter – shows up to take the deposition, which continues for two days. *See* Herman Decl., Exh. 7.

While Bernstein's claims concern compensation and reimbursement for expenses, Oberlander asks questions relevant to the soon-to-be-filed SDNY Action, including questions about Jody Kriss's employment agreement, Herman Decl., Exh. 7 at 45; John Doe's employment agreement, *id.* at 52; whether monies paid to Doe were a loan or compensation, *id.* at 71; whether Bayrock characterized payments to Doe as compensation for tax purposes, *id.* at 76; whether Jody Kriss was held out as a member of Bayrock, *id.* at 86; tax treatment issues, *id.* at 111; and loan agreements between Bayrock entities, *id.* at 118, etc.

When counsel for Mr. Schwartz objects to Oberlander marking as an exhibit a privileged communication between Schwartz and his attorney, Oberlander represents that such documents had been used in the Delaware Action on behalf of Mr. Kriss and then threatens that the documents would soon be used again: "**It is also in a complaint that you're about to be served with.**" *Id.* at 129 (emphasis added). This is a clear reference to the SDNY Action.

6

- March 8, 2010: Josh Bernstein is deposed, with Mr. Oberlander representing him. Bernstein admits that when he was fired he took "[v]arious documents. Thousands of different e-mails and such." *See* Herman Decl., Exh. 8 at 219.

- March 9, 2010: John Doe is deposed in the Bernstein Action. Oberlander again appears on behalf of Bernstein.

- May 10, 2010: Oberlander files the complaint in the SDNY Action (the "SDNY Complaint"), containing quotes and references to the Documents taken by Bernstein as well as quotes from the transcripts of the depositions of Schwartz and Doe from the Bernstein Action. *See, e.g.*, Herman Decl., Exh. 3 ¶¶ 204 at note 7, 229, and 773. The SDNY Complaint includes not just the Documents taken from Mr. Doe but also numerous privileged communications between Bayrock and its attorneys. Bayrock has filed an application with Judge Buchwald based on this improper use of privileged documents. *See* Herman Decl., Exh. 9.

This record demonstrates that Mr. Oberlander is using Mr. Bernstein, the depositions from the Bernstein Action, and materials provided by Bernstein, including the Documents, as tools in the SDNY Action on behalf of Messrs. Kriss and Ejekam.

## Oberlander Publicly Filed the SDNY Complaint

On May 10, 2010, Oberlander filed the SDNY Complaint referencing the Documents and attaching copies of the Cooperation Agreement, PSR, and Proffer Agreements. Mr. Oberlander typed and signed the complaint, Tr. at 72-73, and Mr. Kriss signed a verification.

Prior to filing the SDNY Action, Mr. Oberlander made an application to the Part I Judge to seal the complaint. *See* Herman Decl., Exh. 10. The application indicates Oberlander's understanding that the act of sealing removes documents from public access. On or around that date, Mr. Oberlander also reviewed the Electronic Case Filing Rues & Instructions (the "ECF Rules"), which instruct that an attorney must exercise caution when filing documents referencing cooperation.

## Proceedings before the Court

On May 18, 2010, upon the application of Mr. Doe, the Court issued an Order to Show Cause for Preliminary Injunction and Temporary Restraining Order (the "OSC") as to why an

7

order should not be issued requiring Respondents and any other persons who have acquired the "Sealed and Confidential Materials"[4] to immediately return said documents to Mr. Doe. The OSC restrained and enjoined Messrs. Kriss, Ejekam and Oberlander from disseminating the Sealed and Confidential Materials or information therein further and to give evidence as to how they obtained the Sealed and Confidential Materials and to whom said materials have been disseminated. After two adjournments, the Court held a hearing on the OSC on June 21, 2010 (the "Hearing"). The Court heard testimony from Messrs. Oberlander, Kriss and Doe, and issued an Order permanently enjoining the dissemination of the information contained in the PSR and directing all copies of the PSR be returned to the United States Attorney's office. Tr. at 88-92.[5] The Court also modified and extended the Temporary Restraining Order to include the Criminal Complaint and the Information pending a decision on the present motion.

---

[4] The "Sealed and Confidential Materials" is defined in John Doe's Memorandum of Law In Support of Order Directing Return of Sealed and Confidential Materials dated May 18, 2010 ("Movant's Opening Brief") as the Cooperation Agreement, the PSR, and the Proffer Agreement dated October 2, 1998. Movant subsequently learned that Mr. Bernstein had taken additional documents.

[5] In a separate order on June 25, 2010, the Court directed non-party Joshua Bernstein to immediately return all copies of the PSR to the United States Attorney's Office and identify in writing to Mr. Doe's counsel the names of anyone other than Mr. Oberlander to whom he has provided copies. That order was served on June 25, 2010. To Movant's knowledge, Mr. Bernstein has not responded.

FILED UNDER SEAL

## ARGUMENT

I.  **SEALED DOCUMENTS MAY NOT BE ACCESSED WITHOUT A COURT ORDER**

The Court has issued an order sealing the file in this criminal matter. The sealing order, which is attached to each sealed document in the form of a sealing cover sheet, states: "ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT."[6] *See* Herman Decl., Exh. 11. The order does not state that it is limited to Court personnel or the parties to the criminal action, and there is no authority stating that seal orders are so narrowly construed.

As this Court explained, a sealing order applies globally as the Court would obviously not know in advance who might want to review the file. Tr. at 59. Further, "when a case is declared to be a case filed under seal it directs court personnel that this case is not to be made available to anybody except under court order, which means in effect that it is globally unavailable to anybody unless a court orders it, directs it to be unsealed." Tr. at 57. Here, the sealed Documents "were clearly intended to remain sealed and clearly intended not to be available for public distribution or even public viewing by *anybody* unless by virtue of a court order unsealing those documents." Tr. at 17 (emphasis added). Thus it is of no moment that the sealing order was not specifically directed to Mr. Oberlander by name.

---

[6] Similarly, the sealing envelope used in the Southern District of New York reads: ORDERED SEALED AND IMPOUNDED AND PLACED IN A SECURED AREA IN THE CLERK'S OFFICE AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT. In light of Mr. Oberlander's application before Judge Wood on May 10, 2010, Tr. at 60, he was clearly aware that a seal order would convey a very clear message that that the documents are unavailable for public or general disclosure.

9

Importantly, while Oberlander and Kriss may not have had a copy of the seal order when they filed the SDNY Complaint, they were well aware of its existence.[7]

Herman Decl., Exh. 3 at ¶ 96. Mr. Kriss similarly believed that the documents were sealed when he verified the complaint. Tr. at 110.

In an attempt distance himself from the taint associated with publishing sealed Documents and documents referencing Mr. Doe's cooperation, Oberlander submits that the words in the SDNY Complaint are only those of his clients, Jody Kriss and Michael Ejekam, and therefore the concession in paragraph 96 of the SDNY Complaint – which he typed – in no way reflects his personal knowledge of this fact. That is simply not credible, particularly as Mr. Oberlander gave the documents to Mr. Kriss and Mr. Kriss understood that they were sealed. (Counsel for Ejekam represents that he never even saw a draft of the complaint referencing the Documents or the Documents themselves.)

Mr. Oberlander's claim that the ECF Rules gave him carte blanche to publicly file documents reflecting cooperation with the government similarly strains credulity. Rule 21.3 of the ECF Rules provides a list of items that must be redacted under the Federal Rules of Civil

---

[7] During his testimony, Mr. Oberlander acknowledged that, had the Part I judge granted his motion to seal the Complaint, it would have precluded further dissemination of the document. Tr. at 60.

FILED UNDER SEAL

Procedure and Federal Rules of Criminal Procedure. Rule 21.4 then provides: "Is there other sensitive information that I should consider redacting? Yes. Caution should be exercised when filing documents that contain" among other things, medical records, trade secrets, driver's license numbers and documents regarding cooperation with the government. Rule 21.5 then states that a filer may file an unredacted copy of sensitive information under seal or alternatively may file a reference list of the redacted information. No reasonable person would read these rules about exercising caution as somehow granting permission to publicly file unredacted sensitive information such as medical records, financial information or documents reflecting cooperation.

## II.   THIS COURT HAS THE POWER TO ORDER THE RETURN OF THE DOCUMENTS AND PERMANENTLY ENJOIN ANY FURTHER DISSEMINATION THEREOF

This Court has the clear authority to order persons in possession of sealed documents to return those documents. This power exists whether or not the persons in possession of the sealed documents acted improperly.

This precise issue was addressed in *United States v. Visa U.S.A., Inc.*, No. 98 Civ. 7076, 2000 WL 1682753 at *1 (S.D.N.Y. Nov. 9, 2000), an antitrust action in the Southern District of New York. There, the Department of Justice inadvertently posted sealed information on its website. The information was downloaded by several parties including attorneys prosecuting a separate civil action against Visa in the Eastern District of New York colloquially referred to as the *Wal-Mart* litigation. Judge Jones held that "**third parties who gain access to sealed material inadvertently disclosed cannot be allowed to retain those documents.**" *Id.* (emphasis added). Recognizing that "there is no use having such an order in a case if it does not protect the parties from disclosure of this sort," the court ordered all third parties in possession of the documents to "return or destroy" them "as well as any documents reflecting the confidential

11

information contained therein." *Id.* The court further ordered that, to the extent that a third party

was aware that its actions caused any other person to come into possession of copies of the

documents, the third party would have to ensure that such documents were destroyed or returned.

*Id.*

Under *Visa*, even if the Court accepts that Mr. Oberlander is an innocent third-party

recipient of the Documents, the Court has the authority to direct the return or the destruction of

the sealed documents. Just as Judge Jones denied the civil *Wal-Mart* attorneys the ability to use

the sealed documents in *Visa* notwithstanding their innocent receipt of the documents, this Court

should not permit Mr. Oberlander to use the sealed Documents in his civil suit or for any other

purpose.[8]

*Visa* alone is ample authority for an order directing the return of the Documents. But it

hardly stands alone. Other courts have also granted similar relief where documents were obtained

through improper means. As this Court previously noted, if Mr. Oberlander received a check in

the mail that was intended for his neighbor, he would have no right to cash it. His rights are no

better if the check was deliberately taken from the neighbor's mailbox and then presented to him

as a gift.

In *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 419 (E.D.N.Y. 2007), documents

produced by Elli Lilly in civil litigation were sealed pursuant to a protective order. An expert for

the plaintiff, a reporter, and an unaffiliated attorney devised a scheme for the reporter to obtain

the documents by commencing new litigation and subpoenaing the expert who then produced the

documents. They then disseminated the documents to others.

---

[8] *See also In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 69, 70 (S.D.N.Y. 2007) (ordering return of documents that
were disclosed by counsel in violation of protective order).

FILED UNDER SEAL

In considering a motion by Elli Lilly for an injunction to recover its documents, the court examined its power to enforce its own orders, recognizing that "[c]ourts have the inherent authority to enforce their orders," *id.* at 417 and that "[r]ecovering stolen documents obtained in violation of a court discovery order when needed to protect a party to a litigation is well within the equitable power of federal district court." *Id.* at 419. Indeed, such power "is a necessary prerequisite to the administration of justice; without it, courts would be ill-equipped to ensure the rule of law in a democratic society." *Id.* at 418. After carefully balancing the interests of the parties (including First Amendment arguments, which we address below), the court issued an injunction so as to prevent the irreparable harm that dissemination of the documents would cause. *Id.* at 425. Consistent with *Visa*, the injunction in *Zyprexa* was not limited to parties that took the documents. *See id.* at 428. Rather, it extended to numerous downstream recipients, which the court determined was necessary in light of the "risk of irreparable harm to petitioner that cannot be alleviated by means other than an injunction." *Id.* at 427.[2]

In accordance with *Visa* and *Zyprexa*, Mr. Doe has established that he is entitled to injunctive relief requiring all persons in possession of the Documents to return, and not further disseminate, the Documents, and identify any other individuals to whom the Documents have been transmitted to ensure that such individuals have notice of the Court's order. To obtain a permanent injunction, a movant must show: (1) irreparable injury; (2) no adequate remedies available at law; (3) taking the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

---

[2] The court did not enjoin certain websites that had obtained the documents, concluding that "[a] more effective use of the court's equitable discretion is to impose restraints on the individuals who pose the greatest risk of harm to Lilly-those who have not returned the documents despite knowledge that they were illegally procured." *Id.* at 426.

13

FILED UNDER SEAL

permanent injunction. *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006); *see also Zyprexa*, 474 F. Supp. 2d at 418. All of those requirements are satisfied here. As in *Zyprexa*, the Documents were taken by Mr. Bernstein without permission. They were then passed to Mr. Oberlander under highly questionable circumstances for use in concerted litigation against Bayrock and Mr. Doe, and published notwithstanding knowledge of the seal order. Respondents have no property rights in the purloined documents, *see Zyprexa* at 425, and if not enjoined, Respondents will disseminate and/or use the Documents in civil litigation. An injunction is necessary to protect Mr. Doe and his family from the irreparable harm this will cause.

III.  **AN ORDER DIRECTING THE RETURN OF THE DOCUMENTS AND ENJOINING FURTHER DISSEMINATION DOES NOT IMPINGE ON RESPONDENTS' RIGHTS**

Mr. Oberlander has argued that he has a Constitutional right to use the documents under *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991), and that the Court is powerless to grant relief under *Alemite MFG Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930). Tr. at 77. Protection under the First Amendment, however, is not absolute in any context, and in the present circumstances – where the disclosure of the Documents would threaten Mr. Doe's life and the life of his family members – Mr. Oberlander's argument rings hollow.

In *The Washington Post v. Robinson*, a newspaper challenged a refusal by a magistrate to release the plea agreement of former Washington DC mayor, Marion Barry. The court considered the procedures for sealing plea agreements, the rights of public access to plea agreements and the circumstances when it might be appropriate to deny public access to plea agreements. *Washington Post* is limited to plea agreements, and provides no basis for releasing proffer agreements, cooperation agreements, sealed criminal complaints or an information, particularly where the release of such documents would likely endanger the life of the

14

cooperator.  Moreover, Mr. Oberlander is not the Washington Post.  He is a civil lawyer prosecuting a private claim for money damages to benefit civil litigants.  Thus, this case does not implicate the same public interests as the plea agreement of the mayor of Washington.

Moreover, *Zyprexa* demonstrates that an injunction is not an impermissible restraint on Mr. Oberlander's rights.  In enjoining the dissemination of sealed documents in that case, Judge Weinstein rejected claims that the First Amendment was impinged upon.  In issuing the injunction, the court concluded that its restriction was content neutral in that it "does not depend on the nature of the content of idea that the enjoined individuals wish to express but only on the materials that would be the medium of expression." *Zyprexa*, 474 F. Supp. 2d at 423.  Further, the court stated:

> In granting this injunction, the court has balanced the harm to petitioner if relief is denied against the harm to respondents if relief is granted. . . . The harm imposed by the injunction is minimal. They are required to return stolen documents over which they enjoy no property rights. . . Their freedom of speech is not impinged upon.

*Id.* at 425.  The same conclusion is compelled here.  Mr. Doe's interest in avoiding release and use of documents reflecting his cooperation heavily outweigh Mr. Oberlander's desires to use documents, taken without permission, in private civil litigation.

Moreover, as the Court observed in *Zyprexa*, to the extent Mr. Oberlander believes he has a right of access to the Documents, he was entitled to make a motion and argue that the public interest outweighed the need for nondisclosure. *Id.* at 425.  He made no such motion, choosing instead to invoke self-help.  The law does not permit this.

Finally, *Alemite*, does not preclude this Court from issuing an injunction.  In *Alemite*, the Court addressed whether a person not party to patent litigation resulting in an injunction against infringement could be fined for contempt based on later infringement.  Nothing in *Alemite*

15

precludes this Court from issuing a prospective order requiring Respondents to return the Documents to the Court. Indeed, as the court in *Zyprexa* noted: "Unlike *Alemite* . . . this proceeding seeks to prevent irreparable harm to [petitioner] by enjoining those persons whose actions threaten such harm." 426 F. Supp. 2d at 426.

## CONCLUSION

For all of the foregoing reasons, the Court should issue a permanent injunction requiring Respondents, Mr. Bernstein and any others who have received the Documents or information contained therein from Respondents and Mr. Bernstein,[10] to:

1. Return to the Court or destroy all copies of the Documents obtained by or through Mr. Bernstein;

2. Return to the Court or destroy all copies of documents and communications incorporating information obtained from the Documents; and

3. Desist from disseminating the Documents or information obtained therefrom.

In the event the Court grants the requested relief, and deems it appropriate, Movant will make a separate application for fees and costs incurred in connection with Respondents' use of, and refusal to return, the Documents.

---

[10] Mr. Oberlander has identified at least the following individuals or entities as having the Documents: (1) Joshua Bernstein; (2) Arnold Bernstein; (3) Gerry Feinberg; (4) Jody Kriss; (5) Ron Kriss; (6) Stamatios Stamoulis; and (7) Wilson Elser Moskowitz Edelman & Dicker LLP. Tr. at 15.

16

FILED UNDER SEAL

Dated:  New York, New York

      July 1, 2010

                            MORGAN, LEWIS & BOCKIUS LLP

                            By _____
                                 Kelly Moore (KM 4839)
                               Brian A. Herman (BH 0731)

                            101 Park Avenue
                            New York, New York 10178-0060
                            Phone:  212-309-6000
                            Fax:  212-309-6001

                            *Attorneys for John Doe*

FILED UNDER SEAL