1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - - - -X
 3
     UNITED STATES OF AMERICA,           :    98-CR-1101
 4
                     v.                  :    U.S. Courthouse
 5                                            Brooklyn, New York
     JOHN DOE,                           :
 6                                            June 14, 2010
                     Defendant.          :    12:00 o'clock p.m.
 7
     - - - - - - - - - - - - - - - - - -X
 8

 9                     TRANSCRIPT OF MOTION HEARING
                    BEFORE THE HONORABLE I. LEO GLASSER
10                     UNITED STATES SENIOR JUDGE

11   APPEARANCES:

12
13   For the Movant:              KELLY MOORE, ESQ.
                                  BRIAN HERMAN, ESQ.
14
     For the Respondent:          RICHARD E. LERNER, ESQ.
15                                LAUREN ROCKLIN, ESQ.

16   For Non-Party Movant:        STAMATIOS STAMOULIS, ESQ.

17
     Court Reporter:              Anthony M. Mancuso
18                                225 Cadman Plaza East
                                  Brooklyn, New York 11201
19                                (718) 613-2419

20

21

22
     Proceedings recorded by mechanical stenography, transcript
23   produced by CAT.

24

25
```

ANTHONY M. MANCUSO,   CSR   OFFICIAL COURT REPORTER

1       (Case called; both sides ready.)
2       MS. MOORE:  Kelly Moore and Brian Herman for the
3   movant, John Doe.
4       MR. LERNER:  Richard Lerner of Wilson Elser and
5   Lauren Rocklin for nonparty respondent Frederick Oberlander.
6       MR. STAMOULIS:  Stamatios Stamoulis for Jody Kriss
7   and Michael Ejekam, nonparty movants.
8       MS. MOORE:  Your Honor, we have received the letter
9   of this morning written by Mr. Lerner accusing me of an
10  ethical violation, based on a conversation that I had with
11  Mr. Stamoulis.  As an initial matter, I completely disagree
12  with the characterization of the description of that
13  conversation to which Mr. Lerner was not a party and I believe
14  that if the court were to inquire of Mr. Stamoulis he would
15  advise the court that that description is completely
16  inaccurate.  No threats whatsoever, implicit or explicitly,
17  were made during the course of that conversation.
18      THE COURT:  All right.
19      MR. LERNER:  I will withdraw it based on Ms. Moore's
20  representation to the court.
21      THE COURT:  What was the basis for making that
22  representation to begin with?
23      MS. MOORE:  An e-mail to me which indicated that
24  Ms. Moore had stated to Mr. Stamoulis that the Eastern
25  District attorney was watching this case and that quote there

3

1  may be indictments and coupled with the settlement proposal
2  offered by Ms. Moore.
3         MR. STAMOULIS:  Your Honor, if may speak to that?
4  I'm Mr. Stamoulis.  I had a very friendly conversation with
5  Ms. Moore that I initiated on behalf of my clients, Mr. Ejekam
6  and Mr. Kriss.  Actually, the reason why I called her is to
7  advise her that Mr. Ejekam was in Africa and there not be any
8  surprise that he was not going to be present to give any
9  testimony here today.
10        That led to a conversation and during that
11 conversation Ms. Moore just gave me information.  When I put
12 the information that she gave me into an e-mail, the tenor and
13 the tone of the conversation didn't translate and I can see
14 why my e-mail could have been misconstrued and it lacked the
15 context.
16        MR. LERNER:  So I apologize to Ms. Moore and the
17 court.
18        THE COURT:  Let me tell you, Mr. Lerner, I read your
19 letter.  I came in rather late this morning, after attending a
20 funeral.  But my recollection is that I have alerted the
21 United States Attorney to this proceeding.  I don't know
22 whether Ms. Moore did or didn't, although I have a
23 recollection of saying cc to Mr. Kaminsky who is an Assistant
24 United States Attorney because I was concerned with the
25 integrity of documents which were sealed and having read some

ANTHONY M. MANCUSO, CSR  OFFICIAL COURT REPORTER

4

of the things which were annexed to the complaint which clearly reflected that portions of presentence report was divulged, that a cooperation agreement, portions of which may have been divulged.  Those two documents, among others, which were sealed, were documents which if divulged, that is the contents, may seriously jeopardize not only the life of the person who was the subject of those documents.  In this case it might also significantly affect matters of national interest.

Now, I received a letter from you on Friday.  It was rather late in the afternoon.  I think it was approaching four o'clock.  I didn't want to respond to you ex parte and I wasn't about to sit down and start writing letters.  I tried to communicate or had my law clerk try and reach Ms. Moore so we could have a conference and that didn't happen.

Again, just as I was a little nonplused with the first letter that I received from you, which I made some comment about on Friday.  I don't think there's anything in my order, that is, the Temporary Restraining Order, the order to show cause, which would or could preclude a party to whom an order to show cause was addressed from conferring with his lawyer.  Nothing in my order which would even hint at precluding Mr. Oberlander, or anybody else to whom that order to show cause was addressed, from conferring with his lawyer. The Sixth Amendment, whether it's applicable or isn't

1  applicable, is irrelevant.  I don't know whether there would
2  have been any doubt about whether Mr. Oberlander can consult
3  with you and show you whatever it is that was relevant to the
4  order to show cause and that why you would need my consent for
5  that.
6              Now, with respect to your inquiries as to the order
7  which may have been issued, there is no formal order which I
8  believe is not issued by virtually any judge in this
9  courthouse with respect to sealing.  I notice the letter I got
10 from you says facsimile under seal and to the extent that I so
11 ordered it, I have tacitly approved it.
12             What happened in this case from the very first
13 document that was filed, it was filed clearly indicating a
14 sealed case.  And documents which are submitted to the court
15 from time to time are submitted in a white envelope and in
16 that envelope it says ordered sealed and placed in the clerk's
17 office and may not be unsealed unless ordered by the court.
18             The documents which are submitted to the court and
19 then placed in one of these envelopes are documents which by
20 virtue of their very content are documents which either affect
21 matters of national interest or would seriously endanger the
22 life of the object or subject of that communication or
23 significantly impede a significant criminal investigation.
24             So there is no formal order, and to the extent that
25 you want to know what that order said and to whom it was

1 addressed it's a request which has no merit. I can't make an
2 order sealing a document and saying this document is sealed
3 and not to be looked at by Mr. Lerner, Mr. Stamoulis. It's a
4 document which is placed under seal. It's filed under seal.
5 And if anybody wants to see what it is that has been filed
6 under seal, the procedure is to make an application to the
7 court to unseal it.
8     I have applications such as that presented to me
9 from time to time but I have never had an application asking
10 me specifically to file this document under seal beyond the
11 sealed letter envelope in which it comes, which clearly says
12 it's filed under seal.
13     This case was filed under seal from the very first
14 day it came into this courthouse. You can't look at the
15 docket sheet on ECF because it's sealed. I can look at it
16 because I'm an exception. So I can look at that docket sheet
17 and I looked at that docket sheet on Friday and the first
18 thing I saw was United States vs. John Doe, sealed case in
19 bold capital letters.
20     And then I looked down the docket sheet and I saw
21 about six docket entries which said these documents have been
22 docketed under seal. They were docket numbers five through
23 eight, eleven, thirteen, sixteen and seventeen. Filed under
24 seal. I don't know as I talk to you what those documents say.
25 I undoubtedly knew about it at the time because a copy of it

must have been provided to me. And to the extent that I agree that it should be filed under seal I tacitly, implicitly ordered it. But all of that is irrelevant.

The documents which were annexed to that complaint clearly reflected that they were sealed. And by the way, your reading of Charmer Industries leaves a little bit to be desired, with all due respect. You're correct in that Charmer Industries dealt with a probation officer who sent a Presentence Report with I believe the tacit approval of Judge Sifton at the time, who was the judge in that case. But if you read United States vs. Charmer through to its conclusion it would have been perfectly clear that Rule 32, notwithstanding, the court of appeals very clearly said presentence reports are not to be disclosed to anybody, besides the defendant, for reasons which are very fully explained in United States vs. Charmer.

All that aside, given a document which is plainly indicated on its face, filed under seal, that comes into the hands of a lawyer, at the very least that lawyer should have very serious doubt about doing anything with that document without first making appropriate inquiry about whether disclosing this document that was sealed is appropriate and should an order of unsealing or permission to use it be obtained.

Now, as I read what was annexed to that complaint,

8

there's no doubt that Mr. Oberlander was aware of the fact that these documents were sealed. There's no order that needs to be addressed to Mr. Oberlander and say, Mr. Oberlander, this is a sealed document, don't publicize it. It's obvious. And the mere fact that the contents of those documents, presentence report, cooperation agreement -- have you ever seen the cooperation agreement?

MR. LERNER: I have now, your Honor.

THE COURT: You have now.

And looking at that cooperation agreement and having looked at it now there's an awful lot of information in that cooperation agreement which is very sensitive, isn't there?

MR. LERNER: Yes, there is, your Honor.

THE COURT: And you would have some serious concern if you were the defendant -- if you were Mr. Doe, you would have some serious concern about having the information in that document sent out at large for anybody to see, wouldn't you?

And if you've ever have seen a presentence report --

And you would have only if you were representing a defendant in a criminal case. You would have no occasion to have seen it otherwise, unless the defendant voluntarily showed it to you.

-- you would know that that presentence report contains an awful lot of information which is very sensitive

1  and shouldn't be disclosed by anybody.
2          So when your letter asks me to show you what order
3  is directed to Mr. Oberlander, there isn't any.  What was
4  directed to Mr. Oberlander was a clear declaration in writing
5  this document is sealed, just as you filed this under seal and
6  this will be filed under seal.  It will be placed in the vault
7  of the clerk's office and nobody will see that unless an order
8  is submitted to me for signature unsealing it.
9          Okay.  I hope that answers some of the questions
10 that you've asked in your letters.
11         MR. LERNER:  May I address that, your Honor?
12         THE COURT:  I beg your pardon.
13         MR. LERNER:  May I address your Honor?
14         THE COURT:  By all means.
15         MR. LERNER:  We have obviously spent a long time
16 discussing this and we would like to now agree to the relief
17 sought in the order to show cause, which is identify from whom
18 he received the documents and to whom he gave the documents.
19 He will agree to return them.  And that is the only relief
20 sought and we will consent to it.
21         THE COURT:  He will now.
22         MS. MOORE:  I believe we sought more relief than
23 that.  We sought a hearing to get a better understanding of
24 exactly from whom he got them, what his understanding was
25 about where that person got them from.  Everything else under

1  oath.  Where they came from.  Everything we can do to further
2  plug up this hole and trace down who else may have these
3  documents.
4         I believe we also asked for attorneys' fees in
5  connection with having to make this motion in the first
6  instance.  But we do want an opportunity to question
7  Mr. Oberlander and the other respondents under oath to get a
8  better understanding of just how this happened to make sure it
9  doesn't repeat itself.
10        Our concern is for the life of our client and for
11 his safety.  We have a very murky picture right now and it may
12 require the court or us with a court order to subpoena
13 Mr. Bernstein so he can appear and take the stand and explain
14 how he obtained the documents.
15        I'm also concerned with the phrasing of Mr. Lerner's
16 comments just now in that I am concerned that Mr. Oberlander
17 fully intends to use the information contained in those
18 documents, even if he doesn't use the documents.
19        So I want to make it clear that our application also
20 includes information that was in those sealed documents that
21 also should not be further disseminated or used in any way
22 that we think could hurt our client.
23        MR. LERNER:  May I respond?
24        There's no request in this order to show cause on
25 the face of the order to show cause for attorneys' fees.  If

attorneys' fees are pursued, I simply cannot consent to that. Mr. Oberlander certainly doesn't have the money to pay Ms. Moore's attorneys' fees.

As far as use, I would suggest we take a short break and discuss with Ms. Moore the issue that she's presented.

THE COURT: I think I should take a minute, Mr. Lerner, to emphasize how seriously I regarded what brought this matter before me. When Mr. Doe appeared before me for sentencing, appearing before me also at that time on his behalf were fairly significantly placed members of a national law enforcement security agency. I should say agencies plural. The disclosure of the information annexed to that complaint was a disclosure of information which was reckless and significantly endangered the life of the person to whom that information related and that disturbed me no end because it behooved any lawyer -- forgetting about a lawyer -- anybody looking at a document which was clearly, clearly designed to be kept very confidential, to be very, very careful with not making that information and letting it float at large. I want to emphasize why it is that I have regarded and do regard this very seriously.

I'll give you a couple of minutes to talk to Ms. Moore.

(Recess.)

MS. MOORE: Your Honor, I don't believe we're going

12

1   to reach a resolution short of a hearing that we initially
2   requested and we still would like to have the respondent
3   testify.  We would also like to have Mr. Bernstein directed to
4   appear in court to testify so that we can get to the full
5   bottom of where these documents came from and who exactly has
6   them and who else may have them.
7            THE COURT:  Okay.
8            MR. LERNER:  We have no objection to Mr. Oberlander
9   testifying as to the items set forth in the order to show
10  cause, that is, where he got the documents from and to whom
11  they were given.  Beyond that we will object as no further
12  inquiry is relevant in our opinion, your Honor.
13           THE COURT:  Are you ready to proceed today or do you
14  need an adjournment for that purpose?
15           MS. MOORE:  Your Honor, I would prefer to do it all
16  at once so we get Mr. Bernstein as well, on Friday, if
17  possible.
18           THE COURT:  I suppose you will issue a subpoena for
19  Mr. Bernstein.
20           MS. MOORE:  Yes, we will present one for the court.
21           THE COURT:  Do you have another date in mind?
22           MS. MOORE:  Friday would work for us.
23           THE COURT:  Does that work for you, Mr. Lerner?
24           MR. LERNER:  May I check my calendar?  I know it's
25  the court's preference to do it all at once, and Ms. Moore's.

ANTHONY M. MANCUSO, CSR  OFFICIAL COURT REPORTER

1  Mr. Oberlander is prepared to testify right now.  His
2  testimony would be very brief, in accordance with what was
3  ordered.
4              THE COURT:  Why don't we do it all at once.
5              MR. LERNER:  Allow me to check my calendar.
6              MR. STAMOULIS:  I will say that I have trial in
7  Delaware on Friday.  I'm admitted to the Eastern District but
8  I practice primarily in Delaware.  Though my clients,
9  Mr. Ejekam and Mr. Kriss, it's going to be clear that they
10 were not the ones that obtained these documents or gave them
11 to Mr. Oberlander.  And to the extent that they even saw them
12 it was only in connection with the complaint, after it was
13 written.
14             I don't know if movant is going to seek to have
15 testimony from my clients or if we can settle that with an
16 interview and affidavits, especially for Mr. Ejekam who is in
17 Africa and will not be able to be here for a hearing.
18             THE COURT:  Why don't you work that out with
19 Ms. Moore.  There's nothing for me to address in that regard.
20 If their testimony is not necessary, if they can provide the
21 information you need by affidavit, I don't have any problem.
22             MR. LERNER:  My calendar is clear on Friday.
23             MR. STAMOULIS:  I have trial on Friday.
24             MR. LERNER:  Monday.
25             MR. STAMOULIS:  If you insist on Mr. Kriss

14

1 testifying?

2 MS. MOORE: I certainly insist on Mr. Kriss
3 testifying and, depending on affidavits, I may also insist on
4 Mr. Ejekam testifying. But Mr. Kriss is here. I do want him
5 to testify. There seems to be a conflict in footnote two of
6 the letter that Mr. Lerner said. Basically, what he's saying,
7 it was your client who was behind the documents being
8 published and we need to resolve that conflict.

9 MR. LERNER: Ms. Moore is confusing who
10 Mr. Stamoulis represents. Mr. Bernstein is not represented by
11 Mr. Stamoulis.

12 MR. STAMOULIS: Let me get my calendar.

13 MS. MOORE: Footnote two of the letter we just
14 received states: Doe harps on a portion of the racketeering
15 complaint brought against him that Mr. Oberlander admitted the
16 documents are sealed. The relevant allegation in the
17 complaint states no such thing as to the present or recent
18 past, but in any event the complaint is not Mr. Oberlander's
19 statement, it is his clients' statement. It is a statement of
20 their allegations, not his, and if they are judicial
21 admissions they are theirs, not his.

22 Those clients referred to in footnote two are
23 Mr. Kriss and Mr. Ejekam.

24 THE COURT: What letter are you referring to?

25 MS. MOORE: The letter we received this morning

ANTHONY M. MANCUSO, CSR OFFICIAL COURT REPORTER

15

1 accusing me of misconduct.
2    THE COURT: The letter dated June 14?
3    MS. MOORE: Yes, your Honor.
4    THE COURT: Reading from footnote two?
5    MS. MOORE: Yes, your Honor.
6    THE COURT: All right. We have Monday.
7    MR. STAMOULIS: Your Honor, I am available on
8 Monday. I could be here.
9    THE COURT: Ms. Francis.
10    THE CLERK: 10:30 works.
11    THE COURT: The 21st.
12    MR. LERNER: Thank you, your Honor. He.
13    MS. MOORE: Your Honor, we assume that the temporary
14 restraining order is still in place.
15    THE COURT: Yes, it is.
16    MR. LERNER: Can we address the contingency, if
17 Mr. Bernstein is not available via subpoena what we then do?
18    MS. MOORE: We'll contact the court if we need to do
19 anything at that point. We're hoping he is available. We may
20 go forward without him. We'll figure it out.
21    THE COURT: There's nothing about these proceedings
22 I don't believe that requires the record of these proceedings
23 to be sealed, unless there's something I'm missing.
24    MS. MOORE: Your Honor, his name is used. If we can
25 substitute John Doe for his name throughout, then there's no

ANTHONY M. MANCUSO, CSR OFFICIAL COURT REPORTER

16

1 need. I'm sensitive at this point to unsealing them until we
2 can possibly redact it or change it to make sure it's John Doe
3 throughout.
4       THE COURT: Mr. Lerner.
5       MR. LERNER: No objection as to referring to him as
6 Mr. Doe.
7       THE COURT: So ordered. Thank you.
8       MR. STAMOULIS: Thank you, your Honor.
9               ooooooOoooooo

ANTHONY M. MANCUSO, CSR  OFFICIAL COURT REPORTER