# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000   Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean*
*Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains*
*Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

November 23, 2010

**Via Facsimile Under Seal – (718) 613-2446**

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

RECEIVED
11/29/10
Chambers of
I. Leo Glasser
U.S.D.J.

Re:   **United States of America v. Felix Sater**
      **Case No.**        :      **98CR1101 (ILG)**
      **Our File No.**     :      **07765.00155**

Dear Judge Glasser:

I write in behalf of my client Frederick M. Oberlander, as I note attorney Kelly Moore's letter of November 16th, indicates that Mr. Oberlander terminated the standstill agreement. I ask that Your Honor now deem the proceedings before this court to be moot for the following reasons:

### (1) Prior Dissemination by Defendants not Subject to Restraint.



As Mr. Oberlander first determined a few weeks ago and then promptly informed Judge Buchwald in SDNY (who then perhaps informed Your Honor), the SDNY complaint, and thus all of the information that Sater seeks to squelch, has already been distributed to numerous individuals by defendant Bayrock Group's own general counsel, defendant Julius Schwarz.

4232342.1

A copy of defendant Schwarz's declaration, dated November 17, 2010 is annexed hereto as exhibit "A." Please note that Schwarz's declaration indicates that he received the complaint on May 12, 2010 (and not from Mr. Oberlander or any plaintiff or respondent herein, but from a Bayrock attorney, Ronald Kriss at the Akerman Senterfitt firm) via email, with those documents attached as well as the complaint. He then forwarded the complaint (and thus all of the extracts from the PSR contained therein) that same day to the listed individuals, all of whom received the complaint, although some were not forwarded all attachments.

In other words, the complaint (and thus all of the purportedly "confidential," "sensitive," and "sealed" information contained in the body of the complaint itself) was circulated by Bayrock's own general counsel before any order was issued restraining the further dissemination of the complaint or the documents at issue.



The information then alleges 6 RICO predicate crimes forming the RICO count Lauria pled to, the exact same 6, alleged the exact same way, as in Sater's information. In other words, if you have one information, you have the other.

Both Lauria and Sater pled guilty in 1998 and entered into cooperation agreements, both serving as co-cooperators, informing on and testifying against the organized criminals they had

---

[1] Five acts of securities fraud (Countryworld, Holly, US Bridge, Cable, Fun-Tyme) and one of money laundering.

worked next to, from 1998 through 2004, when they were finally sentenced, Lauria on February 5, 2004 and Sater presumably on or after the completion date of his PSR, June 2004. Both were "allowed" to evade mandatory restitution. The sentencing dates (originally both were to be sentenced together) were postponed eight times, each upon written request to Your Honor by an EDNY AUSA. For example, the following is one such letter – a matter of a very *public* unsealed record – asking for such a postponement: [See docket sheet and letter, collectively exhibit "C"]



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RECEIVED
4 30 02
CHAMBERS OF
...

EOC:dbp
F.#1998r01996
lauria-adj-ltr.wpd

*156 Pierrepont Street*
*Brooklyn, New York 11201*

April 29, 2002

<u>TO BE FILED UNDER SEAL</u>
<u>BY INTEROFFICE MAIL</u>

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

       Re:  United States v. Salvatore Lauria and
         <u>Felix Sater, Crim. Docket No. 98-1102 (ILG)</u>

Dear Judge Glasser:

       Salvatore Lauria and Felix Sater are scheduled to be sentenced by Your Honor this Wednesday, May 1, 2002.  For the reasons set forth below, the government respectfully requests that the sentencings be adjourned to September 17, 2002, at 10:00 a.m.

       The defendants pled guilty before Your Honor pursuant to cooperation agreements.  The information the defendants can provide with regard to the criminal activities of others has not been exhausted.  The government respectfully submits that the interests of justice and judicial economy will be furthered if the defendants' cooperation is exhausted prior to sentencing. Specifically, if the defendants are sentenced after their cooperation is complete, there will be no subsequent need to pursue relief under Fed. R. Crim. P. 35.  In addition to conserving resources, this approach will allow the Court the opportunity to impose upon the defendants a single, determinate sentence.

    As stated, Lauria was sentenced on February 5, 2004, and received extraordinary downward departure from the guideline recommendation of incarceration to 5 years' probation, community service, and a $20,000 fine he presumably paid with the $200,000 RICO proceeds he

was allowed to keep. As stated, although restitution was mandatory (Sater and Lauria's racketeering straddled the April 1996 effective date of the Mandatory Victim Restitution Act, and by 2004 Second Circuit had ruled that when such criminal activity straddles the effective date, the MVRA applies and restitution is mandatory. Yet although almost every one of the 19 or so co-defendants they informed on was sentenced to restitution, averaging into the millions, and in some cases in the tens of millions, Lauria was not ordered to pay restitution [Exh. "D"]

The number of violations of MVRA (and later CVRA, which the Second Circuit has ruled applies retroactively and is not an *ex post facto* law) is almost incalculable. This of course makes Lauria's plea bargain illegal and thus void, but it does more than that. Based on the Supreme Court's recent *Dolan* decision, any of Lauria's victims may still bring a motion before Your Honor for the imposition of restitution, and may mandamus Your Honor if such request were denied.

Assuming the SDNY complaint's allegations of Sater's evasion of restitution are accurate, and the preceding information is more than sufficient for any trier of fact to conclude such, the same would be true of Sater's plea bargain and his vulnerability to restitution.

In addition, both Lauria and Sater became civilly liable to all their victims – victims who had an absolute right to be notified of their conviction, not just because of the First Amendment right of access to docket sheets and judicial documents, most especially sentencing dispositions, but because of the mandates of federal law, which go back to 1982 but as of the CVRA effective date in October 2004 obligated Your Honor to ensure their notification – by reason of the civil damages provision of RICO, 18 USC §1964(c), which since the PSLRA proscriptions prohibits civil RICO liability unless and until there has been a related criminal conviction, from which point there is a four-year statute of limitations.

Of course like any other federal statute of limitations, equitable estoppel would be available, and this is important because in the case of Sater, Your Honor's supersealing of his entire docket and the gags on Oberlander and his clients, none of Sater's victims were able to know of his conviction, and without that knowledge the statute equitably never began to run.

(Your Honor is aware that one provision of MVRA enables a civil litigant to estop the defendant from denying the facts which formed the basis for the conviction, and since this is a pump-and-dump securities fraud case, where – by definition – transaction causation *is* loss causation, basically their victims should expect to win treble RICO damages on summary proof of transaction.)

This is no trivial matter, ████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

Indeed, Lauria is also a defendant in the SDNY action, and disgorgement and restitution is sought against him on this basis. But what Your Honor might find interesting is Lauria's fictionalized autobiography, *The Scorpion and the Frog*. Bernstein advises that he has an autographed copy of some note. After $1.5 million was laundered by Sater, through Bayrock, to Lauria, Bernstein says Lauria inscribed in the coy that he gave to Bernstein:

Case: 9898-01 01 01 01-G GD Document 67 SEA E filed 11/28/05 Page 5 Page 45 Page #:
912

# *White Collar Crime Does Pay !!!*

Well, it does when you are allowed to evade mandatory restitution and civil liability. I will not belabor the state law issues, but just mention in passing that under New York debtor/creditor law, tortfeasors instantly become debtors, and their victims unmatured creditors, the moment the cause of action accrues, and given the certainty of these liabilities and their enormity, both Sater and Lauria went balance-sheet negative long ago and stayed there. Thus, for example when Sater gratuitously transferred his membership interests in Bayrock, then worth $5,000,000 at an absolute minimum to a trust for his wife to hide them, which he did in 2008, that was *per se* fraudulent and that transfer voidable and the amount recoverable for 6 years forward regardless of scienter.

Speaking of those membership interests, which are lienable personalty under state law, had Sater's victims been noticed and the mandatory restitution order entered, pursuant to the MVRA any of them could have recorded an abstract thereof and thus have had a lien – in Sater's case not only on the $2,000,000 mansion he bought in 2004 (the SDNY complaint alleges he had money siphoned from Bayrock directly to the closing attorney to pay for the non-mortgaged part of it), but also on those membership interests, in the form of a charging order, which would have required Bayrock to pay out that $8,000,000 to those creditor/assignees and not Sater. One wonders if the banks giving Sater two acquisition mortgages on the property would have done so had they known.

Lauria was convicted on February 5, 2004, and so theoretically his civil RICO liability would have expired on February 5, 2008, except again that Lauria's file was completely sealed up, too. **Until March 24, 2009, that is.**

**On that date, this Court, at the request of EDNY United States Attorney Benton J. Campbell, unsealed the entirety of Lauria's file. [Exh. "E"]. Every Lauria document attached hereto, and dozens more, were intentionally released to the public and intentionally placed online through PACER and thus LEXIS, WESTLAW, and everywhere else on COURTLINK, and they are still there, and rightfully so. This includes the information essentially replicating Sater's information, and includes the April 29, 2002 letter from the EDNY United States Attorney's office <u>stating that Sater pled guilty to RICO and was a cooperator</u>. This letter renders these proceedings moot, for it is a matter of public record that Sater pled guilty and is a cooperator. It can no longer be said that (and there is no evidence to support the claim anyway) that Sater's life may be endangered if the fact of his conviction and his cooperation were to be made public by Oberlander. It has already been made public by the U.S. Attorney's Office, and by Your Honor.**

This means that for six months Your Honor has deprecated Mr. Oberlander, using such words as "despicable" and "disingenuous," and saying that revealing that information would endanger national security or result in the death of Sater. Yet the entire time Your Honor knew or should have known that it was all already in the public domain. Or perhaps Your Honor must feel that Mr. Campbell did a despicable thing too.

In addition, that letter is conclusive proof that Sater's supersealed file and docket sheet exist, but are, contrary to well-established constitutional law, hidden from public inspection. I

note that in the 19 months since the information that Lauria and Sater were cooperators was intentionally released to the public they are conspicuously alive and well, as is the country.

### (3) There Is Nothing Else Left for the Court to Do.

Sater's order to show cause of May 18, 2010, sought an order directing that Mr. Oberlander return certain "Sealed and Confidential Materials." As the court will recall, when Mr. Oberlander testified, the PSR that was given to him by Joshua Bernstein was marked into evidence. The testimony established that Joshua Bernstein was an employee of Bayrock. There is no request in the order to show cause that Mr. Oberlander destroy his copies, and it is beyond the power of this court to order such relief. As Your Honor recognized at the hearings, and indicated in the November 2, 2010 phone conference, Mr. Oberlander acquired the documents lawfully and violated no court order.

Sater's order to show cause also compelled Mr. Oberlander to appear and give evidence as to how he came into possession of the documents, and to whom he forwarded them. He did so. All issues are now moot. Save for one.

I expect the court will withdraw its comment that Mr. Oberlander acted despicably, as Mr. Oberlander has acted as an advocate for his clients in the exact same way that U.S. Attorney Campbell advocated for his client, the United States of America: Each released improperly sealed information to the public.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard E. Lerner

cc:     **Via E-Mail (with attachments)**
        Kelly Moore, Esq.
        Brian Herman, Esq.
        Stamatios Stamoulis, Esq.
        Todd Kaminsky, Esq. – US Attorney's Office
        Joshua Bernstein
        Arnold Bernstein, Esq.
        Frederick M. Oberlander, Esq.

Case 1:98-cv-01101-LGD Document 767 SEALED Filed 11/20/01 Page 7 of 45 PageID #: 914

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X

United States, plaintiff,

     -against-

Felix Sater, defendant.

-----------------------------------------------------X

Felix Sater, petitioner,

     -against-

Frederick M. Oberlander, Jody Kriss and
Chudi Ejekam, non-party respondents.

-----------------------------------------------------X

98-CR-1101

**Declaration of Julius R. Schwarz**

# **Filed Under Seal**

     I, Julius R. Schwarz, being duly sworn, depose and say under penalty of perjury pursuant to 28 U.S.C. 1746, as follows:

     1.     I am an attorney admitted to practice law before the courts of the States of New York and Florida.

     2.     I am currently employed as Executive Vice President and General Counsel of Bayrock Group LLC.

     3.     On May 12, 2010 I received an email from the Miami, Florida law firm of Akerman Senterfitt LLP, with the following attachments: The Southern District of New York complaint in the matter of *Kriss et al. v. Bayrock Group LLC et al., together with Exhibits A through E thereof.*

     4.     After receipt of the email, I forwarded it, with all attachments, on May 12, 2010 to the following individuals: (i) one email was sent to Felix Sater, a former Bayrock Group, LLC employee and a named defendant , Brian Halberg, a then in-house attorney at Bayrock Group, LLC and a named defendant, and Mel Dogan, counsel for Tevfik Arif and a named defendant (in each case it was sent in the "to" or "cc" list); and (ii) another email was sent to Teddy Klinghoffer and Andrew Smulian, a senior partner and the Chairman, respectively, of Akerman Senterfitt LLP. Akerman has and continues to represent Bayrock Group, LLC and certain affiliated entities on various matters. I also forwarded the complaint without the attachments on May 12, 2010 to Adam Gilbert, partner at Nixon Peabody LLP, former counsel for Bayrock Group, LLC and a named defendant in the complaint, and on May 13, 2010 I forwarded the complaint without the attachments to the following individuals: (1) Alex Salomon of the accounting firm Salomon & Company, a named defendant and the accounting firm representative for Bayrock Group, LLC and certain of its affiliated entities in one email; and (2) another email was sent to Craig Brown and Bruce Stachenfeld, partners and attorneys at Duval & Stachenfeld LLP, and Elliot Pisem, partner at Roberts & Holland LLP, each of whom are named defendants and prior counsel to Bayrock Group, LLC and certain of its affiliated entities (in each case it was sent in the "to" or "cc" list). On May 17, 2010, I forwarded an email to all of the above referenced persons with a copy of the Order from Judge Buchwald barring further dissemination of the complaint.

I state the foregoing under penalty of perjury this 17th day of November 2010.

_____
Julius R. Schwarz

AV:JSS:jss
F. #1998R00464
LAURIA1.INF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

SALVATORE LAURIA,

           Defendant.

- - - - - - - - - - - - - - - - -X

I N F O R M A T I O N

Cr. No. 98-1102

(T. 18, U.S.C., §§
1962(c), 1963(a)
and 3551 et seq.)

THE UNITED STATES ATTORNEY CHARGES:

        At all times relevant to this information, unless
otherwise indicated:

## INTRODUCTION

### Relevant Securities Law Matters

        1.   The United States Securities and Exchange
Commission (the "SEC") is an independent agency of the United
States government charged with the duty of protecting investors
by regulating and monitoring the trading of securities, including
the conduct of broker-dealers and brokers of securities, in the
United States.

        2.   A central purpose of the federal securities laws
is to protect investors from fraud in connection with the
purchase and sale of securities.  These laws require, among other
things, full and truthful disclosure of material facts by public
companies and broker-dealers in documents filed with the SEC.
One of the practices that the federal securities laws prohibit is
"market manipulation," that is, conduct intended to deceive

investors by controlling or artificially affecting the market price of a stock. When market manipulation occurs, the price that an investor pays for the stock generally is not an accurate reflection of the true market value of the stock.

3. The federal securities laws also require disclosure of material information concerning the compensation paid to brokers and brokerage firms in connection with the purchase or sale of a particular stock. In addition, underwriters are obligated to disclose their compensation -- by direct payment, ownership of securities and otherwise -- in connection with the issuance and sale of securities. Disclosure of such material information is required so that customers can make a fully informed decision whether to rely on the recommendation or services of a broker or brokerage firm in buying or selling the stock.

4. The federal securities laws prohibit companies from issuing stock unless the stock is registered with the SEC in a registration statement or the stock falls within a recognized exemption to the registration requirements. One such exemption is set forth in Regulation S of the rules and regulations of the SEC. Under Regulation S, stock may be issued without filing a registration statement if it is issued to a special category of persons, known as non-U.S. persons, under enumerated conditions, including that the stock not be resold within the United States until it has been held outside the country for more than 40 days. Stock issued under Regulation S, commonly referred to as "Reg. S"

stock, is typically issued at substantial discounts below the prevailing market price of the issuing company's securities.

5. The National Association of Securities Dealers ("NASD") is an organization created pursuant to federal securities law, which, among other things, issues rules governing the conduct of broker-dealers and brokers of securities.

6. A broker-dealer is an entity authorized to execute purchases and sales of securities for others and to take positions of its own in securities. If the broker-dealer satisfies additional SEC and NASD requirements, such as maintaining sufficient capital, it may also underwrite the public sale of securities. An underwriter of securities purchases the securities from an issuing company for resale to the public. An issuing company's first sale of stock is commonly referred to as an initial public offering ("IPO").

7. The NASD operates a national securities market known as the National Association of Securities Dealers Automated Quotation System ("NASDAQ"), an electronic system in which securities trades are executed through the use of computers. Once a trade is executed in a NASDAQ security, it is reported electronically to NASDAQ within ninety seconds. This report to NASDAQ is accomplished after information concerning the trade is entered into a brokerage firm trader's NASDAQ work station. From this work station, the report travels via interstate data communications lines to NASDAQ's main computer in Connecticut. From there, the report is disseminated via interstate

communications lines to all NASDAQ work stations throughout the world, including all fifty states and the Eastern District of New York.

8. Securities are listed differently on the NASDAQ securities market depending on, among other factors, the size of the companies and market value of outstanding shares. To be listed on the NASDAQ National Market, a company is required to have assets of at least $4 million and market capitalization of at least $3 million, among other requirements. To be listed on the NASDAQ Smallcap Market, a company is required to have assets of at least $4 million and market capitalization of at least $1 million, among other requirements.

9. The Over-the-Counter Bulletin Board (the "OTC Bulletin Board") is an electronic price quotation service for public companies that are not listed on a national stock exchange or on the NASDAQ National Market or Smallcap Market. For a company to qualify for trading on the OTC Bulletin Board, a securities firm must file a statement of willingness to serve as a "market maker" for the company's securities by buying and selling shares for its own account and for the public. Trading on the OTC Bulletin Board is conducted by means of the NASDAQ electronic price quotation system described in paragraph 7 above.

## The Brokerage Firms

10. From in or about and between October 1993 and July 1995, White Rock Partners & Co., Inc. ("White Rock") was a licensed securities firm with offices at 17 State Street, New

5

York, New York. White Rock was operated as a partnership by the defendant SALVATORE LAURIA, Felix Sater, Gennady Klotsman and John Doe #1.

11. In or about October 1995, White Rock was renamed State Street Capital Markets Corporation ("State Street") when John Doe #2 acquired the interest of John Doe #1. State Street continued the securities business that had been conducted at White Rock and operated out of what had been White Rock's offices. State Street ceased operation in or about September 1996.

12. The business of White Rock and State Street consisted primarily of the underwriting of IPOs of stock in thinly capitalized companies, that is, companies with minimal assets and market value. IPOs typically have the purpose of raising money for the development and expansion of such companies. Pursuant to the IPOs underwritten by White Rock and State Street, companies also sometimes sold "warrants," which permitted purchasers to buy a specified number of shares at a predetermined price. After securities were sold pursuant to the IPOs, White Rock and State Street also participated extensively in the subsequent public trading of these securities (referred to herein as "secondary market trading").

13. In addition to selling securities they had underwritten, White Rock and State Street sold securities that had been underwritten by other securities firms. White Rock and

6

State Street sold such securities as part of IPOs and in secondary market trading.

14.   The defendant SALVATORE LAURIA, together with his partners, supervised all aspects of White Rock's and State Street's business, including the recruitment and payment of brokers; the solicitation and structuring of securities underwritings; the trading of securities by White Rock and State Street, and by other securities firms acting in concert with White Rock and State Street; the management of client accounts; and the disbursement of profits generated by securities transactions.

15.   Because of Felix Sater's conviction for assault under New York State law in February 1993, Sater agreed with the National Association of Securities Dealers ("NASD") to restrict his activities at White Rock largely to  clerical duties, for which he would receive a minimal salary.  In fact, Sater received substantial compensation greatly exceeding his agreed-upon salary, and he took part in activities at White Rock and State Street, including the handling of securities and account statements, which violated the agreed-upon restrictions on his activities.

16.   White Rock and State Street traded in securities over the NASDAQ National Market, the NASDAQ Smallcap Market and the OTC Bulletin Board.  White Rock and State Street, and the underwriting and trading of securities in which these firms took

part, were subject to the federal securities laws, including the rules and regulations of the SEC and NASD.

### THE ENTERPRISE

17.   At all times relevant to this information, within the Eastern District of New York and elsewhere, the defendant SALVATORE LAURIA, together with others, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals and entities associated in fact, which engaged in, and the activities of which affected, interstate and foreign commerce (hereafter, the "White Rock/State Street Enterprise" or the "Enterprise").

18.   The chief goal of the White Rock/State Street Enterprise was to obtain significant sums of money by selling securities to investors on the basis of false and fraudulent statements and omissions about, among other things, undisclosed ownership and control of securities and substantial undisclosed payments to induce brokers to sell these securities to the public.  These fraudulent statements and omissions enabled the Enterprise artificially to inflate and maintain the price of securities sold to the public.  As individuals employed by and associated with the Enterprise sold securities at artificially inflated prices, substantial profits generated by the sales were

laundered through numerous off-shore and other nominee accounts, as described more fully below.

### METHODS AND MEANS

19.   Among the methods and means by which the defendant SALVATORE LAURIA and other persons employed by and associated with the Enterprise conducted, and participated in the conduct of, the affairs of the Enterprise were the following:

a.   The defendant SALVATORE LAURIA and others acquired ownership and control of substantial blocks of common stock and warrants sold in connection with IPOs underwritten by White Rock, State Street and other securities firms and in connection with the secondary market trading of such stock and warrants.  LAURIA and other persons secured such ownership and control through various means, including the fraudulent issuance of securities pursuant to Regulation S and the private sale of securities to off-shore and domestic nominees.  LAURIA's and the other persons' ownership and control were not disclosed to the public in registration statements and other documents filed with the SEC, or in any other manner.

b.   The defendant SALVATORE LAURIA and others made substantial payments, in cash and securities, to induce brokers at White Rock, State Street and other brokerage firms to recommend and sell securities in connection with the aforementioned IPOs and secondary market trading.  The demand created by these payments produced an artificial inflation and maintenance of the prices of such securities.  The payments, and

the resulting manipulation of securities prices, were not disclosed to the public.

　　　c.　The defendant SALVATORE LAURIA and others entered into undisclosed arrangements with brokerage firms other than White Rock and State Street, including the acquisition of undisclosed ownership interests in such firms.  Among these secret dealings were agreements by which other brokerage firms sold securities to investors in connection with White Rock's and State Street's IPOs and related secondary market trading for the purpose of artificially inflating and maintaining securities prices.  In return, the defendant SALVATORE LAURIA and other persons made payoffs in the form of cash and securities and often took part in the fraudulent IPOs and secondary market trading of other brokerage firms.

　　　d.　The defendant SALVATORE LAURIA and others entered into undisclosed agreements with the officers of companies issuing securities in IPOs by which LAURIA and others secretly agreed to pay company officers a portion of the profits from the fraudulent sale of stock and warrants.

　　　e.　The defendant SALVATORE LAURIA and others sold the stock and warrants that they secretly owned and controlled at artificially inflated prices.  These sales generated substantial profits which were not disclosed to investors in registration statements and other documents filed with the SEC, or in any other manner.

10

f.    The defendant SALVATORE LAURIA and others created off-shore companies and bank accounts and opened domestic brokerage accounts at White Rock, State Street and other brokerage firms in the names of these off-shore entities.  LAURIA and others used these brokerage accounts secretly to control large blocks of securities sold by White Rock, State Street and other securities firms in connection with IPOs and secondary market trading.  When the securities in the domestic brokerage accounts were sold at artificially inflated prices, the proceeds were typically electronically transferred to various off-shore bank accounts.  By means of these off-shore companies and accounts, LAURIA and others concealed and promoted their fraudulent securities transactions and unlawfully laundered the substantial profits generated by such transactions.

g.    The defendant SALVATORE LAURIA and others entered into undisclosed arrangements with members and associates of La Cosa Nostra organized crime families ("LCN Families").  To achieve the purposes of the Enterprise, LAURIA and other persons sought the assistance of members and associates of LCN Families concerning, among other matters, the resolution of financial and other disputes, the hiring and retention of brokers, the business affairs of companies whose stock and warrants were sold by White Rock and State Street, and the efforts to deter persons who sought to reduce the price of securities sold by White Rock and State Street through such techniques as "short selling."  In return for this assistance, LAURIA and others paid members and

associates of LCN families compensation in the form of securities and the proceeds of fraudulent sales of securities.

### THE RACKETEERING CHARGE

20.    In or about and between March 1993 and September 1998, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SALVATORE LAURIA, together with others, being persons employed by and associated with the White Rock/State Street Enterprise, which Enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), as set forth below.

### First Racketeering Act
### Countryworld Casinos, Inc. Securites Fraud

21.    In or about and between March 1993 and September 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SALVATORE LAURIA, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances in violation of Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendant SALVATORE LAURIA did (a) employ devices, schemes and artifices to defraud; (b) make untrue

Case 2:98-cr-01101-GD Document 767 Filed 11/28/01 Page 22 of 45 Page ID #: 929

statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of securities of Countryworld Casinos, Inc. ("Countryworld"), and by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

22. It was part of the scheme that the defendant SALVATORE LAURIA, together with others, acquired ownership and control of substantial blocks of Countryworld common stock through a fraudulent issuance of stock pursuant to Regulation S, which ownership and control were not disclosed to the public.

23. It was further part of the scheme that the defendant SALVATORE LAURIA, together with others, paid substantial undisclosed compensation to brokers to induce them to recommend and sell Countryworld stock and warrants to the investors.

24. It was further part of the scheme that the defendant SALVATORE LAURIA and others sold Countryworld shares that they secretly controlled at artificially inflated prices, thereby generating substantial profits.

## Second Racketeering Act
## Holly Products, Inc. and Holly Holdings, Inc. Securities Fraud

25.  In or about and between March 1994 and September 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SALVATORE LAURIA, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances in violation of Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendant SALVATORE LAURIA did (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of securities of Holly Products, Inc. and Holly Holdings, Inc. (collectively referred to herein as "Holly Products"), and by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

26.  It was part of the scheme that the defendant SALVATORE LAURIA, together with others, acquired ownership and control of a substantial number of Holly Products common stock

shares and warrants, which ownership and control were not disclosed to the public.

27.   It was further part of the scheme that the defendant SALVATORE LAURIA, together with others, paid substantial undisclosed compensation to brokers to induce them to recommend and sell Holly Products common and preferred stock and warrants to investors.

28.   It was further part of the scheme that the defendant SALVATORE LAURIA and others sold Holly Products common stock shares and warrants that they secretly controlled at artificially inflated prices, thereby generating substantial profits.

### Third Racketeering Act
### U.S. Bridge of N.Y., Inc. Securities Fraud

29.   In or about and between December 1994 and September 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SALVATORE LAURIA, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances in violation of Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), in that SALVATORE LAURIA did (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and (c) engage in
acts, practices and courses of business which would and did
operate as a fraud and deceit upon members of the investing
public, in connection with purchases and sales of securities of
U.S. Bridge of N.Y., Inc. ("U.S. Bridge"), and by use of means
and instrumentalities of interstate commerce and the mails, in
violation of Title 15, United States Code, Sections 78j(b) and
78ff.

30.  It was part of the scheme that the defendant
SALVATORE LAURIA, together with others, acquired ownership and
control of a substantial number of U.S. Bridge common stock
shares and warrants, which ownership and control were not
disclosed to the public.

31.  It was further part of the scheme that the
defendant SALVATORE LAURIA, together with others, paid
substantial undisclosed compensation to brokers to induce them to
recommend and sell U.S. Bridge stock and warrants to investors.

32.  It was further part of the scheme that the
defendant SALVATORE LAURIA and others sold U.S. Bridge shares and
warrants that they secretly controlled at artificially inflated
prices, thereby generating substantial profits.

### Fourth Racketeering Act
### Cable & Co., Inc. Securities Fraud

33.  In or about and between January 1996 and September
1996, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant

SALVATORE LAURIA, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances in violation of Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendant SALVATORE LAURIA did (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of securities of Cable & Co., Inc. ("Cable"), and by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

34. It was part of the scheme that the defendant SALVATORE LAURIA, together with others, acquired ownership and control of a substantial number of Cable common stock shares and warrants, which ownership and control were not disclosed to the public.

35. It was further part of the scheme that the defendant SALVATORE LAURIA, together with others, paid substantial undisclosed compensation to brokers to induce them to recommend and sell Cable stock and warrants to investors.

36.   It was further part of the scheme that the defendant SALVATORE LAURIA and others sold Cable shares and warrants that they secretly controlled at artificially inflated prices, thereby generating substantial profits.

### Fifth Racketeering Act
### Fun-Tyme Concepts, Inc. Securities Fraud

37.   In or about and between January 1996 and September 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SALVATORE LAURIA, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances in violation of Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendant SALVATORE LAURIA did (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of securities of Fun-Tyme Concepts, Inc. ("Fun-Tyme"), and by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

38.  It was part of the scheme that the defendant SALVATORE LAURIA, together with others, acquired ownership and control of a substantial number of Fun-Tyme common stock shares and warrants, which ownership and control were not disclosed to the public.

39.  It was further part of the scheme that the defendant SALVATORE LAURIA, together with others, paid substantial undisclosed compensation to brokers to induce them to recommend and sell Fun-Tyme stock and warrants to investors.

40.  It was further part of the scheme that the defendant SALVATORE LAURIA and others sold Fun-Tyme shares and warrants that they secretly controlled at artificially inflated prices, thereby generating substantial profits.

### Sixth Racketeering Act
### Money Laundering

41.  In or about and between October 1993 and September 1998, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SALVATORE LAURIA, together with others, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct and attempt to conduct financial transactions, in and affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity, to wit: securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and mail and wire fraud, in violation of Title

19

18, United States Code, Sections 1341 and 1343, (a) with the intent to promote the carrying on of said specified unlawful activity, and (b) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1962(c), 1963(a) and 3551 et seq.)

ZACHARY W. CARTER
United States Attorney
Eastern District of New York

BY_____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.131

CLOSED, MJSELECT

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CRIMINAL DOCKET FOR CASE #: 1:98-cr-01102-ILG All Defendants

Case title: USA v. 1-98-cr-1102-01                    Date Filed: 12/03/1998
Other court case number: 1:98-cr-01069 related

Assigned to: Senior-Judge I. Leo
Glasser

**Defendant (1)**

**Salvatore Lauria**                    represented by    **Robert G. Stahl**
                                                          Stahl & Horblit
                                                          47 Maple Street
                                                          Suite 206
                                                          Summit, NJ 07901
                                                          908-608-0890
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

**Pending Counts**                    **Disposition**
RACKETEERING
(1)

**Highest Offense Level (Opening)**
Felony

**Terminated Counts**                    **Disposition**
None

**Highest Offense Level
(Terminated)**
None

**Complaints**                    **Disposition**
None

**Plaintiff**

**USA**
                                      represented by  **Jonathan S. Sack**
United States Attorney's Office
Criminal Division
225 Cadman Plaza East
Brooklyn, NY 11201
212-856-9600
Fax: 212-856-9494
Email: jsack@magislaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/03/1998 | 1 | Notice of intent to proceed under FRCrP 7(b) as to 1-98-cr-1102-01. (Guzzi, Roseann) (Entered: 12/07/1998) |
| 12/03/1998 | | Magistrate Chrein has been selected by random selection to handle any matters that may be referred in this case. (Guzzi, Roseann) (Entered: 12/07/1998) |
| 12/10/1998 | 2 | LETTER dated 12/10/98 from AUSA Jonathan Sack. (AUSA file #98r02283) (Guzzi, Roseann) (Sica, Michele). (Entered: 12/10/1998) |
| 12/10/1998 | 3 | SEALED DOCUMENT as to 1-98-cr-1102-01 containing felony information. AUSA file #98R02283. (Guzzi, Roseann) (Sica, Michele). (Entered: 12/15/1998) |
| 12/10/1998 | 24 | INFORMATION as to 1-98-cr-1102-01 Salvatore Lauria (1) count(s) 1. (Sica, Michele) (Entered: 03/27/2009) |
| 03/12/1999 | 4 | (SEALED)LETTER dated 3/10/99 from AUSA Jonathan Sack to Judge Gleeson. (AUSA file #1998R02283). (Guzzi, Roseann) (Sica, Michele). (Entered: 03/12/1999) |
| 07/09/1999 | 23 | NOTICE OF ATTORNEY APPEARANCE: Robert G. Stahl appearing for 1-98-cr-1102-01 Salvatore lauria (Sica, Michele) (Entered: 03/27/2009) |
| 09/27/1999 | 5 | SEALED LETTER from AUSA Jonathan Sack submitted 9/20/99. (Guzzi, Roseann) (Sica, Michele). (Entered: 09/27/1999) |
| 11/03/1999 | 6 | Sealed envelope containing LETTER dated 10/28/99. (PLACED IN VAULT). (Greves, Liz) (Sica, Michele). (Entered: 11/03/1999) |
| 01/27/2000 | 7 | SEALED LETTER dated 1/26/00 from AUSA Jonathan Sack to Judge Glasser. (AUSA file #1998RO2283) (Guzzi, Roseann) (Sica, Michele). (Entered: 01/27/2000) |

| 03/22/2000 | 8 | SEALED LETTER dated 3/13/00 from AUSA Jonathan Sack to Judge Glasser. AUSA Jonathan Sack 1998R02283. (Guzzi, Roseann) (Sica, Michele). (Entered: 03/22/2000) |
|---|---|---|
| 05/18/2000 | 9 | Sealed envelope containing LETTER dated 5/15/2000. (PLACED IN VAULT). (Greves, Liz) (Sica, Michele). (Entered: 05/18/2000) |
| 11/16/2001 | 10 | ORDER as to 1-98-cr-1102-01 unsealing the guilty plea transcript. (Signed by Senior Judge I. L. Glasser , on 11/15/01) (Sica, Michele) (Entered: 11/19/2001) |
| 01/02/2002 | 11 | SEALED DOCUMENT as to 1-98-cr-1102-01 (letter). (Rodriguez,Angela) (Sica, Michele). (Entered: 01/11/2002) |
| 05/01/2002 | 12 | SEALED DOCUMENT as to 1-98-cr-1102-01. (Rodriguez,Angela) (Sica, Michele). (Entered: 05/10/2002) |
| 02/06/2003 | 13 | SEALED DOCUMENT as to 1-98-cr-1102-01; date of sealing 2/5/03; documents enclosed: correspondence. (Sica, Michele) (Sica, Michele). (Entered: 02/06/2003) |
| 12/23/2003 |  | Case sealed as to 1-98-cr-1102-01 (Piper, Francine) (Entered: 12/23/2003) |
| 12/23/2003 | 14 | ORDER as to 1-98-cr-1102-01 (endorsed on letter dated 11/26/03 from Robert Stahl to Judge Glasser), sentencing is adjourned to 2/5/03 at 10:00. (Signed by Judge I. Leo Glasser on 12/2/03) (Piper, Francine) (Sica, Michele). (Entered: 12/23/2003) |
| 02/25/2004 | 15 | SEALED DOCUMENT (Calendar and J&C ) as to 1-98-cr-1102-01 placed in vault (Piper, Francine) (Sica, Michele). (Entered: 03/02/2004) |
| 04/13/2004 | 16 | ORDER as to Salvatore Lauria placed in Vault.(Signed by Judge I. Leo Glasser on 4/12/04) (Piper, Francine) (Sica, Michele). (Entered: 04/27/2004) |
| 04/29/2004 | 17 | ORDER as to 1-98-cr-1102-01, that the Clerk of Court is directed to unseal the case for the purpose of transfer of jurisdiction only. ( Signed by Judge I. Leo Glasser on 4/19/04) (Piper, Francine) (Entered: 04/29/2004) |
| 04/29/2004 | 18 | Transfer of Jurisdiction ORDER as to Salvatore Lauria that the jurisdiction of the probationer be transferred to the U.S.D.C. of Connecticut upon that court's order of acceptance of jurisdiction. (Signed by Judge I. Leo Glasser on 3/9/04). It is ordered that the jurisdiction of the probationer is accepted by this court. (Signed by District Judge in Connecticut on 3/24/04) (Piper, Francine) (Additional attachment(s) added on 3/27/2009: # 1 transfer of jurisdiction) (Sica, Michele). (Entered: 04/29/2004) |
| 04/29/2004 |  | Probation Jurisdiction Transferred to District of Connecticut as to 1-98-cr-1102-01 Transmitted Transfer of Jurisdiction form, with certified copies of indictment, judgment and docket sheet. (certifies copies sent in sealed |

| | | |
|---|---|---|
| | | envelopes) (Piper, Francine) (Entered: 04/29/2004) |
| 05/06/2004 | 19 | Certificate of Service as to 1-98-cr-1102-01 of Transfer of Probation documents via fedex on 5/5/04 upon Clerk of Court, USDC of Connecticut. (package tracking #838948354459) (Piper, Francine) (Entered: 05/06/2004) |
| 04/19/2005 | 20 | Letter dated 1/27/05 from Keith Barry to Judge Glasser, recommending that the court order the dft to pay off the entire cost for electronic monitoring and that dft be confined to his home on weekends for the remainder of home confinement which terminates on 4/29/05. (Piper, Francine) (Entered: 04/19/2005) |
| 04/19/2005 | 21 | Letter dated 2/14/05 from Keith Barry to Judge Glasser, enclosing a list of dates and times dft was in violation of the special condition ordering home confinement. (Piper, Francine) (Additional attachment(s) added on 3/27/2009: # 1 letter dtd 02/14/05) (Sica, Michele). (Entered: 04/19/2005) |
| 03/24/2009 | 22 | Order to Unseal Case as to 1-98-cr-1102-01. (Ordered by Magistrate Judge Roanne L. Mann on 3/18/2009) (Piper, Francine) (Entered: 03/24/2009) |



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RECEIVED
4 30 02
CHAMBERS OF
JOSEP

EOC:dbp
F.#1998r01996
lauria-adj-ltr.wpd

*156 Pierrepont Street*
*Brooklyn, New York 11201*

April 29, 2002

**TO BE FILED UNDER SEAL**
**BY INTEROFFICE MAIL**

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:  United States v. Salvatore Lauria and
          Felix Sater, Crim. Docket No. 98-1102 (ILG)

Dear Judge Glasser:

      Salvatore Lauria and Felix Sater are scheduled to be
sentenced by Your Honor this Wednesday, May 1, 2002.  For the
reasons set forth below, the government respectfully requests
that the sentencings be adjourned to September 17, 2002, at
10:00 a.m.

      The defendants pled guilty before Your Honor pursuant
to cooperation agreements.  The information the defendants can
provide with regard to the criminal activities of others has not
been exhausted.  The government respectfully submits that the
interests of justice and judicial economy will be furthered if
the defendants' cooperation is exhausted prior to sentencing.
Specifically, if the defendants are sentenced after their
cooperation is complete, there will be no subsequent need to
pursue relief under Fed. R. Crim. P. 35.  In addition to
conserving resources, this approach will allow the Court the
opportunity to impose upon the defendants a single, determinate
sentence.

      I have spoken by telephone with Your Honor's courtroom
deputy, Louise Schillat, who informed me that September 17, 2002,
at 10:00 a.m. is convenient for the Court.

12

2

        I attempted to reach by telephone today both Robert Stahl, Esq., counsel to defendant Lauria, and Myles Mahlman, Esq., counsel to defendant Sater, to obtain their consent to this request; however, neither attorney was in his office. In any event, both defendants agreed to adjournments of their sentencings, as requested by this Office, as part of their cooperation agreements.

        The Court's attention to this scheduling matter is greatly appreciated. Because of the nature of this letter, the government respectfully requests that it be filed under seal.

Respectfully submitted,

ALAN VINEGRAD
UNITED STATES ATTTORNEY

By:

David B. Pitofsky
Assistant U.S. Attorney
(718) 254-6292

cc:  Robert Stahl, Esq.
     **(by telecopier 908/301-9008)**

    Myles Mahlman, Esq.
     **(by telecopier 954/322-0064)**

*Sealed case*                           2/5/04

## CRIMINAL CAUSE FOR SENTENCING

**BEFORE:** GLASSER                **DATE:** ~~SEPT. 11, 2003~~ **TIME:** 10:00 a.m.

**DOCKET NUMBER:** CR 98-1102        **DEFT. NUMBER:** _____

**DEFENDANT:** SALVATORE LAURIA

_____ / ____ Present _____ Not Present _____ In Custody ___x___ On Bail

**ATTORNEY FOR DEFT.:** ~~CHARLES CLAYMAN~~ ROBERT STAHL
_____ C.J.A. ___✓___ Retained _____ Legal Aid/PD

**ASST. U.S. ATTORNEY:** ERIC CORNGOLD+ 6/4/7
TERESA HENRY
**COURTROOM DEPUTY:** ~~LOUISE SCHILLAT~~ **INTERPRETER:** N/A
Ext. _____

**COURT REPORTER/~~ESR OPERATOR~~:** FRED GURINO

**TAPE NUMBER:** _____

**SENTENCE:** 5 years PROBATION

**DEFT. SENTENCED ON COUNTS:** #1

**OPEN COUNTS DISMISSED:** _____ On Govt.'s Motion, _____ On Ct.'s Mot.

**FINE:** $20,000 **SPECIAL ASSESSMENT:** $100.00

**SPECIAL CONDITIONS OF SUPERVISION:** 12 months Home Confinement —
300 hours Community Service

✱ Right to appeal sentence

**IS SENTENCE STAYED?** _____ Yes **STAYED UNTIL:** _____
_____ No

[Defts. sentenced to probation/supervised release are to report immediately to the
PROBATION DEPT., Room 405, 75 Clinton St., Bklyn., & present 1 copy of this
form. The other copy should be sent by the Courtroom Deputy the same day. For
remanded defts., the Courtroom Deputy should send both copies to the Prob. Office
on the same day as the sentence.]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

........................................................................

UNITED STATES OF AMERICA,

**JUDGMENT INCLUDING
SENTENCE FOR OFFENSES
COMMITTED ON OR AFTER 11-1-87**

**VS.**

**CASE NO.: CR 98-1102 (ILG)**

**SALVATORE LAURIA**

........................................................................

ERIC CORNGOLD                FRED GURINO          ROBERT STAHL
Assistant United States Attorney      Court Reporter       Defendant's Attorney

THE DEFENDANT: **SALVATORE LAURIA**
  **XX**  **PLEAD GUILTY TO COUNT 1 OF THE INFORMATION.**

Accordingly, the defendant is ADJUDGED guilty of such Count(s), which involve the following offenses:
| **TITLE AND SECTION** | **NATURE AND OFFENSE** | **COUNT NUMBERS** |
|---|---|---|
| **18 USC 1962 (c) and 1963(a)** | **RACKETEERING** | **COUNT 1** |

The defendant is sentenced as provided in pages 2 through 4 of the Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.
  —  The defendant has been found not guilty on count(s)  and discharged as to such count(s).
  —  **Open count in the indictment is dismissed on the motion of the United States.**
  —  The mandatory special assessment is included in the portion of Judgment that imposes a fine.
  **X**  **It is ordered that the defendant shall pay to the United States a special assessment of $100.00 which shall be due immediately.**
It is further **ORDERED** that the defendant shall notify the United States Attorney for this District within 30 days of any change of residence or mailing address until all fines, restitution, costs and special assessments imposed by this Judgment are fully paid.

                        **FEBRUARY 5, 2004**
56695-053                  Date of Imposition of Sentence
Defendant's USM #

08/30/62
Date of Birth

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
Defendant's Soc. Sec. Number

**HON. I. LEO GLASSER, U.S.D.J.**
91 GEORGETOWN RD., WESTON CONNECTICUT     **DATE: FEBRUARY 23, 2004**
**Defendant's mailing address**

Case 1:98-cr-01102-ILG Document 767 SEALED Filed 11/28/04 Page 41 of 45 PageID #: 948

DEFENDANT: **SALVATORE LAURIA**
CASE NUMBER: **CR 98-1102 (ILG)**

## PROBATION

The defendant is hereby placed on probation for a term of____FIVE (5) YEARS ON COUNT 1.

The defendant shall not commit another Federal, State or Local crime.
The defendant shall not unlawfully possess a controlled substance.

For offenses committed on or after September 13, 1994:

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as directed by the probation officer.

____ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.

____ The defendant shall not possess a firearm as defined in 18 U.S.C. Sect. 921.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of probation that the defendant pay any such fine or restitution in accordance with the schedule of payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth in the "Standard Conditions of Supervision" sheet.

The defendant shall comply with the following additional conditions:

THE DEFENDANT TO SERVE 300 HOURS OF COMMUNITY SERVICE

TH DEFENDANT IS TO SERVE 12 MONTHS HOME CONFINEMENT

THE GOVERNMENTS MOTION PURSUANT TO 5K1.1 - GRANTED.

DEFENDANT: **SALVATORE LAURIA**   **JUDGMENT-PAGE 3 OF 4**
CASE NUMBER: **CR 98-1102 (ILG)**

### STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not leave the judicial district without the permission of the court or probation officer;

2) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) The defendant shall support his or her dependents and meet other family responsibilities;

5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons:

6) The defendant shall notify the probation officer within 10 days prior to any change in residence or employment;

7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a Physician;

8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;

12) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court;

13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

JUDGMENT-PAGE 4 OF 4

DEFENDANT: **SALVATORE LAURIA**
CASE NUMBER: **CR 98-1102 (ILG)**

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth by the court.

| COUNT | ASSESSMENT | FINE | RESTITUTION |
|-------|-----------|------|-------------|
| COUNT 1 | $100.00 | $20,000.00 | |

---

### FINE

The above includes costs on incarceration and or supervision in the amount of _____
The defendant shall pay interest on any fine of more than $2,500.00 unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. Sect. 3612 (f). All of the payment options may be subject to penalties for default and delinquency pursuant to 18 U.S.C. Sect. 3612 (g).

___ The court has determined that the defendant does not have the ability to pay interest and it is ordered that the interest is waived.

___ the interest is modified as follows.

---

### RESTITUTION

___The determination of restitution is deferred in a case brought under Capters 109A, 110, 110A, and 113A of the Title 18 for offenses committed on or after 9/13/1994, until _____. an amended judgment in a Criminal case will be entered after such determination.

_____The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| NAME OF PAYEE | TOTAL AMOUNT LOSS | AMOUNT OF RESTITUTION | INSTALLMENTS |
|---------------|-------------------|----------------------|--------------|
| TOTALS: | | | |

Findings for the total amount of losses are required under Chapters 109A, 110,110A, 113A of the Title 18 for offenses commited on or after September 13, 1994.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 24 2009 ★

BROOKLYN OFFICE

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                          UNSEALING ORDER

     - against -                                   98-CR-1102 (ILG)

98-CR-1102,

                    Defendant.

- - - - - - - - - - - - - - - - -X

          Upon the application of BENTON J. CAMPBELL, United

States Attorney for the Eastern District of New York, by

Assistant United States Attorney Christopher C. Caffarone, for an

order unsealing the court file in the above-captioned case.

          WHEREFORE, it is ordered that the court file in the

above-captioned case be unsealed.

Dated:    Brooklyn, New York
          3 |18   , 2009

                              s/Roanne L. Mann

                              _____
                              UNITED STATES MAGISTRATE JUDGE
                              EASTERN DISTRICT OF NEW YORK