

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

PN:EK:TK
F.#1998R01996

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 23, 2010

**TO BE FILED UNDER SEAL**

The Honorable I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                 Re:  United States v. Felix Sater
                     Criminal Docket No. 98 CR 1101 (ILG)

Dear Judge Glasser:

      The government writes with respect to whether the Court has the authority to order Frederick Oberlander, Esq. to return the sealed documents in his possession from the above-captioned case and to enjoin him from disseminating those documents. The Court does have such authority. Moreover, such an order is necessary to prevent Mr. Oberlander from undermining the Court's orders, to protect Felix Sater and to prevent the abuse of the sealing process in this district.

I.    Legal Discussion

        A.    The Court Has Authority Over Mr. Oberlander
             Pursuant to the All Writs Act

      The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Under the Act, a federal court possesses the power to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." Pennsylvania Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 40 (1985) (quoting United States v. New York Telephone Co., 434 U.S. 159, 172 (1977)). The Act is to be used only when necessary and when there is no applicable statutory

provision available to the court. <u>Pennsylvania Bureau of Corr.</u>, 474 U.S. at 42-43; <u>Stabile v. NYRA</u>, 436 F.Supp.2d 406, 414 (E.D.N.Y. 2006).

The Second Circuit Court of Appeals has recognized that "[t]he Act's grant of authority is plainly broad and, on its face, makes no distinctions between parties and nonparties." <u>United States v. Int'l Bhd. of Teamsters</u>, 266 F.3d 45, 49-50 (2d Cir. 2001). Thus, "a district court is authorized to bind non-parties where such action is necessary to preserve its ability to adjudicate proceedings already before it or to enforce its own prior decisions." <u>In re Egri</u>, 68 Fed. App'x 249, 255-56 (2d Cir. July 1, 2003) (affirming district court's decision to enjoin non-parties to civil suit from taking actions that would frustrate the operation of a consent decree).

There is no statute that addresses the means by which a court may enforce its sealing orders. As there is no applicable statutory provision available to the Court and doing nothing would frustrate the Court's prior sealing orders, the Court may look to the All Writs Act to enforce the Court's prior orders. As noted above, in exercising its powers under the All Writs Act, the Court has the authority to prevent third parties from frustrating its original orders. Therefore, under the All Writs Act the Court can and should order that Mr. Oberlander return the sealed documents in his possession and refrain from any dissemination of those documents.

    B.  The Court Has Authority Over Mr. Oberlander
      <u>Pursuant to its Inherent Authority</u>

In addition to the powers granted to courts under the All Writs Act, courts have the inherent authority to enforce their own orders. <u>See</u> <u>In re Zyprexa Injunction</u>, 474 F.Supp.2d 385, 417 (E.D.N.Y. 2007) (Weinstein, J.), <u>aff'd</u>, 617 F.3d 186 (2d Cir. 2010), (noting, in civil case in which documents were produced under a protective order and later subpoenaed by a third party and given to the *New York Times*, that courts have such inherent authority); <u>see also</u> <u>Nixon v. Warner Communications</u>, 435 U.S. 589, 602 (1978) ("[E]very court has supervisory power over its own records and files . . . ."); <u>In re Lafayette Radio Corp.</u>, 761 F.2d 84, 93 (2d Cir. 1985) ("[A]ncillary jurisdiction is recognized as part of a court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity."). Courts also have inherent "equitable powers . . . over their own process, to prevent abuses, oppression and injustices." <u>International Products Corp. v. Koons</u>, 325 F.2d 403, 408-09 (2d Cir. 1963) (Friendly, J.) (upholding order

prohibiting attorneys from disseminating deposition testimony that was prejudicial to one of the parties, but striking order that enjoined attorneys from disseminating similar information that they obtained on their own and not "through the court's processes").

Based on their inherent authority, courts have ordered attorneys and other parties to return material that they obtained improperly and enjoined them from further disseminating that material. For example, in In re Grand Jury Investigation, 545 F.3d 21, 23-24 (1st Cir. 2008), an attorney in a civil case provided members of the press with Grand Jury materials that he had obtained from an Assistant United States Attorney concerning the party his client was suing. Although the district court did not find that a contempt sanction against the attorney was warranted (as the documents were not clearly marked "sealed" and the attorney lacked experience handling Grand Jury materials), the court did enjoin the attorney from further dissemination. The First Circuit Court of Appeals noted, with apparent approval, that the district court had "employed its inherent power to enjoin [the attorney] from further dissemination . . . and warned that any future violation of that injunction could be enforced through the contempt sanction." Id. at 27.

Similarly, in United States v. Visa, 2000 WL 1682753, at *1 (S.D.N.Y. Nov. 9, 2000), an antitrust case, the government accidentally posted on the Department of Justice website unredacted versions of 12 trial exhibits that were subject to a protective order. The court ordered that any party who had obtained those documents from the website, including third parties, had to return them. Id. The court reasoned that "if privileged material is revealed without fault of the owner and without waiver, courts have the power to take reasonable steps to give the holder some protection." Id. (quoting Falise v. American Tobacco Co., 193 F.R.D.73, 75 (E.D.N.Y. 2000)); see also In re Biovail, 247 F.R.D. 69, 70 (S.D.N.Y. 2007) (ordering attorneys to return documents used in a complaint in a civil action in violation of a protective order in a different civil action).

Finally, in In re Zyprexa Injunction, 474 F. Supp. 2d 385, 391 (E.D.N.Y. 2007), aff'd, 617 F.3d 186 (2d Cir. 2010), a multi-district products liability action, numerous internal documents of a drug manufacturer were produced during the discovery process under a protective order. A non-party attorney who did not have access to the sealed documents purposefully subpoenaed the documents from an expert in order to obtain and disseminate them. Id. Judge Weinstein ordered the attorney (and

others) to return the documents and enjoined him from further dissemination. Id. at 428. In the opinion, Judge Weinstein held that he had the inherent authority to enforce his own sealing order, id. at 418, and that the attorney could be bound by his injunction because the attorney had already appeared before the court. Id. at 428.

Although the above-mentioned cases occurred primarily in the civil context, the reasoning underlying them applies in the criminal context as well. The courts in these cases found that they were not constrained to tolerate the dissemination of documents that they (or, with respect to the Grand Jury materials in In re Grand Jury Investigation, the Federal Rules of Criminal Procedure) had taken steps to protect. Such reasoning is especially forceful in a case like the one at issue here, in which the third party who obtained the protected material - Mr. Oberlander - knew that he had not obtained the material through legitimate means and was aware of the material's sensitive nature. Allowing Mr. Oberlander to keep and disseminate this material under these circumstances would be unjust and would frustrate the Court's underlying sealing order. The Court should use its inherent powers to demand the return of the documents and enjoin their dissemination.

## II. Public Policy Requires Ordering Mr. Oberlander to Return the Documents

The government urges the Court to exercise the powers detailed above. As the Court is well aware, Sater cooperated against dangerous individuals in a number of different contexts. His safety and that of his family would forever be placed in jeopardy if the sealed documents revealing his cooperation were to remain in the possession of Mr. Oberlander or other non-parties or made publically available. Sater's interest in protecting the documents is far weightier than Mr. Oberlander's interest in keeping them - Sater is justifiably concerned about his safety and that of his family while Mr. Oberlander would simply like to use them to his client's advantage in a pending civil matter.[1]

---

[1] Although Mr. Oberlander may argue that the "die has already been cast" since he cannot be prevented from telling others about what he learned from the documents, it has been the experience of many in law enforcement that documentary proof in support of such accusations is far more powerful and therefore far more threatening to informants and cooperators.

4

Moreover, if the Court fails to act here, that failure may both cause a chilling effect upon defendants' decisions to cooperate against dangerous individuals and organizations and invite irresponsible conduct from those who come into possession of sealed documents.

Defendants considering cooperation are always concerned about whether and how their cooperation will be revealed. While all cooperators risk their cooperation's becoming public during the normal progression of a criminal case, this revelation is typically guided by the criminal discovery process and overseen by a court to protect that process from abuse. Cooperators do not typically consider that they are risking the possibility that years later, through no fault of their own, their cooperation agreement may be improperly obtained, passed on to a third party and then made public. Such a risk may have a chilling effect on the decision of potential cooperators to cooperate with the government.

Additionally, a refusal by the Court to act may send the unfortunate message that there are little or no consequences for improperly obtaining and disseminating sealed documents. Parties in both the civil and criminal contexts are bound to respect the sealing process. As officers of the court, attorneys have additional ethical obligations that are designed to enforce compliance with sealing orders. Allowing Mr. Oberlander to retain and disseminate sealed documents that he knew had been improperly obtained will suggest to others that courts are powerless to act against such behavior and that attorneys may engage in such practices without consequence. The Court should instead make clear that it will not tolerate sharp practice with respect to sealed documents and will take appropriate steps to protect the sealing process.

III. Conclusion

       For the foregoing reasons, the Court should order Mr. Oberlander to return the sealed documents in the above-captioned case and enjoin him from disseminating those documents. The Court should also direct that the docket in this case and all the sealed documents that are a part of it remain under seal.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney
                                Eastern District of New York

By: _____
                Todd Kaminsky
                Elizabeth J. Kramer
                Peter A. Norling
                Assistant United States Attorney

cc:, Kelly A. Moore, Esq.
     Frederick Oberlander, Esq.
     Richard E. Lerner, Esq.