UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

UNITED STATES

                                Plaintiff,

          -against-

JOHN DOE,

                            Defendant.

-------------------------------------------------------------------- X

          98 CR 1101(ILG)

          **TO BE FILED UNDER SEAL**

## MOVANT JOHN DOE'S
## SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## PERMANENT INJUNCTION

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Tel: 212.309.6000

Attorneys for Movant John Doe

## PRELIMINARY STATEMENT

The Court has the power and authority under the All Writs Act to order the Respondents

to return or destroy documents that were unlawfully taken from John Doe and are part of a case

that was sealed by the Court. The First Amendment does not protect the actions of the agent of a

thief who threatens to publish his ill-gotten gains to extort a settlement and put a man's life at

risk.

## FACTUAL BACKGROUND

The facts underlying this matter begin on May 10, 2010, when Respondent Oberlander,

an attorney, filed publicly in the United States District Court for the Southern District of New

York a civil RICO complaint (the "SDNY Complaint") that he knew contained extraordinarily

sensitive and sealed information about John Doe which, if disclosed, would endanger not only

Mr. Doe's life, but also the lives of Mr. Doe's family. Specifically, Mr. Oberlander knowingly

attached as exhibits to the SDNY Complaint certain documents (the "Exhibits") that, to this day,

are part of or relate to a sealed record in a Federal criminal case in which Mr. Doe was a

defendant and cooperating witness.[1] The SDNY Complaint contained countless references to the

---

[1]      Mr. Oberlander testified that the Exhibits were comprised of the following (1) "five pages from the PSR"
(*i.e.*, excerpts from Mr. Doe's 2004 Presentence Report (the "PSR")); (2) "two proffer agreements" (*i.e.*, Mr. Doe's
proffer agreements dated October 2, 1998 and October 29, 1998 (the "Proffer Agreements")); and (3) "the
cooperation agreement" (*i.e.*, Mr. Doe's cooperation agreement dated December 10, 1998 between John Doe and the
government (the "Cooperation Agreement")). 6/21 Tr. at 28-29. Mr. Oberlander further testified that on or about
March 3, 2010, the following documents were transmitted to him via email (the "3/3/10 Email") from Joshua
Bernstein: the PSR, the Proffer Agreements, the Cooperation Agreement, a criminal complaint in case number 98
CR 1101 (*i.e.*, the Complaint and Affidavit In Support of Arrest Warrants against, among others, John Doe (filed
under Docket number 98-754M) (the "Criminal Complaint")), and a draft of an information (the "Information").
6/21 Tr. at 11-13. Mr. Oberlander also testified that Arnold Bernstein, Joshua Bernstein's father, and Gerry
Feinberg, an attorney representing Joshua Bernstein in another matter (a civil case captioned *Bernstein v. Bayrock
Group LLC* Case No. 002579/2009), were addressees on the 3/3/10 Email. 6/21 Tr. at 14. The PSR, the Proffer
Agreements, the Cooperation Agreement, the Criminal Complaint, and the Information are referred to hereinafter,
collectively, as the "Sealed and Confidential Documents."

FILED UNDER SEAL

information in the Exhibits, which included, among other things, details about Mr. Doe's cooperation against extremely dangerous members of organized crime and details from a sealed presentence report. The documents comprising the Exhibits were stolen from Mr. Doe by a former employee of Bayrock, Joshua Bernstein, who gave them to Mr. Oberlander at a time when Mr. Oberlander was acting as Mr. Bernstein's lawyer and agent.

Mr. Oberlander undeniably knew the Exhibits were sealed when he filed the SDNY Complaint, admitting as much in paragraph 96 of a document he authored and typed. 6/21 Tr. at 73. He filed the SDNY Complaint publicly despite his admitted belief that "best practices dictated" that he file under seal, 6/21 Tr. at 29, despite an unsuccessful effort to file under seal before a Part I judge, 6/21 Tr. at 49-50, 61, and despite his familiarity with ECF cautionary instructions, which advise that information regarding an individual's cooperation with the government should be redacted, 6/21 Tr. at 53. Prior to filing the SDNY Complaint, Mr. Oberlander also provided a copy of the SDNY Complaint and the Exhibits to Respondent Jody Kriss, a plaintiff in the SDNY action, and David Schlecker, another attorney representing Mr. Oberlander. 6/21 Tr. at 29-30.

On May 12, after he had filed the SDNY Complaint and the Exhibits, rather than attempting to remedy his blatant disregard for "best practices," Mr. Oberlander exacerbated the situation by emailing copies of the Sealed and Confidential Documents to the following individuals: (1) Ron Kriss, the father of Respondent Jody Kriss and a partner at the law firm of Akerman Senterfitt LLP ("Akerman") (a named defendant in the SDNY action and former counsel to Bayrock); (2) John Elzufon, an attorney representing Alex Solomon (a named defendant in the SDNY action); and (3) Stamatios (Stam) Stamoulis, an attorney who represented Jody Kriss in a prior matter in Delaware and who also represents Mr. Kriss in the

3

**FILED UNDER SEAL**

instant matter.  6/21 Tr. at 29-30.

In his cover email to Ron Kriss, Mr. Oberlander acknowledged that the SDNY Complaint contained confidential information and, in essence, threatened to make the information public unless his settlement demand was met.  Mr. Oberlander's email read as follows:

> **From:** fred55@aol.com [mailto:fred55@aol.com]
> **Sent:** Wednesday, May 12, 2010 12:33 PM
> **To:** Kriss, Ronald (Sh-Mia); Kriss, Ronald (Sh-Mia)
> **Subject:** Fwd: complaint, sdny, salomon, weinrich, & salomon & co.
> Ron --
>
> I recommend you forward this to Julius with the comment from me that
> there are three alternatives here:
>
> (a) I file publicly today.
>
> (b) I file under seal today.
>
> (c) He arrange a tolling agreement with EVERY defendant but nixon peabody.
>
> I don't care how many people he has to get on the phone and how fast
> he has to work. He had years to give back the money and now it's over.
> He can get Brian Halberg to help him.
>
> I believe it's possible to get this in under seal if Bayrock joins in a joint motion
> in part 1 to seal the complaint pending a redaction agreement with the
> assigned judge but there are never any guarantees.
>
> Thanks,
>
> FMO

Following the direction and request of Mr. Oblerlander, Ron Kriss – likely conflicted as father of one the plaintiffs, partner of the Defendant Akerman law firm, and longtime attorney for many of the other Defendants – in turn, emailed a copy of the SDNY Complaint to Julius Schwarz, Ron Kriss's client and a named defendant in the SDNY action.  After receipt of that email, Mr. Schwarz forwarded it, with all attachments, in the following manner: (1) an email sent to named defendants in the SDNY action including (i) John Doe, (ii) Brian Halberg, then in-house attorney at Bayrock Group, LLC (also a named defendant in the SDNY action), and (iii) Mel Dogan, counsel for Tevfik Arif, a named defendant in SDNY action; and (2) an email sent

4

**FILED UNDER SEAL**

to Teddy Klinghoffer and Andrew Sullivan, a senior partner and Chairman, respectively, of named defendant Akerman. In addition, Mr. Schwarz forwarded the SDNY Complaint *without* the Exhibits to Adam Gilbert, a named defendant in the SDNY action and a partner at Nixon Peabody LLP (also a named defendant), former counsel for Bayrock Group, LLC. The next day, Mr. Schwarz forwarded the SDNY Complaint *without* the Exhibits in the following manner: (1) an email to Alex Salomon, a named defendant in the SDNY action, of the accounting firm Salomon & Company (also a named defendant), which represented Bayrock Group, LLC and certain of its affiliated entities; and (2) an email to (i) Craig Brown and Bruce Stachenfeld, both named defendants in the SDNY action and partners and attorneys at Duval & Stachenfeld LLP, and (ii) Elliot Pisem, a named defendant in the SDNY action and a partner at Roberts & Holland LLP (also a named defendant). Duval & Stachenfeld LLP and Roberts & Holland LLP are prior counsel to Bayrock Group, LLC and certain of its affiliated entities.

On May 13, upon learning that the SDNY Complaint was filed publicly and that the online news service Courthouse News had uploaded it to the Courthouse News website (www.courthousenews.com), counsel for Mr. Doe immediately contacted the judge presiding over the SDNY action, the Honorable Naomi Reice Buchwald. That day, following a telephone conference, Judge Buchwald issued an order (the "5/13 Order"), which states that "no further dissemination of the complaint and exhibits thereto or the sealed information contained therein be made pending further order of the Court." Declaration of David A. Snider in Further Support of Permanent Injunction, dated November 24, 2010 ("Snider Decl."), Exh. 1. The 5/13 Order also directed Oberlander to immediately contact all persons who received a copy of the SDNY Complaint and inform them of the Court's order that there be no further dissemination of the SDNY Complaint and exhibits thereo or the sealed information contained therein pending further

5

**FILED UNDER SEAL**

Case: 1:08-cr-01011-LGD Document: 797 SEALED Filed: 11/24/10 Page: 6 Page ID #: 888

order of the Court. The next day, Judge Buchwald issued another order (the "5/14 Order") sealing the SDNY Complaint (pending further order of the Court) and directing Mr. Oberlander to file a redacted version of the original complaint, redacting any sealed documents or references to sealed document, by May 19, 2010. Snider Decl., Exh. 2.

On May 17, 2010, Mr. Schwarz sent by email a copy of the 5/13 Order to all of the persons (referenced above) to whom he had previously sent a copy of the SDNY Complaint and/or the Exhibits. Snider Decl., Exh. 3.

On May 18, 2010, upon the application of Mr. Doe, this Court issued an Order to Show Cause for Preliminary Injunction and Temporary Restraining Order as to why an order should not be issued requiring Respondents (and any other applicable persons) to return the "Sealed and Confidential Materials" to Mr. Doe (the "5/18 TRO").[2] Snider Decl., Exh. 4. The 5/18 TRO also restrained and enjoined Respondents (and any other applicable persons) from further disseminating the Cooperation Agreement, the PSR, or the Proffer Agreements, or information therein, pending a hearing on the motion. *Id.*

On May 19, 2010, David Lewis, a criminal defense lawyer retained by Mr. Oberlander in connection with the issues arising from Mr. Oberlander's filing of the SDNY Complaint, sent a letter to Judge Buchwald.[3] Snider Decl., Exh. 5. In that letter, Mr. Lewis characterizes the 5/18 TRO as a "change in circumstances such that complying with [the 5/14 Order] to file a redacted complaint appears to violate a sealed order of Judge Glasser." *Id.* In response, Judge Buchwald wrote a letter dated May 19, 2010 in which she stated the following: "I do not understand how you could have interpreted my earlier orders to permit 'any reference to the exhibits or

---

[2]     The "Sealed and Confidential Materials" were defined as the Cooperation Agreement, the PSR, and the October 2, 1998 Proffer Agreement.

6

**FILED UNDER SEAL**

information contained therein.'" Snider Decl., Exh. 6.

The Court held hearings on June 21 and July 20. At the hearing on June 21, the Court heard testimony from Messrs. Oberlander, Kriss and Doe. Among other things, Mr. Oberlander testified that he was physically handed the Proffer Agreements, the Cooperation Agreement, and the PSR from Mr. Bernstein during a meeting that took place after midnight on the morning of March 1, 2010 inside an apartment on the Upper East Side of Manhattan. 6/21 Tr. at 10. Mr. Oberlander also testified that he later received electronic copies of the Sealed and Confidential Documents by email from Mr. Bernstein on March 3, 2010. 6/21 Tr. at 11-13. Although Mr. Bernstein purportedly waived privilege, Mr. Oberlander refused, on the basis of the "work product" privilege, to answer whether he suspected that the Sealed and Confidential Documents had been stolen.

Mr. Doe testified that, while he was at Bayrock, he maintained the Sealed and Confidential Documents in a personal file (labeled "Personal and Confidential") that was predominantly kept in a locked desk drawer. 6/21 Tr. at 95. Mr. Doe testified that he never gave the Sealed and Confidential Documents to Mr. Bernstein, that he never scanned the Sealed and Confidential Documents (*i.e.*, converted his paper files to electronic files), and that he never gave the Sealed and Confidential Documents to *anyone* to scan. 6/21 Tr. at 97, 105, 107. Mr. Bernstein, who appears to still be cooperating with Oberlander (*see* letter dated November 23, 2010 from Richard E. Lerner to the Court) refused to testify before this Court and has flouted orders of this Court's order to return documents and produce information.

At the June 21 hearing, the Court ordered a permanent injunction against the dissemination of the PSR, and the information contained therein, and directed all copies of the

---

[1]     Mr. Lewis has since withdrawn from his representation of Mr. Oberlander.

**FILED UNDER SEAL**

PSR to be returned to the United States Attorney's Office. 6/21 Tr. at 88-92. The Court also modified and extended the 5/18 TRO to include the Criminal Complaint and the Information pending a decision on the present motion.

At the July 20 hearing, the Court heard oral arguments and made preliminary findings of fact with respect to how the Sealed and Confidential Documents were obtained. Specifically, the Court stated: "Mr. Bernstein is a converter, Mr. Bernstein has no title to those documents, no legal right to those documents, to that tangible document whether it would be a piece of paper, whether it be a gold ring or whatever it is, it was a tangible item which was converted ... ." 7/20 Tr. at 19. The Court further stated: "Mr. Oberlander had no better right to those documents than Mr. Bernstein had. If we were to describe this change of events in terms of property rights, title, Mr. Bernstein had no title and he had no title to give Mr. Oberlander." 7/20 Tr. at 20. The Court granted Mr. Doe's application to file a supplemental brief by July 27 and extended the 5/18 TRO pending a decision by the Court. After counsel for Respondent Oberlander asserted his position that the Court's permanent order regarding the presentence report applied only to the "original" copy that Mr. Oberlander obtained from Joshua Bernstein, the Court also issued a further TRO against the dissemination of any *copies* of the PSR. 7/20 Tr. at 26-27.

On July 26, counsel for Mr. Doe sent a letter to the Court advising that the parties were negotiating a standstill agreement "with the goal of reaching a consensual resolution to the proceedings before this Court" and requesting an extension of the 5/18 TRO. The Court extended the 5/18 TRO until August 3 and further extended the TRO until August 13. On August 12, the parties agreed to a stipulated standstill order (the "Standstill Agreement"), which the Court so-ordered that day. Among other things, the Standstill Agreement provided that pending a settlement or issuance of the an order granting or denying the relief requested,

8

**FILED UNDER SEAL**

Respondents may not disseminate the Documents or information obtained therefrom except as may be required for purposes of Respondents' pending appeal. The Standstill Agreement provided for its own termination on September 27, 2010, unless either party terminated prior to this day on seven calendar days' advance written notice for any reason. On September 27, the parties agreed to extend to the Standstill Agreement until January 14, 2011.

On October 29, Mr. Oberlander sent a letter *ex parte* to Judge Buchwald (the "10/29 Letter) requesting, among other things, an additional enlargement of time to serve the SDNY Complaint *in its original form, i.e.*, the unredacted version with the PSR, Cooperation Agreement, and Proffer Agreements attached as exhibits and full of references and quotes from the Sealed and Confidential Materials. Snider Decl., Exh. 7. In the 10/29 Letter, Mr. Oberlander speciously asserts that this Court's orders in the present proceeding are "prior restraint orders" that are "an unconstitutional affront to justice." *Id.* Putting aside Mr. Oberlander's impertinent mischaracterizations of this Court's orders, Judge Buchwald's own 5/13 and 5/14 Orders, as discussed above, enjoined further dissemination of the SDNY Complaint and directed Mr. Oberlander to redact references to the sensitive information related to John Doe *before* Mr. Doe sought the return/and or destruction of the Sealed and Confidential Materials from this Court. Snider Decl., Exhs. 1-2.

On November 2, 2010, the parties had a telephonic status conference with the Court. During that conference, the Court encouraged the parties to reach a settlement. Counsel for Mr. Doe explained that Mr. Doe simply wanted the return and/or destruction of the Sealed and Confidential Documents, and an agreement by Respondents not to further disseminate the information contained therein. Counsel for Mr. Oberlander stated that the issue was moot because the Complaint and the Exhibits had been disseminated to the other defendants in the

9

**FILED UNDER SEAL**

SDNY action by Julius Schwarz, to whom the complaint was sent by Ron Kriss with Mr.

Oberlander's demand that Schwarz obtain a tolling agreement from every defendant except

Nixon Peabody (as discussed above).

On November 8, in response to Mr. Oberlander's October 29, 2010 submission, Judge

Buchwald sent a letter to Oberlander, which states the following:

> I understand that Judge Glasser has urged you to remove from your pleading the otherwise privileged and sensitive material about [John Doe]. In May I directed you to file a redacted complaint in the same spirit. Frankly, it is difficult to understand the delay. Moreover, given both the tone of your letter and your proposed orders, I am somewhat at a loss as to whether you are insistent on using the original complaint or are prepared without further delay to file an amended pleading which removes any reference to otherwise confidential information and documents. Please advise.

Snider Decl., Exh. 8.

On November 9, Mr. Oberlander, on behalf of himself and as counsel for and on behalf

of his clients Respondents Kriss and Ejekam, sent a letter to counsel for Mr. Doe terminating the

Standstill Agreement effective November 16, 2010.[4]  In that letter, Mr. Oberlander states, among

other things, the following:

> If you wish Mr. [Doe]'s activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything uploads to PACER and goes public. The only way to try to prevent worldwide notoriety will be a globally stipulated sealed confidentiality order accompanying a global settlement.
> ***
> **Sign the litigation standstill and get out of the way**. You have seven days to seek further relief from Judge Glasser. If you do, if you don't standstill, if you continue to interfere with service or dissemination, if I see letters, motions, or anything else, I will instruct counsel to seek emergency relief. And I'll get it. And you'll get the inevitable, concomitant global public news and media coverage of everything everywhere. You and Ms. Moore may meet with me any time this week. Do not mistake the tone of this letter. It is not arrogant. It is, "What were they thinking?" Listen to me. I see legal ways out for your client which are in my clients' interests to facilitate. You won't see them. You need

---

[4]     Mr. Oberlander subsequently agreed to make the termination of the Standstill Agreement effective November 17, 2010.

**FILED UNDER SEAL**

my help. Take it. Fast. Or Judge Buchwald will be presiding over World War III with coverage likely on the front page of the New York Law Journal.

Snider Decl., Exh. 9.

With the Standstill Agreement having been terminated by Mr. Oberlander, Mr. Doe's time to file this Supplemental Memorandum of law was adjourned until November 24, 2010.

## ARGUMENT

### I. THE COURT HAS THE POWER AND AUTHORITY TO ORDER THE DESTRUCTION OR RETURN OF THE SEALED AND CONFIDENTIAL DOCUMENTS AND ANY COPIES OR EXCERPTS THEREFROM

At the oral argument on July 20, 2010, the Court noted that "the documents were wrongfully taken by Mr. Bernstein" and Mr. Oberlander, who was Bernstein's lawyer and agent at the time he received the documents from Bernstein, "knew or perhaps should have known" the documents were improperly taken. 7/20 Tr. at 19-20. The Court went on to observe that Mr. Bernstein is a converter "with no legal right to the documents" and "Mr. Oberlander had no better right to those documents than Mr. Bernstein had." 7/20 Tr. at 219-20. Although the Court called the theft and subsequent use of the documents "very bad and perhaps despicable," the Court questioned whether any order of the Court had in fact been violated and whether absent a violation by respondents of a court order, the Court had the power to issue an order directing the return or destruction of the documents and enjoin any further dissemination of the documents or sensitive information contained therein. The Court described the issue as follows:

> What I have just declared is not to be interpreted as this moment as a determination that injunctive relief may not be appropriate, but I am troubled by the issues as I have outlined them as to whether an order signed by a judge on one of those sealing envelopes, which says, not to be unsealed except by order of the Court, is binding upon any third-party person, is binding or is the procedure, which is intended by that procedure, which informs any third-party who has notice or will have notice by looking at the docket sheet, looking at ECF, this is a case under seal – under seal or filed under seal – make application to the Court to unseal the document.

11

**FILED UNDER SEAL**

Whether having knowledge that the case was one, which has been filed under seal, whether an order was issued or not, it is a case which is filed under seal, and clearly indicates that content of that sealed file is not be disclosed, except upon order of the Court, whether that can be ignored, whether that is presumptively meaningless and has no binding effect upon anybody.

7/20 Tr. at. 22-23.

Respectfully, we submit that the question of whether the respondents violated the existing sealing order is irrelevant to the Court's power and authority to issue the requested permanent injunction. This exact issue was squarely addressed and explained in *In re Zyprexa Injunction*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007), *aff'd*, 617 F.3d 186 (2d Cir. 2010), which establishes that the Court can require Respondents to return the documents even if Respondents did not technically violate the seal order.

In *Zyprexa*, a group of individuals engaged in a scheme to obtain documents sealed pursuant to a protective order in a civil case. The Court subsequently issued a broad injunctive order requiring both the schemers and downstream recipients to return the documents to their rightful owner. In opposing the injunction, respondents there – just like Respondents here – relied heavily on a statement in *Alemite MGF Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930), that "the only occasion when a person not a party *may be punished*, is when he has helped bring about an act of a party [in violation of a prior court decree.]" *Id.* at 833.

Importantly, Judge Weinstein explained that the court's power to require the return of documents covered by a protective seal order is not dependent on establishing a violation of the protective seal order:

> *Alemite* speaks to the question of who may be held in contempt for violating an injunction … . It does not bear on the question presented in this case of who the court may enjoin by name in the first instance. **Unlike Alemite, this is not a contempt proceeding, and the court is not now punishing anyone for any alleged violation of court orders. Rather, this proceeding seeks to**

12

**FILED UNDER SEAL**

> **prevent irreparable harm to Lilly by enjoining those persons**
> **whose actions threaten such harm**. See Owen Fiss, Injunctions,
> 109 (2d ed. 1984) ("The traditional office of an injunction is to
> prevent harm."). **The relief granted is not punitive, but**
> **preventative ... .**

*Zyprexa*, 474 F. Supp. 2d at 426 (emphasis added).

In other words, the question the Court asked at oral argument – whether anyone actually

violated the seal order – might be relevant to whether Respondents should be punished for

contempt. But it is not relevant to the question whether Movant is entitled to prospective

"preventative" relief. As in *Zyprexa*:

> **The necessity of enjoining dissemination and requiring return**
> **of the sealed documents is not limited to those who were bound**
> **by the terms of [the protective order]. The power to enjoin**
> **extends to persons and organizations whose activities present a**
> **risk of irreparable harm to petitioner that can not be alleviated**
> **by means other than injunction.**

*Id.* at 427 (emphasis added). *Zyprexa*, which was recently affirmed by the Second Circuit, 617

F.3d 186 (2d Cir. 2010), thus fully supports a prospective order enjoining Respondents because

their "activities present a risk of irreparable harm to [Movant] that can not be alleviated by

means other than injunction." *Id.*

Additionally, in *United States v. Visa U.S.A., Inc.*, No. 98 Civ. 7076, 2000 WL 1682753

at *1 (S.D.N.Y. Nov. 9, 2000), an antitrust action in the Southern District of New York, Judge

Jones held that "**third parties who gain access to sealed material inadvertently disclosed**

**cannot be allowed to retain those documents.**" *Id.* (emphasis added). The court ordered all

third parties in possession of the documents to "return or destroy" them "as well as any

documents reflecting the confidential information contained therein." *Id.* The court further

ordered that, to the extent that a third party was aware that its actions caused any other person to

**FILED UNDER SEAL**

come into **possession of copies of the documents**, the third party would have to ensure that such documents were destroyed or returned. *Id.* (emphasis added).

Zyprexa cites, and its orders are consistent with, decisions under the All Writs Act, which authorizes a court to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 29 U.S.C. § 1651(a). In general, "the Act is designed to provide a source of procedural instruments designed to rational ends of law, when necessary in the federal court's sound judgment to achieve the ends of justice entrusted to it." *Stabile v. The New York Racing Ass'n, Inc.*, 436 F. Supp. 2d 406, 413-14 (E.D.N.Y. 2006) (quoting *United States v. New York Telephone Co.*, 434 U.S 159, 172 (1977)). Importantly, "the Act's grant of authority is plainly broad and, on its face, **makes no distinction between parties and nonparties**." *Id.* (quoting *United States v. Int'l Bhd. of Teamsters*, 266 F.3d 45, 49-50 (2d Cir. 2001) (emphasis added).

In *United States v. International Brotherhood of Teamsters*, 266 F.3d 45 (2d Cir. 2001), the IBT was reorganized pursuant to a consent decree designed to root out criminal control. Several of the forced out union leaders took control of a new union and started to organize. The Second Circuit endorsed an injunction of the new union's activities, rejecting appellants' argument that, because they were not parties to the original consent decree, the court lacked authority to enjoin them. Under the All Writs Act, the court has the power to bind non-parties "in situations in which the activities of the third parties interfere with the very conduct of the proceeding before the court."

As the Supreme Court has explained:

> The power conferred by the All Writs Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder

14

**FILED UNDER SEAL**

justice.

*New York Telephone Co.*, 434 U.S at 174.

The Second Circuit as similarly explained:

An important feature of the All Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction. The power to bind non-parties distinguishes injunctions issued under the Act from injunctions issued in situations in which the activities of third parties do not interfere with the very conduct of the proceeding before the court.

*In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir.1985) (citations omitted).

The Act is to be applied "flexibly in conformity with these principles." *In re Stabile*, 436 F.

Supp. 2d at 414.

Respondents' conduct in this case calls for injunctive relief to "preserve the court's

ability to reach or enforce its decision in a case over which it has proper jurisdiction." As the

Court is well aware, for over eleven years, John Doe provided extraordinary cooperation to

multiple United States law enforcement and national security agencies in connection with dozens

of cases involving organized crime, securities fraud, and                        Because of the

significance and extreme sensitivity surrounding some of those investigations, including matters

involving national security and classified information, and the need to protect the lives of Mr.

Doe and his family, the Court sealed Mr. Doe's entire criminal file, docket number 98 CR 1101

(the "Criminal Matter"). Indeed, as this Court stated:

Criminal cases such as the John Doe case and cases in which by virtue of cooperation agreements and variety of other matters either national interest, security interest, or significant interest that one may have in his own safety, which may be at risk. Criminal files are sealed where that is a significant consideration.

7/20 Tr. at 17.

15

**FILED UNDER SEAL**

Respondents are now in a position to frustrate the Court's intention to protect interests of national security, and the lives of Mr. Doe and his family, because they are in possession of stolen documents that contain the information the Court intended to keep from the public domain. Not only have Respondents demonstrated a willingness to use the Sealed and Confidential Documents, and the information therein, their steadfast refusal to return said documents is nothing short of an affront to the proper administration of justice. Respondents have shown complete disdain for the Court's intended relief by knowingly publishing the sealed documents on May 10, 2010, and as recently as October 29, 2010 in an application to Judge Buchwald seeking leave to serve the unredacted original complaint, which Judge Buchwald directed them to redact on May 16, 2010 and which contains as an exhibit the PSR and multiple references to the PSR, with respect to which this Court issued a permanent injunction on June 21, 2010. 6/21 Tr. at 88-92. The only way to prevent continued attempts to interfere with the Court's seal order is to issue a permanent injunction.

Finally, Mr. Oberlander's suggestion that the seal order only governs court personnel, and that the Court may only compel the return of sealed documents if they were improperly distributed by court personnel in violation of the order, is not supported by a single case. If such a rule were adopted, the Court could require the return of sealed documents if the clerk mistakenly handed the documents to Mr. Bernstein, but the Court would be powerless if Mr. Bernstein stole the documents from the same clerk's safe, or from the United States Attorney, or from defense counsel's office, or from a court reporter, because in each of those circumstances, there would be no violation of the seal order by court personnel. Such a result would be an absurd limitation on the Court's power, and if the Court agrees that it should have the power to

16

**FILED UNDER SEAL**

redress such hypothetical thefts, then it should also have the power to prevent the dissemination of sealed information resulting from the very real theft from Mr. Doe's locked desk drawer.

## II.    THE ISSUE IS NOT MOOT

In a recent conversation with the Court, counsel for Mr. Oberlander asserted two things: 1) that if Mr. Doe's cooperation truly exposed him to danger, he would be dead by now and 2) that the issue of further dissemination of these sensitive documents (presumably including the PSR) is moot because Julius Schwarz (at Mr. Oberlander's direction through Ron Kriss, father of Jody Kriss) forwarded the complaint to other named defendants (and their principals) and therefore this information has already been disseminated.   Respondent Oberlander contends that he only recently learned of the dissemination of the SDNY Complaint and attachments to Julius Schwarz.  However, it can hardly be a surprise since Respondent Oberlander directed Ron Kriss to send the SDNY Complaint to Julius Schwarz with the instruction for Mr. Schwarz to "arrange a tolling agreement with EVERY defendant, except Nixon Peabody."

Moreover, as set forth in the declaration of Julius Schwarz, upon receiving Judge Buchwald's order barring further dissemination of SDNY Complaint, Julius Schwarz forwarded that order to everyone to whom he had originally sent a copy of the SDNY Complaint before it was sealed by Judge Buchwald.  Snider Decl., Exh. 3.  The individuals to whom Mr. Schwarz emailed the SDNY Complaint in the first instance are current and former employees of Bayrock, and accountants and lawyers for Bayrock.  Based on conversations with counsel for those individuals, we have every reason to believe that they have honored Judge Buchwald's order regarding no further dissemination and that they will voluntarily agree to the appropriate handling and deposal of the documents in question without the need for judicial intervention.  In any event, the Respondents should not be permitted to rely on their own wrongful actions in

17

**FILED UNDER SEAL**

disseminating the SDNY Complaint and attachments and directing their further dissemination by Julius Schwarz to claim that the issue is now moot.

III. **THE FIRST AMENDMENT DOES NOT STRIP THE COURT OF POWER TO ACT IN THESE UNIQUE CIRCUMSTANCES**

    A. **There is No First Amendment Right to Extort Settlements in Exchange for NOT Publishing Information**

In his July 16, 2010 submission, Respondent Oberlander contends that the First Amendment prevents this Court from ordering him to return or destroy all copies of the Exhibits and enjoining him from further disseminating those documents or extracts therefrom. The cases he cites in support of this position primarily involve press agencies and organizations that sought to publish news stories regarding matters of public concern. *See e.g.*, *New York Times Co. v. United States*, 403 U.S. 713 (1971) (involving *New York Times'* and *Washington Post's* right to publish current news); *Bartnicki v. Vopper*, 532 U.S. 514 (2001) (involving First Amendment right of radio broadcaster to broadcast intercepted phone calls); *Proctor & Gamble Company v. Bankers Trust Company*, 78 F.3d 219 (involving *Business Week* Magazine). As the *Proctor* court noted, the "bedrock First Amendment principle" is that "the press shall not be subjected to prior restraints." *Proctor*, 78 F.3d at 221.

The Respondents, however, are not the media. And their very open and obvious aim has never been to exercise a First Amendment right to publish a newsworthy story, but rather to attempt to extort Defendants in the SDNY action in exchange for *not* publishing information. This intent was memorialized in the very first email Respondent Oberlander sent to Ron Kriss with the following instruction:

> I recommend you forward this to Julius with the comment from me that there are three alternatives here:
>
> (a) I file publicly today.

18

**FILED UNDER SEAL**

(b) I file under seal today.

(c) He arrange a tolling agreement with EVERY defendant but nixon peabody.

I don't care how many people he has to get on the phone and how fast
he has to work. He had years to give back the money and now it's over.
He can get Brian Halberg to help him.

I believe it's possible to get this in under seal if Bayrock joins in a joint motion
in part 1 to seal the complaint pending a redaction agreement with the
assigned judge but there are never any guarantees.

Thanks,

FMO

Respondent Oberlander's intent to extort in exchange for *not* publishing the Exhibits and the

SDNY Complaint that quotes extensively from those documents was again made unabashedly

clear in his recent letter terminating the standstill agreement in which he stated:

> If you wish Mr. [Doe]'s activities lawfully kept quiet to any extent, stand still, stop filing
> motions and get out of the way so Plaintiffs can try to resolve the case before everything
> uploads to PACER and goes public. The only way to try to prevent worldwide notoriety
> will be a globally stipulated sealed confidentiality order accompanying a global
> settlement
> ***
> Take it. Fast. Or Judge Buchwald will be presiding over World War III with coverage
> likely on the front page of the New York Law Journal.

None of the First Amendment cases cited by Respondent Oberlander stands for the proposition

that a licensed attorney has a First Amendment right to use stolen documents obtained from a

client to extort money in exchange for not endangering the safety of a man and his family by

widely disseminating those documents.

### B.   The First Amendment Does Not Protect a Thief or His Agent

The First Amendment has been broadly applied by the Supreme Court to protect the

publication of "lawfully obtained" information. *See Florida Star v. BJF*, 491 U.S. 524 (1989).

Indeed, the Supreme Court has recognized that an innocent downstream recipient of stolen

information may have rights to such information because "a stranger's illegal conduct does not

19

**FILED UNDER SEAL**

suffice to remove the First Amendment shield from speech about a matter of public concern." *Bartnicki*, 532 U.S. at 535. But the Supreme Court has never held that a thief can steal information and hand it off to his lawyer for publication in some concerted and concocted litigation scheme. And that is precisely what happened here.

The following facts cannot be contested. Joshua Bernstein stole documents from Mr. Doe and from his employer, Bayrock. On March 1, he passed the documents to Oberlander in the dark of night in a meeting in Bernstein's apartment. Mr. Oberlander then appeared at three depositions in Mr. Bernstein's lawsuit against Bayrock, and even took the deposition of an executive of Bayrock, Julius Schwarz. At the deposition, Oberlander used as exhibits privileged Bayrock documents, presumably supplied by Bernstein. In defending his use of the documents in the Bernstein matter, Oberlander made specific reference to his plan to use the same documents "in a complaint that you are about to be served with" *i.e.*, the SDNY action. *See* Transcript of the Deposition of Julius Schwarz, Exhibit 7 to the Declaration of Brian Herman, dated July 1, 2010, at page 129 thereto. Mr. Bernstein was also deposed with Oberlander at his side, and admitted that when he was fired he took or retained "[v]arious documents. Thousands of different e-mails and such." *See* Transcript of the Deposition of Joshua Bernstein, Exhibit 2 to the Declaration of Kelly Moore, dated May 18, 2010, at page 218 thereto. A few weeks after Oberlander appeared at the Bernstein depositions and threatened the filing of a new lawsuit, Oberlander used documents provided by Bernstein to commence the SDNY action .

Thus, Mr. Oberlander is not some innocent downstream recipient of stolen documents. He is the agent of and conspirator with the thief, and *Zyprexa* makes clear that Mr. Oberlander has no First Amendment rights with respect to stolen documents. In enjoining the dissemination of sealed documents in that case, Judge Weinstein rejected claims that the First Amendment was

20

**FILED UNDER SEAL**

impinged upon, concluding that any restriction was content neutral in that it "does not depend on the nature of the content of idea that the enjoined individuals wish to express but only on the materials that would be the medium of expression." *Zyprexa*, 474 F. Supp. 2d at 423. Further:

> In granting this injunction, the court has balanced the harm to petitioner if relief is denied against the harm to respondents if relief is granted. . . . The harm imposed by the injunction is minimal. They are required to return stolen documents over which they enjoy no property rights. ... Their freedom of speech is not impinged upon.

*Id.* at 425. The same conclusion is compelled here.

### C.     The Right of Access to Judicial Documents is Qualified

Mr. Oberlander also cites numerous cases concerning the qualified right of access to court proceedings and judicial documents. *See e.g., Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980) (involving *Richmond Newspapers* right to attend murder trial); *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984) (involving right of press to be present during jury selection); *United Stated v. Amodeo*, 44 F.3d 141 (2d. Cir. 1995) (involving newspaper's access to redacted court document). But as the *Amodeo* court noted, "the fact that a document is a judicial record does not mean that access to it cannot be restricted." As the Supreme Court has held:

> [I]t is uncontested…that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.

*Nixon v. Warner Communications*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312 (1978).

To determine whether there is a right of access to a particular stage of a proceeding or to a given class of documents, courts look at two factors: (1) whether there has been a "tradition of accessibility" to that stage or those documents; and (2) "whether the traditional public access

21

plays a particularly significant positive role in the actual functioning of the process." U.S. v. Town of Moreau, 979 F. Supp. 129, 133 (N.D.N.Y. 1997).

In Moreau, a newspaper and reporter moved to intervene in a Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) action to obtain settlement negotiation information that was under seal. Judge Kahn determined that settlement negotiations had never been "traditionally open to the public" and therefore concluded that movants' First Amendment right to attend a civil trial and inspect sealed document was not implicated. Id. (citing Cincinnati Gas and Elec. Co. v. General Elec. Co., 854 F.2d 900, 903 (6th Cir. 1988) (finding that there is no historically recognized right of access to summary jury trials)).

Judge Kahn's reasoning applies with even greater force to this case. The documents that Respondents claim are protected by the First Amendment reveal and document John Doe's cooperation in highly sensitive matters. The fact of cooperation by individuals in matters of national security and ▮▮▮▮▮▮▮▮ is not "traditionally open" to the public. To the contrary, sensitive documents of this nature are frequently sealed because of the obvious dangers to the cooperating individual that would result from disclosure. See, e.g., U.S. v. Doe, 63 F.3d 121, 127 (2d Cir. 1995) (stating Circuit's view that a person's physical safety, among other things, could in certain instances justify a closure order).

## IV. THE PRESENTENCE REPORT

At the oral argument on July 20, 2010, counsel for Respondent Oberlander took the position that the Court's June 21, 2010 permanent injunction with respect to the presentence report only applied to the "original" copy that Mr. Oberlander had obtained, but did not apply to any copies or electronic copies of the same document. 7/20 Tr. at 15. Counsel then claimed that

22

FILED UNDER SEAL

Mr. Oberlander's original copy was marked as an exhibit at the June 21st hearing and already in the Court's possession.[5] 7/20 Tr. at 26. While we consider this to be an intentional and blatant misinterpretation of the Court's order, we nevertheless requested that the Court specify that the permanent injunction with respect to the PSR applies to all copies of that document. The Court granted that request in the form of TRO. To prevent any additional confusion or feigned confusion, we respectfully request that in issuing a permanent order with respect to the PSR, the Court adopt the language used by the Second Circuit in *United States v. Charmer Industries, Inc.*, 771 F.2d 1164 (2d Cir. 1983), and issue a permanent order requiring the Respondents and Joshua Bernstein to return to the Court the presentence report "and all copies and extracts made of it," and "prohibiting [their] publication or other use of any portion of the Report that is not already publicly available." Furthermore, to the extent that the Respondents have electronic versions of the Report that cannot be returned to the Court, we respectfully request that the Respondents and Joshua Bernstein be ordered to destroy all such electronic copies of the Report.

## CONCLUSION

For all the foregoing reasons, the Court should issue a permanent injunction (the "Order") ordering Respondents Oberlander and Kriss (who testified that he received electronic copies of the Sealed and Confidential Documents) and Joshua Bernstein (who is currently in contempt of the Court's June 25 Order, directing him to return the PSR and identify everyone to whom he provided the Sealed and Confidential Documents) to:

---

[5]     That statement is inconsistent with Oberlander's sworn testimony that the original hard copies that he had obtained from Bernstein were in Montauk on the day of the hearing.

23

**FILED UNDER SEAL**

1) Return or destroy all copies (including all electronic copies) of the Sealed and Confidential Documents and any excerpts from those documents; and

2) Refrain from any further dissemination of the Sealed and Confidential Documents and information contained therein that is not already publicly available; and

3) Provide a copy of the Court's order to everyone to whom the Respondents and Joshua Bernstein disseminated the documents. All third parties informed of the Order shall forthwith return or destroy all copies of the Sealed and Confidential Documents. To the extent that a third party is aware that by its actions any other person possess copies of, or documents reflecting or recording the confidential information contained therein, it shall ensure that such documents are returned or destroyed by such parties.

Dated: New York, New York

November 24, 2010

MORGAN, LEWIS & BOCKIUS LLP

By _____

Kelly Moore (KM 4839)
Brian A. Herman (BH 0731)

101 Park Avenue
New York, New York 10178-0060
Phone: 212-309-6000
Fax: 212-309-6001

*Attorneys for John Doe*

24

**FILED UNDER SEAL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of November, 2010, I caused true and correct copies of (1) Movant John Doe's Supplemental Memorandum of Law in Further Support of Permanent Injunction; and (2) Declaration of David A. Snider in Further Support of Permanent Injunction, to be served by electronic mail on the counsel of Record listed below:

Richard E. Lerner, Esq.  
Wilson, Elser, Moskowitz, Edelman & Dicker LLP  
150 East 42nd Street  
New York, NY 10017-5639  
richard.lerner@wilsonelser.com

Stam Stamoulis  
Stamoulis & Weinblatt, LLC  
Two Fox Point Centre 6 Denny Road, Suite 307 Wilmington, DE 19809  
stamoulis@swdelaw.com

_____  
David A. Snider