# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000   Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean*
*Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains*
*Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

December 13, 2010

**Via Facsimile Under Seal – (718) 613-2446**

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> Re:   United States of America v. Felix Sater
> Case No.       :   98CR1101 (ILG)
> Our File No.   :   07765.00155

Dear Judge Glasser:

I am forwarding herewith two letters written to Judge Buchwald by my client Frederick M. Oberlander, dated December 10 and December 13, 2010.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard E. Lerner

cc:   **Via E-Mail**
Kelly Moore, Esq.
Brian Herman, Esq.
Stamatios Stamoulis, Esq.
Todd Kaminsky, Esq. – US Attorney's Office
Joshua Bernstein
Arnold Bernstein, Esq.
Frederick M. Oberlander, Esq.

- 1 -

4254954.1

# LAW OFFICE OF FREDERICK M. OBERLANDER

FREDERICK M. OBERLANDER
ATTORNEY-AT-LAW

fred55@aol.com

28 SYCAMORE LANE (PO BOX 1870)
MONTAUK, NEW YORK 11954
TELEPHONE 212.826.0357
FAX 212.202.7624

December 10, 2010

Re: *Kriss v. Bayrock Group LLC*, 10 CV 3959

Hon. Naomi Reice Buchwald
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007
(via facsimile under seal to 212.805.7927)

**REQUEST FOR EMERGENCY CONFERENCE
REQUEST FOR EMERGENCY ORDERS**

Dear Judge Buchwald:

***PLAINTIFFS RESPECTFULLY DEMAND (1) EMERGENCY CONFERENCE TO INVESTIGATE, REMEDY, AND ENJOIN ATTEMPTED SPOLIATION AND A MASSIVE FRAUD APPARENTLY JUST FACILITATED BY DEFENDANT SCHWARZ, NOW THREATENING IRREPARABLE HARM; (2) EMERGENCY ORDERS PRESERVING THE STATUS QUO; AND (2) VACATION OF YOUR GAG ORDER PREVENTING FURTHER DISSEMINATION OF THE COMPLAINT***

I spent much of this week in preparation of a much longer letter with legal argument, citation, and exhibits, which would have warned Your Honor of an apparent, imminent, massive fraud by Julius Schwarz, controlling Bayrock, and the attempted spoliation of evidence by Ms. Moore, and requested an emergency conference and orders, which would have had a chance of protecting this Court from involvement in the fraud.

At 2.00pm yesterday, I received the enclosed press release. What Plaintiffs feared would happen, did. Mr. Schwarz apparently caused Bayrock to perpetrate a quarter billion dollar fraud, taking advantage of Your Honor's gag orders, and those of Judge Glasser, to help negotiate the sale of a $300,000,000 mortgage on Trump SoHo held by iStar to CIM Group. I believe CIM paid about $250,000,000.

The iStar mortgage was obtained through Bayrock's criminal fraud, backed in large part by sales of condominiums at Trump SoHo. Those sales have been at the core of Bayrock's criminal fraud from the beginning because of the omission from the 2007 Martin Act offering documents of Mr. Sater's ownership and control of Bayrock and *the omission of his 2004 conviction for racketeering predicated on securities fraud and money laundering*.

Even without scienter, the omission of that material information – indeed just the omission of Sater's RICO conviction – is grounds for the New York Attorney General to void all Trump SoHo sales, order return of all the deposits, and bar the developer from future sales. And as Mr. Sater has testified that at the time of the 2007 offering, he was second in command at Bayrock, scienter and intent exist anyway. Mr Sater's knowledge of his own conviction is obviously attributable to Bayrock. Thus, even assuming Mr. Schwarz's had no knowledge of the conviction at the time, the offering was still Bayrock's criminal fraud on that account alone.

Whatever CIM paid, I doubt they would have paid it if they had known the truth. No one has the right to co-opt the truth and decide this for them. That's supposed to be what securities laws and banking laws and common laws are about – making sure that in America the markets are fair.

Irreparable harm is threatened, because iStar is expected to file a prepackaged Chapter 11 reorganization within days and when it does, all its liabilities will be discharged, as it has (presumably) no knowledge of Bayrock, Mr. Schwarz's, and Mr. Sater's frauds and thus presumably has no duty to disclose it in the reorganization. Because of Your Honor's gag orders, and those of Judge Glasser, CIM may be left with no practical recourse.

If on learning the truth CIM retrades the deal, the diminution in what they pay iStar will be *ipso facto* loss. It will be §1964 causal RICO damage (assuming the mortgage, secured by realty, is not a security under federal law), for CIM will have been damaged by Bayrock racketeering, and also by what the following letter (to be sent to you on Monday), and supplemental complaint, will allege is the "restitution racketeering" (to evade mandatory restitution for favored defendants). Concealing Mr. Sater and his RICO conviction was and is a primary component of both.

Anyone who participated in either racketeering, or took one overt act to facilitate either, is liable substantively or vicariously to everyone causally damaged for everything from the beginning of each racketeering. In particular, as concealing Mr. Sater and his conviction was a primary component of both the Bayrock racketeering and the restitution racketeering, that means, for example and without limitation, anyone who knew generally of either and helped conceal his conviction with the intent to facilitate the racketeering is liable for everything, everywhere. And intent includes knowledge, not just purpose.

Informally, anyone who concealed the truth, or helped conceal the truth, after knowing the truth, to avoid the consequences of telling the truth, will be liable for everything, everywhere.

For example, Bayrock partner Tamir Sapir invested about $120,000,000 in Trump SoHo. He was facing total loss if the loan had not been sold, as iStar would have foreclosed on Trump SoHo. The complaint details the frantic efforts of Mr. Schwarz and Mr. Halberg in 2007 and 2008 to prevent Mr. Sapir and iStar from learning the truth about Mr. Sater. If Mr. Schwarz never told Mr. Sapir the truth, he has been continuing to defraud Mr. Sapir[1]. If he did, and Mr. Sapir lifted one finger to help Mr. Schwarz in his illicit operation of Bayrock to save himself, or wrongfully failed to act, he too will be liable in racketeering conspiracy for everything, everywhere, from the beginning of the conspiracies. *Subject to corroboration, Plaintiffs believe Mr. Sapir had a personal guarantee on that loan, set off by a "bad boy" clause with triggers like "If borrower defrauds all the buyers by filing false Martin Act documents hiding a convicted RICO felon, you lose everything". If that is the case, and Mr. Kriss, financial officer at Bayrock when the loan was placed to the best of his recall believes it is, and the new loan removes or materially relieves that guarantee, that is suspicious enough to warrant immediate emergency action.*

Most Trump SoHo buyers are refusing to close – for other reasons as they do not know the truth. Many are suing Bayrock in an action before Judge Wood. I wrote Your Honor, Judge Glasser, Ms. Moore, and Mr. Herman about this. Recently, Bayrock offered buyers 50% refunds (Bayrock keeps the rest) if they agreed not to sue for any reason. That compounded the fraud on them, as it was after Mr. Schwarz received the complaint, PSR, proffer, and cooperation, and knew of the concealed conviction. Everyone else who got the complaint knew then, too. Most got it from him.

---

[1] Even if Mr. Schwarz says the gag orders prevented him from telling Mr. Sapir the truth (that is, his defense is "the judge made me commit fraud"), he had no problem sending that complaint to a dozen persons before there were orders, and could have told (and by law had to tell) Bayrock partners, including the Sapirs, of the complaint. He could not think an order not to disclose was permission to conceal. In other words, he could have done nothing instead of defrauding CIM.

The mere receipt of the complaint, its contents, and those documents, are lethally inculpatory evidence of scienter. Anyone facilitating Mr. Schwarz's illicit operation of Bayrock after receipt of that complaint, in particular but without limitation anyone facilitating the iStar transaction or also the 50% fraud scheme, knowing of Sater's conviction and Bayrock's operation through a pattern of racketeering because of the complaint, will be liable in RICO conspiracy for everything, everywhere, from the beginning. The dissemination and receipt of that complaint is evidence of "What did the sender [recipient] know, and when did he know it?"

I believe this includes Morgan Lewis. As she has now admitted in court documents filed in EDNY November 24, Ms. Moore has contacted the recipients of the complaint and asked them to destroy everything. It seems clear she is attempting the spoliation of evidence of crimes, and as that will help continue the cover-up of the Sater conviction, the subsequent letter argues there is little doubt she is doing so to protect herself and her firm for facilitating the cover-up, not just to protect Mr. Sater. It is a cover-up she has known about for some time.

From the filing of the complaint, which describes the omission in the offering documents, through today I and my clients did all we could to get justice for innocent victims. We will continue, and would have succeeded but for the actions of federal judges preventing us from telling the truth to the victims, Judge Wood, the public and thus to CIM, and iStar, which has $250,000,000 – at least some of which it doesn't deserve – and a liability it will have to address once it learns of it because it sold a mortgage it materially misrepresented, even if innocently.

**I warned the Court by letter on August 11, 2010, that there was racketeering fraud in the Sater concealment at Trump SoHo, that Judge Wood was presiding over a case of fraud based on the Sater concealment, and that disaster was inevitable.**

Everything that happened here was preventable. Everything that happened here is the moral result, nevermind the proximate result (which it is as well) of the illegal concealment of Mr. Sater's conviction and the unconstitutional gag orders placed on me and my clients to perpetuate it. I would expect the Court to be embarrassed that it has allowed this to go on.

This letter was written quickly. More detailed analysis supporting it follows in the letter I had intended to send, which I will transmit Monday morning at 10:00AM sharp, changed slightly to reflect that what was a looming offshore Category 5 hurricane has now come ashore in full fury and is beginning to drown a lot of innocent people whom we were not allowed to warn.

Yours, etc.

Frederick M. Oberlander
Counsel for Planitiffs

P.S. It is possible that Mr. Schwarz told the truth to everyone involved in this, including all the buyers being offered 50% refunds. I doubt it, but if it should be the case that Mr. Schwarz did tell everyone of the hidden conviction, then attempting to conceal the conviction is moot.

cc: Hon. I Leo, Glasser
    W. Saurack, Esq.
    K. Moore, Esq.
    S. Stamoulis, Esq.

## Trump SoHo Closes on Debt Recapitalization
👍 Like it

NEW YORK, Dec. 9, 2010 /PRNewswire/ -- Bayrock/Sapir Organization, LLC, announced today a debt recapitalization of its Trump SoHo hotel condominium project in downtown Manhattan. Through the debt recapitalization, iStar Financial has been substantially paid down and all project indebtedness has been extended as a result of new debt financing provided by CIM Group. Trump will continue to manage the property as it has since the hotel opened in April 2010, where it has exceeded expectations and already received strong industry and consumer accolades in its first year of operations.

A spokesperson for the Sapir Organization stated, "We are extremely happy to have reached this positive outcome with our lenders. We welcome CIM Group and thank iStar for its invaluable participation in this great 21st century New York development."

Donald J. Trump said, "The recapitalization of the debt on Trump SoHo is an homage to the success of the property, the hotel and its operation and a sign of the confidence in the long term viability of this project. We are extremely excited about this new development for this world class property in this spectacular location."

"We are pleased to have successfully recapitalized this unique asset. We believe the Trump SoHo development team will ensure the long-term success of this irreplaceable asset," said Barclay Jones, executive vice president of iStar Financial Inc.

Julius Schwarz, executive vice president of Bayrock Group, L.L.C. stated, "Trump SoHo continues to surpass all expectations. It is now one of the most successful destination hotels in the City of New York, and its views are unparalleled anywhere. We are delighted with this show of validation in the success of our project and we look forward to beginning our new phase of marketing and sales."

Trump SoHo, will continue to be marketed to the domestic and international markets by Prodigy International, the property's exclusive sales and marketing team. According to Rodrigo Nino, president of Prodigy International, "With the successful recapitalization of the project loan in place, we look forward to buyers knowing that one of the most sought after locations in downtown Manhattan that provides an unprecedented level of sophisticated services and amenities in a setting of exquisite luxury is financially on stable footing."

The accolades Trump SoHo has received in its first year include being selected as the World Travel Awards Leading New Hotel In North America 2010.

Trump SoHo, at 246 Spring Street, opened in April 2010 in the fashionable SoHo (South of Houston) district. The 46-story shimmering silhouette was designed by internationally renowned Handel Architects; and the interiors have been created by the award-winning Rockwell Group. Soaring above Spring Street, this SoHo hotel provides unparalleled views of the city through floor-to-ceiling windows in the 391 spacious guestrooms, suites and penthouses. Its restaurant, Quattro Gastronomia Italiana, and late-night cocktail lounge, Kastel, have drawn an A-list celebrity crowd. Trump SoHo is a joint venture among The Sapir Organization, Bayrock Group L.L.C. and an affiliate of The Trump Organization.

Prodigy International is the exclusive sales and marketing company for Trump SoHo New York. For more information or to schedule a private appointment, call (212) 965-0008 or visit www.trumpsoho.com.

# LAW OFFICE OF FREDERICK M. OBERLANDER

FREDERICK M. OBERLANDER
ATTORNEY-AT-LAW

fred55@aol.com

28 SYCAMORE LANE (PO BOX 1870)
MONTAUK, NEW YORK 11954
TELEPHONE 212.826.0357
FAX 212.202.7624

December 13, 2010

Hon. Naomi Reice Buchwald
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007

**KRISS v. BAYROCK GROUP LLC, 10 CV 3959**

**REQUEST FOR EMERGENCY ORDERS**
**REQUEST FOR EMERGENCY CONFERENCE**
**REQUEST FOR ENLARGMENT OF TIME**

**FAXED TO 212.805.7927 REQUESTING SEAL**

Dear Judge Buchwald:

I supplement to my letter last Friday requesting emergency conference and emergency relief to reverse an apparent quarter billion dollar criminal fraud by defendant Julius Schwarz and to prevent spoliation by Kelly Moore, counsel for defendant Felix Sater.

I respectfully demand an emergency on record conference with all parties and counsel for the issuance of orders to enjoin spoliation and ongoing fraud. I ask Your Honor advise Ms. Moore bring her own counsel, and direct defendant Julius Schwarz and attorneys Lisa Caldwell and Brian Herman of Morgan Lewis and Walter Saurack of Satterlee Stephens attend in person and Robert Nardeau of defendant Akerman Senterfitt attend by telephone or by proxy. Pending conference I ask Your Honor issue emergency orders preserving the status quo. After conference, with leave I plan to submit motions for appointment of a federal monitor to oversee Bayrock pending a federal receiver and for attachment, pursuant to FRCP 64, of the New York assets, including real property and Bayrock membership interests, of non-resident defendant Arif[1].

## REQUEST TO VACATE GAG ORDER, FOR PERMISSION, OR FOR ORDER FOR MR. SATER TO POST FRCP 65(C) BOND IN THE AMOUNT OF $50,000,000

I incorporate my letter Friday in its entirely. Based on further information since then, including Mr. Kriss's determination Saturday that at least one office of iStar with whom he dealt while at Bayrock still has no idea, or says she has no idea, of anything about this instant case (this was all Mr. Kriss could safely ask her, given all the impossibly vague gag orders), Plaintiffs are yet more reasonably convinced that Mr. Schwarz has operated Bayrock through continuing fraud on iStar.

For reasons stated below, and to be amplified at emergency conference, Plaintiffs request that you vacate your gag order so that they may send the complaint to victims of Mr. Schwarz's apparent frauds; or in the alternative grant Plaintiffs permission to contact those victims and reveal the concealment of Mr. Sater's conviction; or in the alternative to either, that Your Honor order Mr. Sater, who moved on May 12, 2010 for the order, post bond in the amount of $50,000,000.

---

[1] Mr. Arif is in maximum security Turkish prison, indicted in Antalya Criminal Court for racketeering, human trafficking, and child prostitution. Mr. Schwarz knows that Bayrock racketeering proceeds were sent to that prostitution ring, specifically to Fettah Tamince, who with Mr. Arif covertly owned Rixos hotels, where the little girls were held.

## Summary of Mr. Schwarz's and Bayrock's Frauds on or Related to iStar

These frauds include (i) not disclosing to iStar what he knew since no later than 2007, that the Martin Act registration documents were false and misleading by the material omission of Mr. Sater, an undisclosed principle[2]; (ii) not disclosing what he learned on May 12, 2007, when, as he admits in submissions before this Court and Judge Glasser's Court, he received the Complaint with excerpts of the PSR, proffer, and cooperation and so knew of Sater's concealed conviction for racketeering predicated on securities fraud; and (iii) ratifying these frauds sometime after May 12, 2007, when he caused Bayrock to apply for and receive an additional $25,000,000 from iStar without revealing either knowledge; and (iv) facilitating iStar's sale of its mortgage to CIM Group last week for what Plaintiffs estimate to be about $250,000,000, notwithstanding his knowledge that iStar would be, even if inadvertently, materially misrepresenting the quality of the mortgage to CIM by not disclosing the preceding facts to CIM.

Related to these frauds on iStar were his associated frauds on the Trump SoHo buyers, to whom Bayrock owed full and accurate disclosure of all material facts yet from whom he has kept hidden these facts (and others related, such as concealing from the buyers that Bayrock defrauded iStar). Indeed, Mr. Schwarz recently has gone so far as to offer the roughly 60 Trump SoHo buyers who have signed contracts and paid deposits but have not closed a refund of 50% of their deposits if they agree not to sue, compounding the concealment fraud on them by not disclosing his concealments to them beforehand.

---

[2] The Martin Act, N.Y. General Business Law §§352 – 359-H, prohibits deceptive conduct, *inter alia*, in the sale of condominium and cooperative apartments. This includes prohibiting the filing of false and misleading offering statements. A statement is false and misleading, *inter alia*, if it omits a material fact. A material fact is one which a buyer would likely consider important in making the decision to buy. An omission may be per se material or may be material under the facts and circumstances of the case. Failure to disclose a principal is material *per se*. See 13 NYCRR 20.1(c). See also *State v. Manhattan View Dev., Ltd.*, 191 AD2d 259 (1st Dept. 1993), *Tiffany at Westbury Condominium by Its Bd. Of Mgrs. V. Marelli Dev. Corp.*, 40 AD3d 1073 (2nd Dept. 2007). Mr. Sater was an undisclosed principal.

He owned substantial equity in Bayrock, in fact his membership interests conveyed about 62% of the company as measured in 2007. Compl. ¶¶530 *et seq*. Indeed, the Complaint reveals Mr. Schwarz's conspiracy with Mr. Halberg to find some pretext to explain to iStar why they had no disclosed Sater's ownership in the loan application. Compl. ¶480 *et seq*.

He has admitted under oath that he was second in command at Bayrock On March 9, 2010, in *Bernstein v. Bayrock Group LLC*, N.Y. Supreme Court, Westchester County, Mr. Sater was asked in deposition testimony "What was your position while at Bayrock?" and answered "Different. It was different monickers attached to it. Managing member, managing something, managing – you know what, it was basic bottom line I was probably number 2 man in the company." He participated materially in all aspects of the Trump SoHo deal and offering.

Other than such facts which are material *per se* and such situational determinations of materiality under New York law, New York looks to federal securities laws for guidance on whether an omitted fact is material. *State v. Rachmani Corp.*, 71 N.Y.2d 718 (1988) ("We believe that the objective test for materiality of an omission as articulated by the Federal courts construing Federal securities laws is equally appropriate in determining liability in this action and, accordingly, we adopt it for that purpose".). The failure to disclose a related felony conviction of a principal or otherwise significant officer or control person of an offeror is a material omission under federal law. See for example *Securities and Exchange Commission v. Scott*, No. 82 Ci. 1166 (WCC) (SDNY 1983) (failure to disclose CEO's prior conviction for fraud), particularly where, as here, the undisclosed conviction would prevent obtaining financing or licensing. *Scott*. There can be no question that the failure to disclose Mr. Sater's racketeering conviction predicated on securities fraud and money laundering was a material omission.

Related to these frauds on iStar and the Trump SoHo buyers were his frauds on Andrew Cuomo, the attorney general of the State of New York, to whom Bayrock owed the full disclosure pursuant to the Martin Act and from whom, by definition, Mr. Schwarz concealed the truth. Mr. Schwarz's motivation here was to avoid the attorney general's power to order rescission of all the Trump SoHo sales contracts, return of all the deposits, and to bar Bayrock and co-developer and equity partner the Sapir Organization from further involvement with Trump SoHo or indeed with any other development project anywhere in the state[3].

Among the evidence of his scienter, that is, of Mr. Schwarz's knowledge that he committed crimes by his concealment, which Plaintiffs stress is irrelevant to Martin Act enforcement but is relevant to his continuing racketeering, is (i) his chargeable knowledge of the law, as he is Bayrock's $720,000 per year General Counsel with some five years' experience in business and real estate transactional law at Wachtell Lipton, several years' experience in real estate law as a partner at Akerman Senterfitt after that, and five years' experience at Bayrock; (ii) his knowledge of the concealed conviction as of no later than May 12, 2010; and (iii) his motivation, not only in general personal motivation to avoid exposure, but the specific, and special, motivation to (1) remove the general risk that iStar would foreclose on the Trump SoHo project, which foreclosure was imminent[4]; and (2) remove the specific risk that iStar would, on learning of the fraud, foreclose and report the matter to the Attorney General.

In fact, his motivation ran deeper, and more personally, in that the iStar loan contained the personal guarantees of Bayrock Group LLC, Tevfik Arif, and the Sapir Organization (one or more possibly in alternate entity form). These guarantees were subject to so-called "bad-boy" carveouts, which included among specific triggers the personal liability for loss caused by failure

---

[3] For an example of the Attorney General's enforcement powers, see this press release. *Also note that the Attorney General need not establish scienter or reliance, merely omission.* In any event, scienter was present as here both in fact, as to Mr. Schwarz, and by imputation, as to Bayrock both in the present, from Mr. Schwarz, and in 2007 when Mr. Sater's knowledge of his own conviction was imputed to the company.

> NEW YORK, NY (March 25, 2010) Attorney General Andrew M. Cuomo today announced that his office has reached an agreement barring an East Side condominium developer from future sales. The settlement with 250 East Borrower, LLC and its principals, Alexander Gurevich, Gene a/k/a Gennady Kiselman, Eliot Eliyahu Spitzer, and Michael Steinberg, is the result of an investigation of the Alexander Condominium, located at 250 East 49th Street in Manhattan.
>
> Under the terms of the settlement, the developer is required to offer rescission to all purchasers and must pay the state a total of $300,000 in costs, penalties and fee. In addition, developer Alexander Gurevich has been removed from the project and is barred from offering or selling condominiums, cooperatives, or other real estate securities for three years. The developer has also transferred all funds remaining in escrow to an independent escrow agent, and has arranged for independent certification of the projected budget and title insurance.
>
> "Today's settlement sends a clear message to property developers that deception and double-dealing will not be tolerated," said Attorney General Cuomo. "Purchasers are entitled to full and honest disclosure and must be able to rely on all representations made to them."
>
> Starting in September of 2009, the Attorney General's Office began an investigation of the Alexander Condominium. The investigation revealed, in violation of the Martin Act and the Attorney General's regulations governing new construction condominiums, that the developer had an undisclosed principal, Alexander Gurevich, who served as the escrow agent for the project, as well as being the sole principal of the mortgage lender and title company recommended by the developer to purchasers. In addition, Mr. Gurevich controlled the company that certified the accuracy of the developer's budget projections.

[4] iStar had the right to foreclose if the loan were in default for failing to meet certain sales targets. Such a foreclosure was imminent, all the more so because iStar is about to file a bankruptcy organization and foreclosure would have been demanded by its creditors.

to comply with the laws applicable to the sale of individual units. The Sapirs have, Plaintiffs estimate, about $120,000,000 of equity invested in Trump SoHo, all of which would have been wiped out in an iStar foreclosure, and had already years earlier learned of Mr. Schwarz's deceit on them as to Mr. Sater's majority ownership in Bayrock. Compl. ¶751. Mr. Schwarz could not personally afford to risk causing the Sapirs a multi-hundred million dollar loss, for many reasons.

**Request to Vacate Gag Order**

My clients and I respectfully demand that you vacate your gag order prohibiting dissemination of the Complaint so that *we may immediately send copies to iStar, CIM, counsel for the Trump SoHo buyers who are suing in front of Judge Wood, and others whom we believe Mr. Schwarz is defrauding by his concealment of Mr. Sater, his record, and his involvement with Bayrock.*

First, as Mr. Schwarz and entity Bayrock defendants and Mr. Sater and entity Sater defendants have all waived service, that Complaint is an active judicial record, with no presumption of confidentiality and a very strong presumptive common law right of access to it through the Court.

Second, any conceivable thought of privilege Mr. Schwarz or any of the Bayrock defendants might ever have had was thrown out the window on May 12, 2010, when Mr. Schwarz, who as Bayrock's General Counsel and, personally, as an attorney with nearly twenty years' experience, disseminated it to at least a dozen recipients, at least two of which were not attorneys (Alex Salomon, an accountant, and Mr. Sater), and most of the rest at best only former attorneys, thus destroying any conceivable privilege. In any event, every email in there either was never subject to privilege for reasons including crime fraud exception, copying of unnecessary parties, copying of Plaintiffs, joint representation with Plaintiff Kriss personally, and fiduciary waiver.

Third, the Complaint was crafted for exactly this purpose. That is, the Complaint was written to contain so much supporting factual material that it would be impossible for any recipient to claim he didn't believe, or wasn't reckless in disbelieving, that Bayrock was run through a pattern of racketeering. This was Plaintiffs' deliberate design, to create a notice document so that anyone receiving it would then and thereafter have chargeable scienter of the Bayrock crimes. It is therefore the most efficient way of conveying the necessary information to these victims.

With respect, your gag order was and remains unsupportable in law and facially unconstitutional. The mere fact that a Court seals a document – and there have been no findings that any document embedded or referenced in that Complaint ever was sealed, nor can there be, as Judge Glasser has admitted that what he did was not to seal, which is due process balancing of competing interests, but simply intentionally fail to docket, which is not sealing but simply falsifying a docket sheet by the intentional omission of docketable events and judicial records – does not gag anyone.

In the final hearing in EDNY, Judge Glasser himself admitted that an order to seal, by itself, is directed at court personnel and no other[5]. So, unless Your Honor believes that her non-docketing all the letters I and Ms. Moore or Mr. Herman have sent you is sealing them, and that by so sealing them you have gagged all of us from disseminating them in any way, which is impossible

---

[5] "Let us assume for the moment that an order was signed by me somewhere along the line, as it may have been, directing that the file in this case be sealed. That order is directed to whom? Who is bound by it? That order, it would appear, is directed to the clerk of the court who is informed that this document or this file is sealed and is not to be made available, except upon an order of the Court unsealing it.". EDNY 98-CR-1101 Tr. Pg. 17 July 20, 2010.

pursuant to FRCP 58 as there is no separate, written, docketed gag order[6] and even if there were it would in any event be an unsupported and unconstitutional prior restraint, Your Honor must concede that a document which is sealed by a court is a document which the court clerk may not give out freely but otherwise is a document that can be freely disseminated by anyone who has obtained it lawfully.

*I do not mean that by incorporating material otherwise subject to separate, valid gag order into such a document that material becomes ungagged; rather I mean that merely failing to docket a submission to the court is not a seal, and even if it were a seal is not a separate, written enabling order gagging anyone from anything; and even if it were it would be an unconstitutional prior restraint unsupported by required findings.*

*What Your Honor has been doing all along with my letters, and those of Ms. Moore and Mr. Herman, is the same thing Judge Glasser did all along with every judicial record in Mr. Sater's criminal case 98-CR-1101, and simply non-docketing or even true sealing is not itself an "invisible ink" gag order and cannot by itself be the basis for a prior restraint, and thus as your gag order states that as the only basis (that the complaint contains material contained in sealed court documents), by definition it fails.*

In short, Ms. Moore's position, that Judge Glasser's nonexistent, unwritten order to seal in the form of an illegal direction to court personnel not to docket judicial records should instead be deemed to be an "invisible ink" global gag order against the entire world without any requisite notice or hearings pursuant to some warped misunderstanding of the All Writs Act and ignoring 200 years of First Amendment jurisprudence is either gross if not historically gross legal incompetence or bad faith (or both) and we should not waste further time on it. Does Your Honor really believe that the intentional failure to docket something means that ten years later someone coming across the same thing, without involvement of court personnel, is instantly gagged? Does that even sound like any jurisprudence that should be contemplated?

Moreover, your order is unconstitutionally vague. What does "further disseminate" mean? Is it "further dissemination" to serve it on someone who already has it? What does "the Complaint" mean? I wrote 72 separate versions. I filed version 72 on May 10, 2010. Prior restraints must be exquisitely crafted, not subject to divination. Again this is said with all respect. These are not trivial points and are not said to be disputatious. I, my clients, and all counsels here have actually no clear idea what we are purported to be prohibited from doing other than taking the exact Complaint as exactly filed and "further (???) disseminating (???) it".

And there are no findings or statement of the harm your gag order avoids, nor findings that the gag order is the least restrictive means. All are required, by FRCP 65 and the First Amendment.

To date, I and my clients have scrupulously and consensually behaved as if your TRO, and Judge Glasser's "orders", were valid. We can no longer continue to do so, which does not mean we threaten imminent defiance, not at all, but rather that we respectfully demand its immediate vacation and will seek emergency relief if necessary. My clients cannot be asked to suffer such infringement of their constitutional rights.

---

[6] Garcia v. Yonkers School District, 561 F.3d 97 (2d Cir. 2009) ("Oral statements are not injunctions.") A judge who says form the bench "I enjoin you" has done nothing other than opine, only the separate written document with self-contained statements of what is to be enjoined, appropriately docketed, need be obeyed, otherwise if there is no such judgment, the Judge's statement is mere dictum and of no legal consequence.)

Finally, in response to Your Honor's May 8 letter asking if I insisted on using "privileged, confidential, or 'sensitive' information about Mr. Sater: *There is no such information here.*

Any supplemental complaint my clients file will prominently mention Mr. Sater's guilty plea, his cooperation, and his illegal evasion of mandatory restitution. I ask you read the following:

> White Rock was operated as a partnership by the defendant Salvatore Lauria, Felix Sater, Gennady Klotsman ...the defendant Salvatore Lauria, together with his partners, supervised all aspects of White Rock's business...because of Felix Sater's conviction for assault...Sater agreed with the [NASD] to restrict his activities...to clerical duties...for which he would receive a minimal salary...In fact, Sater received substantial compensation greatly exceeding his agreed-upon salary and took part in activities at White Rock which violated the agreed-upon restrictions...the defendant Salvatore Lauria, together with others, constituted [a RICO enterprise]...the chief goal of the ... enterprise....was to obtain significant sums of money by selling securities to investors on the basis of false and fraudulent statements and omissions...
>
> Salvatore Lauria and Felix Sater are scheduled to be sentenced by Your Honor this Wednesday, May 1, 2002...The defendants pled guilty before Your Honor pursuant to cooperation agreements. The information the defendants can provide with regard to the criminal activities of others has not been exhausted...judicial economy will be furthered if the defendants' cooperation is exhausted prior to sentencing...

These statements are excerpted from the information to which Mr. Lauria pled guilty, which is virtually identical to the Sater information, and from a 2002 letter from the U.S. Attorney's office to Judge Glasser. Mr. Lauria is a co-defendant in the instant case. *These documents are available to the public through PACER, put there 2 years ago when the government requested unsealing the Lauria files, EDNY 98 CR 1102 (one number above the still illegally hidden Sater files, EDNY 98 CR 1101; Klotsman is EDNY 98 CR 1069.), along with his sentencing disposition that shows a judgment of racketeering with a then-mandatory guideline sentence of 20 years, at least some incarceration] required, yet he received probation and no restitution, though it was mandatory. Plaintiffs' allegations of restitution evasion were and are demonstrably sound.*

As these are public documents, nothing can stop the use of these documents for any purpose. Otherwise, Plaintiffs insist only on telling the truth, and only on using truthful information of public concern they lawfully obtained, or are entitled to.

As to Mr. Sater's conviction and evasion of restitution, pursuant to FRE 609(a)(2), Plaintiffs are entitled to impeach by introducing evidence of his 2004 RICO conviction, the charges, the date of conviction, and the sentencing disposition including as to incarceration, restitution (or in his case, evasion thereof), and forfeiture. This right is not subject to judicial discretion. Plaintiffs will admit the details of the evasion of restitution pursuant to FRE 404, as his evasion of restitution is one of the schemes of his racketeering, in this case depriving victims of property through deceit.

This information is not privileged, confidential, or "sensitive", nor are those relevant in pleading. ECF rules leave the decision to redact allegations of cooperation to me. If the government can put nine letters about Mr. Lauria and Mr. Sater's cooperation on PACER, I can, too.

Finally, *the existence of a criminal conviction is public property*[7], even after expungement and so obviously even after Judge Glasser illegally hides it in violation of 18 USC §1506.

---

[7] In general, see *Craig v. Harney*, 331 U.S. 367 (1947) ("What transpires in the court room is public property.") As to convictions specifically, including convictions that have been expunged, see *Willan v.*

Otherwise, I incorporate by reference al prior legal argument contained in all prior submissions, including as to the First Amendment principles compelling vacation, and add only for emphasis that as to *Charmer* and the shibboleth that somehow information contained in a lawfully obtained PSR cannot be disseminated, and is exempt for the First Amendment, should at long last be taken out and shot, as it has long been overruled and obsoleted[8].

---

*Columbia County*, 280 F.3d 1160 (7th Cir. 2002); *Eagle v. Moran*, 88 F.3d 620 (8th Cir. 1996); *Cline v. Rogers*, 87 F.3d 176; *Nilson v. Layton City*, 45 F.3d 369 (10th Cir. 1995), hold generally that there is no right or expectation of privacy in a criminal conviction, even if it has been expunged, as history cannot be erased, and no action may lie against anyone who discloses the conviction.

[8] *U.S. v. Charmer Industries*, 711 F.2d 1164 (2d Cir. 1983), was clearly overruled by *Florida Star v. B.J.F.*, 491 U.S. 524 (1987). As noted in previous submissions to your honor, the First Amendment was not even raised in *Charmer*, so it tells us nothing about the First Amendment rights of a person who lawfully receives a PSR and wishes to publish it. But there are two cases that tell us very clearly what his First Amendment rights are.

Recall that in *Charmer* the out of state Attorney General had been given the PSR in question by a probation officer, who apparently should not have done so but no fault was ascribed to the Attorney General, who basically "got lucky" due to the negligence of the officer.

Well, a few years later, in Florida, the local sheriff mistakenly put a docket sheet containing the name of a rape victim in the press room, and a newspaper picked it up and published it, and then was sued under a state law making it illegal to publish the name of a rape complainant. This time, unlike in *Charmer*, the publisher, Florid Star, raised the First Amendment issue, and the U.S. Supreme Court held that, with respect to criminal proceedings, you just can't put the genie back in the bottle. The Supreme Court held that it was impermissible to punish anyone who lawfully obtained information of public concern and then published it, regardless that the information was mistakenly disclosed by the sheriff. *Charmers* is thus overruled. Anyone who obtains a PSR lawfully can publish it (or not publish it) as he pleases.

So holds *U.S. v. Smith*, 123 F.3d 140 (3d Cir. 1997), directly and on all fours. There, the court addressed the question whether it could impose a prior restraint on a newspaper which had lawfully come into possession of a sentencing memorandum which contained grand jury material (it had been leaked by the executive branch). The court sealed the sentencing memorandum after the leak had been detected, on the ground that F.R.Crim.P 6(e) material was implicated, and ordered briefing on the extent to which the sentencing memorandum was sourced in secret grand jury material. But the court then held that while the newspapers, which already had the sentencing memorandum and wanted access to those briefs and an associated hearing, had no First Amendment right of access to the briefs or the hearing, the court nonetheless observed that as to the sentencing memorandum that they already possessed, which contained much of the same material as would the briefs and the hearing:

> The order entered by the district court in this case cannot effectively bar further dissemination of any potential grand jury secrets by members of the public who possess the sentencing memorandum. Nor could the court enter an order barring parties in possession of the sentencing memorandum from passing the memorandum onto other parties. Under prior restraint law, orders prohibiting the media from publishing information already in its possession are strongly disfavored. Although the district court could not prevent the newspapers from publishing the sentencing memorandum once they came into possession of it, the court properly prevented further *government* disclosures of the putative grand jury secrets contained in the sentencing memorandum to additional parties. Even if the dissemination by members of the public continues, the order barring further disclosure of any secret grand jury material will at least narrow that dissemination.

The court so held even though it noted that the sentencing memorandum disclosed, and would disclose, certain sensitive information that Rule 32 required probation officers to exclude from PSRs and disclosed, or would disclose, PSR material. This is a resounding trifecta of First Amendment freedom: *The court held that newspapers and members of the public already in possession of a sentencing memorandum containing*

### Request for Permission

If Your Honor will not vacate her gag order, Plaintiffs request written advice of the Court confirming that they are free to tell iStar, CIM, Trump SoHo buyers and counsel, and Judge Wood that Mr. Sater was convicted in 2004 of racketeering predicated on securities fraud. Exactly how this can be worded is of some question, given all the vague and ambiguous orders and "orders" floating around. But it is imperative that it be done.

### Request for Bond in the Amount of $50,000,000

If Your Honor will not vacate her gag order or give Plaintiffs permission to tell the truth, Plaintiffs request the Court order Mr. Sater, who moved the Court for the order by telephone conference on May 12, 2010, post security of $50,000,000 pursuant to FRCP 65(c$^9$). Plaintiffs estimate this as the least likely loss that will be sustained by Bayrock Group LLC, derivative plaintiff (nominal defendant) in this action, when it is sued for fraud and racketeering by either or both iStar and CIM. I remind the Court Bayrock Group LLC is being wrongfully enjoined insofar as Plaintiff Kriss, who would speak for it, is wrongfully enjoined and Mr. Schwarz and Bayrock Group LLC itself are enjoined by your gag order (assuming they are; they were not parties at the time you issued it, had never been noticed or had a hearing offered them, and so cannot possibly be bound by it, as I have notified Mr. Saurack long ago [thus Mr. Schwarz has no defense of failing to notify because "The Judge told me not to"])

This security should be coordinated with any such requirement placed by Judge Glasser in connection with any order preventing the requested disclosure. he may find to exist from his court, notwithstanding Plaitiff's assertions there are none.

### REQUEST TO PREVENT SPOLIATION

Ms. Moore has now obstructed everything for another seven weeks since October 29, 2010 for no reason and certainly in questionable faith. Judge Glasser told her directly on November 2, 2010 that he considered all issues moot, including as to the PSR because of Mr. Schwarz's dissemination, and would so rule on application.

Her response was to attempt spoliation and kill more trees, even if e-trees, submitting another inch thick stack of papers to Judge Glasser in spite of his admonition not to, and in those papers

---

not only secret grand jury material but also PSR material and even material too sensitive for a PSR could not be enjoined from disseminating it at will because they enjoyed a First Amendment right to do so and could not be made to suffer prior restraint.

For completeness, Your Honor should note that even if, hypothetically, Mr. Bernstein stole the PSR from Mr. Sater, and even if the recipients knew such, for First Amendment purposes the recipient, obtaining the documents lawfully, such documents matters of public interest, may freely disseminate them, period. That is the holding of *Bartnicki v. Vopper*, 532 U.S. 514 (2001), which further extends *BJF* and thus makes clear that nothing may prevent any of the recipients of these documents from doing as they please with them.

$^9$ "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security."

she admitted attempting to spoliate evidence and destroy discoverable material[10]. Thus we are not only all on indefinite hold again, but she is now seeking to destroy things which no court has ruled were illegally obtained, don't belong to her (and in fact belong in several sets to Bayrock defendants whom Plaintiffs derivatively represent and have standing to intervene and obtain TRO's to prevent, just on that account) and in fact one court, Judge Glasser's, has said in opinion were indeed obtained quite lawfully.

As sated above, the Complaint is a notice document. Anyone who received it has notice and scienter thereafter that Bayrock has been run through a pattern of racketeering, and of the nature and kind of that racketeering. Therefore, not only is it evidence of Mr. Schwarz's scienter per the above, but anyone who after receiving it facilitated the illicit operation of Bayrock may be charged with racketeering conspiracy, as it is evidence of their general knowledge of the conspiracy.

Also, Plaintiffs request Mr. Saurack be asked to explain why he agreed with her to destroy the Complaint, although apparently he has not done so, when he waived service of it, and how he intended to defend a Complaint he threw in the garbage and would presumably prevented from obtaining another copy of by reason of all the gag orders. Perhaps he knows something Plaintiffs ought to, that there is some reason to believe he won't have to defend it. In the interest of comity Plaintiffs wish it clear they make no accusation of improper conduct against Mr. Saurck. They merely don't get it. They really don't.

I request Your Honor order Ms. Moore to cease her efforts at spoliation and order her to contact everyone she got to agree and order them to cease and forbear from further agreement with her.

## REQUEST FOR ENLARGEMENT OF TIME

Plaintiffs cannot be held responsible for Ms. Moore's antics in further obstructing everything. Supposedly on or about November 2, 2010, Judge Glasser would have left the stage leaving it to Your Honor and presumably Rule 12 motion to strike to deal with.

Instead, we are back again in limbo, none of us knowing what Judge's orders do or do not control, or at least purportedly control

With respect I believe Plaintiffs are entitled to request additional time to serve to compensate again for Ms. Moore's obstruction, such extension to extend to February 28, 2011.

## PENDING STIPULATED ORDER

On October 29, I and Mr. Saurack entered into an agreement and stipulated order to waive service and to standstill. Mr. Saurack was concerned that doing so might somehow be seen as contempt, so requested Your Honor's affirmation it was proper. I believe Your Honor's affirmation is required pursuant to FRCP 23.1, as the standstill would be, or might be, a compromise. I respectfully request Your Honor execute that stipulated order.

---

[10] "Based on conversations with counsel for these individuals [those to whom Mr. Schwarz disseminated the Complaint], we have every reason to believe that they...will voluntarily agree to the appropriate handling and disposal of the documents in question without the need for judicial intervention." Sater supp. Brief, EDNY 98-CR-1101, Nov. 2, 2010, pg. 17.

However, Your Honor should note that Mr. Schwarz's apparent frauds were unknown to Plaintiffs at the time. It is likely that a federal monitor will be required to stop them immediately, in contemplation of a federal receiver, although there are other procedures which would get the same result and avoid this, such as a writ of attachment against Mr. Arif's membership interests in Bayrock, if they still exist, which by state law are deemed in New York and which by state law may be attached and a federal monitor appointed to control them. They convey full, plenary voting control over all of Bayrock.

I wish for Mr. Saurack not to believe Plaintiffs are in bad faith. Plaintiffs have taken no action against Mr. Schwarz or Bayrock save for this request to enjoin the massive fraud, and are acting as they believe is required pursuant to FRCP 23.1

By:

/s/Frederick M. Oberlander, Esq.
Attorney for Plaintiffs

cc:   Hon. I. Leo Glasser
      W. Saurack, Esq.
      K. Moore, Esq.
      R. Lerner, Esq.
      S. Stamoulis, Esq.