# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639

Tel: 212.490.3000    Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean*
*Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains*
*Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

February 3, 2011

**Via Facsimile – (718) 613-2446**

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> **Re:**   **United States of America v. Felix Sater**
> **Case No.**         **:**       **98CR1101 (ILG)**
> **Our File No.**     **:**       **07765.00155**

Dear Judge Glasser:

I represent non-party respondent Frederick M. Oberlander, who has been dragged into this in his capacity as counsel for Jody Kriss and Michael Ejekam and those whom they represent. Mr. Oberlander respectfully *demands* you immediately docket all events that have occurred in this case, from its inception. By "events," we mean every motion, every letter application, every hearing, every conviction and sentencing document, every judicial record, etc.; in short, *everything from 1998 through receipt of this letter, which itself is a judicial record.*

We remind you of your statement at the hearing on July 20, 2010 (at page 17), "Nor have I been able to find any order signed by me, which directed that this file be sealed." Yet even the occurrence transcript of *that* hearing is undocketed (pursuant to EDNY rules, that transcript should by now have been uploaded to PACER, since we ordered it six months ago).[1]

---

[1] "Effective May 15, 2008, the Eastern District of New York, in accordance with Judicial Conference Policy and Federal Rule of Civil Procedure 5.2 and Federal Rule of Criminal Procedure 49.1, implemented the following policy regarding official court transcripts:

"1. A transcript provided to the Court by a court reporter or transcriber will be available at the Clerk's Office, for inspection only, for a period of 90 days after it is filed.

"2. During the 90-day period, a copy of the transcript may be obtained from the court reporter or transcriber at the rate established by the Judicial Conference. The transcript will be available at the public terminal at the courthouse, and remotely electronically available to any attorneys of record who have purchased a copy from the court reporter.

"3. After the 90-day period has ended, the transcript will be available for copying in the Clerk's Office and for download through PACER.

"Note: The policy applies to transcripts of events taking place in the court's courtrooms, not depositions taken outside of court or proceedings of state courts or other jurisdictions. This policy establishes a procedure for counsel to request the redaction from the transcript of specific personal data identifiers."

-1-

With regard to what you have marked "under seal," we further remind you that there was never a formal motion to seal the file, as you have conceded, there was never advance public notice that any sealing hearing would be held, there was never any hearing, there was never an evidentiary record made. As far back as *Press Enterprise II*, 478 U.S. 1 (1986), the U.S. Supreme Court held that criminal proceedings cannot be closed without specific, **on-the-record** findings demonstrating that it is essential to preserve higher values and narrowly tailored. More recently, the Second Circuit made clear in *Hartford Courant* (2004) and *Alcantara* (2005), that there is no basis for you to – as you have done as recently as last week, *infra*** – mark the whole docket or any docket entry as being "sealed". We believe such to be disregard of applicable constitutional law.

In this case, the label would more appropriately be ***unlawfully sealed***. That is how the House Judiciary Committee characterized former Judge Rosenbaum's similar, but much less serious actions in October 2002:

> *The circumstantial record suggests that this case may be one in which Judge Rosenbaum granted yet another unlawful departure below the guideline range, which he sought to conceal <u>from the public</u> and from the Subcommittee by unlawfully sealing the transcript. The Subcommittee's inquiry into this matter is ongoing.* – HR 107-769 (emphasis added).[2]

Notice the priority, your honor. The Committee could have put itself first, or alone. It did not. The committee deemed the priority offense to be the concealment *<u>from the public</u>*.

My client and his clients, and the 300,000,000 other members of the public have a First Amendment right of access to the docket – the complete docket. I cannot make it any clearer: My client in behalf of his clients demands the immediate docketing of the entire file.

My client and his clients are members of the public. I repeat this for its significance. As a co-equal branch of government with the power of impeachment, the Congress has oversight authority of the federal judiciary. *But my client and his clients have vastly more power than Congress, for they have every citizen's ultimate oversight authority of all branches of the federal government, and the First Amendment rights of assembly and petition to obtain redress, rights which I remind your honor do not depend on the presence of public concern.*

In the proper – and nonjusticiable – exercise of their oversight authority over the judiciary, in the concomitant exercise of their First Amendment rights, not only of assembly and petition but of free speech and freedom of the press, my client, in behalf of his clients, demands to know what happened with Mr. Lauria and Mr. Sater, and why. Concealing that information from them violates their constitutional rights *<u>and is an impeachable offense</u>*. Nor may the reasons why they send to know be questioned, not by this Court, not by Congress, not by anyone.

---

[2] I attach a courtesy copy of our filing in the Second Circuit which details the Rosenbaum debacle and how Congress warned a sitting federal judge that the unlawful sealing of a sentencing hearing (let alone a whole case) to hide an unlawful sentence to be an impeachable High Crime and Misdemeanor.

They are answerable to no one in their political motive, as nonjusticiable a political question[3] as the Supreme Court held Congressional impeachment to be.[4]

I remind your honor these are not constitutional rights, they are ***constitutionally protected*** natural rights, enumerated unalienable rights, self-evident natural rights, inherent rights endowed by the Creator upon, and retained by, the people, not rights created and endowed by the government. 1 *Annals of Cong.* 731 (1789). When the people send to know, it is the government which must answer with all deliberate speed, not the other way around.

But it does not stop with these unalienable, natural rights, for Congress, in its exercise of oversight, saw fit to create statutory rights in favor of crime victims, *viz.* the Mandatory Victim Rights Act (MVRA) and Crime Victims Rights Act (CVRA), and ***my client's clients are Mr. Sater and Mr. Lauria's crime victims within the statutory definition and assert those rights now as well not only in their own behalf but temporarily in behalf of all the other crime victims from whom you have apparently hidden the truth[5], and whom you have apparently unlawfully deprived and continued to deprive, of their statutory (and common law and constitutional) rights as well, until a federal monitor can be appointed to protect them further.***

As to the State Street victims, the MVRA applies because Mr. Sater and Mr. Lauria's racketeering continued from 1993 on past its 1996 effective date. You know this, just as you know who at least some of those victims are, or you could not have awarded restitution in their behalf against many of those against whom Mr. Sater and Mr. Lauria cooperated. And that's one reason the PSR and the cooperation agreement will never be gagged (and they are not now, because you have not reduced your oral "in rem injunction" [sic] as to the PSR to writing, leaving it mere dictum, and as to the cooperation agreement because you have not issued any gag orders at all in writing let alone that have not expired). Until the release of the minutes of his October 2009 sentencing hearing and the statement of reasons, the documents at issue here are evidence of the apparent willful failure to comply with MVRA and CVRA as to Mr. Sater and thus are relevant to these victims' parochial rights and their concomitant rights to petition for redress of infringements thereof and are also relevant to the public interest of how this could happen in the United States of America.

---

[3] "The Supreme Court has made it plain that all persons seeking to inspect and copy judicial records stand on an equal footing, regardless of their motive for inspecting such records; *the press has no greater right of access than does the general public* and an intervenor who is also a litigant in a collateral matter has no lesser rights because he will use such documents for his own benefit in pursuing lawsuits *Leucadia, Inc. v. Applied Extrusion Technologies, Inc,* 998 F.2d at 167, quoting *Nixon v. Warner Communications* 435 U.S. at 609, decided on First Amendment.

[4] *Nixon v. United States,* 503 U.S. 224 (non-justiciable given constitutional commitment of issue to other branch).

[5] Of course, if these victims were notified according to law, that moots the issue of keeping his cooperation quiet.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
4314813.1

The CVRA applies to this action because we now know, based upon Mr. Kaminsky's representations to the Second Circuit, that Sater's conviction became final on October 23, 2009,[6] and in *USA v. Eberhard* 525 F.3d 175 (2d Cir. 2008) the Court held that application of the CVRA applies where sentencing occurs after its effective date though the plea occurred before it.

That the CVRA applies as to Mr. Sater is entirely new information, and it endows every single victim of Mr. Sater's racketeering, **including my client's clients**,[7] with substantial rights, rights you caused to be hidden from them and rights they now assert. I remind you of them:

---

[6] In a supplemental memorandum of law submitted to the Second Circuit on February 2, 2011, Mr. Kaminsky stated that "Doe" (i.e., Sater) pled guilty to 18 U.S.C. 1962, the predicate acts being securities fraud, and was sentenced by your honor on October 23, 2009. We presume, and until the documents are unsealed it can only be a presumption, that he was sentenced on the same charge.

[7] "[W]hen the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, . . . the restitution order [may] include acts of related conduct for which the defendant was not convicted." *Lawrence*, (emphasis added) (affirming an award of restitution for the full amount in a fraud scheme, including "related conduct" in the amount of $574,700, even though only $60,411 of that amount was "directly attributable to the acts [**19] for which the jury found [the defendant] guilty"). See also *Grice* (affirming an award of restitution for the full fraud scheme even though the defendant only pled guilty to part); *Johnson* (affirming an award of restitution for the full fraud scheme even though the defendant only pled guilty to two counts thereof).

[T]he fact that the [victim] was not mentioned in the indictment is immaterial. See *United States v. Dickerson*, ("[T]he courts have held that restitution may be ordered to a victim not named in the indictment . . . .") (collecting cases); *United States v. Hensley* (finding restitution proper when a scheme is involved "without regard to whether the particular criminal conduct of the defendant which directly harmed the victim was alleged in a count to which the defendant pled guilty, or was even charged in the indictment") (second emphasis added) (citation omitted); *Rice* (declining to find "a per se rule that restitution is limited to victims specifically named in the indictment"); *United States v. Angelica* ("The trial court did not err in basing the restitution order on victims not charged in the indictment."); see also *United States v. Boyd*, a Second Circuit case, (finding restitution payable under the MVRA "by all convicted co-conspirators in respect of damage suffered by all victims of a conspiracy, regardless of the facts underlying counts of conviction in individual prosecutions"). *United States v. Brock-Davis*, 504 F.3d 991 (9th Cir. 2009), approved as in accord with Second Circuit law in *United States v. Metal Lathers Local 46 Pension Fund*, 568 F.3d 81 (2d Cir. 2009).

My client's clients assert that the Sater racketeering enterprise has existed since no later than 1993 and has engaged, with various members from time to time, including at least through 2007 Mr. Lauria, and from 1993 through at least 1996 various persons associated with State Street, from 2002 through at least 2008 various persons associated with Bayrock, and from 1998 through 2009 various persons associated with that activity which through predicate acts including mail and wire fraud and obstruction acted to defeat justice and deprive victims of property in this matter.

These victims include Mr. Bernstein, who has testified under oath he received at least two extortionate death threats from Mr. Sater (Mr. Kriss has as well) and a certain Ernie Menes. Mr. Menes filed a verified complaint against Mr. Sater and others in 2007 charging him with Bayrock racketeering and alleging that Mr. Sater had threatened to have Menes tortured by electrocution of his testicles and then dismembered. See attached. The victims include iStar, CIM, AIG, Trump SoHo buyers, and every other person defrauded by the concealment of Sater's case.

This also brings up the question exactly how and why Mr. Sater wound up with no incarceration and no restitution given the sentencing judge (you) must have been told of the crimes he was alleged to have committed while under his cooperation agreement, which would have been apparent from this Arizona action, from my client's first filing in Delaware in November 2008 of a suit against Mr. Sater alleging state securities fraud, and from my client's second books and records action in Delaware in September 2009 alleging hundreds of millions of dollars of racketeering, this last one which was and remains spread all over the internet starting with Courthouse News. For this reason the victims demand sentencing details, including how and why as Ms. Moore has said the probation officer and others participated in the apparently fraudulent transfer of assets from Mr. Sater to a trusts for his wife when the probation officer knew or was reckless in not knowing the by then billion dollar civil liability hanging over Mr. Sater.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
4314813.1

**(1)** The right to be reasonably protected from the accused.

**(2)** The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

**(3)** The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

**(4)** The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

***(5)** The reasonable right to confer with the attorney for the Government in the case.*

***(6)** The right to full and timely restitution as provided in law.*

***(7)** The right to proceedings free from unreasonable delay.*

***(8)** The right to be treated with fairness and with respect for the victim's dignity and privacy.*

Putting aside the constitutional crisis you have created by apparently unlawfully sealing presumptively public hearings after the October 30, 2004 date of this statute, it is clear that Congress views as unlawful the willful failure to hold a presumptively public hearing in public, including the failure to hold public preclosure hearings. These are constitutional requirements. Sater's victims would have had the right to attend, had you noticed and then held these hearings in public. The failure to conduct them violates the statute. At this time, we asserts the rights highlighted above, including the rights to confer with the government attorney in this case, and the rights to such restitution as the MVRA mandates, and the right to all these things, ***including your response to this demand***, free from unreasonable delay.[8]

My client respectfully demands that you immediately appoint a magistrate judge and a federal monitor and charge them with the responsibility of ensuring that all victims everywhere are properly notified and protected and that you order both Mr. Sater and Mr. Lauria to appear before you to show cause why they should not be permanently enjoined from making any objection of laches or other temporal defense to the assertion against them of any and all CVRA and other rights.[9]

Furthermore, it seems every one of Mr. Sater and Mr. Lauria's State Street victims have available causes of action in civil RICO against them even now, 20 years later, thanks to what you did. This is true because the 1993 through 1996 racketeering to which Sater pled guilty was predicated on securities fraud and money laundering. The individual victims were causally damaged by the securities fraud (as the court well knows, since it awarded mandatory restitution to them from the co-defendants who Sater and Lauria cooperated against).

---

[8] I think it's also clear holding the Notices of Appeal in chambers for five months for no conceivably justifiable reason, with the result that the Second Circuit didn't get the case in normal time, is a *per se* violation of these rights and given the patently unconstitutional prior restraint unwritten "orders" is a constitutional crime. My client and his clients couldn't have known about the CVRA applicability until last week, but you knew. You knew all along.

[9] And incidentally, upon such orders this would be a proper use of your inherent powers, through the All Writs Act Enablement, to issue an extraordinary writ of prohibition against all persons properly subject thereto to the full constitutional due process limit wherever located from further interference with the rights of these victims.

The civil RICO four-year statute of limitations could not have expired as to these victims before 1997. As of 1995 the PSLRA prevented civil RICO actions predicated on securities fraud unless the defendant had been convicted of a crime related to the fraud. That applies even to actions based on pre-enactment frauds, resetting and tolling the unexpired statutes as of 1995.

That same statute that provides a limitations period of four years, *running from the date the conviction is final, in this case October 23, 2009* for Sater.[10] In other words, if the total State Street loss is indeed $80,000,000 from 1993-1996, then – given Second Circuit precedent on both the appropriateness of prejudgment RICO interest in cases where there has been egregious delay of justice, and on its method of computation – *the RICO damages available to these victims or their estates, with attorneys fees is now likely in excess of $1,000,000,000* – i.e., $60,000,000 to $80,000,000 trebled, plus pre-judgment interest going back almost twenty years.

And as the MVRA provides that any victim who has a restitution order may in a civil action estop that defendant from denying the underlying facts,[11] which – since this is a pump-and-dump case and loss causation is imputed by transaction causation – these victims can expect to prevail summarily, since Mr. Kaminsky has acknowledged in his submission to the Second Circuit that Sater pled guilty to RICO conspiracy predicated upon securities fraud, and was sentenced (presumably) therefor, or for a related crime, on October 23, 2009.

If Sater's victims have not been told – and they were required to be told – and *a fortiori* if they do not have the restitution orders they are entitled to, then *there is a concealment of a now billion dollar chose in action and concomitant deprivation by fraudulent concealment and an unconstitutional taking of property* (such a chose in action is property as a matter of New York state law and as a matter of federal law in this circuit).

* * *

Additionally, we note that under New York law, should Mr. Oberlander's clients bring suit in a New York court, a right long since recognized as inherent in both federal and state constitutions which may not be abridged, the documents at issue could be freely used. See *Mosallem v. Berenson*, 76 A.D.3d 345, ___ N.Y.S.2d ___ (1st Dep't, Oct. 20, 2010). I would presume that your honor would recognize that a federal court would have no business interfering with what evidence may be submitted to a New York State court. As was stated in *Mosallem*,

> *[H]ow Mosallem may have come to be in possession of the documents does not warrant granting the sealing motion....* "New York follows the common-law rule that the admissibility of evidence is not affected by the means through which it is obtained" (*Heimanson v Farkas*, 292 AD2d 421, 422 [2002]; see *Stagg v New York City Health & Hosps. Corp.*, 162 AD2d 595, 596 [1990]; see also Prince, Richardson on Evidence § 4-104 [Farrell 11th ed]). Thus, in the absence of some constitutional, statutory, or decisional authority requiring the suppression of otherwise valid

---

[10] Presumably a few months earlier for Mr. Lauria, insofar as the unsealing of his file in 2009 would start the period running, not his 2004 sentencing date if as we suspect that was unlawfully hidden until 2009, given equitable tolling.

[11] "A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim." §3664(l).

Case 1:98-cr-01101-ILG Document 87 SEALED Filed 02/01/11 Page 7 Page ID #: 1276

> evidence (see e.g. CPLR 4506), *such evidence is admissible in a civil action even if obtained by wrongful means* (*Radder v CSX Transp., Inc.*, 68 AD3d 1743, 1744-1745 [2009]; *Stagg*, 162 AD2d at 596; see generally *Sackler v Sackler*, 15 NY2d 40 [1964]).

> *Since wrongfully obtained evidence is nevertheless admissible, we see no reason why the documents should be sealed merely because they were obtained improperly. In this case, we should not be drawn into the ancillary inquiry of whether Mosallem may have engaged in wrongdoing or committed tortious conduct....*

This is to say, of course, that Mr. Oberlander can bring a proceeding in state court forthwith, and all of the documents at issue here will see the light of day. It is ineluctable.

\* \* \*

I also remind your honor of the Second Circuit's directive that the docket be provided to that court by January 14th. Your delay is impeding the appellate process.

\* \* \*

**\*\***     I also respectfully demand that you comply with the United States constitution and with *Alcantara* and void and unseal your apparently unlawful resealing of the Lauria document. Again, and this time in spite of the direct notice to you in advance from a citizen of the United States that he in behalf of his clients demanded you hold the requisite public hearing and make the requisite record findings before determining you could resealing it, again you have not done so. In view of the fact that the government itself admits what you already knew, that there is a history of public and press speculation about Sater's cooperation and that the record was open to the public for two years, still you failed to follow the law even where, as your own same court recently ruled, there would have to be an *enhanced*[12] showing of necessity, let alone a rubber stamp.

\* \* \*

I annex an email sent to Mr. Kaminsky last night, to which I have yet to receive a response. It is a very serious, and I believe it appropriate to give your honor due notice that my client's clients take their constitutional rights very seriously, and have directed Mr. Oberlander to proceed zealously, to the full measure of his intellectual abilities and in accordance with his high ethical obligations to his clients.

---

[12] *United States v. Zazi*, 2010 U.S. Dist. LEXIS 67595 (EDNY), (finding that when media had already reported suspected cooperation, a safety risk did not justify continuing to seal documents confirming cooperation, absent a showing of "enhanced risk of substantial prejudice" to safety interests if documents were disclosed).

* * *

      I regret the necessity for the tone of this letter, and I also remind your honor that if any of the well-founded allegations herein should turn out not to be true, there is no one to blame but the court and those using it to hide the truth.


Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard E. Lerner


Enclosures:    Oberlander's Memo of Law submitted to Second Circuit on January 31st.
                Complaint in Arizona action against Sater.
                Email to Mr. Kaminsky dated February 2, 2011.


cc:    (with enclosures)

        **Via E-Mail**
        Kelly Moore, Esq.
        Brian Herman, Esq.
        Stamatios Stamoulis, Esq.
        Todd Kaminsky, Esq. – US Attorney's Office
        Joshua Bernstein
        Arnold Bernstein, Esq.
        Frederick M. Oberlander, Esq.