# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000 Fax: 212.490.3038

Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
*Affiliates:* Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris

www.wilsonelser.com

December 8, 2011

**Under Seal (and over objection) with
request for unsealing and docketing**

Via Facsimile – (718) 613-2446

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

**MOTION TO UNSEAL**

Re:   *United States of America v. Doe*
Case No.        :     98CR1101 (ILG)
Our File No.  :     07765.00155

Dear Judge Glasser:

I attach (i) the Second Circuit's "summary order" of June 29th, and remind you of the remand order that directed that you rule on the government's March 17th motion to unseal;[1] and (ii) the Second Circuit's order of April 17th, and remind you of your continuing jurisdiction to rule on that same March 17th motion as well as *any other motion for unsealing*.

### Summary

Roe demands the *immediate* unsealing of (i) all documents[2] the government requested unsealed; and (ii) the 2004 PSR, (iii) the 2009 PSR; (iv) the cooperation agreements, (v) the plea agreements; (vi) the sentencing transcript, (vii) the statement of reasons, (viii) every document related to any rights, including without limitation to restitution, notice, participation, petition, or mandamus, due, or choses in action (such as pursuant to 18 USC § 1964[c]), available to, Doe's victims or other non-parties, (ix) every document related to Doe's May 18, 2010 order to show cause, including, without limitation, any transcript or docket entries of the November 2010 conference calls with your honor, Doe's counsel's November 24, 2010 declaration and memo of law, and your "scheduling order" of March 23, 2011; and (x) this unsealing request itself and all procedures therefor.

---

[1] Movant's use herein of "seal," "unsealing," "or other lexical forms is not acquiescence that anything was ever lawfully sealed. It remains Movant's contention they were illegally sealed, i.e. concealed. The term "sealed" is used only for convenience to match the usage of the other parties' papers.

[2] "Document" means (i) things which are traditionally considered documents; (ii) the docket; and (iii) facts not otherwise reduced to tangible medium of expression, such as a docket entry of an event).

v.3

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 2

### Legal Standards

The standards which must be met before a court may impose or maintain the sealing of all or part of a document depends on the source of the public's right of access.

-- *Source: First Amendment*[3]

<u>Which Documents Are Covered</u>. Documents which either (i) by "experience and logic," have historically been open to the press and general public, where public access plays a significant positive role in the functioning of the particular process in question; or (ii) to which the right of access is a necessary corollary of the capacity to attend the relevant proceedings.

<u>Requirements to Impose or Maintain Seal</u>. The court must hold *publicly* docketed, *public* due process evidentiary hearings and record findings which clearly and convincingly establish (i) that the sealing, which must be only partial to the extent possible, (ii) is the least restrictive means, (iii) narrowly tailored, (iv) which will further, (v) a compelling, constitutionally cognizable and legitimate *countervailing interest*. Conclusory "findings," e.g., conclusory statements of the existence of a risk to national security, are insufficient.

-- *Source: Common Law*

<u>Which Documents Are Covered</u>. "Judicial documents," documents asking for, triggering, or relevant to the court's exercise of its Article III powers.[4]

<u>Requirements to Impose or Maintain Seal</u>. The court must determine whether the weight of the presumption of access is or is not greater than the weight of *countervailing interests* against the presumption of access. Partial sealing must be considered.

-- *Countervailing Interests Cannot Include a Court's Cover-up of "Political Crimes"[5] by Its Concealment of Documents Which, Alone or in a Mosaic, Reveal Them*

Mr. Roe contends it is a fundamental tenet of the law that no Article III court – not ever, not to protect national security, and certainly not to protect Doe and criminals like him simply because they informed on their co-defendants in their own self-interest – has a countervailing interest in covering up the court's own high crimes and misdemeanors.

---

[3] The following two paragraphs essentially adopt the government's arguments. For the sake of readability, the citations are omitted as they are well provided in the government's March 17, 2011 unsealing request.

[4] The only authority a federal court has flows from Article III, as to the Supreme Court modifiable by amendment, as to lower courts by Congress. *Marbury v. Madison*, 5 U.S. 137 (1803). This is relevant here and in the rights of the victims who were deprived of restitution to maintain actions for compensation for a judicial Fifth Amendment taking, as only judicial action pursuant to the court's lawful exercise of its Article III authority would qualify. That will put the government defending in the Court of Claims against these victims in the position of arguing that what the court did here by depriving them was unlawful, *ultra vires*, without jurisdiction, extra-constitutional, and devoid of authority, even though the government went along with it. The potential ramifications of the government's admission that it went along with the political crimes of another are interesting. But that is for another day.

[5] "Political crimes" has the meaning set forth more fully below. See fn 6 and associated text.

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 3

Mr. Roe contends it also a fundamental tenet of the law that when an Article III court has ceased to function as an Article III court by operating outside of Article III, its sequestration of documents – certainly where such is done with the intent of hiding its own high crimes and misdemeanors – has ceased to be the sealing of documents and has become instead the concealing of evidence and the obstruction of *political* justice.

> *It is not Mr. Roe Who has Created a Constitutional Crisis; Rather, he only Uses the One Created by the Court as a Means to Prevent its Recurrence.*

It is Mr. Roe's position that this court, and a (for now) unknown number of other courts of this circuit, have institutionalized and are operating a self-concealing scheme whereby cooperators are allowed to plea-bargain to illegal sentences in unlawfully secret proceedings, with the intended result that victims are deprived of millions of dollars of mandatory restitution.

It is the position of Mr. Roe that this is lawless, as it is outside the Article III powers of the court, that the court knows this, and that it constitutes high crimes and misdemeanors.[6] And therefore each and every document in this case, and eventually all other like cases, must be unsealed, at least insofar as such documents alone or taken together as a collective mosaic reveal (in Mr. Roe's opinion) unlawful acts. This includes Doe's 2004 PSR, which Mr. Roe contends evidences the "flouting" of the Mandatory Victims Restitution Act and the Crime Victims Rights Act.

We agree with the government that it is a legitimate interest of the government to attract cooperators. But if what has been done is (contrary to the opinion of Mr. Roe) lawful, what has gone on here is nonetheless of legitimate public concern. After all, why not be open and public about how a cooperator may avoid mandatory restitution? Surely, the public has a right to know. Why not publish local rules that say the first cooperator in the door wins a secret criminal proceeding, hidden docket, hidden conviction, and illegal sentence, including the ability to keep all the money he stole? Surely, the public has a right to know this too.

---

[6] I remind your honor that the phrase "high crimes and misdemeanors" has defined the contours of parliamentary impeachment in English law since the fourteenth century, so when they imported it, the Framers, themselves educated in English law, understood it meant *political* crimes, misconduct committed by public men in breach of their public trust and duties, acts which injure the political order or constitutional system, whether or not *indictable* crimes. Therefore, be certain Mr. Roe is not concerned, and has not been concerned, with the existence of any possible civil or criminal liability of any judge and makes no allegation, analysis, argument, or conclusion as to the existence of such liability. This entire document is limited to such acts as are judicial misconduct by this instant definition.

The court should be interested to know that the second time in Anglo-American history that the phrase was ever used (the first was in an impeachment in 1386), it was used in the impeachment in 1450 of Suffolk on charges including that he obstructed justice by interfering with the right of crime victims to obtain restitution. Literally. The specific charge, *inter alia*, was "stopping writs of appeal," 4 *Hatsell* 60n. As you know, "writs of appeal" were the procedural mechanisms whereby victims of certain crimes (pretty much the same crimes against person or property as make restitution mandatory today under 18 USC §3553A) were entitled to come into court and petition to establish what even then was called their right to restitution.

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 4

But my client believes that this court would recognize that what it has done has been contrary to the law, and it is indeed Mr. Roe's opinion that there is overwhelming support for the conclusion that the court has committed "political crime." These are, in sum, his reasons:

**ONE.** The Supreme Court ruled 100 years ago that it is unlawful and illegal for a federal judge to refuse to enforce mandatory sentencing laws. Period. No exceptions. It is the most definitive opinion in the history of the court, equal in vitality and force to anything ever said in *Brown v. Board of Education*. See *Ex Parte United States*, 242 U.S. 27 (1916).

**TWO.** Full victim restitution for property crimes became mandatory federal sentencing law, without regard to the financial circumstances of the defendant (except as to timing), as of 1996. Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 USC §3663A *et seq., et al.*

**THREE.** The Second Circuit ruled 10 years ago that where, as with Doe's crimes, they are continuing crimes straddling that 1996 effective date of the MVRA amendments, the defendant is subject to those mandatory restitution laws. *United States v. Boyd*, 239 F.3d 471 (2d Cir. 2001). The court knows this, as the documents Roe was given, including the PSR (which Mr. Roe recalls quite vividly, though he doesn't have it in his possession), admit it as to Doe.

**FOUR.** The Second Circuit ruled 20 years ago that restitution is not a civil remedy but is part of sentencing law. *United States v. Grundhoefer*, 916 F.2d 788 (2d Cir. 1990).

**FIVE.** The Second Circuit ruled 10 years ago in a sentencing vacatur *directed at you* that *you do not have authority to impose an illegally light sentence to a cooperator and you should not have instructed the jury that you had the authority to do so, implying you had the power to sentence a cooperator as you saw fit.* *United States v. Bruno*, 383 F.3d 65 (2d Cir. 2001).

**SIX.** The Second Circuit ruled 12 years ago that a sentence which fails to comply with restitution sentencing law is illegal. *United States v. Kinlock*, 174 F.3d 297 (2d Cir. 1999).

**SEVEN.** The Supreme Court has ruled that where the defendant has been put on notice, even if solely by disclosure in a cooperation or plea bargain, as has occurred here and is shown in the documents Roe received, that his sentence must include mandatory restitution, there is no time bar for him to be ordered to pay restitution, even if it occurs 10 years "late." *Dolan v. United States*, 130 S.Ct. 2533 (2010).

**EIGHT.** The *Dolan* court made a point of stressing that the language of the MVRA means what it says where it says, *"Notwithstanding any other provision of law*, when sentencing a defendant convicted of [a specified] offense...*the court shall order...that the defendant make restitution to the victim of the offense.* 18 USC §3663A(a)(1).

**NINE.** Judge Dearie, post *Dolan*, just awarded $200,000,000 in mandatory restitution, nearly trebling for loss of use what would have been "only" $80,000,000 but for the delay, against a defendant of a crime identical to Doe's committed at the same time as Doe's, 8½ years after his incarceration. *United States v. Cataggio*, 98-CR-01129. Yet as far as we know you have done nothing as to Doe even though by that framework (considering loss of use of the monies) you would be justified in awarding $150,000,000 against him. True, at least theoretically you could find Doe less than entirely responsible, except we all know that his information – which the government concedes must be unsealed – marks him as the first among the three ringleaders

of State Street, and his plea is an admission to that. (It should be a given that the existence of all the other restitution orders, including Mr. Klotsman's of $40,000,000, in this case preclude a determination that it would be too complex or delay sentencing too long to compute the proper restitution amount. After all, the Probation Office did have that 11 year lacuna from Doe's 1998 guilty plea to his 2009 conviction to work on the computations. And the Probation Office had no problem with anyone else's computations, so it shouldn't be a problem here. Judge Dearie could do it, and so can your honor. I believe it is an open question in this circuit whether Mr. Doe would have a civil claim for contribution against Mr. Lauria, but that is not our concern.)

TEN. That as of October 2004, long before Doe was sentenced, the Crime Victims Rights Act gave the sentencing court the duty to ensure victim notification of their rights, including as to mandatory restitution (see 18 USC §3771(b)(1)), and gave victims choses in action with respect to restitution, specifically the standing to sue in district courts for mandatory restitution (and other rights) they were deprived of and the standing to mandamus in appeals courts where the district courts fail to act properly. 18 USC §3771(d)(3).

ELEVEN. The PSR from 2004 is an admission by the Probation Office that it failed to warn Bayrock and Doe's partners at Bayrock that it was colluding in the concealment of his conviction from his crime victims notwithstanding the obligation to report it.

TWELVE. The willful and intentional failure of the Probation Office to warn of recidivism risk and the nature of the offender creates civil liability to such person as should have been warned and was harmed by the failure and a concomitant chose in action to that person. (See *Potential Liabilities of Probation and Parole Officers*, DOJ and NCIC, in particular sections discussing liability for not warning bank employer of prior embezzlement history. Mr. Roe suggests the court ask one Elizabeth Theriot, whom Sater defrauded of $1,000,000 in the sale of securities at Bayrock in 2003-2004, how she would have acted if warned of his prior RICO conviction in securities fraud.)

THIRTEEN. The Supreme Court has said that where a statute creates the entitlement to a benefit, either monetary or the provision of a service the value of which can be monetized, and which entitlement or non-discretionary procedural denial thereof can be enforced or challenged, as the case may be, by chose in action, that is a property interest the deprivation of which triggers Fifth Amendment protections, the right of recovery for its deprivation without due process. (Ironically, this court may have done a lot to help victims by allowing Mr. Roe to establish that the CVRA's enforcement mechanism has constitutionalized victims rights without constitutional amendment, as Congress lacks the Article I authority to create a property right devoid of Fourth and Fifth Amendment protection). *Castle Rock v. Gonzales*, 545 U.S. 748 (2005). That is, if a property right is created by Congress, then it must be a constitutionally protected property right.

FOURTEEN. Thus, if it were a *lawful* exercise of Article III authority for a federal judge to defy Congress, "flout" the law, and repudiate the Constitution and 100 years of Supreme Court precedent by depriving victims of mandatory restitution and the above described choses in action, such a *lawful* judicial deprivation of property would be a Fifth Amendment taking requiring compensation, rights to which may be vindicated in the United States Court of Claims.

**FIFTEEN.** A $1,000,000,000 (counting interest and trebling) civil RICO liability attached to Doe immediately upon his conviction in 2009. This started a four year statute of limitations that is *still open*, for which his victims are entitled to summary judgment of liability in a civil action against him, if they are given, as they are entitled to, restitution orders (which, not incidentally, may be ministerially converted into liens. But his victims don't know about this. (Lauria's liability attached in February 2004 at his sentencing. As to him, limitations *nominally* expired before your honor unsealed his docket in 2009., I use the word *"nominally"* because, by equitable tolling, his cause is still open, too. See 18 USC §1964(c).)

**SIXTEEN.** The Second Circuit over 20 years ago ruled that where there is a duty to disclose the existence of a chose in action or the facts creating it, it is mail or wire fraud, as the case may be, to conceal or fail to disclose such, and did so with the express holding that its decision, made post-*McNally* (483 U.S. 350 (1987)), was not contradictory authority, and so they remain vital law not diminished in any way by *Skilling v. U.S.*, 130 S.Ct. 2896 (2010). *U.S. v. Porcelli*, 865 F.2d 1352 (2d Cir. 1989); see also *U.S. v. Eisen*, 1990 U.S. Dist. LEXIS 14219 (EDNY 1990) (depriving person of chose in action is deprivation of property by mail [or wire] fraud, not precluded by *McNally* carveout and excision of honest services fraud from mail fraud).

**SEVENTEEN.** It is illegal to conduct the affairs of an enterprise, whether a juridical person or *pro tempore* association in fact for common goal, through a pattern of such fraud. 18 USC §1962. A single court or entire circuit can be an enterprise. *U.S. v. Stratton*, 649 F.2d 1066 (5th Cir. 1981) (government properly pled the entire Florida Third Judicial Circuit as enterprise).

**EIGHTEEN.** The Supreme Court ruled 90 years ago that conspiring to violate a civil statute, even one that merely requires reporting, is illegal, 18 USC §371, where the civil statute exists in the interest of the public policy of the United States, the same held to deprive *pre-CVRA* victims of standing in *Grundhoefer, supra*, that federal restitution sentencing laws exist in the public interest for the common good. *United States v. Hutto*, 256 U.S. 524 (1921).

**NINETEEN.** Therefore, a conspiracy to violate either or both the MVRA and the CVRA violates both the offense and defraud prongs of 18 USC §371.

**TWENTY.** Federal law has made it illegal for 200 years for anyone to take away, hide, or conceal a judgment, writ, etc. with the result that it is rendered ineffective. 18 USC §1506.

**TWENTY-ONE.** As (in Mr. Roe's opinion) you had to have known that the PSR, *a fortiori* with the other documents Mr. Roe lawfully received, establishes the predicate facts of all the above, you had to have known that enjoining him (or anyone) from revealing *anything* in those documents had the guaranteed result of facially enjoining him from revealing (what Mr. Roe contends are) your political crimes, maintaining their concealment without justification (see *infra*), notwithstanding you had to have known that no Article III court can have the remedial authority to enjoin a citizen from reporting its own misconduct, high crimes and misdemeanors.

**TWENTY-TWO.** You violated the First Amendment rights of the people by your unconstitutional delay. As *Lugosch* makes clear, *infra*, when the government moved to unseal on March 17, 2011 certain documents having a First Amendment right of access, that triggered your obligation to unseal or hold hearings immediately, because you cannot impose or maintain a seal on such documents without hearings as to compelling and countervailing interests. *Lugosch* says

to delay is to deny. When you delayed, you denied. Even if not then, as you claimed to be unsure of your jurisdiction, you were told a month later, on April 17th, by the Second Circuit that you had jurisdiction. Still you delayed, and thus denied. If that were not enough, on June 29th, you were remand ordered by the Second Circuit to take up the unsealing motion. Six months later you have still done nothing. *Lugosch* compels the conclusion by all these delays, you have denied, and you have denied without the due process required. Moreover, as you have known all set forth above, you knew that the obvious outcome of your denial of access was (as Mr. Roe contends) the continued concealment of your high crimes and misdemeanors. Whether or not you meant for that, you knew it would happen with substantial certainty. It must be that as a matter of law you have illegally – by delay and wont of process – denied the public their First Amendment right of access to documents with the specific intent of continuing the concealment of political crimes, which would have been revealed had you allowed access to even those few documents.

Accordingly, and in brief, in the context of this unsealing motion Mr. Roe intends this court rule – in public – on the following questions:

(1) Does this court (and therefore any other federal court) have the authority to act without authority; that is, has the court the authority under Article III to repudiate Article III by willfully and intentionally "flouting" the law, the ultimate high political crime against the interests of the state and body politic, as set forth above?

(2) If the answer is "yes," then does that authority to act outside of Article III ever extend to the authority to further act outside of Article III by maintaining by illegal sealing a "cover-up" of the court's extra-constitutional actions – though such be political crimes forbad the court by Article III itself?

(3) If the answer is "yes," is it so extended in this case by the (evidently pretextual) claimed necessity of protecting a cooperator, including from his now billion dollar plus civil liability to his victims which you are charged with making known?

**It is Mr. Roe's Position that the Court Has "Flouted" its Obligation
to Act Expeditiously and Must Take This Up Immediately.**

Motions or requests to unseal documents for which there is a First Amendment right of access *must be adjudicated immediately*. *Lugosch v. Pyramid*, 435 F.3d 110 (2d Cir. 2006).

As it is beyond dispute – even the government agrees – that there is a First Amendment right of access to at least some documents (such as, for example, Doe's docket and his plea and sentencing documents), which are the subject matter of this motion and the government's motion (now nine months old), there can be no further delay, and we request that you immediately unseal or in the alternative commence *publicly docketed, public* hearings immediately which will be required to establish a clear and convincing factual basis for the continuing denial of the rights of a few hundred million people to find out what has been going on in your courtroom.[7] We respectfully note our intention to mandamus the court in ten days, otherwise.

---

[7] In contrast with the rights of Mr. Roe, who already knows what's in those documents, to tell them without your permission, or anybody's permission, which issue is still before the Second Circuit in motions for reconsideration

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
v.3

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 8

Moreover, because Mr. Roe's clients are locked down and frozen from filing and serving complaints in their Southern District RICO case by Second Circuit orders until you deal with this, their First Amendment rights of petition are violated by the unconstitutional delays as well.[8]

### The Court Must Also Deal With an Obstruction of Justice

On May 18, 2011, counsel for Mr. Doe transmitted to Mr. Roe and counsel a settlement offer in the form of an email attachment. The email (copy enclosed) stated the following:

> [Y]our client [Mr. Roe] ... has reached the end of his litigation rope. Even if Judge Glasser decides to hold a hearing or oral argument to determine whether to unseal specific docket entries of Doe's criminal proceeding, he will do so without considering your arguments or appeals. If you believe you are driving the unsealing issue, you are mistaken.

You are requested to note *on the unsealed docket* this communication, this objection, and all process in response. Mr. Roe contends that a communication that "urges" settlement because the presiding judge will otherwise rule unfairly or corruptly, whether or not true, is an obstruction of justice, intended to impede its administration by creating doubt in the recipient or his clients that there will be just process and even if temporarily causing their hesitation in going forward. 18 USC §1503.

In light of your inexplicable, unconstitutional delay in the unsealing, Mr. Roe would be remiss to his clients, and I to him, if Mr. Roe did not request the nature, date, and contents of any direct or indirect *ex parte* communications with Doe or his counsel, upon which this incredible email may have been predicated and which might conceivably explain *how they came to know seven months ago that you would indeed never rule, what he knew, and when he knew it.*

We do not accuse the court of improper conduct here. Counsel for Doe has done that. Indeed, we share what we presume (if there were no *ex parte* communications) is the court's outrage at this allegation and will support the court's *sua sponte* order of a Rule 11 proceeding.

### Documents and Entries to be Unsealed

-- *All Documents the Government Requested Be Unsealed*

The government asks that the following be unsealed: (i) the docket; (ii) Doe's name; (iii) facts of conviction, including date, crime, and information; (iii) date of sentencing and sentence imposed; and (iv) "those entries and documents that merely reflect the scheduling of the case and other ministerial requests and orders made and issued by parties and the Court." Gov. Ltr. 5-6.

Mr. Roe concurs, except (i) as the date, facts, and reasons of sentencing is already public record and public property,[9] there is nothing to consider before unsealing that; and (ii) for

---

and for rehearing *en banc*, and is not the subject of this motion, and which will likely wind up before the Supreme Court and more than likely before Congress.

[8] As *Lugosch* may be read to apply to any documents for which there is any presumptive right of access, not merely a First Amendment right, Roe does not acquiesce to any delay as to such documents

[9] As the court is aware, no matter what, sentences must be announced in open court, and a statement of reasons read

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 9

reasons set forth below, Movant asserts that the fact of his cooperation or any details may not properly be considered by you in this request.

- *The 2004 and 2009 PSR's.*
  *The cooperation and plea agreements.*
  *The sentencing transcript and the statement of reasons for the sentence.*
  *Every document related to any rights available to Doe's victims or others.*
  *Every document related to Doe's May 18, 2010 order to show cause.*
  *This unsealing request and all procedures therefor.*

First, as to such documents for which there is a public right of access sourced to the First Amendment without regard to their specific contents, Roe demands that they be unsealed or the court commence requisite procedural due process to determine whether they may remain sealed

Second, as to such documents for which there is a public right of access sourced to the common law, Roe demands they be unsealed or the court commence requisite procedural due process to determine whether they may remain sealed

Third, as to such documents which, alone or together by mosaic, by their content reveal the court's commission of high crimes and misdemeanors – which (Mr. Roe contends) is at a minimum every document listed immediately above, plus such other documents as are determined at a hearing which must be commenced for this purpose – as more fully set forth in prior sections, Mr. Roe asserts that the public enjoys a plenary right of access, unqualified and unqualifiable, without consideration of any interest of Doe or his safety or lack thereof, such right of access founded in the First Amendment, not merely in its freedom of speech and of the press enumerated rights, but in its freedom to petition, for since Jefferson's letter to the House in

---

aloud, including in particular where, as, here there is no award of restitution, in which case a further statement of particularized reason for that is required. 18 USC §3553. There's no evidence in the docket that you lawfully closed the sentencing proceeding; why indeed, the government has made many representations to the Second Circuit that Mr. Doe was sentenced in public on October 29, 2009, albeit under an assumed name. Surely your honor there and then on that date complied with §3553.

So if all the above is true, why does the government's unsealing request not want the statement of reasons unsealed? How can there have been a public sentencing, albeit fictive name, without a statement of reasons read aloud? But if the statement of reasons is full of non-redactable material and must remain secret in its entirety, well, that sure sounds like no one ever intended the public to hear it, and that calling the sentencing hearing "public" is pretextual as no one went into it expecting the public to be there and you would have stopped it had someone come in.

Now, the government says in support of the unsealing of the sentencing facts that "[T]he public's understanding of how a particular defendant is sentenced is 'important to the proper functioning of ... judicial proceedings" and the public's understanding of whether justice was properly meted out." Gov. Ltr. pg. 5citing *United States v. Alcantara*, 369 F.3d 189, 198 (2d Cir. 2005).

A couple of points. First, that sounds like an argument that all sentencing documents have First Amendment rights of access. Remember the "experience and logic" test framed as, "by 'experience and logic,' has public access played a significant positive role in the functioning of the process in question." QED.

And second, well, if it's so important that the public understand how a particular defendant is sentenced, *wouldn't one think it's ever so much more important that the public understand how a particular defendant came to be sentenced illegally and in secret unlawfully?*

1803 requesting same as to Judge Pickering, and Attorney Lawless's 1826 letter requesting same as to Judge Peck, it has been not only the generalized right of every citizen to petition Congress, it has been the particularized right of every citizen to present to any or every member of the House of Representatives a private petition and memorial of impeachment against any federal judge.

It is Mr. Roe's opinion that the public has a right to find out for itself by its own efforts that this court, and apparently other courts of this circuit, are operating outside Article III and hiding it, and by doing so, whatever they have become, they have ceased at least in that respect to be Article III courts.

----

Please note that Mr. Roe demands that you rule on whether the First Amendment right of access to court documents, whether "traditional" or by reason of the documents' revelations of political crimes, is the same, more than, or less than the First Amendment right of someone who already received them to disseminate them, or their contents.

If it is the same, you should be aware that the utmost, core, protected First Amendment speech is speech not just critical of the government, but accusing the government of misconduct. Countless cases have held that no citizen may ever be penalized for reporting such misconduct, *or even the good-faith suspicion of it*. Why, just this past summer the Second Circuit, in a §1983 and First Amendment retaliatory firing case, *Jackler v. Byrne*, 10-0859-cv (2d Cir. July 22, 2011), suggested, unsurprisingly, that any attempt by government officials to restrain, impede, or penalize a citizen's right (if not duty) to truthfully report government misconduct may be considered, variously, as misprision, conspiracy, or obstruction. So either they forgot to add "Unless it's a federal court using its perceived remedial authority to enjoin reportage of its own political crimes (political crimes are misconduct by definition)" or they assumed the idea that federal judges cannot restrain reporting of their own political crimes was implicit.

The judiciary cannot *de facto* (or *de jure*) immunize itself from (indictable) criminal liability, and cannot immunize itself from (political) criminal liability, as enforcement of each is the purview of a separate branch of government, executive and legislative, respectively. Remember the separation of powers.

Would an injunction preventing someone who knows of such misconduct from reporting it be within the power of any Article III court? Well, no. Indeed, the last time something like this happened was in 1680, and it changed the course of English history.[10]

---

[10] We refer to Charles II's attempt in 1680 to outlaw what he called "tumultuous petitioning" by a proclamation (cf. executive order) declaring such to be harmful and disturbing to the public good and ordering magistrates to arrest and prosecute anyone caught petitioning for relief. The king asked his attorney general to draft up the proclamation, and the attorney general, our equivalent of Eric Holder today, thought better of it. Instead, he asked his friend Chief Justice North to draft it up. The judge did so, assuming, incorrectly, no one would really notice it.

Parliament was sitting, and did indeed notice it, and voted to impeach the attorney general, who, when brought before commons, was heard to say that no, indeed, he would not like to go to the Tower, and so gave up his friend Chief Justice North as the true author of the proclamation.

So no, there is no way the Second Circuit can protect its judges from reportage. On the other hand, perhaps they knew that and then never implied at all that federal judges are exempt from the proscription on impeding the reportage of their own misconduct.

In that case, then if the First Amendment right of access is the same as the First Amendment right of free speech as to what you already have, which is cognate to the First Amendment right to petition, you must immediately, no excuse, unseal every document that reveals singly or together your misconduct as set forth above.

*A fortiori*, if the First Amendment right of access is superior to those other First Amendment rights of free speech, you must immediately unseal the same.

But, if the First Amendment right of access is inferior to the First Amendment right of free speech, given that Mr. Roe already knows a great deal of what's in those documents, if you don't permit anyone else to access them from the courts, then you have given the public the situation that the only way they can access it is to hear Mr. Roe tell them what he knows. That gives them the standing to bring a third party action against this court and the Second Circuit to demand that he be allowed to tell them on First Amendment grounds, which will force the courts to rule on Mr. Roe's First Amendment claims, which they have avoided for obvious reasons.

### A Note on the Court's "Scheduling Order," and Why the Reliance Upon it by the Second Circuit Mandates the Unsealing of the Entire Docket. Roe Has a Right to Defend Himself in Public Against the Public Allegation That he "Flouted" an (Imaginary) Order.

Early this year Mr. Roe reached an informal, good-faith, albeit "soft" agreement with the government that in return for the unsealing of the items it requested in its letter, Mr. Roe would withdraw his appeal asserting his First Amendment right to reveal the contents of the PSR and other documents he received. In large part this was because disclosure of all that happened would have been inevitable, including information in those documents as to the evasion of restitution, the Probation Office's unlawful failure to warn Bayrock partners and investors that they were giving a convicted RICO felon cover to commit further frauds, and so on.

The government, and in particular Assistant U.S. Attorney Todd Kaminsky, who inherited this mess and was probably innocently in high school when the case started, admirably kept its side of this soft bargain by filing its motion to unseal on March 17th. So too would have

---

For lending his skill and art to the drafting of a proclamation attempting to make an English subject liable to penalty for petitioning for redress of grievances, for daring even to infringe on what Parliament called the most fundamental of all liberties, the judge was impeached by commons, for these acts which Parliament called high crimes and misdemeanors. 4 *Hatsell* 115-116. Also see 3 Campbell, *Chancellors*, 460-461.

Parliament was dismissed before it could put North on trial, but on reconvening it immediately passed statutory protection for the right to petition, which soon thereafter morphed into the Bill of Rights in 1688, whence derived our First Amendment express right to petition for redress of grievances.

So indeed, Parliament's appropriately outraged response to the appalling gall of a sitting judge to do anything, let alone actually purport to forbid by order, anyone from petitioning for relief in a very real sense is the foundation for our bedrock Constitutional fundamental First Amendment right to petition for redress of grievances. No judge may enjoin it, certainly not as to his own political crimes.

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 12

Roe kept it. Instead, your honor issued the March 23, 2011 "scheduling order" accusing Mr. Roe of having "willfully and intentionally flouted" an order, though you admitted on the record that you never signed any sealing order, and stated – as recorded on the transcripts as early as June 14, 2010 – that in response to Mr. Roe's demand to see any order that he is accused of violating and thus must have been directed at him as party or privy, *"There is none."*

We submit that you should have, must have, recognized that orders that do not exist, that are unwritten, untranscribed, cannot be put on the table, where no one living can say what they said if in fact they ever said anything, cannot be "flouted," as by definition they are not clear and concise. Non-existent, unwritten orders are not entitled to a presumption of validity. They aren't entitled to anything, *Garcia v. Yonkers School District*, 07-3167 (2d Cir. 2009) (injunctions and restraining orders must be by written order), quoting *Bates v. Johnson*, 901 F.2d 1424 (7th Cir. 1990) ("oral statements are not inunctions," particularly not oral statements no one ever heard) and more important, again, is that we submit your honor willfully and intentionally "flouted" eighty years of due process doctrine dating back to *Alemite v. Staff*, 42 F.2d 832 (2d Cir.1930), and reaffirmed by the Second Circuit just recently in *Briscoe v. City of New Haven*, 10-1975-cv (2d Cir. Aug. 15, 2011), in failing to consider what you well knew, as shown in your comments in the July 20,2010 transcript, that a non-existent order you didn't issue in 1998 could never, even if it had existed and you had signed and issued it, bind a non-party and non-privy stranger to the case twelve years into the future, *a fortiori* one who had neither actual knowledge of it (and never could have; what exactly is actual knowledge of an "implicit" order?) nor a duty to inquire as to the existence, legality, validity, and sufficiency. *Chase National Bank v. Norwalk*, 291 U.S. 431 (1934). Your "implicit sealing order" as to Mr. Roe was, as Judge Hand would have said, *pro tanto brutum fulmen*, a legal nothing freely disregarded.[11]

We submit that you failed to consider that the Second Circuit held in *U.S. v. David Cooper*, 353 F.3d 161 (2d Cir. 2003), that the absence of a written order, or written transcription of an oral order, alleged to have been violated precludes contempt And the report of that case states that the government concurred. Yet your honor, in the "scheduling order," accused an officer of the court of willfully violating an order that you admitted does not exist.

That would have gone unnoticed, but for the Second Circuit's decision to use it, and recite that Mr. Roe "flouted" an order – even though the Second Circuit said they had no jurisdiction to take up an appeal from your honor's "scheduling order." Then they insinuated that there was nothing of public concern in the PSR and suggested Roe only used it to extort Doe. Yet we all know that what's in that PSR would be of interest to at least some members of Congress, inasmuch as it shows how its laws can easily be circumvented by courts operating in

---

[11] *Keitel v. Keitel*, 716 So.2 842 (Fla. Dist.Ct.App. 1998) (finding a violation of implicit provision of order is a factual and legal impossibility); *In re Borkert*, 2000 Tex. Appl. LEXIS 7889 (Tex. Ct. App. Nov. 22, 2000 (there cannot be a finding of violation of order based upon implication or conjecture of provisions); *Stalb v. Stalb*, 171 Vt. 630 (2000) (there cannot be a finding of a violation of a court order based on (i) language "implicit" in written order; or (ii) oral order of which there is no record); *Panther Pumps v. Hydrocraft*, 424 F.Supp. 815 (E.D.Ill.,1976), rev'd other grounds, (court has no authority to find a violation of an "implied order"), *Johnson v. State*, 2003 Alas. App. LEXIS 40 (Alas. Court of Appeals 2003) (a violation of an "implicit" protective order cannot exist where actual order does not exist); *Porter v. Creative Nail Design*, 1990 U.S. Dist. LEXIS 4018 (E.D.Ill., 1990) (while one could say that defendant violated what could have been the implied meaning of an order, such not legally significant).

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
v.3

unlawful secrecy, and how a convicted RICO felon was allowed to evade mandatory restitution, allowed to commit further frauds, and allowed to buy multi-million dollar homes.[12]

Then, the Second Circuit released the summary order to the public. Because of the factual recitals in the Second Circuit opinion, that court has revealed to the public not only Mr. Roe's real identity – even to the point where he was recently greeted as "Hi, Mr. Roe" in a state court proceeding – but Mr. Doe's identity as well, as well as the fact that he is a cooperator. Anyone with access to Google and Pacer can figure out who Roe is and who Doe is. And they have.

Mr. Roe, accused in public of misconduct, against whom you have leveled the equivalent of criminal opprobrium without any, let alone due, process, has a right to vindicate himself in public, and to prove in public that it was actually the court that "flouted" the law.

This is a specific, particularized, formal legal assertion of Roe's right to have the entire case unsealed down to every PSR to exercise his First Amendment right to defend himself in public in furtherance of the Fourth and Fifth Amendment rights in the property that is his professional reputation. These are compelling reasons which you yourself created. Mr. Roe believes that contortions in your sealing order as picked up by the Second Circuit together with its mischaracterization of the importance of the PSR, all to avoid a First Amendment ruling, *infra*, has given Roe the standing to insist on unsealing for the compelling interest of refutation.

=====

In conclusion, I remind your honor that my client is a non-party to the proceedings before you. It is not Mr. Roe who brought this on, but having been dragged into it, he will not be cowed. Every one of his rights shall be zealously protected, including his right to accuse government officials of misconduct and petition for redress, the most fundamental right that a free man has.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard E. Lerner

---

[12] The last one that Mr. Roe has uncovered is a $5,000,000 condominium purchased for cash on or about May 15, 2007, immediately after Bayrock closed a $50,000,000 transaction, a purchase by a newly formed Florida LLC of which Doe was – shockingly – the managing member.

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 14

Enclosures: 2d Circuit order of April 19, 2011
2d Circuit "summary order" of June 29, 2011
Email of Doe's counsel, dated May 18, 2011 (without attachment)

cc: **By E-Mail/ Fax (with enclosures)**

Todd Kaminsky – US Attorney's Office
Nader Mobargha & Michael Beys
"Richard Roe"
Hon. Paul Engelmayer (By hand)
Hon. Brian Cogan

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
v.3