

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EK:EMN/TK
F.#1998R01996

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 26, 2012

By Hand

<u>Submitted Under Seal and</u>
<u>Ex Parte as to Richard Roe</u>

The Honorable I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. John Doe
           <u>Criminal Docket No. 98-1101 (ILG)</u>

Dear Judge Glasser:

      The government writes to respectfully request that the Court issue the enclosed proposed order setting forth a briefing schedule to resolve the matter that remains to be decided in the above-captioned case following the remand from the Second Circuit Court of Appeals.

I.   <u>Background</u>

    A.  <u>John Doe's Conviction and Cooperation</u>

      On December 10, 1998, John Doe pleaded guilty, pursuant to a cooperation agreement, to an information charging him with participating in a racketeering enterprise, in violation of 18 U.S.C. § 1962. The RICO predicate acts consisted of securities fraud in connection with offerings and after-market manipulation of the securities of multiple entities and the unlawful laundering of the proceeds of these schemes.[1]

---

    [1]  Sections A through G of this Background section are largely taken from the government's April 11, 2011 brief filed with the Second Circuit. For ease of reading, the citations included therein to the parties' joint appendix and the government's appendix are omitted.

2

Following his guilty plea, the defendant worked with prosecutors from the United State Attorney's Offices in the Eastern and Southern Districts of New York and law enforcement agents for over 10 years, providing information crucial to the conviction of over 20 individuals, including those responsible for committing massive financial fraud, members of La Cosa Nostra ███████████████████████████████████████████████████

On October 23, 2009, the Court sentenced Doe to probation and a $25,000 fine. Prior to sentencing, the government submitted a letter pursuant to Section 5K1.1 of the United States Sentencing Guidelines.

B. <u>Sealing History</u>

Since the case's inception in 1998, the docket sheet, along with all of the documents filed therein, has been sealed. The docket is listed as <u>United States v. John Doe</u>, and the first entries on the docket reflect the government's notice of intent to proceed under Rule 7(b) of the Federal Rules of Criminal Procedure as well as Doe's December 10, 1998 guilty plea to an information. Although the docket does not reflect any letter filed in support of sealing or any written order sealing the case, it appears likely that one of the parties made an oral application to seal the docket at the time of the guilty plea, one of the first events in the case, which application was orally granted.[2]

---

[2] A copy of the transcript of the guilty plea cannot be obtained because the court reporter has since died and his notes cannot be located. However, clerk's office personnel recently located a document entitled "Criminal Cause for Motions" that was created by the Court's courtroom deputy either at or following the plea proceeding. Written notations on that document indicate, among other things, "all documents sealed" and "Transcript sealed," from which it can be concluded that an oral motion to seal the case was likely made and granted at the time of the guilty plea.

3

With respect to the October 23, 2009 sentencing, the case was listed on the court calendar as United States v. John Doe, but the courtroom was open for the proceeding.

C. Disclosure of Doe's Conviction and Cooperation

Since 1998, there have been a limited number of instances in which rumors of Doe's criminal case and cooperation have surfaced. In a November 1998 Businessweek article, the author, who had obtained a copy of the sealed complaint in Doe's case, implicated Doe in a stock fraud and money laundering scheme. Additionally, a 2007 New York Times article about Doe suggested that Doe had been indicted for securities fraud and was a government cooperator. The article identified Doe as an unindicted co-conspirator in a March 2000 indictment that led to the convictions of 19 people, including members of the Mafia. A former alleged co-conspirator of Doe's stated in the article that Doe had obtained information for the United States about a set of missiles on the black market. The Times, however, was unable to confirm many of these assertions.

There have also been two occasions on which the government has acknowledged Doe's cooperation. In 2001, in anticipation of trial, the government provided one of the defendants against whom Doe cooperated with material pertaining to Doe pursuant to 18 U.S.C. § 3500. That defendant then pled guilty on the eve of trial. The government has no information to suggest that Doe's § 3500 material was disseminated to individuals outside of that defendant's legal team.[3] In addition, in 2009, the government unsealed the docket of a co-conspirator of Doe's without realizing that a docketed letter filed by the government in that case mentioned Doe's cooperation. After this oversight was brought to the government's attention, on December 2, 2010, it requested that the Court reseal the letter, which request was granted. See United States v. Salvatore Lauria, 98 CR 1102 (ILG), Docket Entry No. 25.

Finally, on February 25, 2011, it was brought to the government's attention that on March 2, 2000, the government had issued a press release announcing the indictment of 19 defendants

---

[3] A December 2001 docket entry reflected in United States v. Coppa ((00 CR 196) (ILG)), states that the government sent material concerning Doe to a defendant in advance of trial pursuant to 18 U.S.C. § 3500. Although the docket entry refers to Doe by name, it is silent as to cooperation and refers to Doe only as a "witness."

in which the government referenced Doe's conviction and referred to him by his real name. The press release did not mention Doe's cooperation with the government.

    D.    <u>The Presentence Reports</u>

The United States Probation Department initially prepared a Presentence Investigation Report ("PSR") in connection with Doe's sentencing, which was then scheduled for September 9, 2004 (the "2004 PSR"). The 2004 PSR mentioned Doe's cooperation more than once. (PSR ¶¶ 130, 185-86). Pursuant to Fed. R. Crim. P. 32(e)(2), the Probation Department disclosed the 2004 PSR to the defendant and the government prior to the scheduled sentencing date. However, subsequent to the Probation Department's disclosure and the date of sentencing, counsel for Doe requested an adjournment of the sentencing in light of Doe's on-going cooperation, which request was granted.

By the time the defendant was ready to be sentenced in 2009, the 2004 PSR had to be revised to account for changes related to Doe's financial circumstances as well as changes to various other personal aspects of Doe's life that had occurred in the intervening years. As a result, in September 2009, the Probation Department disclosed a revised PSR (the "2009 PSR") that contained updated information. The 2009 PSR was used for Doe's sentencing in October 2009.

    E.    <u>Richard Roe, Esq.'s Public Filing of Sealed Documents</u>

On May 10, 2010, Richard Roe, Esq., filed a civil RICO complaint against Doe and 29 other defendants in the United States District Court for the Southern District of New York (the "SDNY Complaint"), attached to which were exhibits that related to Doe's criminal case. Specifically, the exhibits included (1) excerpts from the 2004 PSR, (2) two proffer agreements dated October 2, 1998 and October 29, 1998, and (3) Doe's cooperation agreement dated December 10, 1998. Aside from the attachments, the SDNY Complaint itself also explicitly referenced Doe's cooperation. Several days later, the SDNY Complaint, including its exhibits, became publicly available.

On May 18, 2010, upon Doe's application, the Court issued an order to show cause as to why an order should not be issued for a preliminary injunction requiring Roe to return the sealed and confidential documents to Doe and a temporary restraining order ("TRO"). The order also enjoined Roe from

further disseminating the aforementioned documents or information contained therein, pending a hearing on the motion.[4]

F. <u>The June 21, 2010 Hearing</u>

The Court held a hearing on June 21, 2010, at which both Roe and Doe testified. At the hearing, Roe testified that a client of his, Joshua Bernstein, who was a former employee of Doe's, gave Roe the documents at issue. At the time he received the documents, Roe represented Bernstein in a suit against his former employer, Bayrock, the company at which Doe worked, in Westchester County, New York Supreme Court. Specifically, Roe, an attorney who practices in Montauk, New York, stated that Bernstein had handed him the documents, including a complete version of the 2004 PSR, at Bernstein's Manhattan home-office sometime after midnight on March 1, 2010. In addition, Roe testified that two days later, Bernstein emailed him electronic versions of the documents as well as additional documents pertaining to Doe's case that included the criminal complaint and a "draft" criminal information.[5] Roe also testified that he knew that Bernstein had been terminated from Doe's firm at the time Bernstein provided him with the documents.[6]

During his testimony, Roe acknowledged that in the SDNY Complaint he referred to some of the documents at issue, as well as several aspects of Doe's criminal case, as having been "sealed."[7] Moreover, Roe admitted that he was familiar with the 2007 <u>Times</u> article that stated that sources informed the author that Doe's criminal complaint remained under seal. However, Roe

---

[4] On May 25, 2010, Roe requested by letter that the TRO be extended to June 11, 2010, which request was granted. On June 11, 2010, the Court extended the TRO until June 14, 2010, after Roe indicated that he was not ready to proceed with the scheduled hearing. On June 14, 2010, the Court extended the TRO, without objection, until June 21, 2010, after the hearing was adjourned in light of the absence of a witness who was to testify that day.

[5] The government will refer to the documents in Roe's possession from Doe's criminal case, other than the 2004 PSR, as "the Other Sealed and Confidential Documents."

[6] Roe testified that he did not solicit the documents from Bernstein: "I didn't say would you please give me these documents. He volunteered."

[7] In paragraph 96 of the SDNY Complaint, Roe specifically noted that the cooperation agreement and the transcript from Doe's guilty plea were "sealed."

Case: 98-01010-GD Document 1272 SEALED Filed 01/26/16 Page 6 of 26 PageID #: 1495

6

stated that other than reading the article he had made no attempt to determine if the documents Bernstein provided him were subject to existing sealing orders or whether the docket itself was under seal.

Roe refused to acknowledge at the hearing that he knew that Bernstein had retained Bayrock documents at his apartment subsequent to his termination from the company. Roe also refused to state, on the basis of work product privilege, whether he suspected that Bernstein had stolen the documents at issue. However, approximately three months earlier, on March 8, 2010, Roe was present at a deposition of Bernstein at which Bernstein revealed that he had retained "hundreds of documents" from Bayrock after he was fired.

Roe did acknowledge that on March 12, 2010, two days after the SDNY Complaint was filed but prior to its being made public,[8] Roe sent the following email, to which the SDNY Complaint was attached, to the father of one of the plaintiffs he represented in the SDNY civil action, asking that it be forwarded to the general counsel of Bayrock:

> I recommend you forward this to Julius with the comment from me that there are three alternatives here:
> (a) I file publicly today.
> (b) I file under seal today.
> (c) He arrange a tolling agreement with EVERY defendant but nixon peabody.
> I don't care how many people he has to get on the phone and how fast he has to work. He had years to give back the money and now it's over. He can get Brian Halberg to help him.
>
> I believe it's possible to get this in under seal if Bayrock joins in a joint motion in part 1 to seal the complaint pending a redaction agreement with the assigned judge but there are never any guarantees.

---

[8] Roe testified that he originally tried to file the complaint under seal but that after his sealing motion was denied by a Southern District of New York judge, he filed it without any sealing request. However, Roe's initial (and only) application to seal the SDNY Complaint did not mention Doe or Doe's cooperation in support of sealing but, rather, sought sealing for unrelated reasons.

> Thanks,
> [ROE]

Since no further sealing motion was made, the SDNY Complaint became a publicly-available document shortly thereafter.

Doe also testified at the hearing. He stated that he had kept the documents at issue in a desk drawer inside of his office and that the drawer was kept locked most of the time. Doe further testified that he had not given Bernstein or anyone else permission to access the documents. Doe stated that he might have had the documents in electronic form and might have sent personal emails from the Bayrock server, but he did not indicate that the documents at issue were items that he might have sent through his Bayrock account.

At the conclusion of the hearing, the Court, relying on <u>United States v. Charmer Industries, Inc.</u>, 711 F.2d 1164 (2d Cir. 1983), issued a permanent injunction against the dissemination of the 2004 PSR and the information contained therein and directed Roe to return the 2004 PSR to the United States Attorney's Office, which Roe provided to the Court. With Roe's consent, the Court extended the TRO until July 20, 2010 with respect to the Other Sealed and Confidential Documents and requested briefing from the parties as to whether it had the authority to enjoin the dissemination of those documents. The Court expressed doubt as to whether it had the power to command Roe to return those documents. On July 9, 2010, Roe filed a notice of an appeal concerning the court's May 18, 2010 and June 21, 2010 orders.

G. <u>The July 20, 2010 Oral Argument</u>

At oral argument held on July 20, 2010, the Court made several factual findings. It concluded that Roe knew the documents at issue were sealed prior to his public filing of them. The Court also found that Bernstein had wrongfully obtained the documents and that "Mr. [Roe] . . . had . . . documents which he knew or perhaps should have known may have been improperly obtained by Bernstein and passed onto him." The Court characterized Roe's actions as "something very bad and perhaps despicable." Over Roe's objection, the Court maintained its previous ruling, ordering Roe to return the PSR, including any copies, and prohibiting its dissemination. Specifically, the Court noted that, according to <u>Charmer Industries</u>, Roe had the burden of demonstrating his need for the 2004 PSR and that he had failed to meet that burden. The Court reiterated its concern about whether it had the authority to restrain the dissemination of the Other Sealed and Confidential Documents and asked for

further briefing on that subject. As a result, it extended the TRO for an additional ten days.[9] In support of that order, the Court stated, "I think there is irreparable harm, which is imminent to Mr. John Doe, those documents contained information which is highly, highly sensitive and if disseminated . . . I think[] it would place Mr. John Doe's safety at risk."

On July 26, 2010, the parties notified the Court that they were negotiating a standstill agreement as part of an effort to resolve the issues concerning the Other Sealed and Confidential Documents and consented to continuation of the TRO. The Court accordingly extended the TRO until August 3, 2010. The Court later extended the TRO again, with Roe's consent, until August 13, 2010. However, on August 9, 2010, Roe filed a notice of appeal concerning the July 20, 2010 TRO. Thus, the Court never ruled on the application to enjoin Roe from disseminating the Other Sealed and Confidential Documents.

H. The Government's March 17, 2011 Unsealing Motion

On March 17, 2011, while the various appeals remained pending before the Second Circuit, the government moved before this Court to unseal "those docket entries and documents that do not refer to [Doe]'s cooperation. . . ." (Motion at 8). The primary impetus for the government's motion was its discovery, weeks earlier, of the March 2000 press release that, as noted above, did not refer to Doe's cooperation but did refer to Doe by name and state that he had been convicted of related crimes. (Id. at 2).

Subsequently, by letter dated May 19, 2011, the government requested that the Court stay consideration of its March 17, 2011 motion for 60 days, which request was granted. The letter was submitted under seal and _ex parte_ with respect to Roe.

I. The Disposition of the Appeals

1. The Permanent Injunction and TRO

On June 29, 2011, the Second Circuit issued a summary order with respect to the appeals brought by Roe and his clients. Among other rulings, the Court of Appeals affirmed this Court's issuance of an order permanently enjoining dissemination of the 2004 PSR. (Summary Order at 8). With respect to the Other

---

[9] The Court also noted that the TRO and the permanent injunction should cover any copies of the documents at issue.

Sealed and Confidential Documents that were the subject of the TRO, the Court of Appeals dismissed the appeal and remanded to this Court with instructions "to issue a final determination regarding whether [their] dissemination . . . should be enjoined." (Id. at 9). The court further noted that "in the event that a final determination of the other sealed documents does <u>not</u> result in an injunction against the dissemination of any documents referred to Doe's cooperation," this Court is "to enter an order temporarily staying the unsealing of any documents referring to Doe's cooperation pending an appeal by the government to our Court." (<u>Id</u>. (emphasis in original)). Roe and his clients variously filed petitions for panel rehearing and rehearing <u>en banc</u> that were ultimately denied. On December 20, 2011, the mandate issued.

2. <u>The March 17, 2011 Unsealing Motion</u>

In its Summary Order June 29, 2011, the Second Circuit also remanded with instructions for this Court "to rule upon the government's unsealing motion of March 17, 2011." Subsequently, on August 2, 2011, the government moved, under seal and <u>ex parte</u> with respect to Roe, to modify the Summary Order to remove that instruction. In an order dated August 17, 2011, the Court of Appeals denied the motion without prejudice and stated that, for "[s]implicity of process, the Government is encouraged to seek to withdraw its motion in the District Court, reserving its right to re-file that motion at a later date." Thereafter, on August 24, 2011, in a sealed application filed with this Court <u>ex parte</u> with respect to Roe, the government moved to withdraw its March 17, 2011 unsealing motion. By order dated August 24, 2011, the Court granted the motion to withdraw without prejudice and with leave to re-file at a later date.[10]

On August 26, 2011, the government filed a letter with the Second Circuit, again under seal and <u>ex parte</u> with respect to Roe, in which, among other things, it advised that court "that on August 24, 2011, Judge Glasser granted the government's <u>ex parte</u> motion seeking the relief referenced in the Court's [August 17, 2011] Order."

---

[10] The government does not believe that Roe has been previously advised that the government moved to withdraw its unsealing motion.

## II. Discussion

The government respectfully submits that the only issue that remains to be decided following remand is whether a permanent injunction should issue with respect to the Other Sealed and Confidential Documents. As noted above, at the July 20, 2010 hearing, the Court ordered additional briefing on the issue. While Roe's appeal of the May 18, 2010 and July 20, 2010 temporary restraining orders, among others, necessitated briefing on the issue before the Court of Appeals, the issue has not yet been fully briefed before this Court. In light of the government's withdrawal of its March 17, 2011 unsealing motion, no further proceedings with respect to that motion are necessary at this time.

On December 8, 2011, prior to issuance of the mandate, Roe filed a motion before this Court to unseal certain documents, including the (1) 2004 PSR, (2) documents that appear to fall within the category of the Other Sealed and Confidential Documents, (3) other documents that refer to Doe's cooperation, such as the 2009 PSR, that are not in Roe's possession, and (4) "all documents the government requested unsealed."

The first request – for the 2004 PSR – should be denied as this Court's prior decision denying this request was affirmed by the Court of Appeals in its Summary Order dated June 29, 2011.

As for the second request - to unseal the Other Sealed and Confidential Documents - the government agrees that briefing with respect to the proper disposition of those documents is appropriate at this juncture. This briefing will also be relevant to whether continued sealing of the third category of documents – other documents that refer to Doe's cooperation that are not already in Roe's possession, such as the 2009 PSR - is appropriate.[11]

As for the fourth category – the documents that were the subject of the government's March 17, 2011 unsealing motion – the government respectfully submits that Roe's motion should be denied for the reasons set forth in the government's August 24, 2011 motion to withdraw and related filings, which reasons remain in effect. ████████████████████████████████

---

[11] That said, the government respectfully submits that the most efficient way to address the issue on remand is to limit the briefing the proper disposition of the Other Sealed and Confidential Documents

███████████████████████████████████ While the government expects to renew its unsealing motion at such time as the balancing of the public's qualified First Amendment and common law right to judicial documents against other compelling factors weighs in favor of unsealing, it is not yet prepared to do so.

III. Conclusion

For the reasons set forth above, the government respectfully requests that the Court issue the enclosed proposed order to the parties, as well as to non-party Roe. The government also respectfully requests that this letter be filed under seal for the same reasons previously explained in the government's sealed and ex parte motions dated May 19, 2011, July 13, 2011, August 18, 2011, August 24, 2011, September 29, 2011, and November 23, 2011.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: _____/s/_____
Todd Kaminsky
Evan M. Norris
Assistant U.S. Attorneys
(718) 254-6367/6376

Encl.

cc: The Honorable Brian M. Cogan (by hand)
Michael Beys, Esq. (by e-mail)