FILED UNDER SEAL, BUT OBJECTING TO SAME
AND REQUESTING IMMEDIATE UNSEALING

| UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK | |
|---|---|
| UNITED STATES OF AMERICA,<br><br><div align="right">Plaintiff,</div><br>-against-<br><br>"JOHN DOE,"<br><div align="right">Defendant.</div> | 08 Civ. 1101 (ILG)<br><br>To: Hon. I. Leo Glasser |

## MEMORANDUM IN SUPPORT OF MOTION OF NON-PARTY RESPONDENT RICHARD ROE

### PRELIMINARY STATEMENT

This memorandum is submitted in behalf of non-party respondent Richard Roe, by his attorneys Wilson, Elser, Moskowitz, Edelman & Dicker LLP, in support of the relief set forth in the accompanying notice of motion, and in response to the court's February 2012 scheduling order requesting briefing, to which the government's has improperly (as it is not a party and has not intervened) submitted papers purporting to argue for  which seeks an order restraining Richard Roe from disseminating the "other" "sealed" documents.

This is omnibus consolidated argument on the following defenses, affirmative defenses, and prayers for relief:

1.  The court has never had subject matter jurisdiction.

2.  Even if there were jurisdiction, the orders issued were void for lack of equity jurisdiction, either facially or, in the alternative, as have been and will prospectively be applied.

4936638v.1

3. The court must immediately recuse itself for actual and apparent bias.

4. The case must be transferred outside the Second Circuit for the same reasons.

5. The dissemination of the documents cannot be restrained in any way.

6. Any evidence submitted dehors the record made as of this court's close of testimony on June 21, 2012 must be stricken or in the alternative subject to cross examination ad testificandum and not merely by documentary presentation.

## SUMMARY

Criminal docket 98-CR-1101 (EDNY) was opened by petitioner Felix Sater's 7(b) plea and waiver in 1998. Order of judgment was entered October 23, 2009. No appeals were taken.

Seven months later, by order to show cause, Sater, *aka* John Doe, moved before this court to enjoin petitioner Frederick M. Oberlander, *aka* Richard Roe, an attorney, from reporting to anyone evidence of statutorily and politically judicial and executive criminal misconduct (falsifying judicial records, repudiating mandatory sentencing laws, and defrauding crime victims of billion dollar restitution and civil damages awards), and Sater's complicity in it, perpetrated by this court in concert with the Probation Service and the Department of Justice.

This court lacked subject matter jurisdiction to hear the motion, and even if there had been such, there was no equity jurisdiction to issue the relief requested or the orders actually issued (which positions are elaborated in Argument, following); alternatively, as applied the orders are not only unconstitutional but illegal and void, jurisdictionally barred.

Because the documents and subsequent events contain overwhelming evidence of the criminal misconduct of the court and department of justice, not only is that information of public importance, it cannot be denied that this court has an actual, as well as apparent, conflict of

- 4 -

interest in maintaining, interpreting, or issuing orders that would serve as a de facto grant of blanket immunity to itself and its confederates; that is, no court can sit in judgment whether a citizen may be lawfully restrained from reporting the sedition of the court itself.

And although Oberlander received the documents lawfully, even if he had burgled them or extorted them, no possible societal interest exists in allowing this court and its confederates to cover up a billion dollar embezzlement of restitution money by attempting to criminalize Oberlander's dissemination now, not only of the documents, but of the subsequent information, including this court's rulings such as its fabrication of non-existent sealing orders. The abuse of sealing so as, now, to purportedly prohibit Oberlander from revealing the federal offenses of perjury and obstruction committed against him in this court on the ground that the court must allow itself to be used in the commission of those crimes to protect Mr. Sater is an unlawful action which by its nature is, *inter alia*, flatly void jurisdictionally.

The Supreme Court has intentionally never ruled on whether someone who unlawfully obtains information of public concern may be enjoined from disseminating it, and if this court further defiles itself by accepting in any way the clearly perjured affidavit of Bernstein without subjecting him to cross examination and corruptly "finds" that Mr. Oberlander did something wrong in having documents dropped in his lap, it will still remain unlawful and void for it to restrain him from revealing their contents and the larger contents that this court is engaged in the theft of victims property for the benefit of convicted felons and has abused process to cover it up.


## BACKGROUND

Exhibit "A" contains a true and correct copy of that certain motion to unseal made on or about December 9, 2011. In that motion, on pages 4 through 7, are 22 numbered items forming a

4936638v.1

syllogism leading to the conclusion this court has committed political crime. Those paragraphs specifically, and the rest of the document to the extent necessary, are incorporated herein.

The term "political" is now changed for this argument, expanded to be more inclusive, viz. "statutory and political."

As a matter of law, not just fact, the information in ███████████████████ ███████ the cooperation agreement which confirms Sater was warned and stipulated his awareness that at sentencing he would face mandatory restitution of about $60,000,000 and so is of national concern in that it not only supports the willful and intentional aspect of his illegal sentence but also his knowledge back in 1998 of his restitution liability which according to *United States v. Dolan* (2010) entitles his victims – and obligates this court – to impose that order now, and as Judge Dearie noted in *Ageloff* there can be no due process objection, and also the information, which confirms that Sater (who admitted same by his guilty plea) shared control, if anything was first among equals with Klotsman and Lauria), thus could not lawfully have been spared restitution by being found not responsible as a co-defendant, this court may be well alleged to have participated in racketeering, that it operated an enterprise, either the EDNY courtroom itself or an association in fact enterprise with the others in concert with it, to defraud victims of restitution money, restitution choses in action, and civil RICO choses in action.

A single scheme to commit such fraud on the victims would be sufficient, but it is not likely a single scheme at least as to Sater, as Lauria received the same illegal sentence, also hidden for years, as did (apparently) Durchalter.

Otherwise all arguments that this conduct as set forth in that syllogism also constitutes sedition, a high misdemeanor, by definition impeachable per Article II, are reinforced herein.

4936638v.1

## MOOTNESS

The court is aware that Sater's conviction is public record. The court is now informed that his cooperation is as well, in sources beyond the reach of the court, and it is invalid to base any argument on the need to keep secret Sater's cooperation, as that is now a rapidly spreading public fact, again based on public records.

## CORE POLITICAL SPEECH

Such speech, or part thereof, revealing evidence of historic corruption and misconduct, is the ultimate core, protected speech. No possible countervailing government interest can exist to justify its restraint, certainly not a pretextual risk to Sater, and if the risk even were real, then we're sorry but the response is to put him in protection or WITSEC, not to allow corrupt government, particularly when he's in the middle of it.

## WHISTLEBLOWING

To be clear, not only is the speech critical of government misconduct, which is core protected speech, it is speech revealing government maladministration and crime, which is whistleblowing, and may not be enjoined on that basis. Evidence of crime belongs to no one. It cannot be converted. It cannot be stolen. Its dissemination even in contravention of contractual agreements not to disseminate it cannot be enjoined or penalized. So said the Department of Justice in its amicus brief to *SEC v. Dirks* (1983).

– 7 –

4936638v.1

## PRIOR RESTRAINT

This is not a case of access. The information is in Mr. Oberlander's head. This is a case of prior restraint. The issue before the court is whether Mr. Oberlander may be restrained from publishing speech in the future. That is a prior restraint.

It does not matter what Mr. Oberlander did or did not do in his complaint or anything else. The past, except as set forth below, including the provenance of that information, is irrelevant. The only thing relevant in prior restraint is the nature of the speech and the consequence of its dissemination.

This was made explicitly clear in *Bartnicki* and in its discussion of NY Times (the Pentagon Papers case), wherein the Supreme Court explicitly made clear that whether the papers had been stolen was not relevant to the constitutional validity of a prior restraint injunction.

(And, it has been the law for 50 years that information of no intrinsic value, unlike music or copyrighted material, cannot be and is not deemed converted by copying it and leaving the originals intact, as there is no permanent interference with the owner's right and enjoyment. This was the holding almost 50 years ago in the Everett Dirksen case involving the dissemination of papers copied from Senator Dodd's files, and was similarly held in New York state courts in the 1980s. This court is in error to hold copies made of intact originals to be conversion.)

Similarly, *Bartnicki* was not a case of prior restraint, nor was the *Boehner* case. The issue in Boehner was whether a Congressman who violated committee rules not to disseminate could be assessed damages for dissemination, not whether he could have been *restrained* from the dissemination in the first place.

## STANDARD

With information of this nature (and the press interest now should be independent verification that the editors of newspapers and news magazines with combined readerships of tens of millions find this story newsworthy, thus of public concern), even if there were any countervailing government interest that could justify its restraint, it would have to be of the utmost importance, such as the proverbial movement of troop ships at sea in time of war, *Near vs. Minnesota.*

No court has ever held that the personal safety of one man, or one man and his family, outweighs the public interest in knowing that this court in this one case continues day after day to repudiate federal sentencing laws and defraud victims. Period. Nor, unless you go first, will any court in this country ever do so.

Even assuming the personal safety of one man mattered at all, the constitution requires the least restrictive means necessary to be applied, which in this case would mean put them in WITSEC. Sater is a convicted felon. Indeed the cooperation agreement shows he was offered the chance to go into WITSEC. That makes it constitutionally of compelling interest as well, as to why the hell someone who decides not to go into WITSEC, where not one protectee has ever been lost, ever, somehow gets to hold the country hostage based on his preference to live in public and by so doing can continue to steal from his victims.

And then, while it is mighty tempting to try to bootstrap *US v. Doe* (2nd Cir. 1993) by saying that, "well, I can seal a case by simply relying on unproven assertions of risk, if the government doesn't object, therefore I can issue a prior restraint for the same reason, even relying on evidence (if any) from prior hearings in Sater's case and claim that too bad, Mr.

4936638v.1

Oberlander doesn't get to know what they are and is stuck with them because I'm illegally grafting his case onto that dead one."

No. You were required to make record findings pursuant to full adversarial due process before any prior restraint. *Carroll v. Princess Anne* (1968). There is no evidence whatsoever in this record that there is any risk to Sater at all other than his statement that he's worried, nor evidence there's no other way to take care of him.

The fact that Mr. Oberlander is an attorney is irrelevant. He cannot be gagged from telling the world of this judicial and executive corruption because he is an attorney. "Orders is orders" belongs in Nazi Germany and the government should be ashamed even making the argument. Mr. Oberlander swore an oath to the constitution, not this court, and his ethical duties are not to protect the court and cover up its misconduct, but to report it.


### PROVENANCE

Mr. Oberlander testified that Bernstein gave him the documents by hand. It wouldn't make any legal difference if he had given him the documents by thumb drive or by giving him a hard disk or a hard disk with 50,000 documents on it, the point is he gave it to him, and Mr. Oberlander had nothing to do with how or where Bernstein got it.

Mr. Oberlander separately denies the perjurious allegations of Bernstein and stands by his testimony, and refers to that affidavit and the emails therein to show that Bernstein was providing documents to Mr. Oberlander and to his own independent lawyer, Gerry Feinberg, for months and months before Mr. Oberlander ever went to his office, and gave copies of these same documents to them, which Mr. Feinberg used and distributed at depositions on March 8, 2010.

- 10 -

The court has the actual email of March 3, 2010, where Bernstein distributes electronic copies at Mr. Oberlander's request because Bernstein had only given him physical copies.

Thus this is square on *Bartnicki*.

But again even if Mr. Oberlander broke into this court and stole those documents from the court safe, still the public interest in knowing of this corruption is paramount, and he is the only one willing to tell them, and the victims of their sufferance of embezzlement, and no concept of justice would be served from punishing the victims and the country.

## SUBJECT MATTER JURISDICTION

Because they came from private copies, that is uncontroverted, and this court has ruled on July 20, 2010 that Sater had every right to have and possess private copies, and because all criminal process in his case had ceased before this court months before Mr. Oberlander's receipt of the documents, there was no federal question presented that justified this court taking jurisdiction of Mr. Sater's order to show cause. His request was purely of state law (if any law). The court had no interest in preserving the orderly conduct of any ongoing case or controversy, as there was none; the government has conceded his cooperation had ended, and there was no court order binding Mr. Oberlander, as this court admitted in July 20, 2010 and on June 21, 2010 that could have been violated, therefore the court never had and does not now have jurisdiction.

## EQUITY JURISDICTION

**Past**

Even if this court had issued an order in 1998 and docketed it and written it in non-invisible ink and the order said, "No information of any kind contained in these documents may be disseminated to anyone for any reason, and this order binds the parties, their privies, and

- 11 -

anyone else anywhere who comes into actual knowledge of it," the last phrase, "anyone who comes into actual knowledge of it," is meaningless, as a matter of equity jurisdiction, both before and after FRCP 65, by rule and by constitutional limitation and jurisdictional bar, no court can bind non-parties and non-privies simply because they have knowledge of the order. Judge Hand ruled so in *Alemite* in 1930, and the Supreme Court said that in *Chase v. City of Norwalk* in 1934, explicitly approving *Alemite*.

Mr. Oberlander could never have been bound by any order of this court prior to his appearance before it (and even then only if the court had subject matter or equity jurisdiction).

**Present in General**

No court has the equity jurisdiction to enjoin the dissemination of information obtained without court process simply "because," or simply because it may have been used in court pleadings. This circuit has held so for eighty years.

Most recently, in *Bridge Cat Scan*, the Second Circuit held that where an attorney had been given a stolen document by a whistleblower, and attached it to a civil complaint filed in SDNY, and the court in response to protests from the defendant corporation from whom the document had been taken enjoined dissemination of the complaint, and enjoined dissemination of the document as well, in or out of court, or the information in it, the court lacked equity jurisdiction to do so, that enjoining a complaint might be acceptable as within its inherent power, but that enjoining outside dissemination simply because it had been in a complaint was outside the constitutional authority of the court. Period.

**Present as Applied**

And of course, any attempt by omnibus injunction to *de facto* restrain dissemination of the criminal and political misconduct here would be jurisdictionally barred, the equivalent of overbreadth in content neutrality as applied.

- 12 -

4936638v.1

## NOT CONTENT NEUTRAL

It was tempting but still intellectual fraud when done in Zyprexa and far more so here. It is clear from Bartnicik as well as gazillions of other cases that a facially content neutral restraint which as applied has the consequence or restraining truthful information of public concern, particularly as to crime and fraud, is unconstitutional as so applied.

So sure, yes, you're saying its content neutral to say, "Mr. Oberlander can't tell anyone what he knows from those documents," the result is to say, "Mr. Oberlander can't tell anyone we're complicit in defrauding victims of tens of millions of dollars, as that's in there."

## NO EVIDENCE WHAT WAS "SEALED"

The court has refused multiple requests, on the record, to reveal what was and was not submitted but has admitted that only a few (6 out of 14) documents are themselves submitted under seal of some kind (that is, unlawful if nonexistent sealing order, but at least pretending to be under seal). There is no evidence of anything. Your honor cannot testify even indirectly.

## NO CONTEMPT FOR VIOLATING IMAGINARY, IMPLIED, OR UNTRANSCRIBED ORDERS

For eighty years every court to consider it, including this circuit, has held there can be no contempt for violation of an "implied order," or for an order never reduced to writing even by stenographic transcription. See for example *United States v. David Cooper*, 333 F3d 161 (2nd Cir. 2003). prohibiting contempt where oral order was not contemporaneously transcribed and decretal language was thus not available for examination.

- 13 -

## NEED FOR RECUSAL PER §455

This is thoroughly tainted with the appearance of bias and conflict. Reasons include, as stated, your use of extra-judicial knowledge (knowledge from prior proceedings years earlier; simply because you abused the docketing process by failing to docket Sater's motion separately does not mean you get to use what you knew from the case 10 years ago that Mr. Oberlander was never exposed to or given the opportunity to examine; that violates due process, and you wouldn't think to do it, rely on what you heard in someone else's case, in another one as to any evidence or ultimate fact), and the inescapable result that like it or not, your honor is essentially ruling on whether evidence of his own corruption, misconduct, maladministration, sedition, and fraud should be enjoined with the clear specific intent (because Sater's health is a motive, defrauding the victims is not) of continuing the coverup of the restitution and other frauds here.

This includes the emboldening of crime, that is, this court's belief it can enjoin anyone from revealing Sater's sentencing or details thereof, or anything else, allowing him to victimize by concealing them, a fortiori where such concealment is criminal.

The pardon power is reserved for the executive, sir, not for you, and not to pardon yourself and your co-conspirators.

Subsequent papers will move for recusal pursuant to actual bias, with affidavit.

## NEED FOR TRANSFER WELL OUTSIDE THE CIRCUIT

We have learned it is widespread practice in the Second Circuit for cooperators to be rewarded with the unlawful concealment of their cases and illegal sentences, allowed to illegally evade mandatory restitution and keep the proceeds of their crime, paid to cooperate with money that mandatory sentencing laws require they be ordered to repay to their victims. Indeed in this

one racketeering case from 1998, the district court apparently gave such secret, illegal sentences to at least two other defendants besides Sater, *viz.* Sal Lauria and Durchalter.

Appallingly, the Second Circuit's departure from American law, its rogue operation of an unconstitutional, illegal, hidden or "dual" docket criminal justice system, dates back some thirty years *at least*, as evidenced by the *New York Times* article of 1982 about hidden dockets and secret pleas and convictions, and the resulting Congressional investigation, Ex. B.

(The only difference is the transparently pretextual "justification" claimed, in 1982 the secrecy said to be legal on the theory that guilty pleas were "ancillary" to grand jury functions, in 2012 on the theory that "we have to protect these guys," that the courts and the government *have* to corrupt themselves, *have* to render illegal sentences, *have* to hide convictions, *have* to defraud crime victims, and *have* to embolden recidivist crime, in order to "protect" the criminals.)

Tellingly, no one, not Sater, and in particular not the government, which is not a party to these district court proceedings in any event, but was "invited" to participate on appeal ever denied Oberlander's allegations that Sater's sentencing was procedurally and substantively illegal, that by concealing entry of Sater's final conviction from them in repudiation of a clear statutory duty to inform them, 18 USC §3771, Sater's victims were defrauded out of restitution, and out of the knowledge and opportunity to bring18 usc 3771 a *still-timely* civil RICO claim against him and those complicit in the concealment, now worth $1,000,000,000 with interest and trebling,

This case cannot be heard further in this circuit without the inescapable appearance of bias and conflict.

## MOTIONS TO STRIKE

The government's papers in their entirety, as they never properly moved to intervene or were otherwise a party before the court. The Bernstein affidavit must be stricken, as it is de hors the record, and perjurious. See exhibit "C." We will supplement these papers with further proof in this regard. To the extent that Doe / Sater seeks an award of attorneys' fees, the application does not comply with local rule 83.6, and is not properly before the court as a formal motion.

WHEREFORE:

1. The court has never had subject matter jurisdiction.

2. Even if there were jurisdiction, the orders issued were void for lack of equity jurisdiction, either facially or, in the alternative, as have been and will prospectively be applied.

3. The court must immediately recuse itself for actual and apparent bias.

4. The case must be transferred outside the Second Circuit for the same reasons.

5. The dissemination of the documents cannot be restrained in any way.

6. Any evidence submitted dehors the record made as of this court's close of testimony on June 21, 2012 must be stricken or in the alternative subject to cross examination ad testificandum and not merely by documentary presentation.

Finally, of course, this court cannot constitutionally restrain the dissemination of the documents at issue.

4936638v.1

Dated:      New York, New York
            February 24, 2012

                                        Respectfully submitted,

                        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                        By: /s/_____

                            Richard E. Lerner
                            Attorneys for non-party respondent
                            "Richard Roe"
                            150 East 42nd Street
                            New York, New York 10017-5639
                            (212) 490-3000

4936638v.1

Exhibits to U.S. v. Doe

Papers submitted by non-party

respondent "Richard Roe."

"A"

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639

Tel: 212.490.3000 Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean*
*Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains*
*Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

—

www.wilsonelser.com

December 8, 2011

**Under Seal (and over objection) with
request for unsealing and docketing**

**Via Facsimile – (718) 613-2446**

The Honorable I. Leo Glasser                                          **MOTION TO UNSEAL**
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> Re:  ***United States of America v. Doe***
> Case No,        :        98CR1101 (ILG)
> Our File No,  :        07765.00155

Dear Judge Glasser:

I attach (i) the Second Circuit's "summary order" of June 29th, and remind you of the remand order that directed that you rule on the government's March 17th motion to unseal;[1] and (ii) the Second Circuit's order of April 17th, and remind you of your continuing jurisdiction to rule on that same March 17th motion as well as *any other motion for unsealing.*

## Summary

Roe demands the ***immediate*** unsealing of (i) all documents[2] the government requested unsealed; and (ii) the 2004 PSR, (iii) the 2009 PSR; (iv) the cooperation agreements, (v) the plea agreements; (vi) the sentencing transcript, (vii) the statement of reasons, (viii) every document related to any rights, including without limitation to restitution, notice, participation, petition, or mandamus, due, or choses in action (such as pursuant to 18 USC § 1964[c]), available to, Doe's victims or other non-parties, (ix) every document related to Doe's May 18, 2010 order to show cause, including, without limitation, any transcript or docket entries of the November 2010 conference calls with your honor, Doe's counsel's November 24, 2010 declaration and memo of law, and your "scheduling order" of March 23, 2011; and (x) this unsealing request itself and all procedures therefor.

---

[1] Movant's use herein of "seal," "unsealing," "or other lexical forms is not acquiescence that anything was ever lawfully sealed. It remains Movant's contention they were illegally sealed, i.e. concealed. The term "sealed" is used only for convenience to match the usage of the other parties' papers.

[2] "Document" means (i) things which are traditionally considered documents; (ii) the docket; and (iii) facts not otherwise reduced to tangible medium of expression, such as a docket entry of an event.

v.3

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 2

## Legal Standards

The standards which must be met before a court may impose or maintain the sealing of all or part of a document depends on the source of the public's right of access.

-- *Source: First Amendment*[3]

Which Documents Are Covered. Documents which either (i) by "experience and logic," have historically been open to the press and general public, where public access plays a significant positive role in the functioning of the particular process in question; or (ii) to which the right of access is a necessary corollary of the capacity to attend the relevant proceedings.

Requirements to Impose or Maintain Seal. The court must hold *publicly* docketed, *public* due process evidentiary hearings and record findings which clearly and convincingly establish (i) that the sealing, which must be only partial to the extent possible, (ii) is the least restrictive means, (iii) narrowly tailored, (iv) which will further, (v) a compelling, constitutionally cognizable and legitimate *countervailing interest*. Conclusory "findings," e.g., conclusory statements of the existence of a risk to national security, are insufficient.

-- *Source: Common Law*

Which Documents Are Covered. "Judicial documents," documents asking for, triggering, or relevant to the court's exercise of its Article III powers.[4]

Requirements to Impose or Maintain Seal. The court must determine whether the weight of the presumption of access is or is not greater than the weight of *countervailing interests* against the presumption of access. Partial sealing must be considered.

-- *Countervailing Interests Cannot Include a Court's Cover-up of "Political Crimes"[5] by Its Concealment of Documents Which, Alone or in a Mosaic, Reveal Them*

Mr. Roe contends it is a fundamental tenet of the law that no Article III court – not ever, not to protect national security, and certainly not to protect Doe and criminals like him simply because they informed on their co-defendants in their own self-interest – has a countervailing interest in covering up the court's own high crimes and misdemeanors.

---

[3] The following two paragraphs essentially adopt the government's arguments. For the sake of readability, the citations are omitted as they are well provided in the government's March 17, 2011 unsealing request.

[4] The only authority a federal court has flows from Article III, as to the Supreme Court modifiable by amendment, as to lower courts by Congress. *Marbury v. Madison*, 5 U.S. 137 (1803). This is relevant here and in the rights of the victims who were deprived of restitution to maintain actions for compensation for a judicial Fifth Amendment taking, as only judicial action pursuant to the court's lawful exercise of its Article III authority would qualify. That will put the government defending in the Court of Claims against these victims in the position of arguing that what the court did here by depriving them was unlawful, *ultra vires*, without jurisdiction, extra-constitutional, and devoid of authority, even though the government went along with it. The potential ramifications of the government's admission that it went along with the political crimes of another are interesting. But that is for another day.

[5] "Political crimes" has the meaning set forth more fully below. See fn 6 and associated text.

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 3

Mr. Roe contends it also a fundamental tenet of the law that when an Article III court has ceased to function as an Article III court by operating outside of Article III, its sequestration of documents – certainly where such is done with the intent of hiding its own high crimes and misdemeanors – has ceased to be the sealing of documents and has become instead the concealing of evidence and the obstruction of *political* justice.

> *It is not Mr. Roe Who has Created a Constitutional Crisis; Rather, he only Uses the One Created by the Court as a Means to Prevent its Recurrence.*

It is Mr. Roe's position that this court, and a (for now) unknown number of other courts of this circuit, have institutionalized and are operating a self-concealing scheme whereby cooperators are allowed to plea-bargain to illegal sentences in unlawfully secret proceedings, with the intended result that victims are deprived of millions of dollars of mandatory restitution.

It is the position of Mr. Roe that this is lawless, as it is outside the Article III powers of the court, that the court knows this, and that it constitutes high crimes and misdemeanors.[6] And therefore each and every document in this case, and eventually all other like cases, must be unsealed, at least insofar as such documents alone or taken together as a collective mosaic reveal (in Mr. Roe's opinion) unlawful acts. This includes Doe's 2004 PSR, which Mr. Roe contends evidences the "flouting" of the Mandatory Victims Restitution Act and the Crime Victims Rights Act.

We agree with the government that it is a legitimate interest of the government to attract cooperators. But if what has been done is (contrary to the opinion of Mr. Roe) lawful, what has gone on here is nonetheless of legitimate public concern. After all, why not be open and public about how a cooperator may avoid mandatory restitution? Surely, the public has a right to know. Why not publish local rules that say the first cooperator in the door wins a secret criminal proceeding, hidden docket, hidden conviction, and illegal sentence, including the ability to keep all the money he stole? Surely, the public has a right to know this too.

---

[6] I remind your honor that the phrase "high crimes and misdemeanors" has defined the contours of parliamentary impeachment in English law since the fourteenth century, so when they imported it, the Framers, themselves educated in English law, understood it meant *political* crimes, misconduct committed by public men in breach of their public trust and duties, acts which injure the political order or constitutional system, whether or not *indictable* crimes. Therefore, be certain Mr. Roe is not concerned, and has not been concerned, with the existence of any possible civil or criminal liability of any judge and makes no allegation, analysis, argument, or conclusion as to the existence of such liability. This entire document is limited to such acts as are judicial misconduct by this instant definition.

The court should be interested to know that the second time in Anglo-American history that the phrase was ever used (the first was in an impeachment in 1386), it was used in the impeachment in 1450 of Suffolk on charges including that he obstructed justice by interfering with the right of crime victims to obtain restitution. Literally, The specific charge, *inter alia*, was "stopping writs of appeal," 4 *Hatsell* 60n. As you know, "writs of appeal" were the procedural mechanisms whereby victims of certain crimes (pretty much the same crimes against person or property as make restitution mandatory today under 18 USC §3553A) were entitled to come into court and petition to establish what even then was called their right to restitution.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
v.3

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 4

But my client believes that this court would recognize that what it has done has been contrary to the law, and it is indeed Mr. Roe's opinion that there is overwhelming support for the conclusion that the court has committed "political crime." These are, in sum, his reasons:

**ONE.** The Supreme Court ruled 100 years ago that it is unlawful and illegal for a federal judge to refuse to enforce mandatory sentencing laws. Period. No exceptions. It is the most definitive opinion in the history of the court, equal in vitality and force to anything ever said in *Brown v. Board of Education*. See *Ex Parte United States*, 242 U.S. 27 (1916).

**TWO.** Full victim restitution for property crimes became mandatory federal sentencing law, without regard to the financial circumstances of the defendant (except as to timing), as of 1996. Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 USC §3663A *et seq., et al.*

**THREE.** The Second Circuit ruled 10 years ago that where, as with Doe's crimes, they are continuing crimes straddling that 1996 effective date of the MVRA amendments, the defendant is subject to those mandatory restitution laws. *United States v. Boyd*, 239 F.3d 471 (2d Cir. 2001). The court knows this, as the documents Roe was given, including the PSR (which Mr. Roe recalls quite vividly, though he doesn't have it in his possession), admit it as to Doe.

**FOUR.** The Second Circuit ruled 20 years ago that restitution is not a civil remedy but is part of sentencing law. *United States v. Grundhoefer*, 916 F.2d 788 (2d Cir. 1990).

**FIVE.** The Second Circuit ruled 10 years ago in a sentencing vacatur *directed at you* that *you do not have authority to impose an illegally light sentence to a cooperator and you should not have instructed the jury that you had the authority to do so, implying you had the power to sentence a cooperator as you saw fit.* *United States v. Bruno*, 383 F.3d 65 (2d Cir. 2001).

**SIX.** The Second Circuit ruled 12 years ago that a sentence which fails to comply with restitution sentencing law is illegal. *United States v. Kinlock*, 174 F.3d 297 (2d Cir. 1999).

**SEVEN.** The Supreme Court has ruled that where the defendant has been put on notice, even if solely by disclosure in a cooperation or plea bargain, as has occurred here and is shown in the documents Roe received, that his sentence must include mandatory restitution, there is no time bar for him to be ordered to pay restitution, even if it occurs 10 years "late." *Dolan v. United States*, 130 S.Ct. 2533 (2010).

**EIGHT.** The *Dolan* court made a point of stressing that the language of the MVRA means what it says where it says, "*Notwithstanding any other provision of law*, when sentencing a defendant convicted of [a specified] offense...*the court shall order...that the defendant make restitution to the victim of the offense.* 18 USC §3663A(a)(1).

**NINE.** Judge Dearie, post *Dolan*, just awarded $200,000,000 in mandatory restitution, nearly trebling for loss of use what would have been "only" $80,000,000 but for the delay, against a defendant of a crime identical to Doe's committed at the same time as Doe's, 8½ years after his incarceration. *United States v. Cataggio*, 98-CR-01129. Yet as far as we know you have done nothing as to Doe even though by that framework (considering loss of use of the monies) you would be justified in awarding $150,000,000 against him. True, at least theoretically you could find Doe less than entirely responsible, except we all know that his information – which the government concedes must be unsealed – marks him as the first among the three ringleaders

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 5

of State Street, and his plea is an admission to that. (It should be a given that the existence of all the other restitution orders, including Mr. Klotsman's of $40,000,000, in this case preclude a determination that it would be too complex or delay sentencing too long to compute the proper restitution amount. After all, the Probation Office did have that 11 year lacuna from Doe's 1998 guilty plea to his 2009 conviction to work on the computations. And the Probation Office had no problem with anyone else's computations, so it shouldn't be a problem here. Judge Dearie could do it, and so can your honor. I believe it is an open question in this circuit whether Mr. Doe would have a civil claim for contribution against Mr. Lauria, but that is not our concern.)

**TEN.** That as of October 2004, long before Doe was sentenced, the Crime Victims Rights Act gave the sentencing court the duty to ensure victim notification of their rights, including as to mandatory restitution (see 18 USC §3771(b)(1)), and gave victims choses in action with respect to restitution, specifically the standing to sue in district courts for mandatory restitution (and other rights) they were deprived of and the standing to mandamus in appeals courts where the district courts fail to act properly. 18 USC §3771(d)(3).

**ELEVEN.** The PSR from 2004 is an admission by the Probation Office that it failed to warn Bayrock and Doe's partners at Bayrock that it was colluding in the concealment of his conviction from his crime victims notwithstanding the obligation to report it.

**TWELVE.** The willful and intentional failure of the Probation Office to warn of recidivism risk and the nature of the offender creates civil liability to such person as should have been warned and was harmed by the failure and a concomitant chose in action to that person. (See *Potential Liabilities of Probation and Parole Officers*, DOJ and NCIC, in particular sections discussing liability for not warning bank employer of prior embezzlement history. Mr. Roe suggests the court ask one Elizabeth Theriot, whom Sater defrauded of $1,000,000 in the sale of securities at Bayrock in 2003-2004, how she would have acted if warned of his prior RICO conviction in securities fraud.)

**THIRTEEN.** The Supreme Court has said that where a statute creates the entitlement to a benefit, either monetary or the provision of a service the value of which can be monetized, and which entitlement or non-discretionary procedural denial thereof can be enforced or challenged, as the case may be, by chose in action, that is a property interest the deprivation of which triggers Fifth Amendment protections, the right of recovery for its deprivation without due process. (Ironically, this court may have done a lot to help victims by allowing Mr. Roe to establish that the CVRA's enforcement mechanism has constitutionalized victims rights without constitutional amendment, as Congress lacks the Article I authority to create a property right devoid of Fourth and Fifth Amendment protection). *Castle Rock v. Gonzales*, 545 U.S. 748 (2005). That is, if a property right is created by Congress, then it must be a constitutionally protected property right.

**FOURTEEN.** Thus, if it were a *lawful* exercise of Article III authority for a federal judge to defy Congress, "flout" the law, and repudiate the Constitution and 100 years of Supreme Court precedent by depriving victims of mandatory restitution and the above described choses in action, such a *lawful* judicial deprivation of property would be a Fifth Amendment taking requiring compensation, rights to which may be vindicated in the United States Court of Claims.

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 6

**FIFTEEN.** A $1,000,000,000 (counting interest and trebling) civil RICO liability attached to Doe immediately upon his conviction in 2009. This started a four year statute of limitations that is *still open*, for which his victims are entitled to summary judgment of liability in a civil action against him, if they are given, as they are entitled to, restitution orders (which, not incidentally, may be ministerially converted into liens. But his victims don't know about this. (Lauria's liability attached in February 2004 at his sentencing. As to him, limitations *nominally* expired before your honor unsealed his docket in 2009., I use the word "*nominally*" because, by equitable tolling, his cause is still open, too. See 18 USC §1964(c).)

**SIXTEEN.** The Second Circuit over 20 years ago ruled that where there is a duty to disclose the existence of a chose in action or the facts creating it, it is mail or wire fraud, as the case may be, to conceal or fail to disclose such, and did so with the express holding that its decision, made post-*McNally* (483 U.S. 350 (1987)), was not contradictory authority, and so they remain vital law not diminished in any way by *Skilling v. U.S.*, 130 S.Ct. 2896 (2010). *U.S. v. Porcelli*, 865 F.2d 1352 (2d Cir. 1989); see also *U.S. v. Eisen*, 1990 U.S. Dist. LEXIS 14219 (EDNY 1990) (depriving person of chose in action is deprivation of property by mail [or wire] fraud, not precluded by *McNally* carveout and excision of honest services fraud from mail fraud).

**SEVENTEEN.** It is illegal to conduct the affairs of an enterprise, whether a juridical person or *pro tempore* association in fact for common goal, through a pattern of such fraud. 18 USC §1962. A single court or entire circuit can be an enterprise. *U.S. v. Stratton*, 649 F.2d 1066 (5th Cir. 1981) (government properly pled the entire Florida Third Judicial Circuit as enterprise).

**EIGHTEEN.** The Supreme Court ruled 90 years ago that conspiring to violate a civil statute, even one that merely requires reporting, is illegal, 18 USC §371, where the civil statute exists in the interest of the public policy of the United States, the same held to deprive *pre-CVRA* victims of standing in *Grundhoefer, supra*, that federal restitution sentencing laws exist in the public interest for the common good. *United States v. Hutto*, 256 U.S. 524 (1921).

**NINETEEN.** Therefore, a conspiracy to violate either or both the MVRA and the CVRA violates both the offense and defraud prongs of 18 USC §371.

**TWENTY.** Federal law has made it illegal for 200 years for anyone to take away, hide, or conceal a judgment, writ, etc. with the result that it is rendered ineffective. 18 USC §1506.

**TWENTY-ONE.** As (in Mr. Roe's opinion) you had to have known that the PSR, *a fortiori* with the other documents Mr. Roe lawfully received, establishes the predicate facts of all the above, you had to have known that enjoining him (or anyone) from revealing *anything* in those documents had the guaranteed result of facially enjoining him from revealing (what Mr. Roe contends are) your political crimes, maintaining their concealment without justification (see *infra*), notwithstanding you had to have known that no Article III court can have the remedial authority to enjoin a citizen from reporting its own misconduct, high crimes and misdemeanors.

**TWENTY-TWO.** You violated the First Amendment rights of the people by your unconstitutional delay. As *Lugosch* makes clear, *infra*, when the government moved to unseal on March 17, 2011 certain documents having a First Amendment right of access, that triggered your obligation to unseal or hold hearings immediately, because you cannot impose or maintain a seal on such documents without hearings as to compelling and countervailing interests. *Lugosch* says

Case 1:98-cr-01101-ILG Document 141 *SEALED 02/24/12 Page 23 Page 23 of 53 PageID #: 1720

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 7

to delay is to deny. When you delayed, you denied. Even if not then, as you claimed to be unsure of your jurisdiction, you were told a month later, on April 17th, by the Second Circuit that you had jurisdiction. Still you delayed, and thus denied. If that were not enough, on June 29th, you were remand ordered by the Second Circuit to take up the unsealing motion. Six months later you have still done nothing. *Lugosch* compels the conclusion by all these delays, you have denied, and you have denied without the due process required. Moreover, as you have known all set forth above, you knew that the obvious outcome of your denial of access was (as Mr. Roe contends) the continued concealment of your high crimes and misdemeanors. Whether or not you meant for that, you knew it would happen with substantial certainty. It must be that as a matter of law you have illegally – by delay and wont of process – denied the public their First Amendment right of access to documents with the specific intent of continuing the concealment of political crimes, which would have been revealed had you allowed access to even those few documents.

Accordingly, and in brief, in the context of this unsealing motion Mr. Roe intends this court rule – in public – on the following questions:

(1) Does this court (and therefore any other federal court) have the authority to act without authority; that is, has the court the authority under Article III to repudiate Article III by willfully and intentionally "flouting" the law, the ultimate high political crime against the interests of the state and body politic, as set forth above?

(2) If the answer is "yes," then does that authority to act outside of Article III ever extend to the authority to further act outside of Article III by maintaining by illegal sealing a "cover-up" of the court's extra-constitutional actions – though such be political crimes forbad the court by Article III itself?

(3) If the answer is "yes," is it so extended in this case by the (evidently pretextual) claimed necessity of protecting a cooperator, including from his now billion dollar plus civil liability to his victims which you are charged with making known?

### It is Mr. Roe's Position that the Court Has "Flouted" its Obligation to Act Expeditiously and Must Take This Up Immediately.

Motions or requests to unseal documents for which there is a First Amendment right of access *must be adjudicated immediately. Lugosch v. Pyramid*, 435 F.3d 110 (2d Cir. 2006).

As it is beyond dispute – even the government agrees – that there is a First Amendment right of access to at least some documents (such as, for example, Doe's docket and his plea and sentencing documents), which are the subject matter of this motion and the government's motion (now nine months old), there can be no further delay, and we request that you immediately unseal or in the alternative commence *publicly docketed, public* hearings immediately which will be required to establish a clear and convincing factual basis for the continuing denial of the rights of a few hundred million people to find out what has been going on in your courtroom.[7] We respectfully note our intention to mandamus the court in ten days, otherwise.

---

[7] In contrast with the rights of Mr. Roe, who already knows what's in those documents, to tell them without your permission, or anybody's permission, which issue is still before the Second Circuit in motions for reconsideration

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 8

Moreover, because Mr. Roe's clients are locked down and frozen from filing and serving complaints in their Southern District RICO case by Second Circuit orders until you deal with this, their First Amendment rights of petition are violated by the unconstitutional delays as well.[8]

### The Court Must Also Deal With an Obstruction of Justice

On May 18, 2011, counsel for Mr. Doe transmitted to Mr. Roe and counsel a settlement offer in the form of an email attachment. The email (copy enclosed) stated the following:

> [Y]our client [Mr. Roe] ... has reached the end of his litigation rope. Even if Judge Glasser decides to hold a hearing or oral argument to determine whether to unseal specific docket entries of Doe's criminal proceeding, he will do so without considering your arguments or appeals. If you believe you are driving the unsealing issue, you are mistaken.

You are requested to note *on the unsealed docket* this communication, this objection, and all process in response. Mr. Roe contends that a communication that "urges" settlement because the presiding judge will otherwise rule unfairly or corruptly, whether or not true, is an obstruction of justice, intended to impede its administration by creating doubt in the recipient or his clients that there will be just process and even if temporarily causing their hesitation in going forward. 18 USC §1503.

In light of your inexplicable, unconstitutional delay in the unsealing, Mr. Roe would be remiss to his clients, and I to him, if Mr. Roe did not request the nature, date, and contents of any direct or indirect *ex parte* communications with Doe or his counsel, upon which this incredible email may have been predicated and which might conceivably explain *how they came to know seven months ago that you would indeed never rule, what he knew, and when he knew it.*

We do not accuse the court of improper conduct here. Counsel for Doe has done that. Indeed, we share what we presume (if there were no *ex parte* communications) is the court's outrage at this allegation and will support the court's *sua sponte* order of a Rule 11 proceeding.

### Documents and Entries to be Unsealed

-- *All Documents the Government Requested Be Unsealed*

The government asks that the following be unsealed: (i) the docket; (ii) Doe's name; (iii) facts of conviction, including date, crime, and information; (iii) date of sentencing and sentence imposed; and (iv) "those entries and documents that merely reflect the scheduling of the case and other ministerial requests and orders made and issued by parties and the Court." Gov. Ltr. 5-6.

Mr. Roe concurs, except (i) as the date, facts, and reasons of sentencing is already public record and public property,[9] there is nothing to consider before unsealing that; and (ii) for

---

and for rehearing *en banc*, and is not the subject of this motion, and which will likely wind up before the Supreme Court and more than likely before Congress.

[8] As *Lugosch* may be read to apply to any documents for which there is any presumptive right of access, not merely a First Amendment right, Roe does not acquiesce to any delay as to such documents

[9] As the court is aware, no matter what, sentences must be announced in open court, and a statement of reasons read

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 9

reasons set forth below, Movant asserts that the fact of his cooperation or any details may not properly be considered by you in this request.

--   *The 2004 and 2009 PSR's.*
     *The cooperation and plea agreements.*
     *The sentencing transcript and the statement of reasons for the sentence.*
     *Every document related to any rights available to Doe's victims or others.*
     *Every document related to Doe's May 18, 2010 order to show cause.*
     *This unsealing request and all procedures therefor.*

First, as to such documents for which there is a public right of access sourced to the First Amendment without regard to their specific contents, Roe demands that they be unsealed or the court commence requisite procedural due process to determine whether they may remain sealed

Second, as to such documents for which there is a public right of access sourced to the common law, Roe demands they be unsealed or the court commence requisite procedural due process to determine whether they may remain sealed

Third, as to such documents which, alone or together by mosaic, by their content reveal the court's commission of high crimes and misdemeanors – which (Mr. Roe contends) is at a minimum every document listed immediately above, plus such other documents as are determined at a hearing which must be commenced for this purpose – as more fully set forth in prior sections, Mr. Roe asserts that the public enjoys a plenary right of access, unqualified and unqualifiable, without consideration of any interest of Doe or his safety or lack thereof, such right of access founded in the First Amendment, not merely in its freedom of speech and of the press enumerated rights, but in its freedom to petition, for since Jefferson's letter to the House in

---

aloud, including in particular where, as, here there is no award of restitution, in which case a further statement of particularized reason for that is required. 18 USC §3553. There's no evidence in the docket that you lawfully closed the sentencing proceeding; why indeed, the government has made many representations to the Second Circuit that Mr. Doe was sentenced in public on October 29, 2009, albeit under an assumed name. Surely your honor there and then on that date complied with §3553.

So if all the above is true, why does the government's unsealing request not want the statement of reasons unsealed? How can there have been a public sentencing, albeit fictive name, without a statement of reasons read aloud? But if the statement of reasons is full of non-redactable material and must remain secret in its entirety, well, that sure sounds like no one ever intended the public to hear it, and that calling the sentencing hearing "public" is pretextual as no one went into it expecting the public to be there and you would have stopped it had someone come in.

Now, the government says in support of the unsealing of the sentencing facts that "[T]he public's understanding of how a particular defendant is sentenced is 'important to the proper functioning of ... judicial proceedings" and the public's understanding of whether justice was properly meted out." Gov. Ltr. pg. 5citing *United States v. Alcantara*, 369 F.3d 189, 198 (2d Cir. 2005).

A couple of points. First, that sounds like an argument that all sentencing documents have First Amendment rights of access. Remember the "experience and logic" test framed as, "by 'experience and logic,' has public access played a significant positive role in the functioning of the process in question." QED.

And second, well, if it's so important that the public understand how a particular defendant is sentenced, *wouldn't one think it's ever so much more important that the public understand how a particular defendant came to be sentenced illegally and in secret unlawfully?*

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
v.3

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 10

1803 requesting same as to Judge Pickering, and Attorney Lawless's 1826 letter requesting same as to Judge Peck, it has been not only the generalized right of every citizen to petition Congress, it has been the particularized right of every citizen to present to any or every member of the House of Representatives a private petition and memorial of impeachment against any federal judge.

     It is Mr. Roe's opinion that the public has a right to find out for itself by its own efforts that this court, and apparently other courts of this circuit, are operating outside Article III and hiding it, and by doing so, whatever they have become, they have ceased at least in that respect to be Article III courts.

----

     Please note that Mr. Roe demands that you rule on whether the First Amendment right of access to court documents, whether "traditional" or by reason of the documents' revelations of political crimes, is the same, more than, or less than the First Amendment right of someone who already received them to disseminate them, or their contents.

     If it is the same, you should be aware that the utmost, core, protected First Amendment speech is speech not just critical of the government, but accusing the government of misconduct. Countless cases have held that no citizen may ever be penalized for reporting such misconduct, *or even the good-faith suspicion of it*. Why, just this past summer the Second Circuit, in a §1983 and First Amendment retaliatory firing case, *Jackler v. Byrne*, 10-0859-cv (2d Cir. July 22, 2011), suggested, unsurprisingly, that any attempt by government officials to restrain, impede, or penalize a citizen's right (if not duty) to truthfully report government misconduct may be considered, variously, as misprision, conspiracy, or obstruction. So either they forgot to add "Unless it's a federal court using its perceived remedial authority to enjoin reportage of its own political crimes (political crimes are misconduct by definition)" or they assumed the idea that federal judges cannot restrain reporting of their own political crimes was implicit.

     The judiciary cannot *de facto* (or *de jure*) immunize itself from (indictable) criminal liability, and cannot immunize itself from (political) criminal liability, as enforcement of each is the purview of a separate branch of government, executive and legislative, respectively. Remember the separation of powers.

     Would an injunction preventing someone who knows of such misconduct from reporting it be within the power of any Article III court? Well, no. Indeed, the last time something like this happened was in 1680, and it changed the course of English history.[10]

---

[10] We refer to Charles II's attempt in 1680 to outlaw what he called "tumultuous petitioning" by a proclamation (cf. executive order) declaring such to be harmful and disturbing to the public good and ordering magistrates to arrest and prosecute anyone caught petitioning for relief. The king asked his attorney general to draft up the proclamation, and the attorney general, our equivalent of Eric Holder today, thought better of it. Instead, he asked his friend Chief Justice North to draft it up. The judge did so, assuming, incorrectly, no one would really notice it.

Parliament was sitting, and did indeed notice it, and voted to impeach the attorney general, who, when brought before commons, was heard to say that no, indeed, he would not like to go to the Tower, and so gave up his friend Chief Justice North as the true author of the proclamation.

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 11

So no, there is no way the Second Circuit can protect its judges from reportage. On the other hand, perhaps they knew that and then never implied at all that federal judges are exempt from the proscription on impeding the reportage of their own misconduct.

In that case, then if the First Amendment right of access is the same as the First Amendment right of free speech as to what you already have, which is cognate to the First Amendment right to petition, you must immediately, no excuse, unseal every document that reveals singly or together your misconduct as set forth above.

*A fortiori*, if the First Amendment right of access is superior to those other First Amendment rights of free speech, you must immediately unseal the same.

But, if the First Amendment right of access is inferior to the First Amendment right of free speech, given that Mr. Roe already knows a great deal of what's in those documents, if you don't permit anyone else to access them from the courts, then you have given the public the situation that the only way they can access it is to hear Mr. Roe tell them what he knows. That gives them the standing to bring a third party action against this court and the Second Circuit to demand that he be allowed to tell them on First Amendment grounds, which will force the courts to rule on Mr. Roe's First Amendment claims, which they have avoided for obvious reasons.

### A Note on the Court's "Scheduling Order," and Why the Reliance Upon it by the Second Circuit Mandates the Unsealing of the Entire Docket. Roe Has a Right to Defend Himself in Public Against the Public Allegation That he "Flouted" an (Imaginary) Order.

Early this year Mr. Roe reached an informal, good-faith, albeit "soft" agreement with the government that in return for the unsealing of the items it requested in its letter, Mr. Roe would withdraw his appeal asserting his First Amendment right to reveal the contents of the PSR and other documents he received. In large part this was because disclosure of all that happened would have been inevitable, including information in those documents as to the evasion of restitution, the Probation Office's unlawful failure to warn Bayrock partners and investors that they were giving a convicted RICO felon cover to commit further frauds, and so on.

The government, and in particular Assistant U.S. Attorney Todd Kaminsky, who inherited this mess and was probably innocently in high school when the case started, admirably kept its side of this soft bargain by filing its motion to unseal on March 17th. So too would have

---

For lending his skill and art to the drafting of a proclamation attempting to make an English subject liable to penalty for petitioning for redress of grievances, for daring even to infringe on what Parliament called the most fundamental of all liberties, the judge was impeached by commons, for these acts which Parliament called high crimes and misdemeanors. 4 *Hatsell* 115-116. Also see 3 Campbell, *Chancellors*, 460-461.

Parliament was dismissed before it could put North on trial, but on reconvening it immediately passed statutory protection for the right to petition, which soon thereafter morphed into the Bill of Rights in 1688, whence derived our First Amendment express right to petition for redress of grievances.

So indeed, Parliament's appropriately outraged response to the appalling gall of a sitting judge to do anything, let alone actually purport to forbid by order, anyone from petitioning for relief in a very real sense is the foundation for our bedrock Constitutional fundamental First Amendment right to petition for redress of grievances. No judge may enjoin it, certainly not as to his own political crimes.

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 12

Roe kept it. Instead, your honor issued the March 23, 2011 "scheduling order" accusing Mr. Roe
of having "willfully and intentionally flouted" an order, though you admitted on the record that
you never signed any sealing order, and stated -- as recorded on the transcripts as early as June
14, 2010 -- that in response to Mr. Roe's demand to see any order that he is accused of violating
and thus must have been directed at him as party or privy, *"There is none."*

We submit that you should have, must have, recognized that orders that do not exist, that
are unwritten, untranscribed, cannot be put on the table, where no one living can say what they
said if in fact they ever said anything, cannot be "flouted," as by definition they are not clear and
concise. Non-existent, unwritten orders are not entitled to a presumption of validity. They aren't
entitled to anything, *Garcia v. Yonkers School District*, 07-3167 (2d Cir. 2009) (injunctions and
restraining orders must be by written order), quoting *Bates v. Johnson*, 901 F.2d 1424 (7th Cir.
1990) ("oral statements are not injunctions," particularly not oral statements no one ever heard)
and more important, again, is that we submit your honor willfully and intentionally "flouted"
eighty years of due process doctrine dating back to *Alemite v. Staff*, 42 F.2d 832 (2d Cir.1930),
and reaffirmed by the Second Circuit just recently in *Briscoe v. City of New Haven*, 10-1975-cv
(2d Cir. Aug. 15, 2011), in failing to consider what you well knew, as shown in your comments
in the July 20,2010 transcript, that a non-existent order you didn't issue in 1998 could never,
even if it had existed and you had signed and issued it, bind a non-party and non-privy stranger
to the case twelve years into the future, *a fortiori* one who had neither actual knowledge of it
(and never could have; what exactly is actual knowledge of an "implicit" order?) nor a duty to
inquire as to the existence, legality, validity, and sufficiency. *Chase National Bank v. Norwalk*,
291 U.S. 431 (1934). Your "implicit sealing order" as to Mr. Roe was, as Judge Hand would
have said, *pro tanto brutum fulmen*, a legal nothing freely disregarded.[11]

We submit that you failed to consider that the Second Circuit held in *U.S. v. David
Cooper*, 353 F.3d 161 (2d Cir. 2003), that the absence of a written order, or written transcription
of an oral order, alleged to have been violated precludes contempt And the report of that case
states that the government concurred. Yet your honor, in the "scheduling order," accused an
officer of the court of willfully violating an order that you admitted does not exist.

That would have gone unnoticed, but for the Second Circuit's decision to use it, and
recite that Mr. Roe "flouted" an order -- even though the Second Circuit said they had no
jurisdiction to take up an appeal from your honor's "scheduling order." Then they insinuated that
there was nothing of public concern in the PSR and suggested Roe only used it to extort Doe.
Yet we all know that what's in that PSR would be of interest to at least some members of
Congress, inasmuch as it shows how its laws can easily be circumvented by courts operating in

---

[11] *Keitel v. Keitel*, 716 So.2d 842 (Fla. Dist.Ct.App. 1998) (finding a violation of implicit provision of order is a
factual and legal impossibility); *In re Borkert*, 2000 Tex. Appl. LEXIS 7889 (Tex. Ct. App. Nov. 22, 2000) (there
cannot be a finding of violation of order based upon implication or conjecture of provisions); *Stalb v. Stalb*, 171 Vt.
630 (2000) (there cannot be a finding of a violation of a court order based on (i) language "implicit" in written order;
or (ii) oral order of which there is no record); *Panther Pumps v. Hydrocraft*, 424 F.Supp. 815 (E.D.Ill.,1976), rev'd
other grounds, (court has no authority to find a violation of an "implied order"), *Johnson v. State*, 2003 Alas. App.
LEXIS 40 (Alas. Court of Appeals 2003) (a violation of an "implicit" protective order cannot exist where actual
order does not exist); *Porter v. Creative Nail Design*, 1990 U.S. Dist. LEXIS 4018 (E.D.Ill., 1990) (while one could
say that defendant violated what could have been the implied meaning of an order, such not legally significant).

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 13

unlawful secrecy, and how a convicted RICO felon was allowed to evade mandatory restitution, allowed to commit further frauds, and allowed to buy multi-million dollar homes.[12]

Then, the Second Circuit released the summary order to the public. Because of the factual recitals in the Second Circuit opinion, that court has revealed to the public not only Mr. Roe's real identity – even to the point where he was recently greeted as "Hi, Mr. Roe" in a state court proceeding – but Mr. Doe's identity as well, as well as the fact that he is a cooperator. Anyone with access to Google and Pacer can figure out who Roe is and who Doe is. And they have.

Mr. Roe, accused in public of misconduct, against whom you have leveled the equivalent of criminal opprobrium without any, let alone due, process, has a right to vindicate himself in public, and to prove in public that it was actually the court that "flouted" the law.

This is a specific, particularized, formal legal assertion of Roe's right to have the entire case unsealed down to every PSR to exercise his First Amendment right to defend himself in public in furtherance of the Fourth and Fifth Amendment rights in the property that is his professional reputation. These are compelling reasons which you yourself created. Mr. Roe believes that contortions in your sealing order as picked up by the Second Circuit together with its mischaracterization of the importance of the PSR, all to avoid a First Amendment ruling, *infra*, has given Roe the standing to insist on unsealing for the compelling interest of refutation.

———

In conclusion, I remind your honor that my client is a non-party to the proceedings before you. It is not Mr. Roe who brought this on, but having been dragged into it, he will not be cowed. Every one of his rights shall be zealously protected, including his right to accuse government officials of misconduct and petition for redress, the most fundamental right that a free man has.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard E. Lerner

---

[12] The last one that Mr. Roe has uncovered is a $5,000,000 condominium purchased for cash on or about May 15, 2007, immediately after Bayrock closed a $50,000,000 transaction, a purchase by a newly formed Florida LLC of which Doe was – shockingly – the managing member.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
v.3

Letter Application to Hon. I. Leo Glasser
December 8, 2011
Page 14


Enclosures:   2d Circuit order of April 19, 2011
                   2d Circuit "summary order" of June 29, 2011
                   Email of Doe's counsel, dated May 18, 2011 (without attachment)


cc:    **By E-Mail/ Fax (with enclosures)**

        Todd Kaminsky – US Attorney's Office
        Nader Mobargha & Michael Beys
        "Richard Roe"
        Hon. Paul Engelmayer (By hand)
        Hon. Brian Cogan

428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.)))

**H**
This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Richard ROE, an attorney, Appellant,
Jane Doe and John Doe II, clients of Richard Roe, Pro
Se Appellants,
v.
UNITED STATES of America, Appellee,
John Doe, Defendant–Appellee.

Nos. 10–2905–cr, 11–479–cr, 11–1408–cr,
11–1411–cr, 11–1666–cr, 11–1906–cr, 11–2425–cr.
June 29, 2011.

**Background:** Attorney filed civil action under Racketeer Influenced and Corrupt Organizations Act (RICO) against criminal defendant and others in the United States District Court for the Southern District of New York, and both attached as exhibits to complaint sealed materials from defendant's criminal case and referenced within complaint confidential information in exhibits. The United States District Court for the Eastern District of New York, I. Leo Glasser, J., issued permanent injunction against dissemination of defendant's presentence report (PSR) and extended temporary restraining order governing disclosure of other sealed documents. Attorney appealed, and petitioned for writ of mandamus. The Court of Appeals, 414 Fed.Appx. 327, denied petition, granted government's motion for temporary stay of unsealing of appeal, temporarily enjoined attorney and others from distributing or revealing documents or their contents subject to sealing orders in criminal case or on appeal, and remanded for assignment of district judge to oversee compliance with orders. The District Court, Cogan, J., ordered attorney to destroy or return sealed documents, and thereafter denied attorney's request to release information from sealed documents. Attorney appealed.

**Holdings:** The Court of Appeals held that:
(1) permanent injunction barring dissemination of PSR and requiring attorney to return PSR to government was warranted and did not violate attorney's First

Amendment rights;
(2) attorney waived right to challenge orders requiring destruction or return of sealed documents; and
(3) jurisdiction did not exist over appeal from scheduling order.

Ordered accordingly.

West Headnotes

**[1] Constitutional Law 92 ⟨=2109**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(V) Judicial Proceedings
            92XVIII(V)2 Criminal Proceedings
                92k2108 Court Documents or Records
                    92k2109 k. In general. Most Cited Cases

**Injunction 212 ⟨=26(1)**

212 Injunction
    212II Subjects of Protection and Relief
        212II(A) Actions and Other Legal Proceedings
            212k26 Commencement and Prosecution of Civil Actions
                212k26(1) k. In general. Most Cited Cases

**Sentencing and Punishment 350H ⟨=296**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(E) Presentence Report
            350Hk292 Disclosure of Report
                350Hk296 k. Disclosure to third parties. Most Cited Cases

Disclosure of criminal defendant's presentence report (PSR) in subsequent civil action brought against him under Racketeer Influenced and Corrupt Organizations Act (RICO) was not required to meet the ends of justice, particularly given that proof of defendant's conviction was available from other

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

"A"

428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.)))

sources and that PSR was of dubious utility in civil action, except as tool to intimidate and harass defendant by subjecting him to danger through exposure of his government cooperation, and therefore permanent injunction barring dissemination of PSR and requiring attorney in civil action to return PSR to government was warranted and did not violate attorney's First Amendment rights. U.S.C.A. Const.Amend. 1; 18 U.S.C.A. § 1961 et seq.

[2] Federal Courts 170B ☞770

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk768 Interlocutory, Collateral and Supplementary Proceedings and Questions
                    170Bk770 k. On separate appeal from interlocutory judgment or order. Most Cited Cases

To the extent that Court of Appeals had discretion to exercise pendent jurisdiction over orders in which district court temporarily restrained continued possession and dissemination by attorney in civil action under Racketeer Influenced and Corrupt Organizations Act (RICO) of sealed documents from one defendant's criminal case, Court of Appeals would decline to do so, warranting dismissal of attorney's appeals from temporary restraining orders. 18 U.S.C.A. § 1961 et seq.

[3] Federal Courts 170B ☞915

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)7 Waiver of Error in Appellate Court
                170Bk915 k. In general. Most Cited Cases

Appellant waived right to challenge district court's orders requiring destruction or return of sealed documents from civil defendant's criminal case, which were entered following filing of appellant's opening brief on appeal, where appellant did not raise any arguments with respect to his appeal of those orders in his reply brief on appeal, or move for leave to submit supplemental briefing.

[4] Federal Courts 170B ☞585.1

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(C) Decisions Reviewable
            170BVIII(C)2 Finality of Determination
                170Bk585 Particular Judgments, Decrees or Orders, Finality
                    170Bk585.1 k. In general. Most Cited Cases

Court of Appeals lacked jurisdiction over appeal from district court's scheduling order, which was not final order subject to appeal and did not fall within exception to final judgment rule. 28 U.S.C.A. § 1291.

*62 Appeal from a May 18, 2010 temporary restraining order, a June 21, 2010 permanent injunction, a July 20, 2010 temporary restraining order, and a March 23, 2011 scheduling order issued by the United States District Court for the Eastern District of New York (I. Leo Glasser, Judge); appeal also from orders of April 1, 2011, April 4, 2011, and May 13, 2011 of the United States District Court for the Eastern District of New York (Brian M. Cogan, Judge).
UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court permanently enjoining the dissemination of John Doe's Pre-Sentence Report is AFFIRMED. Richard E. Lerner, Wilson Elser Moskowitz Edelman & Dicker LLP (David A. Schulz and Jacob P. Goldstein, Levine Sullivan Koch & Schulz LLP; Paul Q. Cassell, S.J. Quinney College of Law at the University of Utah, on the brief), New York, N.Y. and Salt Lake City, UT, for Appellant, Richard Roe.

Todd Kaminsky, Assistant United States Attorney (Peter A. Norling and Elizabeth J. Kramer, Assistant United States Attorneys; Loretta E. Lynch, United States Attorney, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Appellee, United States Of America.

Nader Mobargha, Beys, Stein & Mobargha LLP, New York, NY,[FN*] for Defendant-Appellee, John Doe.

FN* Pursuant to our order of February 14, 2011, John Doe was not invited to brief this

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.)))

appeal, nor has he moved to submit a brief. However, Doe has filed various letters and opposition papers in response to Roe's motions throughout the course of the appeal.

PRESENT: JOSÉ A. CABRANES, ROSEMARY S. POOLER and DENNY CHIN, Circuit Judges.

## SUMMARY ORDER

**1 The appeal in Docket No. 10-2905-cr is DISMISSED in part, and the appeal in Docket No. 11-1408-cr is DISMISSED in full, insofar as they challenge the District Court's temporary restraining orders of May 18, 2010 and July 20, 2010 and insofar as they challenge any related orders that may have been entered or re-affirmed on May 28, June 11, June 14, or June 21, 2010.

The appeal in Docket No. 11-1411-cr is DISMISSED because appellant has waived his opportunity to challenge Judge Brian M. Cogan's orders of April 1, 2011 and April 4, 2011.

The appeal in Docket No. 11-1906-cr is DISMISSED for want of jurisdiction.

With respect to Docket No. 11-2425-cr, the order of Judge Cogan is AFFIRMED.

The appeal in Docket No. 11-1666-cr by *pro se* appellants is DISMISSED in all respects except insofar as it challenges the District Court's permanent injunction against the dissemination of Doe's PSR; with respect to that claim, the judgment of the District Court is AFFIRMED.

The Clerk of Court is DIRECTED to close Docket Nos. 11-1408-cr, 11-141 l-cr, 11-1906-cr, and 11-2425-cr upon entry of this order. The Clerk of Court is also DIRECTED to close Docket No. 11-479-cr to the extent it was not already closed upon entry of our February 14, 2011 order. *See* Order, *Roe v. United States*, 414 Fed.Appx. 327 (2d Cir.2011).

The remainder of this cause (Docket Nos. 10-2905-cr, 11-1666-cr) is REMANDED to the District Court (I. Leo *63 Glasser, *Judge*) for proceedings consistent with this order and with instructions (i) to rule upon the government's unsealing motion of March 17, 2011, (ii) to issue a final determi-

nation regarding whether the dissemination of the other (non-PSR) sealed documents in John Doe's criminal case, particularly those that refer to Doe's cooperation, should be enjoined, and (iii) in the event that a final determination regarding the dissemination of the other sealed documents does *not* result in an injunction against the dissemination of documents referring to Doe's cooperation, to enter an order temporarily staying the unsealing of any documents referring to Doe's cooperation pending an appeal by the government to our Court. In the event that the government elects not to appeal the unsealing of any documents that may be unsealed by the District Court, the government is ORDERED to notify the District Court and our Court of its decision not to pursue the appeal within the otherwise applicable time for taking the appeal.

It is further ORDERED that, pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir.1994), this panel shall retain jurisdiction over any further appeals from proceedings in the District Court, including any further petitions for extraordinary writs.

**2 It is hereby ORDERED that Judge Cogan shall retain jurisdiction for the limited purpose of enforcing our February 14, 2011 mandate—that is, to ensure the parties' compliance with the orders of this Court and any that have been, or may hereafter be, entered by Judge Glasser. Our panel retains jurisdiction pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir.1994), over any appeals from any orders or judgments entered by Judge Cogan.

Finally, it is ORDERED that appellant Richard Roe is hereby warned that the Court's patience has been exhausted by his filing of six separate notices of appeal regarding the same principal legal dispute—including the filing of an appeal from a March 23, 2011 scheduling order that obviously was not a final order nor subject to any of the exceptions to the "final judgment rule," *see* Part (iv), *post*—and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions, including the imposition of leave-to-file restrictions, requirements of notice to other federal courts, and monetary penalties.

The Clerk of Court is DIRECTED to transmit a copy of this order to Judge Cogan.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.)))

### INTRODUCTION

Appellant Richard Roe ("Roe"), an attorney, and two of his clients, *pro se*, appeal from a May 18, 2010 temporary restraining order, a June 21, 2010 permanent injunction, a July 20, 2010 temporary restraining order, and a March 23, 2011 scheduling order entered by Judge Glasser. Because the *pro se* appellants incorporate Roe's arguments as their own and make no other independent legal claims, our legal conclusions apply to all appellants, though our order refers principally to Roe.

### BACKGROUND

**A. The SDNY Complaint and Judge Glasser's Initial Rulings**

On May 10, 2010, Richard Roe publicly filed a civil RICO complaint against John Doe ("Doe") and other defendants in the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge* ). Attached to the complaint were exhibits that included sealed materials from Doe's criminal case in the *64 Eastern District of New York. The complaint itself explicitly referenced the confidential information in the exhibits, including the fact that Doe had cooperated with the government.

On May 18, 2010, upon an application by Doe, Judge Glasser issued an order to show cause why a preliminary injunction should not be entered against Roe's dissemination of the sealed materials from Doe's criminal case. He also temporarily restrained Roe and his clients from "disseminating the Sealed and Confidential Materials or [the] information therein." The materials in Roe's possession included a 2004 Pre–Sentence Report ("PSR"), two proffer agreements, Doe's cooperation agreement, a criminal complaint, and a criminal information. The TRO was later extended multiple times without objection (and, on some occasions, at Roe's request) until a hearing could be held on June 21, 2010.

**\*3** At the June 21, 2010 hearing, Judge Glasser heard testimony from Roe before issuing a permanent injunction against dissemination of the 2004 PSR, pursuant to *United States v. Charmer Industries, Inc.*, 711 F.2d 1164 (2d Cir.1983). He also directed Roe to return the PSR to the United States Attorney's Office (Roe eventually returned the PSR directly to the court). With respect to the other sealed documents, Judge Glasser extended his temporary restraining order until July 20, 2010, with Roe's consent, and

requested that the parties brief whether the court had the authority to permanently enjoin the dissemination of those documents.

On July 9, 2010, Roe filed a notice of appeal concerning Judge Glasser's May 18, 2010 and June 21, 2010 orders.

On July 20, 2010, Judge Glasser held another hearing at which he recited his factual findings, including: (1) that Roe knew the documents at issue were sealed prior to his public filing of those documents; (2) that one of Roe's clients had "wrongfully taken" and had "no legal right to those documents"; and (3) that dissemination of the documents would cause "irreparable harm, which is imminent to Mr. John Doe ... [and] would put Mr. John Doe's safety at risk." Over Roe's objection, Judge Glasser reaffirmed his ruling of June 21, 2010 regarding the permanent injunction against dissemination of the PSR and extended his TRO with respect to the other sealed documents for another 10 days. He further ordered that the permanent injunction and TRO should cover all copies of the documents at issue, and that all originals and copies of such documents were to be returned or destroyed until Roe met his "burden with respect to whether or not there is some need to maintain those documents or to keep them." The TRO was subsequently extended to August 13, 2010, by request of the parties, while they negotiated a possible settlement.

On August 10, 2010, Roe filed a notice of appeal concerning the July 20, 2010 order that re-affirmed the permanent injunction and extended the TRO.[FN1] Judge Glasser has not since issued a final ruling regarding the disclosure of the non-PSR sealed documents.

> FN1. On February 7, 2011, Roe also filed a petition for a writ of mandamus requesting that we order the District Court to withdraw its various injunctive and temporary restraining orders and publicly docket Doe's criminal case. We denied this petition in our order of February 14, 2011. *See* Order, *Roe v. United States*, 414 Fed.Appx. 327 (2d Cir.2011).

**B. Our February 14, 2011 Order and Judge Cogan's Assignment to Enforce Our Mandate**

On February 14, 2011, we heard oral argument on

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.)))

the government's motion for \*65 a temporary stay of the unsealing of the appeal. In an order issued that day orally and later in written form, we granted the government's request to keep the appeal under seal and temporarily enjoined Roe and his associates from distributing or revealing in any way any documents or contents thereof subject to sealing orders in Doe's criminal case or on appeal. *See* or on appeal. *See Roe v. United States,* 414 Fed.Appx. 327 (2d Cir.2011). We also remanded the cause to the District Court for the Eastern District of New York for the limited purpose of allowing the Chief Judge to assign a District Judge to "implement[ ] and oversee[ ] compliance with our orders and the orders previously entered by Judge Glasser." *Id.* Pursuant to our order, then-Chief Judge Dearie referred the case to Judge Brian M. Cogan for enforcement of this limited mandate.

\*\*4 On March 1, 2011, Roe submitted a letter requesting "clarification" from Judge Cogan that, notwithstanding our order of February 14, 2011, he was permitted to disseminate certain information within the sealed documents because that information was allegedly public knowledge. On April 1, 2011, Judge Cogan held a hearing regarding Roe's request. At that hearing Judge Cogan learned that Roe had not yet destroyed or returned certain electronic and paper copies of the original PSR and other sealed documents, in violation of Judge Glasser's July 20, 2010 order. Accordingly, by oral order on April 1, 2011, and by a subsequent written order of April 4, 2011, Judge Cogan ordered Roe to destroy or return any remaining electronic or paper copies of the PSR and other sealed documents, without prejudice to his ability to seek the documents if any of the various sealing orders were vacated by our Court. *See* Order, *United States v. Doe* (E.D.N.Y. Apr. 4, 2011).

On April 8, 2011, Roe filed a notice of appeal with respect to Judge Cogan's orders of April 1 and April 4, 2011.

On May 13, 2011, Judge Cogan issued a written order denying Roe's March 1, 2011 request to release certain information contained within the sealed documents. After opining that information "available to the public" was not covered by our injunction, Judge Cogan nevertheless ordered that Roe could not "extrapolate from sealed documents ... [which] could easily be combined with and thereby tainted by Roe's knowledge of non-public sealed information," Order,

*United States v. Doe* (E.D.N.Y. May 13, 2011). Upon a review of the specific statements and information that Roe intended to release, Judge Cogan further concluded that "[i]t seems obvious that Roe is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective." *Id.*

On June 15, 2011, Roe filed a notice of appeal with respect to Judge Cogan's order of May 13, 2011.

**C. Recent Events before Judge Glasser**

On March 17, 2011, after learning that Doe's criminal conviction had been disclosed in a press release by the U.S. Attorney's Office for the Eastern District of New York, the government moved before Judge Glasser for a limited unsealing of the docket and certain documents in Doe's underlying criminal case. The government explicitly sought to unseal only those docket entries and documents that did not refer to Doe's cooperation with the government.

On March 23, 2011, Judge Glasser issued a scheduling order in which he stated that he was "uncertain of [his] continuing jurisdiction to address the controversy presented by [Roe's February 4, 2011 'demand' that the case be docketed and the \*66 government's March 17, 2011 motion for a limited unsealing of the case]." Scheduling Order, *United States v. Doe (E.D.N.Y.* March 23, 2011). Accordingly, he requested that "the government, Richard Roe and John Doe [ ] brief the issue of the Court's jurisdiction and submit their briefs simultaneously on April 8th, 2011." *Id.*

\*\*5 In addition to setting the briefing schedule, the order reflected Judge Glasser's factual finding that Roe had "knowingly and intentionally flouted a Court order" by "unilaterally deciding" to disclose information in Doe's sealed criminal case. *Id.*

On May 11, 2011, Roe filed a notice of appeal concerning Judge Glasser's March 23, 2011 order.

On April 19, 2011, upon requests from both Roe and the government, we issued an order confirming that Judge Glasser retained jurisdiction "to decide the government's motion to unseal, as well as to decide any other pending or future motions to unseal that would not result in the public disclosure of docket entries or underlying documents *that reference John*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.)))

*Doe's* cooperation with the government." Order, *Roe v. United States*, Docket Nos. 10–2905–cr, 11–479–cr (2d Cir. Apr. 19, 2011) (emphasis in original).

Judge Glasser has not yet acted on the government's March 17, 2011 motion to unseal.

. . . . . . . . . .

We assume the parties' familiarity with the remaining facts and procedural history of the case.

## DISCUSSION
### (i)

[1] On appeal, Roe argues that the District Court violated his First Amendment rights in permanently enjoining the dissemination of Doe's PSR and requiring him to return it to the government. We review a district court's grant of a permanent injunction for abuse of discretion. *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir.2006); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir.2008) (explaining "abuse of discretion").

Under *United States v. Charmer Industries, Inc.*, 711 F.2d 1164 (2d Cir.1983), third parties must satisfy a heightened standard in order to obtain access to a PSR, which is a sealed "court document designed and treated principally as an aid to the court in sentencing." *Id.* at 1176. Specifically, a third party seeking access to a PSR bears the burden of making a "compelling demonstration that disclosure of the report is required to meet the ends of justice." *Charmer Indus., Inc.*, 711 F.2d at 1175.

Here, Judge Glasser, who had presided over Doe's criminal case and was therefore familiar with the extent of Doe's cooperation and his assistance in obtaining the convictions of myriad violent criminals, explicitly entered a finding that releasing proof of Doe's cooperation would cause him irreparable harm and would put his safety at risk.

Judge Glasser also found that Roe had improperly refused to submit an application to the Court to unseal the report, despite his knowledge that the report was sealed and came from a sealed criminal case. *See id.* at 1170 ("[T]he presentence report is a court document and is to be used by nonjudicial federal agencies and others *only with the permission of the court.*" (emphasis supplied)); *see also In re Zyprexa Injunction,* 474 F.Supp.2d 385, 417 (E.D.N.Y.2007) (enforcing a preliminary injunction requiring the return of sealed documents pursuant to the court's "inherent authority

to enforce [its] orders"), *aff'd,* 617 F.3d 186 (2d Cir.2010). Judge Glasser found, instead, that Roe had determined unilaterally that he was entitled to publicly disclose the report.

**6 Judge Glasser balanced his findings of physical danger to Doe and the intentional *67 defiance of a sealing order by Roe—findings that we hold were not clearly erroneous—against Roe's asserted need to use the PSR in the SDNY civil case to establish that Doe had defrauded investors and others by not revealing his conviction. Because proof of Doe's conviction (as opposed to his cooperation) remains available from other public documents—including a press release by the United States Attorney's Office for the Eastern District of New York—and because the PSR is an incomplete and ultimately inadmissible document to which neither Doe nor the government will ever have the opportunity to object, *see Charmer Indus., Inc.*, 711 F.2d at 1170–71, the PSR is of dubious utility in the civil case except as a tool to intimidate and harass Doe by subjecting him to danger. Accordingly and in sum, disclosure of the report is not "required to meet the ends of justice," *id.* at 1175—indeed, quite the opposite. The District Court did not err, much less abuse its discretion, in imposing a permanent injunction against dissemination of the PSR. *See, e.g., United States v. Charmer Indus., Inc.*, 711 F.2d at 1177 (stating that a "central element in the showing required of a third person seeking disclosure is the degree to which the information in the [PSR] cannot be obtained from other sources").

### (ii)

[2] Doe argues that the District Court violated his First Amendment rights by temporarily restraining his continued possession and dissemination of the other sealed documents from Doe's criminal case.

A TRO, which is appropriate when "speed is needed ... to prevent irreparable harm," *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 106 (2d Cir.2009) (internal quotation marks omitted), is not a final judgment and is not ordinarily appealable. *See Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 108 (2d Cir.1986). To the extent we may, in our discretion, exercise pendent jurisdiction over the order pursuant to *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 45, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), we decline to do so here. Accordingly, Roe's appeal is

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.)))

dismissed insofar as it challenges the District Court's temporary restraining orders of May 18, 2010 and July 20, 2010.

### (iii)

**[3]** On April 8, 2011, Roe filed a notice of appeal with respect to Judge Cogan's orders of April 1 and April 4, 2011. Roe did not raise any arguments with respect to that appeal in his reply brief of April 18, 2011, nor has he filed a motion for leave to submit supplemental briefing.[FN2] Accordingly, we hold that Roe has waived his right to challenge Judge Cogan's orders of April 1 and April 4, 2011. *See, e.g., In re Wireless Data, Inc.,* 547 F.3d 484, 492 (2d Cir.2008) (deeming arguments not raised on appeal waived).

> FN2. Although arguments raised for the first time in a reply brief are generally deemed waived, *see Connecticut Bar Ass'n v. United States,* 620 F.3d 81, 91 n. 13 (2d Cir.2010), Roe's opening brief was filed on March 28, 2011, and therefore could not have raised any arguments with respect to Judge Cogan's orders of April 1 and April 4, 2011. Accordingly, we do not base our finding of waiver on Roe's failure to discuss Judge Cogan's orders in his opening brief; rather, our holding is based on his failure to discuss them in his reply brief or in a motion for leave to submit supplemental briefing.

His appeal from those orders is hereby dismissed.

### (iv)

**[4]** Roe appeals from Judge Glasser's scheduling order of March 23, 2011, insofar as it reflects Judge Glasser's factual finding that Roe "knowingly and intentionally "68 flouted" a court order. Scheduling Order, *United States v. Doe* (E.D.N.Y. Mar. 23, 2011).

**\*\*7** We do not have jurisdiction over Roe's claim because the March 23, 2011 order was not a final order pursuant to 28 U.S.C. § 1291, nor are any of the exceptions to the "final judgment rule" applicable in the circumstances presented. *See generally Reiss v. Societe Centrale Du Groupe Des Assurances Nationales,* 235 F.3d 738, 745 (2d Cir.2000) (discussing the "final judgment rule" and its exceptions).

Accordingly, Roe's appeal from the March 23, 2011 order is dismissed.

### (v)

On June 15, 2011, Roe filed a notice of appeal with respect to Judge Cogan's order of May 13, 2011. We review Judge Cogan's interpretation of our February 14, 2011 order and his interpretation of the sealing orders of Judge Glasser *de novo.*

After an item-by-item review of the specific information that Roe wished to publicly release—including (a) John Doe's real name, linked with his criminal docket number, (b) the specific nature of the predicate acts leading to his criminal conviction, and (c) the sentence imposed by the District Court—Judge Cogan concluded that the information either was not public at all or was not public to the extent and with the level of detail that Roe intended to disclose. Accordingly, he denied Roe's request for permission to release the information. Order, *United States v. Doe* (E.D.N.Y. May 13, 2011). Upon our own independent review, we agree with Judge Cogan that Roe's proposed disclosures would have violated our temporary injunction of February 14, 2011 and the sealing orders of Judge Glasser. Judge Cogan's order of May 13, 2011 is affirmed.

### CONCLUSION

To summarize:

(1) The judgment of the District Court permanently enjoining the dissemination of John Doe's Pre–Sentence Report is **AFFIRMED.**

(2) The appeal in Docket No. 10–2905–cr is **DISMISSED** in part, and the appeal in Docket No. 11–1408–cr is **DISMISSED** in full, insofar as they challenge the District Court's temporary restraining orders of May 18, 2010 and July 20, 2010 and insofar as they challenge any related orders that may have been entered or re-affirmed on May 28, June 11, June 14, or June 21, 2010.

(3) The appeal in Docket No. 11–1411–cr is **DISMISSED** because Roe has waived his opportunity to challenge Judge Brian M. Cogan's orders of April 1, 2011 and April 4, 2011.

(4) The appeal in Docket No. 11–1906–cr is **DISMISSED** for want of jurisdiction.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.)))

(5) With respect to Docket No. 11-2425-cr, the order of Judge Cogan is **AFFIRMED**.

(6) The appeal in Docket No. 11-1666-cr by *pro se* appellants is **DISMISSED** in all respects except insofar as it challenges the District Court's permanent injunction against the dissemination of Doe's PSR; with respect to that claim, the judgment of the District Court is **AFFIRMED**.

(7) The Clerk of Court is **DIRECTED** to close Docket Nos. 11-1408-cr, 11-1411-cr, 11-1906-cr, and 11-2425-cr upon entry of this order. The Clerk of Court is also **DIRECTED** to close Docket No. 11-479-cr to the extent it was not already closed upon entry of our February 14, 2011 order. *See* Order, *Roe v. United States,* 414 Fed.Appx. 327 (2d Cir.2011).

**\*8 (8)** The remainder of this cause (Docket Nos. 10-2905-cr, 11-1666-cr) is **REMANDED** to the District Court (I. Leo Glasser, *Judge* ) for proceedings consistent with this order and with instructions (i) to rule upon the government's unsealing motion\*69 of March 17, 2011, (ii) to issue a final determination regarding whether the dissemination of the other (non-PSR) sealed documents in John Doe's criminal case, particularly those that refer to Doe's cooperation, should be enjoined, and (iii) in the event that a final determination regarding the dissemination of the other sealed documents does not result in an injunction against the dissemination of documents referring to Doe's cooperation, to enter an order temporarily staying the unsealing of any documents referring to Doe's cooperation pending an appeal by the government to our Court. In the event that the government elects not to appeal the unsealing of any documents that may be unsealed by the District Court, the government is **ORDERED** to notify the District Court and our Court of its decision not to pursue the appeal within the otherwise applicable time for taking the appeal.

(9) It is further **ORDERED** that, pursuant to *United States v. Jacobson,* 15 F.3d 19 (2d Cir.1994), this panel shall retain jurisdiction over any further appeals from proceedings in the District Court, including any further petitions for extraordinary writs.

(10) It is hereby **ORDERED** that Judge Cogan shall retain jurisdiction for the limited purpose of enforcing our February 14, 2011 mandate—that is, to

ensure the parties' compliance with the orders of this Court and any that have been, or may hereafter be, entered by Judge Glasser. Our panel retains jurisdiction pursuant to *United States v. Jacobson,* 15 F.3d 19 (2d Cir.1994), over any appeals from any orders or judgments entered by Judge Cogan.

(11) Finally, it is **ORDERED** that appellant Richard Roe is hereby warned that the Court's patience has been exhausted by his filing of six separate notices of appeal regarding the same principal legal dispute—including the filing of an appeal from a March 23, 2011 scheduling order that obviously was not a final order nor subject to any of the exceptions to the "final judgment rule," *see* Part (iv), *ante*—and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions, including the imposition of leave-to-file restrictions, requirements of notice to other federal courts, and monetary penalties.

(12) The Clerk of Court is **DIRECTED** to transmit a copy of this order to Judge Cogan.

C.A.2 (N.Y.),2011.
Roe v. U.S.
428 Fed.Appx. 60, 2011 WL 2559016 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

E.D.N.Y.-Bklyn
Glasser, J.

# United States Court of Appeals
### FOR THE
## SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of April, two thousand eleven.

Present:
    José A. Cabranes,
    Rosemary S. Pooler,
    Denny Chin,
        *Circuit Judges.*

---

Richard Roe,

   *Respondent-Appellant,*

  v.           Nos. 10-2905-cr, 11-479

United States of America,

   *Appellee,*

John Doe,

   *Defendant-Appellee.*

---

WHEREAS, the government has moved the District Court (I. Leo Glasser, *Judge*), to (a) unseal the docket, certain docket entries, and certain documents filed in the matter of *United States v. Doe*, No. 98-cr-1101 (E.D.N.Y.), and (b) to change the caption of the matter to *United States v. Felix Sater* (the "motion to unseal"); and

WHEREAS, Judge Glasser has requested briefing on the District Court's jurisdiction to entertain the government's motion to unseal in light of respondent-appellant Richard Roe's pending appeal from orders issued by the District Court; and

WHEREAS, both the government and Roe have requested that we confirm the District Court's continuing jurisdiction to entertain the government's motion to unseal;

"B"

IT IS HEREBY ORDERED that, pursuant to our order of February 14, 2011 and to this order, the District Court retains jurisdiction to decide the government's motion to unseal, as well as to decide any other pending or future motions to unseal that would not result in the public disclosure of docket entries or underlying documents that reference John Doe's cooperation with the government.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



2

## Lerner, Richard E.

| | |
|---|---|
| From: | Nader Mobargha [nmobargha@bsmlegal.net] |
| Sent: | Wednesday, May 18, 2011 6:27 PM |
| To: | Lerner, Richard E.; fred55@aol.com; dschulz@lskslaw.com |
| Cc: | Michael P. Beys |
| Subject: | Settlement Agreement |
| Attachments: | 2011.05.17_Settlement Agreement Roe Doe v2.doc |

Richard and Fred,

While we are still on board conceptually to settle, we reviewed your Agreement in detail and find that it is not a form which we can work with. The Agreement is too broad and covers too many areas that we found to be superfluous. The Agreement also goes so far as to modify and vacate orders, which we do not think private parties can do without an actual motion to the court.

We have attached a simpler settlement agreement which we believe accomplishes both of our goals: We provide you the stipulations that are a necessary starting point for your RICO action and, in return, you refrain from all motion practice to unseal docket entries concerning those stipulations. We also agree to delay any action against your client and others until September 15, 2011. This is fair for both parties. This is the final deal, subject to minor comments you may have.

Frankly, this is more than fair for your client as he has reached the end of his litigation rope. Even if Judge Glasser decides to hold a hearing or oral argument to determine whether to unseal specific docket entries of Doe's criminal proceeding, he will do so without considering your arguments or appeals. If you believe you are driving the unsealing issue, you are mistaken. And regarding your motion to intervene into the Bernstein litigation, we find it without support in fact or in law. Our case against Bernstein is not about the First Amendment; it is about theft. Rest assured, however, if we do not settle, Roe, Jody Kriss and others (potentially even Ron Kriss) will have plenty of opportunity to respond to our allegations of theft as they will soon be a part of a litigation concerning that very issue.

Let us know at your earliest convenience if this is acceptable to you.

Nader


Nader Mobargha

BEYS, STEIN & MOBARGHA LLP    Tel:212.387.8200 ext 2
The Chrysler Building                         Fax. 212.387.8229
405 Lexington Avenue
7th Floor
New York, NY 10174
nmobargha@bsmlegal.net

        Please consider the environment before printing this e-mail

Confidentiality Notice:
The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, copying, printing or saving of this e-mail and any attachments is strictly prohibited. If you received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately.

"B"

April 23, 1982

# SECRET PLEAS ACCEPTED BY U.S. ATTORNEY IN CITY

By MARCIA CHAMBERS

At least 75 Federal defendants, and probably more, were permitted to enter guilty pleas in secret proceedings in Manhattan over the last two years in Federal judges' chambers. The practice is considered even by Justice Department officials to be unusual and perhaps contrary to Federal guidelines.

But John S. Martin, the United States Attorney in Manhattan, said the practice was "not uncommon" in his office. Only the judge, the lawyers and the defendant are present at secret proceedings. A record is kept and sealed.

The practice was used by Mr. Martin most recently in two cases involving white-collar crime - one involving Margaret Barbera, who was murdered before she could testify before a Federal grand jury investigating her company's fraud case, and the other involving the chief executives of the O.P.M. Leasing Service Inc., who are accused of masterminding one of the nation's largest fraud cases.

In an interview, Mr. Martin said he had used secret pleas primarily to shield undercover work of Government witnesses, or defendants who become witnesses, and not to protect the witnesses from harm. He said he had not believed that either Miss Barbera or the defendants in the O.P.M. case were in danger. "I can't remember a witness being murdered in a white-collar case," he said.

In interviews, Justice Department officials, criminal-law and First Amendment scholars and lawyers said the practice raised significant questions of constitutional law. At issue, they say, is the right of the public to view the process to prevent collusion in the taking of a plea and the right of public access to court proceedings. Other Federal prosecutors, whose white collar crime dockets are as heavy as New

York's, said they rarely used the device, which has been a fixture in the United States Attorney's office in New York for the last decade.

"I find it hard to believe," said Maryanne Desmond, the first assistant of the United States Attorney in New Jersey. "The Supreme Court has said that the rights of the public as well as the rights of defendants must be considered in closing a procedure."

John Russell, a spokesman for the Justice Department, said the department supported open judicial proceedings and would view taking secret pleas " with a jaundiced eye." Mr. Russell said, however, that where a witness's life was at stake, the prosecutor could seek a secret hearing.

But he added that under a 1980 policy still in force, the Justice Department opposes all defense claims for secret procedures. "If a judge wants to go into chambers, then it's done," he said. "But we attempt to keep it open."

In the interview, Mr. Martin said that he was aware that the department favored open proceedings, but that he thought his policy was "consistent" with the department's because, he maintained, secret pleas were "ancillary to secret grand jury proceedings." He said he had notified the Justice Department of his secret-plea policy in January 1981.

Abraham S. Goldstein of the Yale Law School, a criminal-law expert, said: " On the face of it, a guilty plea is a trial and the public has a stake in it." Other legal scholars agreed. A 'Questionable' Proceeding

Mr. Goldstein called secret guilty pleas "a questionable type of proceeding," adding,"the only participants are those who have interests in preserving the secrecy." Safeguards were necessary to monitor the pleas, he said.

Both Miss Barbera and Myron S. Goodman and Mordecai Weissman, the chief executives of O.P.M., had agreed to work for the Government, their unsealed transcripts show. Usually witnesses are

fitted with a recording device to tape conversations. Generally such cooperation helps mitigate a prison sentence.

In Miss Barbera's case, she secretly pleaded guilty to conspiracy charges on March 25 in the chambers of Judge Morris Lasker of Federal District Court. She was murdered last week, as were three CBS employees who went to her aid at a West Side parking lot.

The transcript of Miss Barbera's plea - during which she identified Irwin Margolies, the president of the Candor Diamond Corporation, as the architect of a $6 million fraud - was sealed by Judge Lasker last month and unsealed after her murder.

In the O.P.M. case, Mr. Martin arranged to have Mr. Goodman and Mr. Weissman secretly plead guilty to fraud charges in the chambers of Judge Charles S. Haight Jr. of Federal District Court last Dec. 17.

The two men were accused of defrauding some of the nation's largest lending institutions of nearly $200 million over a 10-year period. Last month, presumably after they gathered information against others, Mr. Martin made public their pleas.

The practice also raised the question of when - if ever - the public, which is usually represented by the press, should be barred from hearing pleas.

Floyd Abrams, one of the nation's leading First Amendment lawyers, said there might be an extraordinary occasion when a judge accepted a secret plea. He said:

"I don't rule out the possibility of exceptional circumstances existing in certain situations where the physical safety of someone is at risk, but one thing is clear, and that is that the First Amendment does not tolerate a system in which pleas are taken as a matter of course in secret."

In the leading case on court access, Richmond Newspapers Inc. v. Commonwealth of Virginia, the Supreme Court held in 1980 that the

Constitution gave the public and the press an all but absolute right to attend criminal trials.

Jack Landau, the director of the Reporters Committee for Freedom of the Press, said the practice was so extraordinary that only one secret guilty plea case had ever been officially reported to his organization.

"The Government can't shut down the system because they want an undercover agent," Mr. Landau declared. The 75 secret pleas in Mr. Martin's office in 1980 and 1981 represent only those where initial charges were sealed and the defendants later pleaded guilty at a closed arraignment.

Case 1:98-cr-01101-HG  Document 1441*SEALED 02/24/12 Page 47 of 53  PageID #: 1744

# AUDIT CRITICIZES U.S. PROSECUTOR ON SECRET PLEAS

*By MARCIA CHAMBERS*

The United States Attorney's office in Manhattan has "extensively used closed proceedings" for accepting guilty pleas and sentences, according to a Federal audit.

The audit, by the General Accounting Office, analyzed the plea practices over the last four years of 12 of the 93 United States Attorney's offices and found the office of the Federal prosecutor for the Southern District of New York, in Manhattan, to be the worst offender. The offices covered in the survey were chosen because they had either the highest criminal caseload or the lowest.

Under Department of Justice guidelines, prosecutors must obtain approval of the department before allowing a secret plea or sentence. The department presumes that judicial proceedings will be open to the public, but on occasion has supported a prosecutor's decision to close such proceedings, usually if the life of a witness or defendant is in jeopardy.

Right of the Public at Issue

First Amendment scholars have said that the practice of closed proceedings raises a significant constitutional question. At issue is the right of the public to view the process in order to prevent collusion in the taking of a plea and the right of public access to court proceedings.

John S. Martin Jr., who stepped down last month as the United States Attorney for the Southern District of New York, permitted secret pleas. Mr. Martin said in a telephone interview that he had not seen a copy of the audit but defended his use of closed proceedings.

"The whole thing is a tempest in a teapot," he said, adding that he had used the procedure only when he feared that publicity might endanger a defendant's life or compromise an investigation.

"I think sealed pleas serve a legitimate purpose," Mr. Martin said. "It's a better system than private plea bargaining." He said he always had a trial judge supervise such secret proceedings. Successor Deplores Practice

On the other hand, Rudolph W. Giuliani, who succeeded Mr. Martin last month, said he deplored the practice of taking pleas or sentences in secret. He said his predecessors had failed to follow Federal rules when they did so. Until he took his new post, Mr. Giuliani, was Associate Attorney General, or third ranking officer in the Justice Department. In this position, he investigated the secret proceedings in the Southern District. He said a monitoring system to allow for timely disclosure was now operating.

"It offends me to have a good deal of what went on in this court be secret," Mr. Giuliani said in an interview. "It offends me philosophically and personally."

Mr. Giuliani said he agreed with the audit's recommendation that secret pleas and sentences taken in past years by the office be unsealed as soon as possible. He said that he would try to reconstruct the files, but that that might not be possible because the office had not maintained records of closed proceedings.

The audit, requested by the House Subcommittee on Courts, Civil Liberties and the Administration of Justice, followed an account in The New York Times last year that said that at least 75 defendants had been permitted to plead guilty to criminal charges in secret proceedings in Federal District Court in Manhattan in 1980 and 1981. Why Some Took Secret Pleas

Several assistant United States attorneys told the auditors that they sometimes accepted secret pleas because "aggressive defense attorneys pressure the United States Attorney's Office to have their cooperating clients shielded."

In interviews, the auditors said they could not determine how widespread the current secrecy practices were because the Justice

Department had refused to survey all 93 United States Attorneys' offices. As associate attorney general, Mr. Giuliani had conducted a survey of 20 of these offices - those in high crime districts - and had found that they rarely used such practices.

A prosecutor can achieve the same results without closing a hearing, Mr. Giuliani said. That is, the person who agrees to cooperate first obtains the information for the prosecutor and then pleads guilty - usually to a reduced charge - in open court. What happened in the Southern District, he said, was that a cooperating witness secretly pleaded guilty and then gathered information for the prosecutor.

The auditors said that with no records records available they had been forced to rely on the "recollections" of 16 assistant United States attorneys in New York. According to the auditors, the prosecutors told them that in the last four years they had been involved in 42 closed pleas and 6 closed sentencing proceedings. There are about 80 assistants in the office assigned to the criminal division. Independent Actions Cited

In some instances, auditors said, assistant United States attorneys in Manhattan entered into secret negotiations on their own, without getting permission from a superior.

In some instances the prosecutors obtained permission from the chief of the Criminal Division of the Justice Department. Both instances violated Federal guidelines, according to the audit.

Under the current system, a United States Attorney decides when to unseal a secret plea and when - if ever - to announce it publicly. One change that occurred after the practice of secret proceedings was disclosed was that the public was notified of closed plea proceedings by a listing of such a case as "U.S.A. vs. John Doe" on the daily Federal District Court calendar.

The calendar names the judge before whom the plea is taken; however, the proceeding is closed. Unless the prosecutor makes a disclosure, the

public does not know if and when such a case is unsealed because there is no way to distinguish one John Doe case from another.

**Filed Under Seal, but Objecting to Same, and Requesting
Immediate Unsealing Pursuant to U.S. v. Alcantara**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

    -against-

"JOHN DOE,"

                Defendant.

08 Civ. 1101 (ILG)

Declaration of Frederick M.
Oberlander

---

I, Frederick M. Oberlander, an attorney duly admitted to practice before this court,

declare under penalty of perjury as follows:

1. I am the non-party respondent referred to as "Richard Roe." I submit this declaration
   in support of the motion for recusal and other relief

2. I have read the February 21, 2012 affidavit by Richard Bernstein which was provided
   to me in the early morning hours of February 22.

3. The issues raised in the Bernstein affidavit are not properly before this court. There
   was no motion to supplement the record with new evidence.

4. If this court were to choose to entertain the issues raised therein, then I must be given
   sufficient opportunity (that is, time) to respond. This court's scheduling order does
   not permit me sufficient time to formulate a thorough response to the statements
   contained in the affidavit.

5. I deny each and every allegation contained in the Bernstein affidavit (except those
   otherwise corroborated in my prior and current submissions).

6. Annexed to this submission e-mails annexed to correspondence, dated February 23, 2012, in which I've raised the perjurious nature of the Bernstein affidavit. The statements contained in that correspondence are true and the correspondence and e-mails annexed to it are accurate and true copies of the originals (except for redactions).

7. A further, detailed response to the Bernstein affidavit will be provided to this court once I've had time to prepare an itemized response.

Dated: New York, New York
       February 24, 2012

_Fred Oberlander by 7L_
Frederick M. Oberlander

4943321v.1