# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000 Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

April 8, 2011

**Via Facsimile – (718) 613-2446**

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> Re:  United States of America v. Felix Sater
>      Case No.      :    98CR1101 (ILG)
>      **Our File No.** :   **07765.00155**

Dear Judge Glasser:

We respond to the "Scheduling Order" of March 23, 2011 requesting the position of the parties on the jurisdiction of this court to act on the government's request to "unseal" portions of the docket. We also request correction of misstatements of the record, and that both this letter and the "scheduling order" be publicly docketed and filed, or – in the alternative – request an opportunity to be heard at a hearing in opposition to any continued "sealing" of these record materials.

## Preliminary Note

As a preliminary matter, we note our substantial objection to the statements in the "Scheduling Order" suggesting that Mr. Roe has violated an "implicit" order. Respectfully, there is no such thing as an "implicit" order in American law. To accuse our client of intentionally flouting an "implicit" order is to state a proposition that cannot – and must not – exist under our constitutional system of due process. It is error.

**First**, an order exists or it does not. If no one can tell whether an order exists, it does not exist, as anything that unclear and uncertain necessarily fails due process requirements by definition. Constitutional and statutory requirements, like those set forth in FRCP 52 and 65, that an order be a signed writing stating within its four corners its terms and conditions, ensure that no one may be accused of violating an order the existence of which is not clear.

**Second**, if an order exists, one must determine what it is that the order purports to prescribe, or proscribe.

**Third**, if an order exists and purports to prescribe, or proscribe, a person's conduct, one must be able to determine from the order itself who it purports to so bind.

**Fourth**, if an order exists and purports to prescribe, or proscribe, a thing, and to bind a given person, one must determine if it is facially valid and enforceable as to that person. Orders

as to which a person purportedly bound has not had *actual notice of it in its entirety* are unenforceable as to that person. Transparently invalid orders (and invisible, unseeable orders) are unenforceable.

### First Amendment and Due Process Issues

These concerns underscore a number of issues raised by the Scheduling Order. The court correctly states, "Neither a case nor a filed document can be sealed without a court order, *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995); *R&G Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 584 F.3d 1, 12 (1st Cir. 2009)." However, the fact that a judicial document to which there is a presumptive right of public access has been stored in a vault and is not available to the public is proof of nothing, other than that it has been stored in a vault and is not available to the public. It is not proof that it got there properly.

The court further stated, "[I]t must be presumed, therefore, that such an order existed, explicitly or implicitly." No one is obligated to presume the existence of that which cannot exist, and there cannot properly be any such thing as an "implicit" order, and no one is obligated to presume that which due process requires he be given *actual* notice of.

The court further stated, "[i]n unilaterally deciding that such an order did not exist, or, if it did exist, it was binding on court personnel only; or in any event, he had a First Amendment right to publish that which was sealed, he knowingly and intentionally flouted a court order." Yet if someone has to "decide" if an order even exists or what it says because he cannot find it, cannot put it on a table, and cannot read it, then it's the same as if it does not exist. But even if it does exist, sequestered in some vault, he cannot have had *actual* notice of it and its terms.

However, the larger problem here is with the court's astonishing statement that when our client published something that was sealed (and nothing here was, but assume *arguendo* it was), he knowingly and intentionally flouted a court order. This is error. *Clear error.*

You have accused our client of knowingly and intentionally flouting an order by his publication of documents. *Thus you interpret this unidentified order to be a prior restraint on that speech.* That is "implicit" in saying that to "publish" is to "flout" it. We respectfully, but vehemently, request that you immediately produce that order, in its original written form, as it must exist, and have existed, to be valid. Only then can we determine:

- Where on its face it says that it binds our client.
- Where on its face it says that our client may not publish what he published.
- Where on its face it says why he may not publish it.
- Where on its face it says what the grave imminent harm must be prevented by enjoining him from publishing it.
- Where on its face it says why there are no less restrictive means of avoiding that imminent harm.
- Where on its face it sets forth the findings of fact made on the record upon a due process hearing by clear and convincing evidence to support such prior restraint.
- Where in the record there is evidence that our client was given actual notice in advance of the order's issuance against him, was served with it, and had a due process hearing or opportunity to object prior to his speech being restrained, all of which are required by First Amendment doctrine.

\* \* \*

      For a federal court to say, even in *dictum*, that an "implicit order" that the court admits does not exist and has never existed (and that thus cannot be examined) is nonetheless a prior restraint is of grave constitutional public concern and national import. For example, as you know, Business Week continues to maintain on its website information derived from the complaint in this action. See "The Case of the Gym Bag that Squealed"[1] As stated in the Business Week article, "According to a sealed criminal complaint filed with the U.S. District Court in Brooklyn and obtained by BUSINESS WEEK, the FBI maintains that the mini-storage document trove sets forth a tale of stock manipulation and money laundering. Allegedly involved are more than 30 foreign shell companies and bank accounts that, the complaint maintains, were used to launder the proceeds from illegal stock sales during 1994 and 1995." (Emphasis added.) If Mr. Roe is subject to a prior restraint, so too is Business Week, and Business Week too must be told by Your Honor that it is "flouting" some "implicit" order. Respectfully, for this compelling reason you must "unseal" the scheduling order so the public in general (and Business Week in particular) may see what this court has said.

### Jurisdictional Inquiry

      Your Honor acknowledged repeatedly on the record that no order was ever entered sealing the docket or any hearings, events, or documents in this criminal prosecution. For example, on July 20, 2010, at p.17, you stated: "Nor have I been able to find any order signed by me, which directed that this file be sealed."[2] The court also stated that most documents were never docketed as being sealed. (On June 14th, at p.6, you stated: "... I looked down the docket sheet and I saw about six docket entries which said these documents have been docketed under seal. They were docket numbers five through eight, eleven, thirteen, sixteen and seventeen. Filed under seal.") Mr. Roe has never seen the docket, and thus cannot know what documents the court identified as not sealed in docket entries 1, 2, 3, 4, 9, 10, 12, 14, and 15, or how many unsealed documents are reflected on the docket after entry seventeen.

      Therefore, there is necessarily no "sealing" order currently on appeal to the Second Circuit; the pending appeal concerns only the TRO entered by this court on May 18, 2010 and subsequent oral orders issued at hearings held on June 11, 14 and 21, 2010. Moreover, the record also reflects that no pre-sealing hearings were held before the docket itself was "sealed"; therefore, there is no appellate record to be reviewed by the Second Circuit relating to the propriety of any "sealing" of the docket. Similarly, the record also reflects that there is no evidence anyone ever requested during Doe's prosecution that any document be "sealed," and no evidence that any proper procedures were ever followed as to sealing such.

      Hence, the issue raised by the government's motion is not an issue now before the Second Circuit. As the government has advised the Second Circuit, the pending appeal should not preclude this court from addressing issues concerning access to its own docket. (In this

---

[1] See http://www.businessweek.com/archives/1998/b3603186.arc.htm

[2] For convenience, in the case herein where a judicial document for which there is a presumptive right of access seems to have been vaulted away without a sealing order, we refer to it as being "sealed" to denote that the court maintains it is sealed while we maintain it is (only) concealed.

regard, we note that the government agrees that this court has jurisdiction, per their letter to the Second Circuit dated March 30th, a copy of which is enclosed).

Indeed, my client contends that the actual issue raised by the government's request is whether this court may continue to keep docket information secret in violation of the public's constitutional and statutory rights, given the absence of proper hearings, findings, etc. to support that secrecy.

As is well settled, in order to seal a court file there must be a formal motion requesting the sealing of the docket, advance public notice that a hearing will be held, and record findings by the court as to why sealing is appropriate. See *U.S. v. Alcantara*, 396 F.3d 189 (2d Cir. 2005). In *Alcantara*, the Second Circuit stated:

> In *In re The Herald Co.*, 734 F.2d 93, 102 (2d Cir.1984), we established procedures for providing notice to the public that must be followed before closing a proceeding to which the public has a right to attend. We reasoned in *Herald* that "[s]ince by its nature the right of public access is shared broadly by those not parties to the litigation, vindication of that right requires some meaningful opportunity for protest by persons other than the initial litigants, some or all of whom may prefer closure." *Id.* We said that "it seems entirely inadequate to leave the vindication of a First Amendment right to the fortuitous presence in the courtroom of a public spirited citizen willing to complain about closure," and we noted that the Third Circuit had ruled, "in the exercise of its supervisory powers, that a closure motion must be docketed sufficiently in advance of a hearing on such motion to permit intervention by interested members of the public." *Id.* at 102 (citing *United States v. Criden*, 675 F.2d 550, 559 (3d Cir.1982)). Following the Third Circuit, we held
>
>> that a motion for courtroom closure should be docketed in the public docket files maintained in the court clerk's office. *See* Fed.R.Crim.P. 55; Fed.R.Civ.P. 79(a). The motion itself may be filed under seal, when appropriate, by leave of court, but the publicly maintained docket entries should reflect the fact that the motion was filed, the fact that the motion and any supporting or opposing papers were filed under seal, the time and place of any hearing on the motion, the occurrence of such hearing, the disposition of the motion, and the fact of courtroom closure, whether ordered upon motion of a party or by the Court *sua sponte*. Entries on the docket should be made promptly, normally on the day the pertinent event occurs.... We think this type of general public notice suffices to afford an adequate opportunity for challenge to courtroom closure.
>
> *Herald*, 734 F.2d at 102-03 (footnote omitted); *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir.2004) ("[D]ocket sheets provide a kind of index to judicial proceedings

> and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment.... [T]he docketing of a hearing on sealing provides effective notice to the public that it may occur."); *United States v. Cojab*, 996 F.2d 1404, 1408 (2d Cir.1993) (stating that "a judge's robing room is not open court" and holding that the District Court failed to following *Herald*'s notice procedures before holding a pretrial hearing in the robing room); *Haller*, 837 F.2d at 87 ("*In re Herald* requires ... that except in extraordinary circumstances the public have a means of learning that a closure or sealing order has been proposed or issued.").

None of this was done in this case, and the pending appeal does not defeat this court's continuing jurisdiction to correct its own docket to end an ongoing violation of the constitutional and common-law rights of access.

Moreover, the "sealing" (or closure) of every event in this proceeding violated the Crime Victims Rights Act, 18 U.S.C. § 3771. Doe's victims had a right under that Act to be heard at the sentencing hearing, but by "sealing" the docket and failing to give public notice, and failing to affirmatively reach out to all Doe's victims and give them individual notice, these victims were deprived of their right to be heard at the sentencing hearing.

Mr. Roe represents some of Doe's victims, who now have the right to convert the restitution order that should have been ordered into a judgment enforceable against Doe in state court. See *Kenna v. U.S. District Court for Central District of California*, 435 F.3d 1011 (9th Cir. 2006). As the *Kenna* court recognized, the rights of Mr. Roe's clients should not await further direction from the Circuit Court.:

> **We could delay further our consideration of the [mandamus] petition and order briefing from the defendant, but we think it more advisable to let the district court consider the motion to reopen in the first instance.** In ruling on the motion, the district court must avoid upsetting constitutionally protected rights, but it must also be cognizant that the only way to give effect to Kenna's right to speak as guaranteed to him by the CVRA is to vacate the sentence and hold a new sentencing hearing. We note that if the district court chooses not to reopen the sentence, Kenna will have another opportunity to petition this court for mandamus pursuant to the CVRA. Likewise, defendant will be able to contest any change in his sentence through the normal avenue for appeal (assuming he has not waived such rights as part of the plea bargain). 435 F.3d at 1017-1018.

In short, this court has continuing jurisdiction to control its own docket, and the present circumstances particularly compel "unsealing" of the docket (and most of what's in it) at this time. The government has agreed with this, that it should be done without further delay to avoid serious and ongoing harm to the constitutional and statutory rights of others.

## Request to Correct Misstatements in this
## Court's Scheduling Order

We respectfully request the court correct factual misstatements in the scheduling order:

| Misstatement | Basis for Assertion that the Court has Misstated the Record |
|---|---|
| "That TRO was extended until June 21, 2010 when, in proceedings on that day, Richard Roe was ordered to return certain sealed documents to the United States Attorney's Office." | (1) As noted above, this court has acknowledged that there is no "sealing" order in this case, and there is thus no factual (or legal) basis for describing the documents at issue as "sealed documents." <br><br> (2) The use of the word "documents" – in the plural – is incorrect. At the hearing on June 21st, Doe's counsel moved for the court's temporary restraining order against the dissemination of documents "to be extended to include the documents we previously didn't know Mr. [Roe] also had but which are in fact also under seal." The court stated: "So ordered. I'll entertain an application to enjoin permanently. TROs are good for ten days unless extended for another ten days. It would seem to me an application you might wish to be made is to enjoin the dissemination of those documents permanently." (6/21/10, at p. 84). This "restraining" order, was merely a "restraint" on dissemination, not an affirmative order directing Mr. Roe to turnover documents. <br><br> (3) This court further stated on June 21st, ".... I'm prepared to entertain an application with respect to that. ..." (*Id.* at p. 85). "With respect to the presentence report, I am issuing a permanent injunction that the information contained in that presentence report is not to be disseminated." (*Id.* at 88). "With respect to the cooperation agreement and the proffer agreement, there is no authority which I'm aware of similar to *Charmer Industries* ...." (*Id.* at 88). "I'm not enjoining it [*viz.* dissemination of the cooperation agreement, proffer agreement and information pertaining to Doe's cooperation]...." (*Id.* at 89). <br><br> (4) At the conclusion, your honor requested briefing on whether the other "documents" – using the plural – at issue were subject to a "clear" sealing order. (*Id.* 114). If the court had already ordered the "return" of the documents, this would have made no sense whatsoever. In short, it is contrary to the record to state that Richard Roe was "ordered to return certain sealed documents" on June 21. |

| | |
|---|---|
| "All filings in that case [U.S. v. Doe] were thereafter sealed whether or not any given documents also bore the legend "Filed Under Seal." | (1) The court will note that it expressly declined to seal the transcripts of the hearings. For example, on the record on June 21st, I inquired as follows: "My client wishes to know whether these proceedings today are sealed? Doe's counsel stated: "Your honor, all I ask is the name be redacted to change to John Doe." |
| | (2) The court then directed the court reporter to substitute the name John Doe for the defendant's true name. (June 21, at p. 116). |
| | (3) Doe's counsel did not request the sealing of this transcript, nor did the court order it. In fact, when Doe's counsel asked that Mr. Roe be enjoined from identifying Doe by his true name in public. This court responded, "Ms. Moore, there is I think an extent even to which the broad enormous powers of Federal Courts do not extend…." |
| | (4) Thus, there was no seal of the June 21st transcript, and it may be freely disseminated. So too may it be represented that Mr. Doe is the same defendant as has been named in the *Kriss v. Bayrock Group, LLC, et al.* action in the Southern District. |
| | (5) Moreover, the government has admitted that Mr. Doe was sentenced in open court on October 23, 2009, thus none of that was sealed. |
| "Neither a case nor a filed document can be sealed without a court order, *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995); *R&G Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 584 F.3d 1, 12 (1st Cir. 2009), and it must be presumed, therefore, that such an order existed, explicitly or implicitly. In unilaterally deciding that such an order did not exist, or, if it did exist, it was binding on court personnel only; or in any event, he had a First Amendment right to publish that which was sealed, he knowingly and intentionally flouted a court order. | Respectfully, the suggestion that a presumed order must exist misstates the record fact that no sealing order was entered in this case: |
| | (1) The court acknowledged during the hearings last June that no sealing order was issued, and none of the documents given to Mr. Roe stated, on their face, that they are subject to any kind of sealing order. |
| | (2) No order cannot exist "implicitly." An order that constitutes an affirmative injunction must comply with Federal Rules of Civil Procedure 52 and 65. |
| | (3) Mr. Roe could not have flouted an order that does not exist. It is well established that an oral injunction is a nullity. *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 104-06 (2d Cir. 2009). If this court issued an oral order of some sort, it could not have been "flouted" by Mr. Roe, for it obviously could not have complied with FRCP 52 or 65. |
| | (4) To the extent that such an order was directed to the world in general, and not to Mr. Roe in particular, it could not possibly have been binding upon him. *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930) (an order that purports to bind the world is binding on no one. This is to say, even if Your Honor had issued an order purporting to gag the world, it could not have been "flouted" because it would have been a nullity). |
| | (5) Mr. Roe testified he never looked at the Eastern District docket of the *U.S. v. Doe* matter before he filed the complaint. (Transcript of June 21st hearing at pp. 37-38). Had Doe's counsel or the government wished to rebut this testimony, they could have subpoenaed PACER, to ascertain whether Mr. Roe had any billing entries prior to the filing of the RICO complaint in the Southern District). Other than PACER, the only way Mr. Roe could have obtained access would have been to order it from Kansas City, which would have left a time trail as well. |

| | |
|---|---|
| "The procedure that Roe was required to have followed, given any one of his assumptions, was to move the court for an order unsealing the document providing the reasons and the authority for granting the relief sought." | (1) It is error to say Mr. Roe was required to seek relief before using information in the documents provided him by Bernstein (with no indication that they were "sealed," though that is irrelevant unless the "sealing" were a prior restraint order binding Mr. Roe only after and upon due process compliance). |
| | (2) If *attorneys* Jeffrey Toobin of the New Yorker Magazine or Adam Liptak of the New York Times had been handed the documents by Bernstein, surely the court does not suggest they would have been required to make a motion before writing about apparent criminality disclosed in them. |
| | (3) The court did not take Business Week to task for publishing an article about Doe, which article states very clearly that Business Week is in possession of a "sealed" complaint. That article remains on the Business Week website. One would think that this court would at least notify Business Week that it is continuing to violate Your Honor's "implicit" order. |
| | (4) Mr. Roe's right to use the information he innocently received is no less than the rights of others who, like Mr. Roe, *were not participants in this case.* |
| | (5) And why would it be permissible for Mr. Roe to use the "information" gleaned from his review of the documents that Bernstein gave him in a motion filed in federal court to "unseal" them, but not be permissible for Mr. Roe to use the information in those documents in a plenary action filed in federal court? Is this court to hold that information may be used in one kind of proceeding but not in another? |
| "The injunctions issued by the Court were deemed compelled by Roe's ignoring of the sealing directives; the danger to the life of John Doe by publishing the sealed matter and for his possession of and threatened publication of information in a presentence report which is not a court document, *In re Siler*, 571 F.3d 604, 610 (6th Cir. 2009); *United States v. Corbitt*, 879 F.2d 224, 239 (7th Cir. 1989); *United States v. McKnight*, 771 F.2d 388, 391 (8th Cir. 1985), and the confidentiality of which is sedulously guarded. *United States v. Charmer Industries*, 711 F.2d 1164 (2d Cir. 1983)." | (1) Again, the statement implies that there were "sealing directives" which unambiguously do not exist. We have not been provided with a single "injunction" by this court sealing any of the documents provided to Mr. Roe. |
| | (2) Likewise, no sealing "directive" has been ignored, because Mr. Roe knows of no such order. |
| | (3) The confidentiality of the *U.S. v. Doe* proceedings has not been "sedulously" protected. As the government's motion to unseal makes clear beyond dispute. The government acknowledges that it is a matter of public record, disclosed by the government in March 2000, that Mr. Doe pled guilty to the RICO charges that are the subject of *U.S. v. Doe* proceedings. |

We respectfully request these misstatements be corrected, as they have no support in the record and to the extent they can be construed as "findings" are plain error. We also request this letter be properly and publicly docketed, not "sealed." In the event that the government or Doe requests sealing of this letter, we are entitled to a publicly noticed and docketed motion for a sealing order, and a hearing at which the movant will have the burden of proof to justify sealing.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard E. Lerner

Enclosures: Government's letter of March 30, 2011 to Second Circuit.
Business Week article printed out on April 8, 2011 ("The Case of the Gym Bag the Squealed").

cc: **Via E-Mail / Fax (with enclosures)**

Todd Kaminsky, Esq. – US Attorney's Office
Nade Mobargha & Michael Beys
Frederick M. Oberlander, Esq.
Hon. Brian Cogan, USDJ – EDNY (Fax No.: **718-613-2236**)

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
4550695 3