UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED STATES OF AMERICA,                :

        Plaintiff,                               :   **FILED UNDER SEAL**
-against-
                                                        :

JOHN DOE                                          :   98 CR 1101 (ILG)
        Defendants.

-against-                                           :

RICHARD ROE

        Non-Party Respondent       :

                                                        :
---------------------------------------------------------------x

**DEFENDANT JOHN DOE'S ("DOE") REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF AN ORDER ENJOINING RICHARD ROE FROM DISSEMINATING CERTAIN SEALED AND CONFIDENTIAL DOCUMENTS AND DIRECTING ROE TO RETURN ALL COPIES OF DOE'S SEALED AND CONFIDENTIAL DOCUMENTS**

BEYS, STEIN & MOBARGHA LLP
Nader Mobargha, Esq. (NM7162)
Jason Berland, Esq. (JB4136)
The Chrysler Building
405 Lexington Avenue, 7th Floor
New York, New York 10174
646-755-3598 (main)
646-755-3599 (fax)
nmobargha@bsmlegal.net
*Attorneys for Defendant John Doe*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1
ARGUMENT.....................................................................................................................................2
    I-   Unsealing Doe's sealed documents would reveal his cooperation and place him and his family in grave danger................................................................................................2
    II-  Rather than address Doe's arguments, Roe accuses the courts of the Second Circuit of sedition, fraud, and corruption .................................................................................3
    III- Roe ignores well-settled law on closure and the Court's findings about the danger to Doe if his documents are unsealed ...................................................................................4
    IV- Roe's claim that the Supreme Court's decision in Bartnicki gives him license to publicly disclose sealed documents is without merit ...................................................................5
    V-  The Court can "restrain"Roe from disseminatingDoe's Sealed and Confidential Documents as long as Doe satisfies the relevant four-prong test under the First Amendment.................................................................................................................7
    VI- Roe cannot publicly disclose sealed documents and then claim the documents should be unsealed since they are already in the public realm .......................................................8
CONCLUSION.................................................................................................................................10

FILED UNDER SEAL               i

# TABLE OF AUTHORITIES

**Cases**

Bartnicki v. Vopper, 532 U.S. 514 (2001) .................................................................................5,6,7

Boehner v. McDermott, 484 F.3d 573 (D.C. Circuit 2007) ..........................................................7,8

Seattle Times v. Rhinehart, 467 U.S. 20, 32, n.18 (1984) ................................................................8

U.S. v. Doe, 63 F.3d 121, 128 (2d. Cir. 1995) ..............................................................................6,7

The following is Defendant John Doe's ("Doe") Reply Memorandum of Law in Further Support of an Order Enjoining Richard Roe from Disseminating Certain Sealed and Confidential Documents and Directing Roe to return all copies of Doe's Sealed and Confidential Documents.

## PRELIMINARY STATEMENT

In his Memorandum in Support of Motion of Non-Party Respondent Richard Roe ("Roe's Opposition"), Roe fails to acknowledge the statements made on the record by both this Court and the government indicating the grave danger to the personal safety of Roe and his family if Doe's cooperation is revealed. He fails to acknowledge the Court of Appeals' December 20, 2011 Order requiring that any documents referencing Doe's cooperation remain under seal. He fails to address, or even refer to, the five documents that are at issue on this motion, namely Doe's Cooperation Agreement, the two Proffer Agreements, the draft Information and the Complaint ("Doe's Other Sealed and Confidential Documents"). Finally, Roe fails to address the relevant four-prong test necessary before a court unseals Doe's Other Sealed and Confidential Documents.

Rather than engage in any meaningful analysis of any of these issues, Roe hurls insults at the court, accusing both this Court and the Court of Appeals of sedition, fraud, corruption, maladministration, and misconduct. Aside from denigrating the courts, Roe's only other argument is to claim that, under the First Amendment, it is irrelevant whether he stole Doe's sealed documents, or how he obtained them. Roe falsely claims he is permitted to disseminate Doe's sealed documents simply because he now possesses them. This is a complete perversion of Supreme Court precedent and the intended effect of sealing orders.

1

## ARGUMENT

### I- Unsealing Doe's sealed documents would reveal his cooperation and place him and his family in grave danger

The narrow issue before this Court is whether the Court should unseal five documents: (i) Doe's Cooperation Agreement; (ii) two Proffer Agreements; (iii) a draft Information; and (iv) a Complaint and Affidavit in Support of Arrest Warrants (the "Other Sealed and Confidential Documents," as defined in Doe's Memorandum of Law in Support of an Order Enjoining Richard Roe from Disseminating Certain Sealed and Confidential Documents and Directing Roe to Return All Copies of Doe's Sealed and Confidential Documents, dated February 21, 2012)("Doe's Memorandum")). If these documents reveal Doe's cooperation in any way, the Court of Appeals has ordered that they remain under seal. *See* Affirmation of Nader Mobargha, dated February 21, 2012 ("Mobargha Aff."), Ex. 2, Court of Appeals' Order, dated December 20, 2011, at 6 ("Judge Glasser retain[s] jurisdiction to decide…pending or future motions to unseal that would not result in the public disclosure of docket entries or underlying documents that reference John Doe's cooperation with the government."). The Court of Appeals based this order on both this Court's findings and the government's statements during oral argument. Your Honor "explicitly entered a finding that releasing proof of Doe's cooperation would cause him irreparable harm and would put his safety at risk." *Id.* In addition, the government stated that

███████████████████████████████████████████████████

███████████████████████████ *See* Reply Affirmation of Nader Mobargha ("Mobargha Reply Aff."), Ex. 1, Transcript of February 14, 2011 oral argument before Court of Appeals, at 13:20 – 25. The basis for the government's statement was that ████████████

2

██████████████████████████████████ *Id.* at 17:16-18. Consequently, it follows that they may kill Doe and his family in the future if they discover that he cooperated against them.

Applying these findings – and realities – to the relevant four-prong test under the First Amendment to determine whether sealing or closure is justified, we concluded that the Court should not unseal Doe's Other Sealed and Confidential Documents. *See* Doe's Memorandum, at 21-25.

II- **Rather than address Doe's arguments, Roe accuses the courts of the Second Circuit of sedition, fraud, and corruption**

In his opposition, Roe fails to address - or even acknowledge – this Court's findings, Doe's arguments, or the Court of Appeals' order. Rather, Roe and his rogue attorney, Richard Lerner's, tactic is to accuse the Court, in their usual inflammatory rhetoric, of committing a "political crime" and "operat[ing] an enterprise…to defraud victims of restitutions money." *See* Roe's Opposition, at 6. Roe and Lerner further accuse Your Honor of "corruption, misconduct, maladministration, sedition and fraud." *Id.* at 14. The tone and provocative nature of their statements are unprecedented and especially brazen, considering that the Court of Appeals has already warned Roe about his conduct and recognized that "[Your Honor], an experienced and able jurist…has shown admirable patience and forbearance in the face of extraordinary provocations…" *See* Mobargha Reply Aff., Ex. 2, the Court of Appeals' February 14, 2011 Order, at 5. In customary fashion, Roe and Lerner fail to provide any concrete basis for their diatribe against the courts; their only basis for hurling insults is simply that this Court and the Court of Appeals did not grant Roe free rein to publicly disclose stolen, sealed documents and place a man and his family's life in danger. Roe and Lerner's continuous lack of deference towards this Court is justification enough to hold both of them in contempt.

3

### III- Roe ignores well-settled law on closure and the Court's findings about the danger to Doe if his documents are unsealed

Yet, even while accusing the courts of a catalogue of crimes, Roe admits, as he must, that a court may restrain the dissemination of information to the public if there is a "countervailing government interest…of the utmost importance." *See* Roe's Memorandum, at 9. Yet, while acknowledging this "countervailing government interest," Roe ignores well-settled case law by falsely stating that "[n]o court has ever held that the personal safety of one man…and his family outweighs the public interest in knowing about [Doe's crime]." *Id.* To the contrary, courts have routinely held that a cooperating witness' safety may justify sealing information in his case, thereby restricting the public's access. *See* Doe's Memorandum, at 21-22 (string cite of Court of Appeals cases holding that closure justified to protect witnesses).

Next, Roe argues that there is no statement on the record that Doe is at risk. His statement completely ignores this Court's findings, the statements by the government made during oral argument before the Court of Appeals, and the Court of Appeals' December 20th Order. *See supra.* In its December 20th Order, the Court of Appeals held that, even if this Court decides to unseal documents that expose Doe's cooperation, it should "enter an order temporarily staying the unsealing of [these] documents…pending an appeal by the government to [the Court of Appeals]" – an indication that it takes the potential threat to the safety of Doe and his family very seriously. *See* Mobargha Aff.., Ex. 2, at 3. None of this, of course, matters to Roe because Roe does not believe in Court orders or findings.

However, if this Court finds that, despite all the statements on record about the risk to Doe and his family's safety, there is still a question whether such a risk exists, then a hearing on the issue may be appropriate. The Court, however, should not resolve the issue in Roe's favor

4

simply based on his self-serving conclusion that there is no potential risk to Doe if his cooperation is revealed.

### IV- Roe's claim that the Supreme Court's decision in Bartnicki gives him license to publicly disclose sealed documents is without merit

In his moving papers, Doe describes the circumstances in which Roe came to possess Doe's Sealed and Confidential Documents: He stole them. *See* Mobargha Aff., Ex. 3, Bernstein Affidavit.[1] Roe justifies his actions by claiming that the Supreme Court's decision in Bartnicki v. Vopper, 532 U.S. 514 (2001), stands for the proposition "that whether the papers had been stolen was not relevant to the constitutional validity of a prior restraint injunction." *See* Roe Opposition, at 8. Consequently, "[i]t does not matter what [Roe] did or did not do" or how he obtained Roe's Other Sealed Confidential Documents; Roe is permitted to disseminate them and their contents simply because he now possesses them. *Id.* This is a perversion of Bartnicki's holding and its application to this case.

First, Bartnicki does not apply here because the case concerned the receipt of an illegally intercepted communication by an *innocent* member of the media who had nothing to do with the theft. In Bartnicki, during contentious collective-bargaining negotiations, an unknown individual received unlawfully intercepted communication between union representatives, including Bartnicki. The "thief," who illegally intercepted the communication left a tape of the conversation in the mailbox of Jack Yocum, the head of a local taxpayer organization who was opposed to the union's demands. Yocum, in turn, provided the tape to Frederick Vopper, a radio talk show host, who broadcast the tape. The Supreme Court held that the First Amendment protected Vopper's public disclosure of the communication. However, unlike Vopper, Roe is not

---

[1] Roe claims that the Bernstein Affidavit is "perjurious." This, of course, is a self-serving statement. However, if this Court finds that the Affidavit presents an issue of fact, then the Court could hold an evidentiary hearing to resolve the issue. However, by no means, should the Court resolve the factual issue in favor of Roe, whose conduct to date has shown little character.

5

a member of the media, nor is he an "innocent" recipient of Doe's Sealed and Confidential Documents. The Bernstein Affidavit shows that, while Bernstein did unlawfully take Bayrock's hard drive from his employer, Roe committed a *separate, independent* act of theft when he went to Bernstein's apartment in the dead of night, plundered Bayrock's hard drive, discovered Doe's Sealed and Confidential Documents, and stole them from the hard drive. Far from being an innocent downstream recipient, Roe is a thief. Neither Bartnicki, nor any other case, holds that First Amendment protects such conduct.

Second, the publication of documents exposing Doe's cooperation against violent local ▮▮▮▮▮▮▮▮ organization is not of "public concern" – an important consideration in the Supreme Court's analysis in Bartnicki. See Bartnicki, 532 U.S. at 525 ("[T]he subject matter of the conversation was a matter of public concern."). If there is any fact that is arguably of public concern, it is solely the fact of Doe's conviction, which is already in the public record. This fact was already disclosed, albeit inadvertently, in a 2000 press release. The unsealing of the Other Sealed and Confidential Documents – which simply exposes Doe's cooperation against dangerous criminals - serves no useful public purpose, except as a "tool to intimidate and harass Doe by subjecting him to danger." See Mobargha Aff., Ex. 2, at 7.

Third, unlike the intercepted communications that Vopper publicly broadcast in Bartnicki, the documents at issue *are subject to a court sealing order.* In Bartnicki, once the Supreme Court determined that the First Amendment protected Vopper's conduct, that was the end of the constitutional inquiry. In contrast, here, even if the Court finds that, despite his egregious conduct, Roe has the right to challenge the sealing order on First Amendment grounds, the Court must still apply the relevant four-prong test to determine whether Doe's Other Sealed and Confidential Documents should remain sealed. See U.S. v. Doe, 63 F.3d 121, 128 (2d. Cir.

6

1995); *see also* Doe's Memorandum at 21-25 (applying the four prongs to Doe's case). Without applying this test, a sealing order would be meaningless because any individual who receives sealed documents could nullify the order simply by publicly disclosing the documents.

V- **The Court can "restrain" Roe from disseminating Doe's Sealed and Confidential Documents as long as Doe satisfies the relevant four-prong test under the First Amendment**

Indeed, if this Court finds that Roe satisfies the four-prong test of U.S. v. Doe, then it has the authority to "restrain" Roe from disseminating Doe's Other Sealed and Confidential Documents. Roe argues that the sealing order is a "prior restraint," and consequently, is automatically unlawful and should be vacated. Roe cites no case law in support of this argument. Viewed pragmatically, however, every sealing order is a "restraint" on dissemination of the information subject to the order. Under Roe's interpretation of Bartnicki and what he believes to be the law on prior restraints, this Court could never "restrain" any party from disseminating sealed information. However, as the D.C. Circuit noted in Boehner v. McDermott, 484 F.3d 573 (D.C. Circuit 2007), Bartnicki does not stand for such a broad proposition:

> Whatever the Bartnicki majority meant by "lawfully obtain," *see* 532 U.S. 538, 121 S.Ct. 1753 (Breyer, J., joined by O'Connor, J., concurring), the decision does not stand for the proposition that anyone who lawfully obtains truthful information of public importance has a First Amendment right to disclose that information. Bartnicki avoided laying down such a broad rule of law and for good reason. *See* "Information as Contraband: The First Amendment and Liability for Trafficking in Speech, 96 NW.U.L. REVV. 1099, 1126-32 (2002). There are many federal provisions that forbid individuals from disclosing information they have lawfully obtained. The validity of these provisions has long been assumed. Grand jurors, court reporters, and prosecutors, for instance, may "not disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(b). The Privacy Act imposes criminal penalties on government employees who disclose agency records containing information about identifiable individuals to unauthorized persons. *See* 5 U.S.C. § 552a(i)(1). The Espionage Act punishes officials who willfully disclose sensitive national defense information to persons not entitled to receive it. *See* 18 U.S.C. § 793(d). The Intelligence Identities Protection Act prohibits the disclosure of a covert intelligence agent's identity. *See* 50 U.S.C. § 421….[citing additional examples].

7

Boehner v. McDermott, 484 F.3d 573, 577-78 (emphasis added); *see also* Seattle Times v. Rhinehart, 467 U.S. 20, 32, n.18 (1984) (Although litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise in this setting."). The Supreme Court decisions in both Boehner and Seattle Times provide numerous instances where speech is "restraint," including one involving a lawyer receiving information during his representation of a client in a lawsuit. *See* Seattle Times, 467 U.S. at 22 (Parties to a civil litigation did not "have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process."). Consequently, this Court should have no reservations about restraining Roe, an attorney, from disclosing sealed documents if Roe fails to satisfy the relevant four prong test under the First Amendment. *See supra.*

Roe claims that his status as a lawyer as "irrelevant." *See* Roe's Opposition, at 10. However, it was Roe's role as an attorney that allowed him to obtain access to Doe's Sealed and Confidential Documents in the first place. Indeed, Bernstein would never have provided Roe unfettered access to Bayrock's hard drive had Roe not been acting as his attorney. Consequently, Roe's status as a lawyer is highly relevant to his possession of Doe's sealed documents.

**VI-** **Roe cannot publicly disclose sealed documents and then claim the documents should be unsealed since they are already in the public realm**

Finally, Roe argues that because "information about Doe's cooperation is a rapidly spreading public fact," he now has the right to disseminate that fact. *Id.* at 7. In making his argument, Roe completely ignores the fact that, if word of Roe's cooperation has been spreading, it is solely due to Roe and his rogue attorney's, Richard Lerner, illegal disclosures to the press. Indeed, Doe recently brought before Judge Cogan, whom the Court of Appeals appointed to

8

police and enforce its orders, an Order to Show Cause why both Roe and Lerner should not be held in civil contempt for disclosing sealed information to both *The New York Times* and *The Miami Herald*. At the initial February 27, 2012 hearing on the Order To Show Cause, Judge Cogan, believing that civil contempt was not enough to deter Roe and Lerner, "refer[ed] the matter for criminal prosecution to the United States Attorney." *See* Mobargha Reply Aff., Ex. 3, Hearing Transcript, at 9:22-23. In addition, Judge Cogan disqualified both Roe and Lerner from legally representing each other in any contempt proceeding, civil or criminal, because of the potential conflict present due to both of their involvement in these illegal disclosures. Roe should not be able to profit from these illegal disclosures by claiming that, since the sealed information he and Lerner disclosed is "already out there," the Court should unseal Doe's documents. That would lead to the perverse result of allowing someone to vacate a sealing order simply by violating it.

## CONCLUSION

For all the foregoing reasons, we respectfully request the Court to grant the relief requested in Doe's Memorandum. If the Court should hold that Doe's Other Sealed and Confidential Documents should be unsealed, we request that the Court, in compliance with the Court of Appeals' December 20th Order, "enter an order temporarily staying the unsealing of any documents referring to Doe's cooperation pending an appeal by the government to our Court."

Dated: New York, New York
       March 27, 2012

BEYS, STEIN & MOBARGHA LLP

_____
Nader Mobargha, Esq. (NM7162)
Jason Berland, Esq. (JB4136)
The Chrysler Building
405 Lexington Avenue, 7th Floor
New York, New York 10174
212-387-8200
*Attorneys for Defendant John Doe*