UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re Application to Unseal 98 Cr. 1101 (ILG),    OPINION AND ORDER
United States of America v. John Doe
                                                  12 Mc. 150 (ILG)
----------------------------------------------------------x

GLASSER, Senior United States District Judge:

Intervenors the Miami Herald Media Company (the "Herald"), Lorienton N.A. Palmer ("Palmer"), and Linda Strauss, a member of the public proceeding pro se, have moved this Court to unseal United States of America v. John Doe, Case Number 98 Cr. 1101, in its entirety.[1] Non-party respondent in 98 Cr. 1101, Richard Roe ("Roe"), also previously moved to unseal the case.[2] As of December 10, 1998, the docket sheet of the case and all documents filed in the case have been sealed. The issue currently before the Court is whether, as an initial matter, any portion of the case's docket sheet must be unsealed. For the reasons set forth below, the motion to unseal the docket sheet is hereby GRANTED.

## BACKGROUND

On December 10, 1998, John Doe ("Doe") pleaded guilty, pursuant to a cooperation agreement, to an information charging him with participating in a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. The Court sealed the case and its docket sheet at Doe's December 10, 1998 guilty plea. No transcript of the proceeding was

---

[1] Linda Strauss and Yoav Bitter ("Bitter") on February 7, 2012 and February 9, 2012, respectively, in identical letters each "demand that [the Court] unseal the docket entries, and all documents and transcripts with respect to the EDNY matter of U.S. v. 'John Doe,' 98-cr-1101, and the related appeals." Letter dated Feb. 7, 2012 from Linda Strauss to the Court (Dkt. No. 3); Letter dated Feb. 9, 2012 from Yoav Bitter to the Court (Dkt. No. 4). On April 17, 2012, Bitter withdrew his motion.

[2] Roe's motions to unseal were filed under 98 Cr. 1101.

found, and the notes of the court reporter present at that proceeding, who has long since died, cannot be located and have, in all likelihood, been discarded.[3] However, the Court has located a minute entry made on that day by the courtroom deputy that states "all documents sealed" and "transcripts sealed." Given that absent authorization by statute or rule, permission to seal must be given by a judge[4] before a clerk may do so, the inescapable conclusion to be drawn from that minute entry is that given Doe's cooperation, the Government made an oral application that the transcript of the proceeding be sealed which the Court granted as essential to protect the safety of Doe and narrowly tailored to serve that interest. It was undisputed at Wednesday's hearing that those were the underlying considerations for sealing the case initially and maintaining its sealing thereafter.

Doe's entire case has remained sealed since December 10, 1998. On May 10, 2010, a complaint in a civil action was filed in the Southern District of New York, annexed to which were sealed documents of this case: (1) Doe's 2004 presentence investigation report in its entirety and also excerpts from the report; (2) two proffer agreements, one dated October 2 and October 5, 1998 and the other October 29, 1998;

---

[3] Reporter's notes are required by law to be kept by the Clerk of Court for at least ten years. See 28 U.S.C. § 753(b) ("The reporter or other individual designated to produce the record shall attach his official certificate to the original shorthand notes or other original records so taken and promptly file them with the clerk who shall preserve them in the public records of the court for not less than ten years.").

[4] See, e.g., R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 12 (1st Cir. 2009) ("Placing court records out of public sight is a serious step, which should be undertaken only rarely and for good cause. Sealing orders are not like party favors, available upon request or as a mere accommodation. In the first instance, however, decisions about whether or not to seal are committed to the sound discretion of the district court." (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-99, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005); In re Globe Newspaper Co., 920 F.2d 88, 96 (1st Cir. 1990))).

and (3) Doe's cooperation agreement dated December 10, 1998. That event provoked a proceeding in this Court to enjoin the dissemination of those documents and to maintain their confidentiality, and the extensive proceedings, of which this one is only a part, followed.

Relevant to these proceedings are the Government's acknowledgement of Doe's cooperation on two occasions and the public acknowledgement of his conviction and identity on a third. In 2001, on the eve of the trial of one of the defendants against whom Doe cooperated, the Government provided that information to the defendant as it was required to do pursuant to 18 U.S.C. § 3500. The Court is not aware that it was disseminated by the defendants beyond that. In 2009, the Government inadvertently unsealed the docket of a Doe co-conspirator that contained a letter filed by the Government mentioning Doe's cooperation. Finally, the Government on March 2, 2000 inadvertently disclosed Doe's identity and the fact of his conviction in a press release that was subsequently reprinted in the Congressional Record. See, e.g., Roe v. United States, 428 F. App'x 60, 65 (2d Cir. 2011) (summary order). After learning of that inadvertent disclosure, the Government on March 17, 2011, moved this Court "for a limited unsealing of the docket and certain documents in Doe's underlying criminal case. The [G]overnment explicitly sought to unseal only those docket entries and documents that did not refer to Doe's cooperation with the government." Id. The Government thereafter, on August 24, 2011, withdrew that motion without prejudice. 98 Cr. 1101, Dkt. No. 120.

Doe's conviction and cooperation has also been the subject of intense and continued speculation by the media including the New York Times and, most recently, the Miami Herald. In addition, due to an unfortunate series of events in the office of the

3

Clerk of Court, the docket sheet of 98 Cr. 1101—which revealed Doe's identity and the fact of his conviction and cooperation—was inadvertently unsealed for several days and then subsequently resealed. During the period in which it was publicly available, several members of the media, Lexis, Westlaw, and others accessed it. Copies of the docket sheet remain available on Lexis and Westlaw today.

**ANALYSIS**

The principles at issue in this motion are well known. "[D]ocket sheets enjoy a presumption of openness and . . . the public and the media possess a qualified First Amendment right to inspect them." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 93 (2d Cir. 2004). But this presumption is "rebuttable upon demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest." Hartford Courant, 380 F.3d at 96 (citation and internal quotation marks omitted). "Danger to persons or property," and ensuring the integrity of an ongoing investigation, this Circuit has explained, constitute such higher values or compelling interests. United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995). The parties seeking to maintain sealing—here, the Government and Doe—bear the burden of establishing that continued sealing is warranted. See, e.g., United States v. Zazi, No. 10 Cr. 0019 (RJD), 2010 WL 2710605, at *2 (E.D.N.Y. June 30, 2010). This burden is a heavy one, Press-Enter. Co. v. Superior Court, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984), and the burden "increases the more extensive the closure sought," Doe, 63 F.3d at 129. It is a burden that the Government has previously met.

In deciding whether to unseal the docket sheet, the Court would, in the normal course, balance two competing concerns: (1) the press and the public's presumptive right of access to docket sheets; and (2) the compelling interests that would be

4

prejudiced by public access the Government and Doe may convincingly advance rebutting that presumption. And it would do so by applying the four-factor test this Circuit articulated in United States v. Doe:

> First, the district court must determine, in specific findings made on the record, if there is a substantial probability of prejudice to a compelling interest of the defendant, government, or third party, which closure would prevent. Second, if a substantial probability of prejudice is found, the district court must consider whether reasonable alternatives to closure cannot adequately protect the compelling interest that would be prejudiced by public access. Third, if such alternatives are found wanting, the district court should determine whether, under the circumstances of the case, the prejudice to the compelling interest override[s] the qualified First Amendment right of access. Fourth, if the court finds that closure is warranted, it should devise a closure order that, while not necessarily the least restrictive means available to protect the endangered interest, is narrowly tailored to that purpose.

63 F.3d 121, 128 (2d Cir. 2005) (internal citations, quotation marks and punctuation marks omitted).

Any balancing of the interests here, however, would be academic as the information the Government and Doe seek to maintain sealed has already been publicly revealed; the cat is out of the bag, the genie is out of the bottle. Doe's identity and the fact of his conviction was publicly revealed by the Government in a press release, and the docket sheet revealing Doe's identity, conviction, and cooperation is accessible on Westlaw and Lexis.

The Second Circuit has noted that a court lacks power to seal information that, although once sealed, has been publicly revealed. In Gambale v. Deutsche Bank AG, 377 F.3d 133, 144 (2d Cir. 2004), it stated:

> [H]owever confidential it may have been beforehand, subsequent to publication it was confidential no longer. It now resides on the highly accessible databases of Westlaw and Lexis and has apparently been disseminated prominently elsewhere. We simply do not have the power, even were we of the mind to use it if we had, to make what has thus

> become public private again. The genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back.

Id. (citing SmithKline Beecham Corp. v. Pentech Pharms., Inc., 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (Posner, J., sitting by designation)). It went on to note this "is generally so when information that is supposed to be confidential—whether it be settlement terms of a discrimination lawsuit or the secret to making the hydrogen bomb—is publicly disclosed. Once it is public, it necessarily remains public." Id. at 144 n.11 (citations omitted); see also United States v. Strevell, No. 05 Cr. 477 (GLS), 2009 WL 577910, at * (N.D.N.Y. Mar. 4, 2009) (applying Gambale and refusing to maintain under seal documents referring to the defendant's cooperation generally where the fact of his cooperation had already been publicly revealed); cf. Zazi, 2010 WL 2710605, at *4 (where media had already heavily reported suspected cooperation of two members of an al-Qaeda terrorist plot to blow up New York City subways based in part on anonymous law enforcement sources, alleged safety risk to one of the plotters and his family did not justify continued sealing of documents confirming defendants' cooperation absent proof of "enhanced risk" to their safety if cooperation is formally disclosed).

Accordingly, because any continued sealing of the docket sheet of 98 Cr. 1101 would be futile, the movants' motion to unseal that docket sheet is hereby GRANTED.

A hearing will be held on October 2, 2012 at 2:00 p.m. for the purpose of determining whether unsealing any document that has been filed in 98 Cr. 1101 is required. The Government and Doe will bear the burden of establishing that there are compelling interests that override the qualified First Amendment and common law rights of access.

SO ORDERED.

Dated:   Brooklyn, New York
         August 27, 2012

*S/ I. Leo Glasser*
I. Leo Glasser
Senior United States District Judge