## WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

### FACSIMILE

| | |
|---|---|
| 150 East 42nd Street | Telephone #: 212.490.3000 |
| New York, NY 10017-5639 | Facsimile #: 212.490.3038 |

The following facsimile has page(s) including this cover page. If you have any difficulty, or if the transmission was incomplete, please advise: .

| | | | |
|---|---|---|---|
| From: | Richard E. Lerner | Date: | February 23, 2012 |
| Attorney #: | 1366 | File #: | 07765.00155 |
| Re: | Roe v. US v. Doe (10-2905, 11-479-CR /US v. Doe (98-CR-1101) | | |

Please deliver as soon as possible to:

| Recipient | Company | Fax No. | Phone No. |
|---|---|---|---|
| Hon. I. Leo Glasser | USDC/EDNY | (718) 613-2446 | (718) 613-2440 |

### EXTREMELY SENSITIVE MATERIAL
### SUBMITTED UNDER SEAL AND IN CAMERA

**Demand for Stay of Proceedings to Address Obstruction of Justice Resulting from Submission of the Demonstrably False and Perjurious Affidavit.**

Dear Judge Glasser:

Your scheduling order said our papers and those of Mr. Sater would be due on February 21, 2012. At 11:10 p.m. that day, pursuant to FRCP 6, we properly requested an enlargement of time of 72 hours.

An hour and a half later, at 12:44 a.m. of the next day, February 22, 2012, I received via email a memorandum of law and affidavit of counsel for Mr. Sater, referring to an affidavit of Joshua Bernstein. (I was asleep by that time). The Bernstein affidavit was not annexed; in fact, I did not receive it until late yesterday afternoon, at 4:24 p.m., February 22, 2012, when a hard copy of the papers were delivered to my office by opposing counsel. Thus, I did not have an opportunity to review the affidavit with my client until last evening and again this morning.

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us via postal service. Thank you.

Albany • Baltimore • Boston • Chicago • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles
Louisville • McLean • Miami • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford
Washington DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris

4941150v.1

Fax to Judge Glasser
February 23, 2012

Having now had an opportunity to review the Bernstein affidavit, we demand an immediate stay of all proceedings because, as we will show, the Bernstein affidavit is an obstruction of justice and perjury and, as we will show, it likely was obtained by duress but in any event is likely subornation by Mr. Sater's lawyers. (We are not cc'ing the government or Doe's lawyers on this fax).

If the court does not have it, we will make available the June 21, 2011 transcript of Mr. Oberlander's testimony. It reflects scrupulous attention to privilege and confidentiality for the protection of his former client Bernstein, even to the extent that Kelly Moore, then representing Mr. Sater, explicitly alleges Mr. Oberlander committed misconduct and invites him under the Rules to put aside privilege and defend himself, and again Mr. Oberlander declined to do so.

Thus court may entertain no doubt whatsoever of the reluctance of Mr. Oberlander to proffer evidence of severe wrongdoing against a former client.

In addition, I have personal knowledge that from before Mr. Oberlander ever heard much of anything about Bernstein, from November 2008, he has continually been represented by Prof. William Simon, who holds dual chairs in legal ethics at both Columbia and Stanford, the scope including professional ethics. This is not a waiver of privilege of any kind. Mr. Oberlander makes no statement that anything herein or relevant hereto was done in reliance on legal advice and retains all rights of privilege and confidentiality. However, at a minimum given the gravity of the statements Mr. Oberlander now makes, to say nothing of what should be forthcoming, time to consult with Prof. Simon is certainly indicated in the interest of justice.

Pending such, as the Bernstein affidavit itself and its submission (which is proof per se of Bernstein's disclosure of privileged communications, including without limitation by its inclusion of emails from Mr. Oberlander and statements of reliance on certain advice, made to persons not entitled to receive them unless such be waiver) constitutes a *per se, de jure* waiver of privilege and confidentiality. My client is now entitled to and constrained in his own superseding interests to reveal evidence against Bernstein's interests, and devastatingly so

My client is reviewing the hundreds of emails to and from Bernstein and his own independent counsels. Again in the interest of justice I incorporate just a smattering of them, which show that the affidavit is plainly false, through and through.

— **"When Mr. Oberlander and I spoke, we discussed the facts and circumstances of my case and his client's case." (¶ 12). "After apprising me of our common interest privilege, Mr. Oberlander then volunteered to represent me in the Westchester Action for free. He also convinced me that ... he had extensive knowledge of all the events that had taken place at Bayrock ..." (¶ 15)**

We will show that on or about October 31, 2009 Mr. Oberlander, at the request of Mr. Kriss, his client, while preparing the RICO complaint, contacted Bernstein's *attorney* and not Bernstein, whom he knew to be represented, in a somewhat related lawsuit against Bayrock in Westchester Supreme Court, to inquire about proceeding together in common interest or at least if Mr. Bernstein would cooperate as a fact witness then, rather than by compulsion in the future.

Fax to Judge Glasser
February 23, 2012

       In response, out of the blue and unsolicited, Mr. Bernstein sent Mr. Oberlander, the following email, himself for the first (and by no means the last) time asking Mr. Oberlander to represent him, and clearly showing he had had no prior contact with Mr. Oberlander:

```
From: Josh B <joshsemail@gmail.com>
To:   fred55 <fred55@aol.com>
Date: Wed, Nov 11, 2009 9:03 am
```

Dear Mr. Oberlander,

My name is Joshua Bernstein and you may know that I am a former
employee of Bayrock Group and currently a litigant against my former
employee for breach of contract claims. I realize you reached out to
my attorney Gerry Feinberg a few weeks back and nothing substantive
came of the conversation. I'd like to have a very brief discussion
with you to discuss representation. Please let me know when you can
speak and how I can reach you.

Sincerely,
Joshua Bernstein
(914) 316- 7777

       Confirming this, on or about March 8, 2010, Bernstein testified under oath in depositions in his Westchester case that it was *his* idea to retain Mr. Oberlander, that he had read about him online, that he had followed the cases against Bayrock in Delaware and so believed Mr. Oberlander to be well versed in Bayrock matters, and decided to affirmatively reach out to him to try to hire him.

       Mr. Oberlander spoke with him and declined to represent him at that time:

```
From: fred55 <fred55@aol.com>
To:   joshsemail <joshsemail@gmail.com>
Date: Wed, Nov 11, 2009 2:34 pm
```

this is confirmation that as of our phone call this morning you are a
PROSPECTIVE client of this firm. this means unless you and we agree
otherwise we will take NO action on your behalf and are NOT your
attorneys. it does however mean that you have certain rights, including
rights of attorney client privilege.

so we may continue to discuss your representation, please email me, or fax
to 212 202 7624,anything you have in written form that refers to the 10%
interest in whatever it was you were promised an interest in; if its only

4941150v.1

Fax to Judge Glasser
February 23, 2012

```
on a tape then try to transcribe the surrounding words for +/- 1 minute

thanks

dont forget about what happened with the f1 note

fmo
```

> We will show that his reluctance to represent him was due to the difficult ethics issues, including the need to obtain Jody Kriss's consent, and that Mr. Oberlander explained this to Bernstein. For example, in the following email, which is one of several emails in which Mr. Oberlander explains that, no matter what, he will have no contact with Mr. Bernstein, as his potential lawyer or actual lawyer or otherwise, without Bernstein retaining independent counsel, and it shows Mr. Oberlander's suggestion that Bernstein had RICO claims against Bayrock and could possibly join the Kriss action on that basis (hence with federal question jurisdiction) [emph. added]:

```
From:   fred55 <fred55@aol.com>
To:     joshsemail <joshsemail@gmail.com>
Date:   Thu, Nov 12, 2009 10:15 am

jody i believe is quite enthusiastic about your coming on.

there are serious, but solvable, ethics issues of course.
as we discussed.

one possibility is that you can keep your current action
and joint us as well. too complex a topic for email but
it may be possible and would make things easier.

please confirm my understanding your return to ny
is next wed pm and you will be here thereafter.

thanks.

ps there is NO WAY this happens without you having
independent representation so i hope your current lawyer
is willing to do that
```

4

4941150v.1

Fax to Judge Glasser
February 23, 2012

    Bernstein then confirmed his understanding and agreement that Mr. Oberlander would not continue contact with him without Bernstein having independent counsel [emph added]:

```
From: fred55 <fred55@aol.com>
To:   joshsemail <joshsemail@gmail.com>
Date: Thu, Nov 19, 2009 1:53 pm
```

**I understand the requirement to continue to retain independent representation.**

Thanks,
Josh Bernstein

    We will show (for the sake of brevity I don't include such emails here) that for the next two months, basically all of January and February 2010, Oberlander, Bernstein, Kriss, and Bernstein's independent counsels exchanged perhaps scores of facts, explanations, documents, and so on.

    We will show that Bernstein's father, one of his attorneys, expressed concern that Bernstein's other lawyer had wrongfully instructed Bernstein to withhold documents from production demanded by Bayrock, and that Mr. Oberlander, though still not his attorney, insisted that Bernstein must comply with discovery requests, whereupon a great many documents were exchanged to help Bernstein stay in (very late) compliance, as well as further the common interest.

    We will show Mr. Oberlander's constant warnings that these communications were not attorney-client communications and were solely in common interest.

    We will show Mr. Oberlander rarely if ever spoke with Bernstein on the phone or in person during this time without one of his independent lawyers present.

    We will show Mr. Bernstein's ongoing pleas to hire Mr. Oberlander, that he told Mr. Oberlander he was unhappy with his current counsel and wouldn't Mr. Oberlander please represent him, to which Mr. Oberlander refused except for a brief period wherein he joined as second chair briefly to help with certain depositions in Bernstein's case.

### AND AS TO THE "STOLEN" DOCUMENTS:

    We will show that in January 2010 Bernstein (with his father) called Mr. Oberlander and told him that he had documents that would "blow up" Bayrock and indict law firms like Roberts & Holland and Nixon Peabody and Kramer Levin and Duval & Stachenfeld, and then he described activities he conducted at Bayrock which were (as he described them) felonies. Then, shortly thereafter, he asked to meet Mr. Oberlander in person (the first time they met), at Mr. Oberlander's insistence *with his father*, and showed Mr. Oberlander a laptop on which he had very many Bayrock emails that he said could prove useful to Kriss's case, and showed one in

Fax to Judge Glasser
February 23, 2012

particular which contained the admission of Julius Schwarz (Bayrock's General Counsel) that he had overseen the perpetration of a $250,000,000 tax fraud and money laundering scheme.

We will show that at that meeting he and his father said that if they could share in the proceeds of Jody's case, which they presumed to be likely much larger than theirs, they would be very cooperative about sharing such information.

We will show that Mr. Oberlander refused all involvement in any such negotiation to share proceeds, and told them he would not be involved even to help Kriss with it, that anything he and Kriss did or didn't agree to would be done without his involvement whatsoever except as to approving Kriss's reimbursement of some extra court reporter costs.

### AT ABOUT THE SAME TIME:

The following is self-explanatory. First the excerpt from the affidavit just submitted:

— **"Mr. Oberlander assured me that the documents on the hard drive were not stolen and that as a legal matter I had every right to possess the back-up hard drive. (¶ 13).**

The court should make careful note this is over a month before Mr. Oberlander went near Bernstein's computer or the disk, and occurred during a time, as stated, of extensive document exchanges between and among Bernstein, independently represented, and Kriss, independently represented (by Mr. Oberlander). [emph. added], particularly including Bernstein's father's concern that Bernstein had withheld documents from Bayrock:

From: fred55 <fred55@aol.com>
To: joshsemail <joshsemail@gmail.com>
Date: Wed, Feb 3, 2010 12:57 pm

with whom did you want to meet and for what purpose it influences scheduling

based on your complaint as you have it there isnt much to add because you're suing them for wages for breach of contract

i am not aware of any benefit ny statutory law gives you, unless i read it too fast

i can only possibly be of help to you in two ways

first, by showing you other ways to sue than you know of, but there is no time emergency on that unless you wish to amend your current complaint and you would REALLY want to do that BEFORE discovery or you'll have grief with the court possibly (ask your lawyer)

*the other way to help you is to help your lawyer prep for discovery*

jody says you dont want me to talk to *your lawyer* because the bill he would run up trying to understand me would be too big

6

4941150v.1

Fax to Judge Glasser
February 23, 2012

so im stuck here. if you want me to help your lawyer prep that would be no problem at all but if i dont know what you want i cant do schedules

...

*the one that concerns me is i see they claim they ordered you to return the copy of the server, or am i reading that wrong. im <u>sure your lawyer will protect you</u> here but <u>this is the first i heard of</u>. i do know that your statement that felix told you to make a copy and keep it if true, and i have no reason to doubt its true, is justification for your making the copy and keeping it, but <u>this is the first i heard that they ordered you to give it back</u>. unless they didnt. again im going from very little information and <u>its imperative you rely on your lawyer's advice here</u>. i am certainly no accusing you of doing anything wrong, just <u>that making the copy is not the same as retaining the copy</u>.*

*so that you understand im trying to help you <u>but not give you legal advice other than insofar as you and jody are cooperating, i will wait until your lawyer confirms his belief in your right to retain it before i ask you casually for anything stored on it, so don't worry there that sending me anything from now on will be bad for you, because we simply won't have you do that till yourlawyer says its ok</u>.*

Thereafter, Bernstein assured that *his own independent lawyer* had blessed his use of the hard drive, and indeed many, many documents were exchanged thereafter, including to his independent lawyers, almost all of which were for Bernstein's own use in his coming depositions in his case. They were used by his lawyer of record for that deposition and for complying with Bayrock document requests. Indeed, his lawyer had in hand a copy of the PSR, which Bernstein had given him, during his lawyer's deposition of Mr. Sater on March 9, 2010.

— "After apprising me of our common interest privilege, Mr. Oberlander then volunteered to represent me in the Westchester Action for free. He also convinced me that ... he had extensive knowledge of all the events that had taken place at Bayrock ..." (¶ 15) (false light). "Mr. Oberlander provided me a retainer agreement, dated February 28, 2010 ... in which he attempted to explain the nature of the 'common interest privilege.' The Retainer Agreement was a 7-page document, much of which I did not understand. (¶16)

We will show that Mr. Oberlander gave Bernstein a 3500 word engagement letter warning in excruciating detail about the possible dangers to him of joint representation, pointing out that up to then there had been no representation at all, but just the common-interest privilege, and that by superseding that with joint representation he was putting himself at substantial risk. And we will show, as the following emails self-explain, that Mr. Oberlander refused to accept Bernstein's acceptance of the engagement letter until Bernstein had himself obtained

7

4941150v.1

Fax to Judge Glasser
February 23, 2012

> independent review by his own lawyer(s), who would be required to explain it to him to their
> satisfaction as well.

> We will show that initially, Bernstein gave it to his father, who was also representing him
> (I know from personal knowledge that his father was representing him in this matter, as I had
> personally spoken with him in that capacity): [emph. added]

From: Josh B <joshsemail@gmail.com>
To: fred55@aol.com
Sent: Sat, Feb 27, 2010 7:21 pm
Subject: Re: I'd like to finalize this

Sorry it took me the day to get back to you. I had some personal things to attend to today and was driving for quite a while.

**Any clarity you can add to the agreement is helpful and my father will certainly review it and act as my attorney.**

I don't need an additional affirmation page about joining a case.


From: Josh B <joshsemail@gmail.com>
To: fred55@aol.com
Sent: Sun, Feb 28, 2010 2:44 pm
Subject: Re: I'd like to finalize this

Thank you. Will review in AM. Please cc my father on all emails as he represents me.
Arnoldbernstein@gmail.com


From: joshsemail@gmail.com
To: Frederick Oberlander <fred55@aol.com>
Sent: Sun, Feb 28, 2010 1:28 pm
Subject: Re:

Thanks for your sensitivity. My dad says he reviewed and has approved. We can get together today if you'd like. I'm scheduled to go to Gerry tomorrow at 1pm

Fax to Judge Glasser
February 23, 2012

Even then, the day that Mr. Oberlander went to Bernstein's office, he would not proceed until he had personally confirmed with Bernstein's father that he had indeed had approved that engagement letter as his son's independent counsel, which conversation was intentionally witnessed by an associate of Mr. Oberlander's to avoid any possible issues:

From: fred55@aol.com
Date: Sun, 28 Feb 2010 13:30:20 -0500
To: <joshsemail@gmail.com>
Subject: Re:

can we have a quick conference call with your father right now?

During the course of his time with Mr. Oberlander, Bernstein admitted to having engaged in serious criminal acts, and was warned of the risk he faced if this were to be revealed.

Bernstein has admitted knowing of the Sater restitution fraud, that is, that Sater disguised his huge monthly cash take from Bayrock as sham "loans" to evade restitution; the following email was written by Bernstein and shows his scienter. The court may recall that Mr. Oberlander, in June 2010, would not produce this email in its entirety because he knew it was incriminating, and so insisted during his testimony that the contents of it were privileged [emph. added]

From: Josh B <joshsemail@gmail.com>
To: Gerry Feinberg <tenslaw@aol.com>    Arnold Bernstein
<arnoldbernstein@gmail.com> & Frederick Oberlander <fred55@aol.com>
Date: Wed, Mar 3, 2010 10:37 am

As discussed here are the Felix docs. In the PSIR from 2004 Felix tells the Department of Justice that he has no salary, although he is employed by Bayrock and taking a "loan" of $35,000 a month. **He does this so they dont make him pay restitution.** Bad idea to lie to them.

The reason for Mr. Oberlander's great concern in behalf of Bernstein was that Mr. Bernstein has admitted in writing under oath, to date in private, that he knew while he was at Bayrock that Mr. Sater was hiding his conviction, and even though he knew it he participated in the fraudulent cover-up by his activities at the firm and privately with Mr. Sater. His failure to warn law enforcement and victims (and indeed he has produced, on his own, emails in which Julius Schwarz, Bayrock's general counsel at the time, brags to Tevfik Arif how successful he has been in hiding Sater's past, receiving in appreciation a doubling of his salary) constitutes misprision. (This is one reason why we have not cc'd the government or Doe's counsel on this fax). Bernstein's exposure to criminal and civil liability is profound.

For example, in *United States v. Marino*, 09-cr-1965 (Aug. 8, 2011) the Second Circuit upheld a $60,000,000 restitution award (by coincidence the same amount you failed to award against Mr. Sater) in connection with a conviction for misprision of a "worker bee" who learned

9

4941150v.1

Fax to Judge Glasser
February 23, 2012

of fraud at his firm and rather than leave or at least report it, stayed on and at least indirectly helped cover it up, the court holding that not leaving and reporting the fraud, but staying and participating however indirectly in the coverup, made the defendant liable for all losses to all victims occurring after the time he learned of it and failed to leave or report it, as the new investors would not had been "taken" had he first talked.

Bernstein is also a material witness to massive fraud, including on the victims of Sater's crimes, and the money laundering at Bayrock, for example as he told Kriss directly:

From: Jody Kriss <jk@krissre.com>
To: Fred Oberlander <fred55@aol.com>
Sent: Wed, Jan 6, 2010 12:37 pm
Subject: from josh just now

in november they signed "separation documents" in nov '08. felix still owns a large share of bayrock through a trust controlled by his wife and kids. bayrock sent $1.5M to bayrock group inc.

We now demand a stay of these proceedings so that we may depose Bernstein to ascertain, *inter alia*, the circumstances under which he signed that affidavit, and – specifically – whether it was under duress by Doe's counsel, who sued him in the Southern District. When confronted with the emails, Mr. Bernstein may well recant the affidavit that was just submitted to the court. All privilege is now waived as to all this, and Bernstein no doubt must have been placed in incredible duress to produce such a perjured document knowing what would happen if it were ever used. *We wish the court to note that in Bernstein's testimony under oath on March 8, 2010 in his deposition in Westchester, he testified that Sater twice threatened to kill him and his family if he "talked" too much about things he knew about Bayrock.*

We also need time to consult with Professor Simon, regarding the implications of disclosing all of the above, incriminating a former client, and all of the hitherto privileged emails, in these proceedings and otherwise disclosing them as Mr. Oberlander may deem appropriate, in light of Bernstein's waiver of the attorney-client privilege. We note that there are actions in Florida and the SDNY where such emails would be critical to defeating fraudulent defenses that have been interposed by Bayrock.

Further, as for the first time an allegation of civil contempt has been made before your honor by Doe's counsel, assuming *arguendo* it is civil and not criminal contempt, which need not be addressed now, and although it was done by improper means, violating FRCP 7 as to motions in general and violating local rule 83.6 as to civil contempt motions, which improper form we do not waive objection to, still not only Fifth Amendment due process but the express provisions of 83.6 provide that when the allegation of contempt is disputed ["put in issue"] the alleged contemnor shall have the right to conduct evidentiary hearings, including as to scienter, since Mr. Sater has placed that in issue, as well as to the surrounding facts and circumstances,

10

4941150v.1

Fax to Judge Glasser
February 23, 2012

including the validity of the alleged order itself, which is a proper defense to civil contempt. So a stay is mandatory now.

Very truly yours,

/s/

Richard E. Lerner